**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS ROGER WHITE, JR., DAVID ESPINOZA, and CHRISTOPHER MILLS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., SONY CORPORATION, and SONY ELECTRONICS CORPORATION,<br><br>And<br><br>John and Jane Does (1-Unlimited)<br><br>And<br><br>ABC Corporations (1-Unlimited),<br><br>Defendants. | Civil Action No. 17-1775 (MCA)(SCM)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J.<br><br>**Return Date:  October 2, 2017**<br><br>(Oral Argument Requested)<br><br>*Document Electronically Filed* |

**DEFENDANTS LG ELECTRONICS USA, INC. AND SAMSUNG ELECTRONICS AMERICA, INC.'S JOINT BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

| | |
|---|---|
| GIBBONS PC<br>One Gateway Center<br>Newark, NJ 07102<br>Telephone: (973) 596-4500<br>*Attorneys for Defendant*<br>*Samsung Electronics America, Inc.* | SILLS CUMMIS & GROSS P.C.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br>Telephone: (973) 643-7000<br>*Attorneys for Defendant*<br>*LG Electronics U.S.A., Inc.* |

*Additional counsel on signature page*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................2

LEGAL STANDARD ...............................................................................................4

ARGUMENT .............................................................................................................6

I.     Plaintiffs' Federal Claims Fail..........................................................................7

       A.     Plaintiffs Cannot State a Claim Under the VPPA.................................7

       B.     Plaintiffs Cannot State a Claim Under the Wiretap Act ......................11

       C.     Plaintiffs' VPPA and Wiretap Claims Are Time-Barred......................15

II.    Plaintiffs' Fraud Claims Fail ...........................................................................17

       A.     Plaintiffs Fail to State a Claim Under the New Jersey Consumer
              Fraud Act...............................................................................................17

              1.     Plaintiffs, Non-Residents, Cannot Assert Claims Under the
                     CFA ...........................................................................................18

              2.     Plaintiffs' CFA Claims Lack Particularity Required by Rule
                     9..................................................................................................21

                     a.     The Complaint Impermissibly Lumps All Defendants
                            Together .........................................................................22

                     b.     The Complaint Does Not Specify an Unlawful
                            Practice Giving Rise to a CFA Claim..............................23

                     c.     Plaintiffs Have Not Alleged Ascertainable Loss..............26

       B.     Plaintiffs' Common Law Fraud Claim Lacks Particularity
              Required by Rule 9.................................................................................28

III.   Plaintiffs' Contract Claims Fail ......................................................................30

       A.     Plaintiffs Fail to State a Claim For Breach of Express Warranty ...........31

B.      Plaintiffs Fail to State a Claim For Breach of Good Faith and Fair Dealing ........................................................................................32

C.      Plaintiffs Fail to State a Claim For Unjust Enrichment ..........................35

CONCLUSION ..........................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adamo v. Jones*,
　No. 15-cv-1073, 2016 WL 356031 (D.N.J. Jan. 29, 2016) (Arleo, J.)...................35

*Arlandson v. Hartz Mountain Corp.*,
　792 F. Supp. 2d 691 (D.N.J. 2011).........................................................................31

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).......................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)..................................................................................................5

*Benak v. Alliance Capital Mgmt. L.P.*,
　435 F.3d 396 (3d Cir. 2006) ...................................................................................17

*Beth Schiffer Fine Photog. Arts, Inc. v. Colex Imaging, Inc.*,
　No. 10-cv-5321, 2012 WL 924380 (D.N.J. Mar. 19, 2012)...................................19

*Bunnell v. Motion Picture Ass'n of Am.*,
　567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................................12

*Burns v. Heyns*,
　No. 14-cv-733, 2015 WL 4391983 (W.D. Mich. July 15, 2015) ...........................14

*Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*,
　420 F.3d 1146 (11th Cir. 2005) ..............................................................................33

*Clements v. Sanofi-Aventis, U.S., Inc.*,
　111 F. Supp. 3d 586 (D.N.J. 2015).........................................................................31

*Cooper v. Samsung Elecs. Am., Inc.*,
　374 F. App'x 250 (3d Cir. 2010) ............................................................................21

*Cox v. Chrysler Group, LLC*,
　No. 14-7573, 2015 WL 5771400 (D.N.J. Sept. 30, 2015).....................................19

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) .................................................................................25, 26

*D'Ercole Sales, Inc. v. Fruehauf Corp.*,
   206 N.J. Super. 11 (App. Div. 1985)...............................................................26

*Daniel v. Cantrell*,
   375 F.3d 377 (6th Cir. 2004) .........................................................................10

*Davis v. Bankers Life & Casualty Co.*,
   No. 15-cv-3559, 2016 WL 7668452 (D.N.J. Dec. 23, 2016) .................................25

*Davis v. Zirkelbach*,
   149 F.3d 614 (7th Cir. 1998) .........................................................................16

*DeHart v. U.S. Bank, N.A. ND*,
   811 F. Supp. 2d 1038 (D.N.J. 2011).........................................................34, 35

*DiNicola v. Watchung Furniture's Country Manor*,
   232 N.J. Super. 69 (App. Div. 1989), *certif. denied*, 117 N.J. 126
   (1989)......................................................................................................26

*Donachy v. Intrawest U.S. Holdings, Inc.*,
   No. 10-cv-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012)...................................22

*Durso v. Samsung Elecs. Am., Inc.*,
   No. 12-cv-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013)...................................21

*Eberhart v. LG Electronics*,
   No. 15-cv-1761, 2015 WL 9581752 (D.N.J. Dec. 30, 2015) (Arleo, J.)..........*passim*

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009)...........................................................17

*Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*,
   457 F.3d 312 (3d Cir. 2006) ..........................................................................34

*Ellis v. Cartoon Network, Inc.*,
   No. 14-cv-484, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on
   other grounds*, 803 F.3d 1251 (11th Cir. 2015)..................................................7

iv

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................ 14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) .............................................................................. 5

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) .................................................................. 6, 22, 29

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  No. 13-cv-6272, 2015 WL 7871165 (D.N.J. Dec. 4, 2015) (Arleo, J.) ............ 22, 35

*Gonzalez v. U.S. Bank Nat'l Ass'n*,
  No. 14-cv-7855, 2015 WL 3648984 (D.N.J. Jun. 11, 2015) (Arleo, J.) ................. 6

*In re Google Inc.*,
  806 F.3d 125 (3d Cir. 2015) ....................................................................... *passim*

*Granillo v. FCA US LLC*,
  No. 16-153, 2016 WL 9405772 (D.N.J. Aug. 29, 2016) ..................................... 5

*Gray v. Bayer Corp.*,
  No. 08-cv-4716, 2011 WL 2975768 (D.N.J. Jul. 21, 2011) ............................... 21

*Grills v. Philip Morris USA, Inc.*,
  645 F. Supp. 2d 1107 (M.D. Fla. 2009) ............................................................ 30

*Hoffman v. DSE Healthcare Sols., LLC*,
  No. 13-cv-7582, 2014 WL 2119753 (D.N.J. May 21, 2014) .............................. 30

*Hoffman v. Nordic Naturals, Inc.*,
  No. 14-cv-3291, 2015 WL 179539 (D.N.J. Jan. 14, 2015) ................................ 27

*Hughes v. Panasonic Consumer Elecs. Co.*,
  No. 10-cv-846, 2011 WL 2976839 (D.N.J. Jul. 21, 2011) ........................... 23, 24

*In re Hulu Privacy Litig.*,
  No. 11-cv-3764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................... 7

*In re § 2703(d) Order*, 787 F. Supp. 2d 430 (E.D. Va. 2011) ...................................... 14

v

*John Wiley & Sons, Inc. v. Rivadeneyra,*
   No. 13-cv-1085, 2013 WL 6816369 (D.N.J. Dec. 20, 2013) ...............................22

*Konop v. Hawaiian Airlines, Inc.,*
   302 F.3d 868 (9th Cir. 2002) .....................................................................12

*Kowalsky v. Deutsche Bank Nat'l Trust Co.,*
   No. 14-cv-7856, 2015 WL 5770523 (D.N.J. Sept. 30, 2015) ...............................24

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.,*
   865 F. Supp. 2d 529 (D.N.J. 2011).............................................................27

*Maniscalco v. Brothers Int'l (USA) Corp.,*
   709 F.3d 202 (3d Cir. 2013) .............................................................*passim*

*Mason v. Coca-Cola Co.,*
   774 F. Supp. 2d 699 (D.N.J. 2011).............................................................26

*McBrearty v. Fifth Generation, Inc.,*
   No. 14-cv-7667, 2015 WL 4749040 (D.N.J. Aug. 6, 2015).................................30

*McDermott v. Clondalkin Grp., Inc.,*
   649 F. App'x 263 (3d Cir. 2016) ..................................................................5

*MDNet, Inc. v. Pharmacia Corp.,*
   147 F. App'x 239 (3d Cir. 2005) ..................................................................6

*Mendez v. Shah,*
   28 F. Supp. 3d 282 (D.N.J. 2014)...............................................................31

*Miller v. Samsung Elecs. Am., Inc.,*
   No. 14-4076, 2015 WL 3965608 (D.N.J. Jun. 29, 2015) .............................19, 28

*Montich v. Miele USA, Inc.,*
   849 F. Supp. 2d 439 (D.N.J. 2012)...............................................18, 21, 24, 30

*In re Nickelodeon Consumer Privacy Litig.,*
   827 F.3d 262 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 624 (2017)..................*passim*

*In re Nickelodeon Consumer Privacy Litig.,*
   MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014), *aff'd on
   other grounds*, 827 F.3d 262 (3d Cir. 2016)....................................................*passim*

*Perez v. Professionally Green, LLC*,
  215 N.J. 388 (2013) ...................................................................25

*Ridge Meadows Homeowners' Ass'n v. Tara Dev. Co., Inc.*,
  242 A.D.2d 947 (N.Y. 1997) ......................................................19

*Rodriguez v. Sony Computer Entm't Am., LLC*,
  801 F.3d 1045 (9th Cir. 2015) .....................................................9

*Sams v. Yahoo!, Inc.*,
  No. CV-10-5897, 2011 WL 1884633 (N.D. Cal. May 18, 2011) ...........................14

*Saxon Fin. Grp., Inc. v. Rath*,
  No. 11-80646, 2012 WL 3278662 (S.D. Fla. Aug. 9, 2012)..................................32

*Semeran v. Blackberry Corp.*,
  No. 15-CV-750, 2016 WL 406339 (D.N.J. Feb. 2, 2016)....................................24

*Snyder v. Farnam Cos., Inc.*,
  792 F. Supp. 2d 712 (D.N.J. 2011)................................................35

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  295 F.R.D. 540 (S.D. Fla. 2013)..................................................29

*Sparshot v. Feld Entm't, Inc.*,
  311 F.3d 425 (D.C. Cir. 2002)....................................................16

*Spera v. Samsung Elecs. Am., Inc.*,
  No. 12-cv-5412, 2014 WL 1334256 (D.N.J. Apr. 2, 2014) ............................18, 27

*Sterk v. Best Buy Stores, L.P.*,
  No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)................................10

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) .....................................................10

*Stoecker v. Echevarria*,
  408 N.J. Super. 597 (App. Div. 2009)................................................25

*Telestrata, LLC v. NetTALK.com, Inc.*,
  126 F. Supp. 3d 1344 (S.D. Fla. 2015)................................................29

*Thiedemann v. Mercedes-Benz USA, LLC*,
    183 N.J. 234 (2005) ...................................................................................26, 27

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ................................................................... 15

*United States v. Reed*,
    575 F.3d 900 (9th Cir. 2009), *cert. denied*, 559 U.S. 987 (2010) ......................... 13

*In re Vizio, Inc.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................... 10

*Wade v. Kessler Institute*,
    343 N.J. Super. 338 (App. Div. 2001), *aff'd as modified*, 172 N.J. 327
    (2002) ....................................................................................................... 34

 *Walsh v. Quinn*,
    No. 09-cv-167, 2009 WL 2207816 (W.D. Pa. Jul. 23, 2009)................................ 17

*Weske v. Samsung Elecs. Am., Inc.*,
    No. 10-cv-4811, 2012 WL 833003 (D.N.J. Mar. 12, 2012)................................. 37

*Ziyadeh v. ACE European Grp., Ltd.*,
    No. 12-cv-7900, 2013 WL 12148853 (D.N.J. Sept. 5, 2013) ................................ 34

*Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    No. 13-cv-7738, 2014 WL 1577694 (D.N.J. Apr. 21, 2014) ................................ 22

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................... 13

**Statutes**

18 U.S.C. § 2510, *et seq* ........................................................................*passim*

18 U.S.C. § 2710, *et seq* ........................................................................*passim*

N.Y. CPLR 901(b) ................................................................................ 19

Fla. Stat. Ann. § 501.211(2) .................................................................. 19

Fla. Stat. Ann. § 501.2105 ..................................................................... 19

Fla. Stat. § 95.11(3)(j) ........................................................................28

N.Y. Gen. Bus. Law § 349 ..................................................................19

N.J.S.A. 2A:14-1 .................................................................................28

N.J.S.A. 56:8-2-20 ........................................................................*passim*

N.J.S.A. 12A:2-725(1) .........................................................................32

**Other Authorities**

Federal Rules of Civil Procedure

Rule 9(b) .......................................................................................*passim*

Rule 12(b)(6).........................................................................................4

Restatement (Second) Conflicts of Laws Section 148(2).....................19, 20

## PRELIMINARY STATEMENT

Defendants LG Electronics U.S.A., Inc. and Samsung Electronics America, Inc. (collectively, "Defendants") sell Smart TVs—televisions that connect to the Internet and allow users to stream movies and television shows. Relying almost entirely on "information and belief," Plaintiffs assert these televisions collect information about users' viewing activities that Defendants may share or sell to third parties. However, the Complaint is conclusory and devoid of any specific facts relating to Plaintiffs or Defendants. It is also rife with contradictions. For example, while acknowledging Defendants disclosed their data collection practices in privacy policies and other materials, the Complaint alleges Plaintiffs were unaware of such practices. The Complaint also relies upon several publications dating back to 2013 that reported on the precise features about which Plaintiffs now complain. As discussed below, Plaintiffs' claims fail as a matter of law, are insufficiently pled, or both.

To start, Plaintiffs' claims under the federal Video Privacy Protection Act and Electronic Communications Privacy Act are foreclosed by Third Circuit law. *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, 280-90 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 624 (2017); *In re Google Inc*., 806 F.3d 125, 143 (3d Cir. 2015). Those claims are also time-barred.

Plaintiffs' New Jersey Consumer Fraud Act claims fare no better, because non-residents who purchase products outside the state cannot bring a claim under that statute. *Maniscalco v. Brothers Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013). Moreover, those claims, which sound in fraud, are not pled with the requisite particularity under Federal Rule of Civil Procedure 9(b). The Complaint's conclusory allegations do not differentiate between Defendants or even contain basic facts, such as which Smart TVs each Plaintiff allegedly purchased, when, where, for what price, or based on what information.

Plaintiffs' common law claims are asserted in a similarly perfunctory fashion, lacking detail where Rule 9(b) requires it and otherwise falling short of pleading the requisite elements of each cause of action. Because Plaintiffs have failed to plead any cognizable claim for relief, and because these deficiencies cannot be cured, this case should be dismissed with prejudice.

## FACTUAL BACKGROUND

Defendants are the American subsidiaries of foreign electronics manufacturers and, along with their parent companies, are leading developers, manufacturers, and sellers of cutting-edge Smart TVs.[1] Compl. ¶¶ 15-17, 28, 30. In addition to delivering traditional programming, Smart TVs connect to the internet,

---

[1] Defendants' parent companies, LG Electronics, Inc. and Samsung Electronics Co., Ltd., have not been served with a complaint, have not made appearances in this case, and are not parties to this motion.

enabling consumers to enjoy online services such as Netflix and YouTube. *Id.* ¶¶ 30-32, 34-38.

Plaintiffs Thomas Roger White, Jr. and Christopher Mills are residents of Florida and New York, respectively, who allege they purchased Defendants' Smart TVs.[2] *Id.* ¶¶ 12, 14. Plaintiffs do not identify where they purchased their Smart TVs, which models of Smart TVs they purchased, or the prices they paid. Nor, beyond saying that the purchases took place "during the Class Period" of January 1, 2012 to the present, do Plaintiffs allege when they purchased the Smart TVs. *Id.* ¶¶ 12, 14, 69. Plaintiffs also fail to allege any facts about any advertisements, policies, or other representations that they allegedly saw or relied upon in making their purchases or agreed to after making their purchases.

Relying principally on "information and belief," Plaintiffs allege that Defendants' Smart TVs use "automatic tracking software"—so called "ATS"—to collect "viewing data," such as "information about a selection of pixels on the screen" as well as "other information about the television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items." *Id.* ¶¶ 39-40. Plaintiffs allege (again "upon information

---

[2] This motion does not discuss allegations related to Plaintiff David Espinoza, whose claims only pertain to Sony Corporation and Sony Electronics Corporation (collectively, "Sony"). *See* Compl. ¶ 13. Sony has not been properly served, and is not a party to this motion. *See* Letter From Mark S. Melodia, ECF No. 18 (Aug. 25, 2017).

and belief") that Defendants provide this information to third-party "databrokers" who, by using additional information from other sources, can purportedly identify a Smart TV user "within a certain degree of accuracy." *Id.* ¶ 49; *see also id.* ¶¶ 43, 50.

Plaintiffs assert they were unaware of and did not consent to this alleged collection and transmission. *Id.* ¶¶ 12-14, 52, 67-68. They do so even as they acknowledge that Defendants made disclosures about their data collection and use practices in their privacy policies and elsewhere. *Id.* ¶ 52 (referring to Defendants' disclosures); *id.* ¶ 54 (stating that Defendants' privacy policies disclose how to turn off data collection). Plaintiffs further state that—as far back as 2013—numerous public reports described various Smart TV features that are the subject of the Complaint. *Id.* ¶ 33 n.9 (Consumer Reports and The Verge); *id.* ¶ 35 n.10 (Techworm.net); *id.* ¶ 57 n.16 (TechDirt and Slashdot); *id.* ¶ 58 n.17 (NetworkWorld).

Notably, the Complaint does not distinguish between the *six* named defendants or differentiate their alleged conduct. Therefore, although Defendants are fierce competitors in the marketplace, they bring this motion to dismiss jointly.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Speculative allegations, or allegations that are "'merely consistent with' a defendant's liability," are not enough. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Pleading "upon information and belief" can provide the required facts only "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are no *boilerplate and conclusory allegations* and *plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016). Where, as here, plaintiffs rely on "information and belief" to plead entirely conclusory facts, they have not met their burden and the court may disregard the allegations. *See Granillo v. FCA US LLC*, No. 16-153, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (disregarding allegations made "on information and belief" where plaintiffs "provide[d] no allegations to support their bald assertion that Defendant's software updates were ineffective"); *In re Nickelodeon Consumer Privacy Litig.*, MDL No.

2443, 2014 WL 3012873, at *2 n.3 (D.N.J. July 2, 2014) (disregarding allegations made "upon information and belief" where "no facts pleaded in the MCC" supported the allegation), *aff'd on other grounds*, 827 F.3d 262 (3d Cir. 2016).

Rule 9(b) imposes a heightened pleading requirement for allegations of fraud. "[A] plaintiff alleging fraud must state the circumstances of the fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). To satisfy this standard, a plaintiff must plead the "who, what, when, where, and how" of the alleged deception. *Gonzalez v. U.S. Bank Nat'l Ass'n*, No. 14-cv-7855, 2015 WL 3648984, at *10 (D.N.J. Jun. 11, 2015) (Arleo, J.). "When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

## ARGUMENT

The Complaint seeks to hold Defendants liable under eight different causes of action. First, they allege that features of Defendants' Smart TVs violate two federal statutes: (1) the Video Privacy Protection Act ("VPPA") (Compl. ¶¶ 114-122) (Count III) and (2) provisions of the Electronic Communications Privacy Act ("ECPA") commonly known as the Wiretap Act (*id.* ¶¶ 123-133) (Count IV). Next, they allege three separate fraud-based claims: (3) "unfair and deceptive tracking"

and (4) deceptive omissions under the New Jersey Consumer Fraud Act ("CFA") (*id.* ¶¶ 81-96 and 97-113) (Counts I and II), and (5) common law fraud (*id.* ¶¶ 134-139) (Count V). Last, Plaintiffs assert three additional contract-based claims: (6) breach of express warranty (*id.* ¶¶ 140-146) (Count VI), (7) breach of the duty of good faith (*id.* ¶¶ 147-151) (Count VII), and (8) unjust enrichment (*id.* ¶¶ 152-157) (Count VIII). These claims should all be dismissed.

## I.  PLAINTIFFS' FEDERAL CLAIMS FAIL

### A.  Plaintiffs Cannot State a Claim Under the VPPA

To state a claim under the VPPA, Plaintiffs must allege that a "video tape service provider" ("VTSP") knowingly disclosed "personally identifiable information" ("PII") concerning a "consumer of such provider." 18 U.S.C. § 2710(b). Plaintiffs' VPPA claim (Count III) is barred by the Third Circuit's recent decision in *In re Nickelodeon*, which squarely held that IP addresses and similar device identifiers like those at issue in this case are not PII. *In re Nickelodeon,* 827 F.3d at 280-90.[3]

---

[3] *Accord In re Hulu Privacy Litig.*, No. 11-cv-3764, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) (static digital identifiers that could, in theory, be combined with other information to identify a person do not count as "personally identifiable information" under the VPPA); *Ellis v. Cartoon Network, Inc.*, No. 14-cv-484, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015) (PII not "disclosed" for VPPA purposes where the third party recipient of device ID and viewing history had to "collect information from other sources" to identify the plaintiff).

The VPPA's definition of PII is specific: "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In *In re Nickelodeon*, the Court considered whether three pieces of information fell within the definition: (1) "a user's IP address, 'a number assigned to each device that is connected to the Internet' that permits computer-specific online tracking," (2) "a user's browser and operating system settings, which comprise a so-called 'browser fingerprint,'" and (3) "a computing device's 'unique device identifier.'" 827 F.3d at 281-82. The Court affirmed the district court's dismissal of the VPPA claim, concluding that the purpose of the statute was "quite narrow: to prevent disclosures of ***information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits***." *Id*. at 284 (emphasis added). The Court reasoned, "[t]he classic example will always be a video clerk leaking an individual customer's video rental history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *Id*. at 290. In light of this, the Third Circuit concluded that all three categories of "static digital identifiers" at issue in that case were not PII. *Id*. at 283, 290.

This ruling precludes Plaintiffs' claim that the information they identify in their Complaint is "PII" under the VPPA. Plaintiffs allege that Defendants collected two types of data: "viewing data," such as "information about a selection

of pixels on the screen" (Compl. ¶ 39), and networking protocol information: "IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items" (*id.* ¶ 40). In conclusory fashion, Plaintiffs also allege that Defendants disclosed this "collected information" to third parties. *See* Compl. ¶¶ 41-43, 49, 118-19. But *In re Nickelodeon* unambiguously forecloses Plaintiffs' reliance on IP addresses, 827 F.3d at 290, and their allegations about MAC addresses and wireless signal information are no different. These are equivalent to the "unique device identifier" rejected in *In re Nickelodeon*—both identify devices, not people. According to Plaintiffs' allegations, this information may only be used to identify a person if provided to a "data aggregator" or "databroker … able to match the information to information in its database." Compl. ¶¶ 43, 49. As pled by Plaintiffs, therefore, "an ordinary recipient" could not use such information "to identify a particular person[]" "with little or no extra effort." 827 F.3d at 284.

Plaintiffs' separate allegations about Defendants "tracking" and "collecting" information (*e.g.*, Compl. ¶¶ 39-48), do not state a claim. *See In re Nickelodeon*, 827 F.3d at 280-281 (affirming dismissal of VPPA claim "because Google is not alleged to have disclosed any [PII]"; rejecting argument that "a third party [who] receives personally identifiable information" may be held liable under the VPPA); *see also Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054-55

(9th Cir. 2015) (receipt or retention of PII is not actionable under the VPPA); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) ("subsection (c), which creates the right of action, … is limited to enforcing the prohibition of disclosure [provided in subsection (b)]"). Similarly, allegations that Defendants' software "send[s] data to Defendants' servers" (Compl. ¶ 39), do not amount to a "disclosure" under the Act because those servers are owned and controlled by Defendants. *See, e.g.*, *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *3 (N.D. Ill. Oct. 17, 2012) (alleged disclosure by a wholly-owned entity to its parent company does not constitute a "disclosure" under the VPPA).

Because the Complaint fails to plead that any PII was disclosed under Third Circuit law,[4] Plaintiffs' VPPA claim must be dismissed.[5]

---

[4] In a recent out-of-circuit case, a trial court allowed a VPPA claim to proceed against a Smart TV manufacturer on the ground that plaintiffs had alleged disclosure of information that is "frequently linked to an individual's name and can be used to acquire highly specific geolocation data." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017). There is nothing like that here. Other than conclusory statements and an ambiguous reference to "demographic information" (Compl. ¶¶ 43, 49, 118), Plaintiffs do not explain how the information they identify as disclosed is linked to specific individuals or geographic locations. And in any event, *In re Vizio* is not binding on this Court.

[5] Even if Plaintiffs had adequately pled the disclosure of PII (which they have not), Plaintiffs also need to go beyond their "information and belief" to plead that Defendants are "video tape service providers" and that Plaintiffs are "subscribers" under the VPPA. *Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) ("[U]nder the plain language of the statute, only a 'video tape service provider' (VTSP) can be liable."). Because Plaintiffs' failure to plead disclosure of PII is dispositive, Defendants need not address the other statutory requirements in the instant motion

## B.   Plaintiffs Cannot State a Claim Under the Wiretap Act

The Wiretap Act provides a narrow right of action against someone who "intercepts" the "contents" of a "wire, oral, or electronic communication" using a "device." 18 U.S.C. §§ 2510, 2511(1), 2520. Like Plaintiffs' VPPA claim, this claim (Count IV) is foreclosed by Third Circuit law. That is so for two separate reasons: (1) Defendants did not intercept any information because they are indisputably parties to the communications at issue and (2) Plaintiffs do not allege that Defendants intercepted the "contents" of any communication.

*Interception*. The Wiretap Act expressly provides that "[i]t shall not be unlawful … for a person … to intercept a wire, oral or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). Consistent with this plain language, the Third Circuit has confirmed that a communication cannot be "intercepted" by one of its parties because a party is the *direct recipient* of the communication. *In re Google*, 806 F.3d at 143 (no Wiretap Act claim where defendants received "direct transmissions between the plaintiffs and the defendants," despite allegations that defendants deliberately overrode privacy settings in contravention of their public statements); *see also In re Nickelodeon*, 827 F.3d at 274 (affirming dismissal of Wiretap Act claim where defendants were parties to communications at issue). This exemption is

but reserve the right to challenge these additional deficiencies in Plaintiffs' claim, if the claim survives.

fundamental to the Wiretap Act, which prohibits *wiretapping*, not receiving information. To the extent it is even discernable, Plaintiffs' Wiretap Act claim runs directly into this limitation.

Plaintiffs allege that in the course of transmitting programming through their WiFi networking features, Defendants' Smart TVs also transmit certain information to "Defendants' own servers." Compl. ¶¶ 30, 33. Plaintiffs do not specify which of these transmissions form the basis of their claim (*id*. ¶¶ 124-126), but nothing that is alleged could possibly give rise to a Wiretap Act claim. Whether Plaintiffs' intended focus is on the communications that Defendants' Smart TVs transmit to Plaintiffs at Plaintiffs' own request or those sent to Defendants' servers, the result is the same. Either way, Defendants are direct participants in all relevant communications. Third Circuit law is clear that, where "defendants were parties to any communications that they acquired," there can be no claim under the Wiretap Act. *In re Google Inc*., 806 F.3d at 145.[6]

---

[6] For similar reasons, the other communications vaguely referenced in the Complaint—such as those allegedly made by Defendants to third-party data brokers or advertisers (Compl. ¶¶ 49-50)—also could not state a Wiretap Act claim. Defendants are indisputably parties to any communications they make with third-party service providers. Beyond that, those communications are separate from any initial communications between the Smart TVs and Defendants' servers, and do not involve any communication with Plaintiffs at all. *See, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (no interception where employer obtained unauthorized access to website while it was in electronic storage because website was not wrongfully obtained by a third party during transmission); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153

12

Plaintiffs may try to argue around this defect by claiming that the publicly reported operation of Defendants' Smart TVs was somehow hidden or deceptive. Any such argument would fail. As discussed below (*infra* at 15-17), nothing in the Complaint shows any actual deception or concealment. But even if it did, it would have no bearing on any Wiretap Act claim. The Third Circuit has expressly held as much, explaining that because the Wiretap Act "is, after all, a *wiretapping* statute," "a deceit upon the sender" does not "affect[] the presumptive non-liability of parties." *In re Google Inc.*, 806 F.3d at 143.

**Content**. The Wiretap Act applies only to the "contents" of a communication—"information concerning the substance, purport, or meaning of" a communication. 18 U.S.C. § 2510(8); *accord In re Google Inc.*, 806 F.3d at 137-139 (information is only content if it is "part of the substantive information conveyed to the recipient"); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (contents refers to "the intended message conveyed by the communication," rather than "record information regarding the characteristics of the message that is generated in the course of the communication"); *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009), *cert. denied*, 559 U.S. 987 (2010)

---

(C.D. Cal. 2007) (no interception where defendant configured plaintiffs' email software to simultaneously forward exact copies of emails from plaintiffs' server to defendant because emails were not obtained during "transmission … to their intended recipients").

("data … about the source, destination, duration, and time of a [communication]," which is "incidental to the use of a communication device" is not "content").

Plaintiffs allege that Defendants collected WiFi networking protocol information and information about pixels on their Smart TV screens. Compl. ¶¶ 39-40. As a matter of law, the acquisition of such information does not violate the Wiretap Act. Court after court has found that metadata that does not convey the substance of a communication is not "contents." *See, e.g.*, *In re Nickelodeon*, 2014 WL 3012873, at *15 (IP addresses "are simply not 'contents' of a communication."); *Sams v. Yahoo!, Inc.*, No. CV-10-5897, 2011 WL 1884633, at *6-7 (N.D. Cal. May 18, 2011) (Wiretap Act did not cover name, address, user ID, email address, IP addresses, and account login times); *In re § 2703(d) Order*, 787 F. Supp. 2d 430, 435-36 (E.D. Va. 2011) (same). Indeed, Plaintiffs acknowledge that "information about a selection of pixels on the screen" (Compl. ¶ 39) can only be used to identify video content when combined with information from a separate database. *Id.* That is exactly the type of information courts have concluded is not contents under the Wiretap Act—information that, standing on its own, does not identify what was communicated. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) ("[A] record of browsing history" is not contents); *Burns v. Heyns*, No. 14-cv-733, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) ("[C]lickstream data . . .which contains the time, order and duration

the computer spent on each web page as well as which files were accessed and/or downloaded," is not contents) (quotations omitted).[7]

To be sure, the Third Circuit has stated that "routing information and content are not mutually exclusive" categories, *In re Google Inc.*, 806 F.3d at 138-39, but this case falls well outside any such theoretical overlap. The information referenced in the Complaint—pixels that do not identify anything on their own and "IP addresses, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points" (Compl. ¶ 40)—are not "contents" under any understanding of the term. *See In re Google Inc.*, 806 F.3d at 138-39 (distinguishing pure routing and addressing information such as IP addresses from detailed URL queries that may communicate both routing information and content) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). In short, Plaintiffs have not identified any information collected by Defendants that conveys the substance, purport, or meaning of their communications. For that reason as well, their claim under the Wiretap Act fails as a matter of law.

### C.   Plaintiffs' VPPA and Wiretap Claims Are Time-Barred

In addition to their substantive failures, Plaintiffs' federal claims are time barred. Both the VPPA and the Wiretap Act contain two-year statutes of

---

[7] *Cf. In re Nickelodeon*, 827 F.3d at 289-90 (holding that, because the static identifiers at issue in the case needed to be combined with additional information to identify people, on their own they did not identify anything).

limitations that run from the date that the claim was or reasonably could have been discovered. 18 U.S.C. § 2710(c)(3); *Id.* § 2520(e); *accord Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) ("Like many statutes of limitation, [ECPA § 2520(e)] does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it."); *Sparshot v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (same). Based on the facts alleged in the Complaint, that date can be no later than February 27, 2015—more than two years before the Complaint was filed on March 16, 2017 (ECF No. 1).

Although Plaintiffs assert that they were unaware of the alleged disclosure practices at issue (*e.g.*, Compl. ¶¶ 4, 52, 68), their Complaint is replete with citation to years-old public material that demonstrates Plaintiffs could (and should) have discovered those practices many years ago. Plaintiffs repeatedly quote from news articles discussing the operations of Defendants' Smart TVs, including extensive discussion of the data collection practices underlying their claims. *See, e.g.*, *id.* ¶¶ 33, 35, 57-58 & nn.9-10, 16-17. In particular, Plaintiffs cite press coverage from as early as November 2013 (*id.* ¶ 58 & n.17) and rely heavily on an article published on February 27, 2015 to describe the interactive features underlying their claims. *Id.* ¶¶ 33-55 & nn.9, 11-15. This article put current and future purchasers of Defendants' Smart TVs on notice of their challenged features at least as early as 2015—more than two years before their Complaint was filed,

16

and outside the relevant limitations period. *See e.g., Walsh v. Quinn*, No. 09-cv-167, 2009 WL 2207816, at *3 (W.D. Pa. Jul. 23, 2009) (limitations period commenced with publication of newspaper article suggesting possible conspiracy that plaintiff cited in complaint); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc*., 595 F. Supp. 2d 1253, 1280-81 (M.D. Fla. 2009) (limitations period commenced with newspaper article suggesting possible option backdating that plaintiff cited in complaint).

Plaintiffs' federal claims should be dismissed with prejudice on this basis alone. *See Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) (statute of limitations may provide a basis for dismissal where the defense "must appear on the face of the complaint").

## II.   PLAINTIFFS' FRAUD CLAIMS FAIL

The Complaint asserts three claims sounding in fraud—Counts I, II, and V. These claims fail on multiple grounds, each of which is fatal.

### A.   Plaintiffs Fail to State a Claim Under the New Jersey Consumer Fraud Act

Plaintiffs have asserted two CFA claims (Counts I and II). The first is based on Defendants' alleged tracking of Plaintiffs' viewing habits and disclosure of that information to third parties (Compl. ¶ 88); the second is based on Defendants' alleged failure to disclose this behavior to Plaintiffs (*id*. ¶ 100). Plaintiffs' CFA claims fail as a matter of law on two independent grounds. *First*, non-resident

Plaintiffs cannot assert a cause of action under the CFA where the only alleged connection between Plaintiffs' claims and New Jersey is the location of Defendants' corporate offices—under well-settled Third Circuit law, this is not enough. *Second*, even beyond this threshold defect, the CFA claims, which sound in fraud, are conclusory and lack the particularity required by Rule 9(b).

### 1.   Plaintiffs, Non-Residents, Cannot Assert Claims Under the CFA

As a matter of law, Plaintiffs' CFA claims fail because non-residents who purchase products outside the state do not have a claim under the CFA. Under *Maniscalco*, 709 F.3d at 209, the law of the consumer's home state will typically govern the dispute, and conclusory allegations of fraudulent conduct emanating from New Jersey offices—the only connection that Plaintiffs allege here—are insufficient to support application of the CFA to claims brought by out-of-state residents. Because the New Jersey statute does not apply to these non-resident Plaintiffs' purchases, their CFA claims should be dismissed with prejudice. *See, e.g.*, *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445-51 (D.N.J. 2012) (dismissing non-resident's CFA claim with prejudice); *Spera v. Samsung Elecs. Am., Inc.*, No. 12-cv-5412, 2014 WL 1334256, at *9 (D.N.J. Apr. 2, 2014) (same).

When sitting in diversity, as here, this Court must apply New Jersey's two-part choice-of-law test to determine which state law applies to a plaintiff's claims. *Maniscalco*, 709 F.3d at 206. First, the court must determine whether an "actual

conflict" exists between New Jersey law and the laws of the competing state. *Id*. Second, if there is a conflict, the court must determine which state has the "most significant relationship" with the plaintiff's claims under the guidelines set forth in the Restatement (Second) Conflicts of Laws. *Id*. at 206-07.

New Jersey courts have held that there are actual conflicts between the CFA and the consumer fraud statutes in Florida and New York, where Plaintiffs are domiciled. *See, e.g.*, *Cox v. Chrysler Group, LLC*, No. 14-7573, 2015 WL 5771400, at *11 (D.N.J. Sept. 30, 2015) ("[T]he [CFA] conflicts with New York's Consumer Protection Act");[8] *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *5 (D.N.J. Jun. 29, 2015) ("The Court determines that a conflict exists [between the CFA and Florida law].").[9]

In the face of these clear conflicts, this Court must evaluate which state has the most significant relationship to Plaintiffs' dispute. *Maniscalco*, 709 F.3d at

---

[8] While New Jersey's statute provides for treble damages, N.J.S.A. 56:8-19, New York's statute prohibits treble damages in class actions, *see* N.Y. Gen. Bus. Law § 349; N.Y. CPLR 901(b). *See also Ridge Meadows Homeowners' Ass'n v. Tara Dev. Co., Inc.*, 242 A.D.2d 947, 947 (N.Y. 1997) (holding that plaintiffs are "barred by CPLR 901(b) from maintaining a class action for the minimum and treble damages imposed by section 349(h) of the General Business Law."); *Beth Schiffer Fine Photog. Arts, Inc. v. Colex Imaging, Inc.*, No. 10-cv-5321, 2012 WL 924380, at *15 (D.N.J. Mar. 19, 2012) (noting conflict in statutes of limitation between New Jersey and New York law).

[9] Florida's Deceptive and Unfair Trade Practices Act only permits recovery of actual damages, Fla. Stat. Ann. § 501.211(2). Moreover, while the CFA mandates recovery of attorneys' fees only for prevailing plaintiffs, N.J.S.A. 56:8-19, Florida law permits either party to recover attorneys' fees, Fla. Stat. Ann. § 501.2105.

206-07. For fraud and misrepresentation claims, this second step of the analysis is guided by Section 148(2) of the Restatement (Second) Conflicts of Laws (*id.* at 207), which focuses on the locations of the parties, the places where plaintiffs received and acted on the representations, the places where defendants made the representations, and the place where the purchased product was located.

Florida and New York have the "most significant relationship" with Plaintiffs' claims. Plaintiffs are residents of Florida and New York who purchased the Smart TVs for use in their respective homes. Compl. ¶¶ 12, 14, 65. There are no allegations that Plaintiffs purchased Smart TVs in New Jersey. Thus, the Complaint indicates that, in addition to being Plaintiffs' home states, Florida and New York are the places where Plaintiffs supposedly "acted in reliance" on the alleged misrepresentation concerning the Smart TVs, where Plaintiffs received any alleged misrepresentations, and where the Smart TVs were situated at the time of purchase. *See* Restatement (Second) Conflict of Laws § 148(2).

In fact, the only alleged connection between Plaintiffs' claims and New Jersey is the location of the Defendants' headquarters. However, Plaintiffs' domiciles are more significant for choice of law purposes. *See Maniscalco*, 709 F.3d at 209 (citing § 148 cmt. i). Thus, regardless of whether the "sales strategy, advertising, marketing, and product promotion was conceived in … New Jersey" (Compl. ¶ 10), or whether the products are distributed from New Jersey (*id.* ¶ 11),

Florida and New York have a more significant relationship to Plaintiffs' claims. The Third Circuit and an "overwhelming majority" of courts in this District are in accord. *See, e.g., Maniscalco*, 709 F.3d at 209 ("[plaintiff's] home state, in which he received and relied on [defendant's] alleged fraud, ha[d] the 'most significant relationship' to his consumer fraud claim") (collecting cases); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (affirming dismissal of CFA claim where "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters").[10] Plaintiffs' CFA claims should be dismissed for identical choice-of-law reasons.

### 2. Plaintiffs' CFA Claims Lack Particularity Required by Rule 9

Even if these non-resident Plaintiffs could bring CFA claims, they have failed to plead those fraud-based claims[11] with the particularity demanded by Rule

---

[10] *See also Montich*, 849 F. Supp. 2d at 449 ("[a] majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state"); *Durso v. Samsung Elecs. Am., Inc.*, No. 12-cv-5352, 2013 WL 5947005, at *6-8 (D.N.J. Nov. 6, 2013) (granting motion to dismiss and noting that "[i]n doing so, this court follows a long line of cases in this Circuit holding that a consumer's home state law should apply to transactions that bear no relationship to New Jersey other than the location of the defendant's headquarters"); *Gray v. Bayer Corp.*, No. 08-cv-4716, 2011 WL 2975768, at *6 (D.N.J. Jul. 21, 2011) ("the weight of authority counsel[s] against the application of the [CFA] to out-of-state consumers").

[11] *See* Compl. ¶ 34 ("Defendants' [sic] then secretly provide this private, sensitive information of consumers to third-party advertisers"); *id*. ¶ 46 ("Defendants, armed

9(b). *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-cv-6272, 2015 WL 7871165, at *5-6 (D.N.J. Dec. 4, 2015) (Arleo, J.) (dismissing CFA claims under Rule 9(b)).

To state a CFA claim, a plaintiff must describe: (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Giercyk*, 2015 WL 7871165, at *3. Rule 9(b) requires that a complaint "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiffs' CFA allegations come nowhere close to satisfying Rule 9(b).

### a.  The Complaint Impermissibly Lumps All Defendants Together

Courts in this District routinely dismiss fraud-based claims where, as here, a plaintiff does not "detail the allegations of fraud against each defendant individually." *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-cv-4038, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012); *see also Giercyk*, 2015 WL 7871165, at *9 (dismissing conspiracy claim under Rule 9(b) because plaintiffs "lump[ed] all of the Defendants together"); *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 13-cv-7738, 2014 WL 1577694, at *4 (D.N.J. Apr. 21, 2014) (dismissing CFA claim because complaint "lump[ed] together all four defendants"); *John Wiley &*

---

with this surreptitiously-collected information on customers' viewing habits . . ."); *id*. ¶ 51 ("Defendants are secretly spying on its customers for profit.").

*Sons, Inc. v. Rivadeneyra*, No. 13-cv-1085, 2013 WL 6816369, at *6 (D.N.J. Dec. 20, 2013) (dismissing fraud claim because Complaint "lumps all defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions"). That is exactly the situation here.

Plaintiffs do not specifically identify any of the six named defendants in the course of pleading fraud or misrepresentation. To the contrary, *every* allegation of fraudulent conduct lumps all six defendants together without differentiation. *E.g.*, Compl. ¶ 3 ("Defendants' representations were not sufficiently clear or prominent to alert consumers to their practices . . ."); *id*. ¶ 12 ("Defendants had made inadequate disclosures to Plaintiffs . . ."); *see also* ¶¶ 81-113, 134-139 (lumping "Defendants" together). For this reason alone, the Complaint fails Rule 9(b).

### b.   The Complaint Does Not Specify an Unlawful Practice Giving Rise to a CFA Claim

The Complaint fails to plead with particularity any of the unlawful practices that may qualify under the CFA: "(1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-cv-846, 2011 WL 2976839, at *10 (D.N.J. Jul. 21, 2011).

*Misrepresentations*. The Complaint does not identify any specific misrepresentation, as Rule 9(b) requires. Although Plaintiffs refer vaguely to "Defendants' representations," *e.g.*, Compl. ¶ 3, the Complaint does not specify a single misrepresentation made by either Defendant. This defect alone mandates

23

dismissal. *Semeran v. Blackberry Corp.*, No. 15-CV-750, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (dismissing CFA claim where plaintiff failed "to point to any specific statements," failed to allege the date, place, and time of any claimed misrepresentations, and failed to allege he read any supposedly fraudulent representations prior to purchase).

*Omissions*. A plaintiff asserting a fraud by omission claim "must still plead the essential elements" of a claim of fraud. *Montich*, 849 F. Supp. 2d at 453; *see also Kowalsky v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-7856, 2015 WL 5770523, at *9 (D.N.J. Sept. 30, 2015) (dismissing fraud-based omission claim because plaintiff did not allege "which of the two Defendants failed to disclose information, when the failure to disclose occurred, and which documents contained the alleged omissions"). The Complaint here simply asserts, without more, that Defendants "made material omissions when speaking to Plaintiffs … through written materials," and "intended to actively mislead Plaintiffs." Compl. ¶¶ 98, 100. Plaintiffs fail to allege what information was required to be disclosed (or even a duty to disclose), who omitted that information, how they intended to mislead consumers, where the information was omitted, and whether that omission occurred before or after Plaintiffs purchased their Smart TVs. Likewise, Plaintiffs nowhere allege when or even if they read the printed materials contained in any packaging or the set-up screens. *E.g.*, *Hughes*, 2011 WL 2976839, at *14

(dismissing CFA claims because plaintiff did not allege "when such omissions occurred, let alone whether they occurred before or after plaintiff[] purchased [his] Television"). Plaintiffs' non-specific references to alleged omissions in "printed materials contained in the Smart TV packaging," Compl. ¶ 67, and in the "onscreen set-up process," *id*. ¶ 53, do not satisfy Rule 9(b).

*Regulatory Violation*. The purported regulatory violations to which the Complaint refers are insufficient as a matter of law to support any CFA claim. "The third category of unlawful acts consists of violations of *specific regulations promulgated under the [CFA]*." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994) (emphasis added); *see also Perez v. Professionally Green, LLC*, 215 N.J. 388, 400 (2013) (violations of regulations *passed under the CFA* "give[] rise to a discrete category of CFA violations"). Plaintiffs have not alleged a violation of any regulation promulgated under the CFA. Instead, Plaintiffs allege that Defendants violated the Cable Communications Policy Act and "FTC Act." *See* Compl. ¶¶ 59-64. Such allegations cannot support a CFA claim. *E.g.*, *Davis v. Bankers Life & Casualty Co.*, No. 15-cv-3559, 2016 WL 7668452, at *9 (D.N.J. Dec. 23, 2016) (declining to "expand the scope of regulatory violations that give rise to [CFA] liability" because "only regulations enacted under N.J.S.A. 56:8-4 provide a basis for a claim under the [CFA]."); *Stoecker v. Echevarria*, 408 N.J. Super. 597, 624 (App. Div. 2009) (alleged violations of another New Jersey statute did not provide

a basis for CFA claim). Moreover, Plaintiffs' conclusory allegations merely quote from those federal statutes, falling well short of stating a claim. *Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.").[12]

### c.    Plaintiffs Have Not Alleged Ascertainable Loss

Even if Plaintiffs had met Rule 9(b)'s standard for pleading unlawful conduct and causation, their CFA claims would still fail because the Complaint fails to plead an "ascertainable loss" under the CFA that is "quantifiable and measurable," not "hypothetical or illusory." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Plaintiffs cannot plead an ascertainable loss simply by claiming dissatisfaction with their Smart TVs without showing how they received a product worth an amount of money less than the Smart TVs they were promised. *See, e.g.*, *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) ("Plaintiffs have not explained how they experienced any out-of-pocket loss because of their purchases, or that the soda they bought was worth an amount of money less than the soda they consumed. At most, plaintiffs simply claim that their expectations of the soda were disappointed.").

---

[12] Plaintiffs' unadorned assertion that "Defendants' actions are an unconscionable commercial practice in violation of the CFA" (Compl. ¶ 5), similarly misses its mark. They are required to plead "substantial aggravating circumstances" to support such a claim. *Cox*, 138 N.J. at 18; *see also DiNicola v. Watchung Furniture's Country Manor*, 232 N.J. Super. 69, 72-73 (App. Div. 1989), *certif. denied*, 117 N.J. 126 (1989); *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 25-31 (App. Div. 1985). The Complaint includes no such factual allegations.

To plead "ascertainable" loss, New Jersey courts require "the consumer to quantify the difference in value between the promised product and the actual product received." *Spera*, 2014 WL 1334256, at *5 (dismissing CFA claim). While the exact amount of loss does not need to be stated in the complaint, a "[p]laintiff must allege a means of quantifying his loss in order to show ascertainable loss." *Eberhart v. LG Electronics*, No. 15-cv-1761, 2015 WL 9581752, at *5 (D.N.J. Dec. 30, 2015) (Arleo, J.); *see also Thiedemann*, 183 N.J. at 248 ("The certainty implicit in the concept of an "ascertainable loss" is that it is quantifiable or measurable.").

The Complaint articulates no "means of quantifying" Plaintiffs' hypothetical claim of loss. Instead, Plaintiffs allege merely that they "have suffered harm in the form of paying monies to purchase the Smart TV when they would not have otherwise." Compl. ¶ 112. As a matter of law, this is not enough. *See Eberhart*, 2015 WL 9581752, at *5 (dismissing CFA claim where allegations "[did] not provide a method to determine the premium paid for a higher refresh rate on his television … [or] prices for comparable televisions without the deceptive advertising.").[13]

---

[13] *See also Hoffman v. Nordic Naturals, Inc.*, No. 14-cv-3291, 2015 WL 179539, at *6 (D.N.J. Jan. 14, 2015) (dismissing CFA claim because allegations were "the same canned buzzwords that this Court [has] deemed broad and conclusory, and insufficient to provide the specificity that is required in pleading ascertainable loss"); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529,

**B.      Plaintiffs' Common Law Fraud Claim Lacks Particularity
         Required by Rule 9(b)**

For much the same reasons, Plaintiffs' common law fraud claim (Count V)

also fails to satisfy Rule 9(b). *See Eberhart*, 2015 WL 9581752, at *5 (dismissing

common law fraud claim).

New Jersey law applies to Plaintiff Mills' common law fraud claim because

no actual conflict exists between the relevant laws of New York and New Jersey.

*Maniscalco*, 709 F.3d at 206 (applying forum state law absent conflict). However,

there is an actual conflict between Florida and New Jersey common law fraud, and

thus Florida law applies to Plaintiff White's claim, as explained in Section II.A.1,

*supra*; *see also Miller*, 2015 WL 3965608, at *6 (applying Florida law because "a

conflict exists between New Jersey and Florida common law fraud").[14]

Under both New Jersey and Florida law, Plaintiffs fail to allege common law

fraud with the particularity required by Rule 9(b). To prosecute a fraud claim

generally under either state's law, a plaintiff must allege: "(1) a material

---

541-42 (D.N.J. 2011) ("[A]bsent any specific information concerning the price of
the Products or the price of any comparable products, Plaintiff's allegations
concerning the ascertainable loss are nothing more than unsupported conclusory
statements that are insufficient to withstand a motion to dismiss.").

[14] Common law fraud claims in Florida are subject to a four-year statute of
limitations, Fla. Stat. § 95.11(3)(j), shorter than New Jersey's six-year statute of
limitations, N.J.S.A. 2A:14-1. To the extent Plaintiff White's Smart TV purchases
occurred prior to March 16, 2013, his claims are time-barred. Plaintiff White
alleges only that he purchased his Smart TVs "during the Class Period" of January
1, 2012 to the present. Compl. ¶¶ 12, 14, 69.

misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Eberhart*, 2015 WL 9581752, at *5; *accord Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344, 1352 (S.D. Fla. 2015) (citations omitted). Plaintiffs here have not pled any of those elements with particularity.

The Complaint includes no facts in support of Plaintiffs' assertion that "Defendants made material misstatements and omissions concerning the Smart TVs that they sold to Plaintiffs and the Class Members." Compl. ¶ 136. This boilerplate language lacks the "date, time and place of the alleged fraud," and the Complaint does not "otherwise inject precision or some measure of substantiation into a fraud allegation" sufficient to sustain such a claim. *Frederico*, 507 F.3d at 200; *accord Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) (dismissing common law fraud claim under Rule 9(b)). Moreover, the Complaint attributes no particular statement or omission to either Defendant. On this basis alone, the common law fraud claim should be dismissed.

Plaintiffs also have not adequately alleged reasonable reliance and actual damages. Nor could they, because their Complaint acknowledges that Defendants' privacy policies included instructions for uninstalling the features about which

Plaintiffs now complain. *See* Compl. ¶¶ 54, 57. The boilerplate allegation that Plaintiffs "reasonably relied on these misstatements and omissions, and suffered damages as a result," Compl. ¶ 139, is conclusory and inadequate. *Eberhart*, 2015 WL 9581752, at *6 (dismissing fraud claim alleging plaintiff had "reviewed advertisements and technical specifications," as "not meaningfully more specific than the vague statement that plaintiff 'relied on . . . representations.'"); *accord Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1126 (M.D. Fla. 2009) (dismissing fraud claim where plaintiff did not "describe his reliance on the alleged misrepresentations and concealments of Defendants").[15]

In short, Plaintiffs' claim of common law fraud "simply parrots the elements of the cause of action," and should be dismissed. *Hoffman v. DSE Healthcare Sols., LLC*, No. 13-cv-7582, 2014 WL 2119753, at *5 (D.N.J. May 21, 2014).

## III.   PLAINTIFFS' CONTRACT CLAIMS FAIL

Like the rest of the Complaint, Plaintiffs omit the elemental, predicate facts required to support their contract-based claims (Counts VI, VII, and VIII). Absent such allegations, merely parroting the elements of these claims is not enough.

---

[15] *See also, e.g., McBrearty v. Fifth Generation, Inc.*, No. 14-cv-7667, 2015 WL 4749040, at *4 (D.N.J. Aug. 6, 2015) (dismissing fraud claim where complaint "fails to identify with specificity how Plaintiffs relied on Defendant's [representations], how that reliance was reasonable, and how that reliance caused them any detriment"); *Montich*, 849 F. Supp. 2d at 453 (dismissing fraud claim where plaintiff did not allege "what representations she relied on, if any, or where and how those representations were made, … and whether Plaintiff would have acted differently had she known about the alleged defect").

### A.  Plaintiffs Fail to State a Claim For Breach of Express Warranty

Like the rest of the Complaint, Plaintiffs' claim for breach of express warranty (Count VI) is devoid of the most basic factual support. Plaintiffs assert that Defendants "expressly warranted, among other things, that they would properly and adequately protect Plaintiffs' and the Class members' private data and personal information," (Compl. ¶ 142) and, on that basis, they claim that Defendants breached an alleged express warranty "by not providing a product that … adequately protect[ed] consumers' private information and data, as advertised by Defendants." *Id*. ¶ 145. These bare assertions do not state a claim.

To state a claim for breach of express warranty, Plaintiffs would need to "allege the specific affirmation, promise or guarantee made" to him, by the relevant manufacturer, as to the relevant device. *See*, *e.g*., *Mendez v. Shah*, 28 F. Supp. 3d 282, 295 (D.N.J. 2014) (dismissing breach of express warranty claim for failure to allege "what [defendant] expressly warranted"). But in a 33-page, 150-paragraph Complaint, Plaintiffs do not identify a single affirmative statement by any of the defendants about data protection in any form. This omission dooms their claim. *E.g.*, *Arlandson v. Hartz Mountain Corp*., 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (dismissing express warranty claim for failure to "identify the actual language or any source of the alleged warranty"); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 602 (D.N.J. 2015) (dismissing express warranty claims

where "[w]ho said what to whom, where, when, and how, are left unexpressed"). Indeed, Plaintiffs have not even identified which model Smart TVs they allegedly purchased or that they read or viewed the warranties they vaguely refer to. *E.g.*, *Eberhart,* 2015 WL 9581752, at *7 (dismissing express warranty claims for failure to allege that the identified statement was actually read). Plaintiffs' failure to plead the most basic facts for a breach of warranty claim is fatal.[16]

### B. Plaintiffs Fail to State a Claim For Breach of Good Faith and Fair Dealing

For similar reasons, Plaintiffs' claim for breach of good faith and fair dealing (Count VII) also fails. They summarily allege that Defendants, acting "in bad faith and/or with malicious motive," "breached the covenant of good faith and fair dealing by secretly monitoring and tracking Plaintiffs and the members of the Class and transmitting their private, confidential data to third parties." Compl. ¶¶ 150-152. Such conclusory and undifferentiated allegations fail to state a claim.

Plaintiff White cannot prosecute his claim for the additional reason that Florida does not recognize breach of good faith and fair dealing as an independent cause of action. *See Saxon Fin. Grp., Inc. v. Rath*, No. 11-80646, 2012 WL 3278662, at *7 (S.D. Fla. Aug. 9, 2012) ("The breach of the implied covenant of

---

[16] To the extent Plaintiffs' claims arise from purchases made prior to March 16, 2013, they also are time-barred. *See* N.J.S.A. 12A:2-725(1) (requiring breach of warranty claim "be commenced within four years after the cause of action has accrued"). Plaintiffs allege only that they purchased their Smart TVs "during the Class Period" of January 1, 2012 to the present. Compl. ¶¶ 12, 14, 69.

good faith and fair dealing is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation."); *see also Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("[A] claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."). Because Florida and New Jersey law (which recognizes this cause of action), are in conflict, Florida law should apply to Plaintiff White's claim. *See* Section II.A.1, *supra*. Plaintiff White—who says he bought the Smart TVs of all six defendants—identifies no contract with any defendant, and under Florida law his claim must be dismissed for that reason alone.

To state a claim for breach of an implied covenant of good faith and fair dealing in New Jersey, Plaintiff Mills (and Plaintiff White, if the Court determines New Jersey law should apply to his claim) was required to allege that:

> (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm.

*Eberhart*, 2015 WL 9581752 at *7. The Complaint fails each step.

First, like Plaintiff White, Plaintiff Mills identifies no contract with any Defendant underpinning his claim. "In the absence of a contract, there can be no

33

breach of an implied covenant of good faith and fair dealing." *Wade v. Kessler Institute*, 343 N.J. Super. 338, 345 (App. Div. 2001), *aff'd as modified*, 172 N.J. 327 (2002). This omission is fatal and requires dismissal of Plaintiff's claim.

Second, Plaintiffs' allegation that Defendants acted in bad faith, (Compl. ¶ 151), is "no more than a legal conclusion of bad faith which cannot support a claim for relief under the *Iqbal* standard." *Ziyadeh v. ACE European Grp., Ltd.*, No. 12-cv-7900, 2013 WL 12148853, at *5 (D.N.J. Sept. 5, 2013) (dismissing covenant of good faith and fair dealing claim). "[B]ad motive or intention is essential, and an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006). "A party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party" and "contract law does not require parties to behave altruistically toward each other." *Id*. Here, Plaintiffs have not pled any facts to support their assertion of bad faith. Nor could they. As Plaintiffs concede, Defendants' privacy policies include instructions for uninstalling the features about which Plaintiffs complain. Compl. ¶¶ 54, 57.

Third, Plaintiffs fail to allege any damages suffered as a result of a breach of this duty. "Damage is an element of the [good-faith covenant] claim which Plaintiff must allege to survive Defendant's motion to dismiss." *DeHart v. U.S.*

34

*Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1048 (D.N.J. 2011). The Complaint merely alleges damages for unspecified "injuries in an amount to be determined at trial." Compl. ¶ 151. Where, as here, the plaintiff has alleged nothing more than that he "[has] been damaged," the claim should be dismissed. *DeHart*, 811 F. Supp. 2d at 1048; *see also Giercyk*, 2015 WL 7871165, at *6 (same).

## C.    Plaintiffs Fail to State a Claim For Unjust Enrichment

Plaintiffs' claim (Count VIII) that Defendants were unjustly enriched by selling Plaintiffs' private information to third parties for monetary gain also fails. "[T]o claim unjust enrichment, a plaintiff must allege that (1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011). "Unjust enrichment is not an independent tort cause of action; rather, it is generally used in the context of quasi-contractual liability." *Adamo v. Jones*, No. 15-cv-1073, 2016 WL 356031, at *12 (D.N.J. Jan. 29, 2016) (Arleo, J.).

Plaintiffs assert without factual support that Defendants "[took] Plaintiffs' and Class Members' private information and capitaliz[ed] on it by selling it to third parties for Defendants' monetary gain" where "Plaintiffs and Class Members would not have voluntarily provided that information for free." Compl. ¶¶ 154-157. Such allegations are insufficient as a matter of law.

In *In re Google Inc.*, plaintiffs similarly claimed that Google had caused them "loss" by using their browsing history to sell advertisements. 806 F.3d at 148-49 (affirming dismissal of Computer Fraud and Abuse Act claim). Plaintiffs argued they could have realized on their own the value of their browsing history, and that Google had deprived them of a potential earning opportunity. *Id*. The district court rejected this theory, and the Third Circuit affirmed:

> [Plaintiffs] allege no facts suggesting that they ever participated or intended to participate in the market they identify, or that the defendants prevented them from capturing the full value of their internet usage information for themselves. For example, they do not allege that they sought to monetize information about their internet usage, nor that they ever stored their information with a future sale in mind. Moreover, the plaintiffs do not allege that they incurred costs, lost opportunities to sell, or lost the value of their data as a result of their data having been collected by others.

806 F.3d at 148-49.

Similarly, in *In re Nickelodeon*, plaintiffs sued for unjust enrichment, claiming that defendants had surreptitiously collected information about their online activities and resold it. 2014 WL 3012873, at *1-2. The court dismissed the claim, noting "[t]here are no allegations that Plaintiffs conferred any benefit on Defendants, nor are there any allegations that Plaintiffs expected or should have expected any sort of remuneration from them." *Id*. The court further held that "the unjust enrichment doctrine requires that the plaintiff show that it expected remuneration from the defendant at the time it performed." *Id*.

Like the plaintiffs in *Google* and *Nickelodeon*, Plaintiffs have not alleged they expected some benefit from Defendants. Nor have they pled facts showing they could have monetized the information that Defendants allegedly collected.[17]

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety.

---

[17] The Complaint also fails to allege that Plaintiffs purchased their Smart TVs directly from Defendants, rather than from a third-party retailer. "Under New Jersey law, an indirect purchaser cannot succeed on a claim for unjust enrichment." *Weske v. Samsung Elecs. Am., Inc*., No. 10-cv-4811, 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012). For this additional reason, the Court should dismiss Plaintiffs' claim. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted).

Dated:  September 8, 2017

GIBBONS P.C.


By: *s/ Michael R. McDonald*
MICHAEL R. MCDONALD
mmcdonald@gibbonslaw.com
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500


ERIC C. BOSSET (*pro hac vice
pending*)
ebosset@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000


SIMON J. FRANKEL (*pro hac vice
pending*)
sfrankel@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: (415) 591-6000


***Attorneys for Defendant***
**SAMSUNG ELECTRONICS
AMERICA, INC.**

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.


By: *s/ Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM
jgreenbaum@sillscummis.com
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Fax: (973) 643-6500


MICHAEL H. RUBIN (*pro hac vice*)
michael.rubin@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone:  (415) 395-8154


***Attorneys for Defendant***
**LG ELECTRONICS U.S.A., INC.**