## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR. and CHRISTOPHER MILLS, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>   v .<br><br>LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., SONY CORPORATION, and SONY ELECTRONICS INC.,<br><br>And<br><br>John and Jane Does (1-Unlimited)<br><br>And<br><br>ABC Corporations (1-Unlimited),<br><br>           Defendants. | Civil Action No. 17-1775 (MCA)(SCM)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J.<br><br>**Return Date: April 2, 2018**<br><br>(Oral Argument Requested)<br><br>*Document Electronically Filed* |

---

## DEFENDANTS LG ELECTRONICS USA, INC., SAMSUNG ELECTRONICS AMERICA, INC., AND SONY ELECTRONICS INC.'S JOINT BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

---

GIBBONS PC
One Gateway Center
Newark, NJ 07102
Tel.: (973) 596-4500
*Attorneys for Samsung Electronics America, Inc.*

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Tel.: (973) 643-7000
*Attorneys for LG Electronics U.S.A., Inc.*

REED SMITH LLP
136 Main St., Suite 250
Princeton, NJ 08540
Tel.: (609) 987-0050
*Attorneys for Sony Electronics Inc.*

*Additional counsel on signature page*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ...........................................4

LEGAL STANDARD.................................................................................6

ARGUMENT .........................................................................................8

**I.** PLAINTIFFS' FEDERAL CLAIMS FAIL.................................................9

    **A.** Plaintiffs Still Cannot State a Claim Under the VPPA .........................9

    **B.** Plaintiffs Still Fail to State a Claim Under the Wiretap Act ..............12

        1. Plaintiffs' Wiretap Act Allegations Fail to Meet Federal
           Pleading Standards...................................................................13

        2. Plaintiffs' Allegations Regarding "Electronic
           Communications" Fail to State a Claim as a Matter of
           Law.................................................................................15

    **C.** Plaintiffs' VPPA and Wiretap Act Claims Are Time-Barred............18

**II.** PLAINTIFFS' FRAUD CLAIMS FAIL .................................................20

    **A.** Plaintiffs Still Fail to State a Claim Under the New Jersey
    Consumer Fraud Act .........................................................20

        1. Plaintiffs, Non-Residents, Cannot Assert Claims Under
           the CFA .................................................................................21

        2. Plaintiffs' CFA Claims Lack the Particularity Required
           by Rule 9 of the Federal Rules of Civil Procedure.................24

           a. The AC Impermissibly Lumps Defendants
               Together.........................................................25

           b. The AC Does Not Specify an Unlawful Practice
               Giving Rise to a CFA Claim.............................25

           c. Plaintiffs Have Not Alleged Ascertainable Loss............29

**B.**    Plaintiffs' Common Law Fraud Claim Still Lacks the
Particularity Required by Rule 9(b) ..............................................30

**III.**    PLAINTIFFS' CONTRACT CLAIMS FAIL ...............................................33

**A.**    Plaintiffs Fail to State a Claim For Breach of Contract .....................33

**B.**    Plaintiffs Still Fail to State a Claim For Breach of the Covenant
of Good Faith and Fair Dealing.............................................34

**C.**    Plaintiffs Still Fail to State a Claim For Breach of Express
Warranty ..............................................................................37

**D.**    Plaintiffs Still Fail to State a Claim For Unjust Enrichment .............38

CONCLUSION ........................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Adamo v. Jones*,
  2016 WL 356031 (D.N.J. Jan. 29, 2016) ............................................................38

*Alboyacian v. BP Prods. N. Am., Inc.*,
  2011 WL 5873039 (D.N.J. Nov. 22, 2011) ........................................................34

*Arlandson v. Hartz Mountain Corp.*,
  792 F. Supp. 2d 691 (D.N.J. 2011) ....................................................................37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 6, 13, 14, 28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................3

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*,
  435 F.3d 396 (3d Cir. 2006) ..............................................................20

*Beth Schiffer Fine Photog. Arts, Inc. v. Colex Imaging, Inc.*,
  2012 WL 924380 (D.N.J. Mar. 19, 2012) ..........................................................22

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................16

*Burns v. Heyns*,
  2015 WL 4391983 (W.D. Mich. July 15, 2015) ................................................18

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ..............................................................................8

*Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*,
  420 F.3d 1146 (11th Cir. 2005) ..........................................................................35

*Clements v. Sanofi-Aventis, U.S., Inc.*,
  111 F. Supp. 3d 586 (D.N.J. 2015) ....................................................................37

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 F. App'x 250 (3d Cir. 2010) ........................................................................24

*Cowin Equip. Co. v. Gen. Motors Corp.*,
   734 F.2d 1581 (11th Cir. 1984)..................................................................34

*Cox v. Chrysler Grp.*,
   2015 WL 5771400 (D.N.J. Sept. 30, 2015) ............................................22

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994)............................................................. 27, 28, 29

*D'Ercole Sales, Inc. v. Fruehauf Corp.*,
   206 N.J. Super. 11 (App. Div. 1985) ....................................................28

*Daniel v. Cantrell*,
   375 F.3d 377 (6th Cir. 2004)..................................................................10

*Davis v. Zirkelbach*,
   149 F.3d 614 (7th Cir. 1998)...................................................... 19, 28

*DeHart v. U.S. Bank, N.A., ND*,
   811 F. Supp. 2d 1038 (D.N.J. 2011) .....................................................36

*DiNicola v. Watchung Furniture's Country Manor*,
   232 N.J. Super. 69 (App. Div. 1989), *cert. denied*, 117 N.J. 126 (1989)............28

*Donachy v. Intrawest U.S. Holdings, Inc.*,
   2012 WL 869007 (D.N.J. Mar. 14, 2012)...................................... 25, 32

*Eberhart v. LG Elecs. USA, Inc.*,
   2015 WL 9581752 (D.N.J. Dec. 30, 2015)................................... passim

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009)................................................19

*Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*,
   457 F.3d 312 (3d Cir. 2006)..................................................................36

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)....................................................................6

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)..................................................... 7, 24, 31

*Freshpair.com, Inc. v. Butlein*,
   2017 WL 2968395 (D.N.J. July 11, 2017)............................................................35

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   2015 WL 7871165 (D.N.J. Dec. 4, 2015)............................................... 24, 25, 36

*Gonzalez v. U.S. Bank Nat'l Ass'n*,
   2015 WL 3648984 (D.N.J. Jun. 11, 2015)..............................................................7

*Granillo v. FCA US LLC*,
   2016 WL 9405772 (D.N.J. Aug. 29, 2016) ............................................................7

*Grills v. Philip Morris USA, Inc.*,
   645 F. Supp. 2d 1107 (M.D. Fla. 2009)................................................................32

*Hill v. City of Scranton*,
   411 F.3d 118 (3d Cir. 2005)...................................................................................8

*Hoffman v. DSE Healthcare Sols., LLC*,
   2014 WL 2119753 (D.N.J. May 21, 2014)............................................................33

*Hoffman v. Nordic Naturals, Inc.*,
   2015 WL 179539 (D.N.J. Jan. 14, 2015), *aff'd*, 837 F.3d 272 (3d Cir. 2016) .....30

*Holmes v. Gates*,
   403 F. App'x 670 (3d Cir. 2010) ............................................................................8

*Hughes v. Panasonic Consumer Elecs. Co.*,
   2011 WL 2976839 (D.N.J. Jul. 21, 2011)..................................................... 26, 27

*Ideal Aerosmith, Inc. v. Acutronic U.S., Inc.*,
   2007 WL 4394447 (E.D. Pa. Dec. 13, 2007).......................................................13

*In re § 2703(d) Order*,
   787 F. Supp. 2d 430 (E.D. Va. 2011) ..................................................................18

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) .................................................................18

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015)........................................................................ passim

*In re Hulu Privacy Litig.*
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................................................10

*In re Nickelodeon Consumer Privacy Litig.*,
  2014 WL 3012873 (D.N.J. July 2, 2014, *aff'd on other grounds*, 827 F.3d 262
  (3d Cir. 2016) ........................................................................ 7, 17, 39

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 624 (2017)............... passim

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014)................................................................17

*John Wiley & Sons, Inc. v. Rivadeneyra*,
  2013 WL 6816369 (D.N.J. Dec. 20, 2013)........................................................25

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002).................................................................16

*Kowalsky v. Deutsche Bank Nat'l Trust Co.*,
  2015 WL 5770523 (D.N.J. Sept. 30, 2015) ................................................. 26, 27

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ...........................................................30

*Maniscalco v. Brothers Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013)............................................................ passim

*Marsh v. Zaazoom Solutions, LLC*,
  2012 U.S. Dist. LEXIS 23918 (N.D. Cal. Feb. 24, 2012) ......................................13

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) ..........................................................29

*McBrearty v. Fifth Generation, Inc.*,
  2015 WL 4749040 (D.N.J. Aug. 6, 2015) ......................................................32

*MDNet, Inc. v. Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) .............................................................7

*Mendez v. Shah*,
  28 F. Supp. 3d 282 (D.N.J. 2014) ...........................................................37

*Miller v. Samsung Elecs. Am., Inc.*,
    2015 WL 3965608 (D.N.J. Jun. 29, 2015)..................................................... 22, 31

*Montich v. Miele USA, Inc.*,
    849 F. Supp. 2d 439 (D.N.J. 2012) ........................................................ 21, 26, 32

*Philips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).................................................................... 3, 14

*Ridge Meadows Homeowners' Ass'n v. Tara Dev. Co.*,
    242 A.D.2d 947 (N.Y. 1997) ....................................................................22

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
    801 F.3d 1045 (9th Cir. 2015)...................................................................12

*Sams v. Yahoo!, Inc.*,
    2011 WL 1884633 (N.D. Cal. May 18, 2011) .....................................................18

*Satchell v. Sonic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) ..............................................................14

*Saxon Fin. Grp., Inc. v. Rath*,
    2012 WL 3278662 (S.D. Fla. Aug. 9, 2012).........................................................35

*Semeran v. Blackberry Corp.*,
    2016 WL 406339 (D.N.J. Feb. 2, 2016) .............................................................26

*Slimm v. Bank of Am. Corp.*,
    2013 WL 1867035 (D.N.J. May 2, 2013) ............................................................28

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
    2010 WL 1799456 (D.N.J. May 4, 2010) ....................................................... 13, 14

*Snyder v. Farnam Cos.*,
    792 F. Supp. 2d 712 (D.N.J. 2011) .................................................................38

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    295 F.R.D. 540 (S.D. Fla. 2013).....................................................................32

*Sparshot v. Feld Entm't, Inc.*,
    311 F.3d 425 (D.C. Cir. 2002) ......................................................................19

*Spera v. Samsung Elecs. Am., Inc.*,
  2014 WL 1334256 (D.N.J. Apr. 2, 2014) ..................................................... 21, 29

*Sterk v. Best Buy Stores*,
  2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)........................................................12

*Stoecker v. Echevarria*,
  408 N.J. Super. 597 (App. Div. 2009) ................................................................28

*Telestrata, LLC v. NetTALK.com, Inc.*,
  126 F. Supp. 3d 1344 (S.D. Fla. 2015) ..............................................................31

*Thiedemann v. Mercedes-Benz USA, LLC*,
  183 N.J. 234 (2005)....................................................................................... 29, 30

*Thomas v. Thomas*,
  2012 WL 4895117 (M.D. Pa. Oct. 15, 2012, *aff'd*, 529 F. App'x 181 (3d Cir.
  2013)............................................................................................................... 14, 15

*United States v. Reed*,
  575 F.3d 900 (9th Cir. 2009), *cert. denied*, 559 U.S. 987 (2010)........................17

*VT Investors v. R&D Funding Corp.*,
  733 F. Supp. 823 (D.N.J. 1990) .........................................................................40

*Wade v. Kessler Institute*,
  343 N.J. Super. 338 (App. Div. 2001), *aff'd as modified*, 172 N.J. 327 (2002)...36

*Walsh v. Quinn*,
  2009 WL 2207816 (W.D. Pa. Jul. 23, 2009) ......................................................19

*Weske v. Samsung Elecs. Am., Inc.*,
  2012 WL 833003 (D.N.J. Mar. 12, 2012).............................................................39

*Yapak, LLC v. Mass. Bay Ins. Co.*,
  2009 WL 3366464 (D.N.J. Oct. 16, 2009)...................................................... 33, 34

*Ziyadeh v. ACE European Grp.*,
  2013 WL 12148853 (D.N.J. Sept. 5, 2013) ........................................................36

*Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  2014 WL 1577694 (D.N.J. Apr. 21, 2014) ..........................................................25

## STATUTES

15 U.S.C. §§ 6501-6506 ...................................................................28

18 U.S.C. § 2510 ..............................................................................12

18 U.S.C. § 2510(8) ..........................................................................17

18 U.S.C. § 2511(1) ..........................................................................12

18 U.S.C. § 2511(2)(d) ......................................................................15

18 U.S.C. § 2520 ..............................................................................12

18 U.S.C. § 2520(e) ..........................................................................19

18 U.S.C. § 2710(a)(3) ......................................................................10

18 U.S.C. § 2710(c)(3) ......................................................................19

47 U.S.C. § 551 ................................................................................28

Fla. Stat. § 95.11(3)(j) ......................................................................31

Fla. Stat. Ann. § 501.2105 ................................................................22

Fla. Stat. Ann. § 501.211(2) ..............................................................22

N.J. Stat. § 12A:2-725(1) ..................................................................38

N.J.S.A. 2A:14–1 ..............................................................................31

N.J.S.A. 56:8-19 ..............................................................................22

N.Y. Gen. Bus. Law 349 ....................................................................22

## OTHER AUTHORITIES

N.Y. CPLR 901(b) ............................................................................22

Restatement (Second) Conflicts of Laws Section 148(2) .......................23

## PRELIMINARY STATEMENT

Plaintiffs filed their initial complaint in March 2017 alleging that unspecified Smart TVs purportedly manufactured by Defendants collected information about users' viewing activities that Defendants then disclosed to third parties in violation of federal, state, and common law. Defendants LG Electronics USA, Inc. ("LG") and Samsung Electronics America, Inc. ("Samsung") moved to dismiss the initial complaint as deficient both as a matter of fact and law.[1] Plaintiffs failed to respond.

Instead of dismissing the complaint, upon the September 2017 representation of Plaintiffs' counsel that Plaintiffs planned to use the time to conduct research and bolster the factual bases of their allegations, the Court generously stayed the matter to allow Plaintiffs sufficient time to amend their complaint. Four months later, Plaintiffs filed the Amended Complaint ("AC"). That pleading fails to cure the issues identified by Defendants' original motion, and continues to assert claims that do not satisfy federal pleading standards and are improper as a matter of law.

***Video Privacy Protection Act and Wiretap Act***. Plaintiffs have done nothing to address the fact that their Video Privacy Protection Act and Wiretap Act claims

---

[1] At the time of this filing, Sony Electronics Inc. ("Sony") had not been properly served and thus did not join the motion. Sony has since been served and joins this motion. Samsung, LG, and Sony are collectively referred to as "Defendants." This motion is submitted solely on behalf of the served, U.S.-based defendants. To date, Plaintiffs have still failed to serve the foreign defendants named in the AC.

based on "electronic communications" are foreclosed by Third Circuit law. Plaintiffs' allegations do not concern the "personally identifiable information" the Video Privacy Protection Act covers, and even, accepted as true, fail to establish multiple elements of a valid Wiretap Act claim. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 280-90 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 624 (2017) ("*Nickelodeon*"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135-45 (3d Cir. 2015) ("*Google*"). Plaintiffs' claims, as alleged, also fall outside the two-year statutes of limitations.

      ***Fraud Claims***. Plaintiffs have failed to identify a New Jersey resident who might save their New Jersey Consumer Fraud Act claims from dismissal—non-residents who purchase products outside the state (like these Florida and New York Plaintiffs) cannot bring a claim under that statute. *See Maniscalco v. Brothers Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013). Plaintiffs also did not add allegations necessary to satisfy Rule 9 of the Federal Rules of Civil Procedure. Instead Plaintiffs continue to treat Defendants as an indistinguishable group—notwithstanding that they are separate companies in a highly competitive market—and fail to identify a single misstatement or omission attributable to any one Defendant.

      ***Contract Claims.*** Plaintiffs' contract-based claims, which do not even allege the existence of any contract or warranty, are even more abstract than they were in the initial complaint, and still do not state a claim.

Plaintiffs had over 100 days after the filing of the original motion to dismiss to investigate their allegations and file an amended complaint that would put Defendants on notice of their purported misconduct. Instead, Plaintiffs doubled down on speculation, producing an AC that relies even more heavily on conclusory assertions pleaded only "upon information and belief."

These "new" allegations illustrate the core deficiency that infects *all* of Plaintiffs' claims: they rely upon factually devoid allegations that do not provide Defendants "fair notice" of the "grounds" on which Plaintiffs' "claim[s] rest[]." *See Philips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)). For example, the most substantial amendment to the AC is the addition of vague and highly-implausible allegations that unspecified models of Defendants' Smart TVs somehow recorded and distributed Plaintiffs' voices. Plaintiffs also added an incomprehensible breach of contract claim that does not allege the existence of any contract, but instead relies on the conjectural notion that Defendants "breached as a matter of law *any words* transmitted to Plaintiffs and the Class that are construed in *any way* [by the Court] to form a valid contract." AC ¶ 205 (emphasis added).

It is clear, almost a full year after Plaintiffs' original filing, that no matter how much time or opportunity Plaintiffs are afforded, they cannot state a plausible claim. Defendants respectfully request that the AC be dismissed with prejudice.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiffs' AC is virtually unchanged from their original complaint and does little more than recount conspiracy theories of unlawful "spying" by Defendants' Smart TV products. AC ¶ 60. The AC still does not identify which of Defendants' Smart TV models Plaintiffs allegedly purchased, or differentiate Defendants' products or practices in any way whatsoever. In fact, Plaintiffs' entire AC treats Defendants as one, despite the fact that Defendants are competitors with diverse products that all function differently. Further, beyond saying that the purchases took place "during the Class Period" of January 1, 2012 to the present (AC ¶¶ 21-22), Plaintiffs fail to allege *when* they purchased Defendants' Smart TVs, *where* they purchased them, or *how* much they paid for the devices. Plaintiffs also fail to allege which advertisements, policies, or other representations they allegedly saw or relied upon in making their purchases or agreed to after making their purchases, or any other facts addressing the circumstances in which they were supposedly deceived.

Any facts that Plaintiffs *do* allege are largely pleaded "upon information and belief." Although Plaintiffs have had over four months to research and substantiate their claims, Plaintiffs' AC alleges facts "upon information and belief" *more than thirty times*, including in several instances where Plaintiffs had previously made allegations under Rule 11 with no such qualifier. *See, e.g.*, Redline Complaint (ECF No. 48). As one example, Plaintiffs allege solely "upon information and belief" that

Defendants' Smart TVs use a combination of "automatic content recognition devices/software" and "automatic recording devices/software" to collect "viewing data," such as "information about a selection of pixels on the screen" as well as "other information about the television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items." AC ¶¶ 48-49. Plaintiffs allege, again "upon information and belief," that Defendants provide this information to third-party "data aggregators" who, using information from other sources, can purportedly identify a Smart TV user "within a certain degree of accuracy." *Id.* ¶¶ 42-59.

The AC adds new "upon information and belief" allegations. For example, Plaintiffs allege that when Defendants' "voice recognition feature … is used," Defendants' Smart TVs record "everything a user says in front of" the TV and transmits that data "to a third party." *Id.* ¶ 74. But Plaintiffs do not allege that Plaintiffs used such voice recognition features or that any Smart TV actually recorded their voices, let alone facts identifying the specific communications that were allegedly recorded. *See id.* ¶¶ 70-75, 160-78.

Plaintiffs assert they were unaware of and did not consent to the conduct they allege. *Id.* ¶¶ 21-22, 61, 82, 104-05. Yet Plaintiffs acknowledge that Defendants made disclosures about their data collection and use practices in their privacy policies and elsewhere. *Id.* ¶¶ 61 (referencing Defendants' disclosures), 63-65 (stating

5

Defendants' privacy policies disclose how to turn off data collection). Plaintiffs further state that, as far back as 2012, numerous public reports described the Smart TV features that are the subject of the AC. *Id.* ¶¶ 41 & nn.14-28.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Speculative allegations, or allegations that are "merely consistent with a defendant's liability," are not enough. *Iqbal*, 556 U.S. at 678 (citations and quotations omitted).

Pleading "upon information and belief" can provide the required facts only "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are *no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (citations and quotations omitted).

Where, as here, plaintiffs rely on "information and belief" to plead entirely

conclusory facts, they have not met their burden and the court may disregard the allegations. *See Granillo v. FCA US LLC*, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (disregarding allegations made "on information and belief" where plaintiffs "provide[d] no allegations to support their bald assertion that Defendant's software updates were ineffective"); *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *2 n.3 (D.N.J. July 2, 2014) (disregarding allegations made "upon information and belief" where no facts pleaded in the complaint supported the allegation), *aff'd on other grounds*, 827 F.3d 262 (3d Cir. 2016).

Rule 9(b) imposes a heightened pleading requirement for allegations of fraud. "[A] plaintiff alleging fraud must state the circumstances of the fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*; *see also Gonzalez v. U.S. Bank Nat'l Ass'n*, 2015 WL 3648984, at *10 (D.N.J. Jun. 11, 2015) (Arleo, J.) (same). "When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

7

Courts have discretion to dismiss a pleading with prejudice if amendment would be futile or inequitable, *see, e.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005), and often do so where the plaintiff has squandered time and opportunity sufficient to state a valid claim, *see Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004) ("Allowing leave to amend where 'there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings … would frustrate [the court's ability] to screen out lawsuits that have no factual basis.'"); *Holmes v. Gates*, 403 F. App'x 670, 674 (3d Cir. 2010) (dismissing complaint where "[the plaintiff] had three opportunities to include [the necessary facts] in her complaint, yet she repeatedly failed to do so").

## ARGUMENT

Plaintiffs' AC seeks to hold Defendants liable under nine different causes of action, each of which is fatally flawed. First, Plaintiffs allege that features of Defendants' Smart TVs violate two federal statutes: (1) the Video Privacy Protection Act (AC ¶¶ 151-59) (Count III) and (2) provisions of the Electronic Communications Privacy Act commonly known as the Wiretap Act (*id.* ¶¶ 160-78) (Count IV). Next, they allege three separate fraud-based claims: (3) "unfair and deceptive tracking" and (4) deceptive omissions under the New Jersey Consumer Fraud Act (*id.* ¶¶ 118-33, 134-50) (Counts I and II), and (5) common law fraud (*id.* ¶¶ 179-84) (Count

V). Last, Plaintiffs assert four additional contract-based claims: (6) breach of con-
tract (*id*. ¶¶ 203-05) (Count IX), (7) breach of the duty of good faith and fair dealing
(*id*. ¶¶ 192-96) (Count VII), (8) breach of express warranty (*id*. ¶¶ 185-91) (Count
VI), and (9) unjust enrichment (*id*. ¶¶ 197-202) (Count VIII). For the reasons de-
scribed below, all claims should be dismissed with prejudice.

## I.     PLAINTIFFS' FEDERAL CLAIMS FAIL

Despite having had four months to amend their complaint, Plaintiffs' federal
claims under the Video Privacy Protection Act ("VPPA") and Wiretap Act remain
predicated on wholly conclusory allegations that fail as a matter of both pleading
and law. Having had two opportunities to plead a valid, plausible cause of action,
Plaintiffs' federal privacy claims should be dismissed with prejudice.

### A.     Plaintiffs Still Cannot State a Claim Under the VPPA

Plaintiffs' VPPA claim must be dismissed because it fails to allege that De-
fendants collected, let alone disclosed, any "personally identifiable information"
protected by the statute. To state a claim under the VPPA, Plaintiffs must allege that
a "video tape service provider" "knowingly disclose[d]" "personally identifiable in-
formation" ("PII") concerning a "consumer of such provider." 18 U.S.C.
§ 2710(b)(1). As a threshold matter, Plaintiffs have not established that they can as-
sert a claim against Defendants under the VPPA, as they have not pleaded beyond
"information and belief" that Defendants are "video tape service providers" and that

Plaintiffs are "subscribers" within the meaning of the statute. *Daniel v. Cantrell*, 375 F.3d 377, 381-82 (6th Cir. 2004) ("[U]nder the plain language of the statute, only a 'video tape service provider' (VTSP) can be liable."). But even if Plaintiffs could bring such a claim, the information they contend Defendants collected does not constitute PII under the Third Circuit's decision in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 280-90 (3d Cir. 2016).

The VPPA's definition of PII is specific: "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The court in *Nickelodeon* considered whether three types of information were sufficient to identify a person under the act: (1) "a user's IP address, a number assigned to each device that is connected to the Internet that permits computer-specific online tracking," (2) "a user's browser and operating system settings, which comprise a so-called browser fingerprint," and (3) "a computing device's unique device identifier." 827 F.3d at 281-82 (quotations omitted). It held that they were not, affirmed the district court's dismissal of the claim, and made clear that the purpose of the statute was "quite narrow: to prevent disclosures of ***information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits***." *Id.* at 284 (emphasis added); *accord In re Hulu Privacy Litig.*, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) (under VPPA, static digital identifiers that could, in theory, be

combined with other information to identify a person are not PII).

Here, Plaintiffs allege that Defendants collected two types of data: (1) data they call "viewing data," but specifically allege as "information about a selection of pixels on the screen" (AC ¶ 48); and (2) networking protocol information: "IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items" (*id.* ¶ 49).

*Nickelodeon* unambiguously forecloses Plaintiffs' reliance on this information to allege a VPPA claim. The networking protocol information at issue is no different from the "unique device identifier" rejected in *Nickelodeon*—both identify *devices*, not people. Thus, even combined with "information about pixels on a screen," it could never identify a person or their "viewing data" (AC ¶ 48). *See Nickelodeon*, 827 F.3d at 289-90. Even accepting as true Plaintiffs' conclusory assertion that unidentified "data aggregators" have the ability to match this information to more specific personal identifiers contained in their databases (AC ¶¶ 52, 58), this Circuit has made clear that information only constitutes PII if "*an ordinary recipient*" could use such information "to identify a particular person's viewing habits" "*with little or no extra effort*." *Id.* at 284 (emphasis added).

Plaintiffs' separate allegations about Defendants' "collect[ion of] other information about the television," (*e.g.*, AC ¶¶ 48-57), also does not state a claim, as they do not allege a disclosure of that information. *See Nickelodeon*, 827 F.3d at 280-81

(affirming dismissal of VPPA claim "because Google is not alleged to have disclosed any [PII]," and rejecting argument that "a third party [who] receives personally identifiable information" may be held liable under the VPPA); *see also Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054-55 (9th Cir. 2015) (receipt or retention of PII is not actionable under the VPPA).

Similarly, allegations that Defendants' software "send[s] data to Defendants' servers" (AC ¶ 48), do not amount to a "disclosure" under the Act because those servers are owned and controlled by Defendants. *See, e.g.*, *Sterk v. Best Buy Stores*, 2012 WL 5197901, at *3 (N.D. Ill. Oct. 17, 2012) (disclosure by a wholly-owned entity to its parent company does not constitute "disclosure" under the VPPA). Because the AC fails to plead that any PII was disclosed within the meaning of the VPPA or controlling Third Circuit law, Plaintiffs' VPPA claim must be dismissed.

### B.   Plaintiffs Still Fail to State a Claim Under the Wiretap Act

Plaintiffs' amended Wiretap Act claim continues to rely on vague, generalized, and highly implausible allegations. The Wiretap Act provides a narrow right of action against someone who "intentionally intercepts" the "contents" of a "wire, oral, or electronic communication" using a "device." 18 U.S.C. §§ 2510, 2511(1) , 2520; *Nickelodeon*, 827 F.3d at 274. Plaintiffs' new allegations that Defendants recorded their voices in violation of the Act, like their existing allegations, fail to satisfy the Wiretap Act's requirements and the *Twombly/Iqbal* pleading standards. And

Plaintiffs' unchanged allegations regarding "electronic communications" still do not establish that any "contents" were "intercepted" under the Act.

### 1.    Plaintiffs' Wiretap Act Allegations Fail to Meet Federal Pleading Standards

Plaintiffs fail to plead even the most basic facts necessary to put Defendants on notice of their alleged "interception," as is required to survive the pleading stage and open the door to discovery. *See Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2010 WL 1799456, at *11 (D.N.J. May 4, 2010) ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." (quoting *Iqbal*, 556 U.S. at 678)); *Ideal Aerosmith, Inc. v. Acutronic U.S., Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act." (citation omitted)).

Indeed, Plaintiffs' AC does not even allege which of Defendants' many different Smart TV models purportedly intercepted Plaintiffs' communications, or how they supposedly did so. The failure to identify the "device" at issue is alone fatal to a Wiretap Act claim. *See Google*, 806 F.3d at 141-42 (requiring plaintiff to plead the specific "device" that allegedly intercepted plaintiffs' communications); *Nickelodeon*, 827 F.3d at 274 (holding that alleging the defendant's use of "a device" is necessary to state a claim under the Wiretap Act); *Marsh v. Zaazoom Solutions, LLC*, 2012 U.S. Dist. LEXIS 23918, at *15 (N.D. Cal. Feb. 24, 2012) (dismissing claim

in part because "Plaintiffs must, and have not, alleged the device used to intercept the information").

Similarly, Plaintiffs' "new" allegations that Defendants intercepted and transmitted their voice recordings hang on bald assertions made almost entirely upon information and belief,[2] and utterly fail to allege the identity, contents, or circumstances of the communications that were allegedly recorded and transmitted to third parties. *See Thomas v. Thomas*, 2012 WL 4895117, at \*4-5 (M.D. Pa. Oct. 15, 2012) (dismissing Wiretap Act claim for failing to allege the specific communication intercepted or the circumstances surrounding the interception), *aff'd*, 529 F. App'x 181 (3d Cir. 2013); *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1008 (N.D. Cal. 2017) (dismissing general allegations that defendant intercepted and recorded plaintiff's communications). Such "unadorned" "naked assertion[s]" lacking "factual enhancement" are insufficient to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Philips*, 515 F.3d at 233 ("Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

Courts in this Circuit routinely dismiss similarly conclusory Wiretap Act allegations. *See, e.g.*, *Smith*, 2010 WL 1799456, at \*11 (dismissing claim that "merely state[d] in a conclusory fashion that [defendant] … monitor[ed] Plaintiff's Internet

---

[2] *See* AC ¶¶ 41-42 48, 50-52, 54, 57-59, 68-69, 74, 82-83, 90.

14

communications" and "made [no] factual averments that any of his communications were in fact intercepted"); *Thomas*, 2012 WL 4895117, at \*4-5 (dismissing claim where plaintiff failed to allege (1) "he made any oral communication while the device was on" (2) facts demonstrating actual interception; and (3) "facts as to the circumstances under which the interception was attempted"); *see also Nickelodeon*, 827 F.3d at 276 n.78 (allegations were "entirely conclusory and therefore fail[ed] to comport with 'the Supreme Court's teaching that all aspects of a complaint must rest on 'well-pleaded factual allegations' and not 'mere conclusory statements'").

### 2.   Plaintiffs' Allegations Regarding "Electronic Communications" Fail to State a Claim as a Matter of Law

Plaintiffs' allegation that Defendants intercepted "electronic communications" (*e.g.*, AC ¶¶ 160-78) is further foreclosed by Third Circuit law for two separate reasons: (1) Defendants did not intercept any information because they are indisputably parties to the communications at issue; and (2) Plaintiffs do not allege that Defendants intercepted the "contents" of any communication.

***Interception.*** The Wiretap Act expressly provides that "[i]t shall not be unlawful … for a person … to intercept a wire, oral or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). Consistent with that plain language, the Third Circuit has confirmed that a communication cannot be "intercepted" by one of its parties because a party is the direct recipient of the communication. *Google*, 806 F.3d at 143 (no Wiretap Act claim where defendants

15

received "direct transmissions between the plaintiffs and the defendants"); *see also Nickelodeon*, 827 F.3d at 274 (affirming dismissal of Wiretap Act claim where defendants were parties to communications).

This exemption is fundamental to the Wiretap Act, which prohibits wiretapping, not receiving information. To the extent it is even discernable, Plaintiffs' claim runs directly into this exemption. Plaintiffs allege that in the course of transmitting programming through their WiFi networking features, Defendants' Smart TVs also transmit certain information to "Defendants' own servers." AC ¶¶ 38, 41. Plaintiffs do not specify which of these transmissions form the basis of their claim (*id.* ¶¶ 161-71), but nothing that is alleged could possibly give rise to a Wiretap Act claim. Whether Plaintiffs' intended focus is on the communications that Defendants' Smart TVs transmit to Plaintiffs at Plaintiffs' own request or those sent to Defendants' servers, the result is the same.[3] Either way, Defendants are direct participants in all

---

[3] Other communications vaguely referenced in the AC—such as those allegedly made by Defendants to third-party data brokers or advertisers (AC ¶¶ 58-59)—also cannot state a Wiretap Act claim as they do not involve any communication with Plaintiffs whatsoever. *See, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (no interception where employer obtained unauthorized access to website while it was in electronic storage because website was not wrongfully obtained by a third party during transmission); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153 (C.D. Cal. 2007) (no interception where defendant configured plaintiffs' email software to simultaneously forward exact copies of emails from plaintiffs' server to defendant because emails were not obtained during "transmission … to their intended recipients").

relevant communications. Third Circuit law is clear that where "defendants were parties to any communications that they acquired," there can be no claim under the Wiretap Act. *Google*, 806 F.3d at 145.

**Content.** The Wiretap Act applies only to the "contents" of a communication—"information concerning [its] substance, purport, or meaning." 18 U.S.C. § 2510(8); *accord Google*, 806 F.3d at 137-139 (information is only content if it is "part of the substantive information conveyed to the recipient"); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("content" refers to "the intended message conveyed by the communication," rather than "record information regarding the characteristics of the message that is generated in the course of the communication"); *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009), *cert. denied*, 559 U.S. 987 (2010) ("data … about the source, destination, duration, and time of a [communication]," which is "incidental to the use of a communication device" is not "content").

Plaintiffs allege that Defendants collected WiFi networking protocol information and information about pixels on their Smart TV screens. AC ¶¶ 48-49. As a matter of law, the acquisition of such information does not violate the Wiretap Act. Metadata that does not convey the substance of a communication is not "contents." *See, e.g.*, *In re Nickelodeon*, 2014 WL 3012873, at *15 (IP addresses "are simply not 'contents' of a communication"); *Sams v. Yahoo!, Inc.*, 2011 WL 1884633, at

*6-7 (N.D. Cal. May 18, 2011) (Wiretap Act did not cover name, address, user ID, email address, IP addresses, and account login times); *In re § 2703(d) Order*, 787 F. Supp. 2d 430, 435-36 (E.D. Va. 2011) (same). Plaintiffs themselves acknowledge that "information about a selection of pixels on the screen" can only be used to identify video content when combined with information from a separate database. AC ¶ 48. That is exactly the type of information courts have held does not qualify as "contents" under the Wiretap Act—information that does not, on its own, identify what was communicated. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (record of browsing history is not "contents"); *Burns v. Heyns*, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) (clickstream data which "contains the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded" not contents); *cf. Nickelodeon*, 827 F.3d at 289-90 (holding that static identifiers on their own do not identify anything as they need to be combined with additional information to identify people).

Plaintiffs' amended Wiretap Act claim amounts to nothing more than speculation that does not satisfy either the pleading bar set by *Twombly* and *Iqbal* or the elements of the Wiretap Act. The Court should dismiss the claim with prejudice.

### C.   Plaintiffs' VPPA and Wiretap Act Claims Are Time-Barred

In addition to their substantive failures, Plaintiffs' federal claims are time-

18

barred. Both the VPPA and the Wiretap Act are governed by two-year statutes of limitations that run from the date that the claim was or reasonably could have been discovered. 18 U.S.C. § 2710(c)(3); *id.* § 2520(e); *accord Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998); *Sparshot v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002). Based on the facts alleged in the AC, that is no later than February 27, 2015—more than two years before the initial complaint was filed on March 16, 2017. ECF No. 1.

Although Plaintiffs claim that they were unaware of the alleged disclosure practices at issue (*e.g.*, AC ¶¶ 4, 52, 68), their AC expressly relies on years-old public material that demonstrates Plaintiffs could (and should) have discovered those practices years before the governing limitations date (*see, e.g., id.* ¶¶ 41, 43, 68-72 & nn.14-28). In particular, Plaintiffs cite and depend on press coverage from as early as January 2012 (*id.* ¶¶ 69, 71-72, & nn.25-28), and rely heavily on two public documents published in February 2015—more than two years before their initial complaint was filed—to describe the interactive features underlying their claims (*id.* ¶¶ 41-66, 92-101 & nn.14-15, 18-20, 22-24, 37-47). *See, e.g., Walsh v. Quinn*, 2009 WL 2207816, at *2-3 (W.D. Pa. Jul. 23, 2009) (limitations period commenced with publication of newspaper article suggesting conspiracy, cited in complaint); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1280-81 (M.D. Fla. 2009) (limitations period commenced with newspaper article suggesting

option backdating, cited in complaint). Plaintiffs' federal claims should be dismissed with prejudice on this basis alone. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) (dismissal appropriate where the statute of limitations defense "appear[s] on the face of the complaint").

## II.    PLAINTIFFS' FRAUD CLAIMS FAIL

Despite the many months they have had to amend, Plaintiffs' fraud claims still suffer from the same flaws that doomed those claims in Plaintiffs' initial complaint. Plaintiffs' New Jersey Consumer Fraud Act ("CFA") and common law fraud claims still are not pleaded with the specificity Rule 9(b) demands. Indeed, Plaintiffs fail to plead even the most basic elements required to state a fraud claim. Plaintiffs' CFA claims also continue to suffer from a threshold defect: as non-residents, Plaintiffs cannot assert a cause of action under that statute in the absence of allegations establishing a connection between Plaintiffs' claims and New Jersey.

### A.    Plaintiffs Still Fail to State a Claim Under the New Jersey Consumer Fraud Act

Plaintiffs assert two CFA claims. The first is based on Defendants' alleged tracking of Plaintiffs' viewing habits and disclosure of that information to third parties (AC ¶ 125); the second is based on Defendants' alleged failure to disclose this behavior to Plaintiffs (*id*. ¶ 137). Both claims fail as a matter of law on two independent grounds. *First*, under well-settled Third Circuit law, non-residents cannot

assert a cause of action under the CFA where the only alleged connection between the claims and New Jersey is the location of the defendants' corporate offices. *Second*, even beyond this threshold defect, the CFA claims, which sound in fraud, are conclusory and lack the particularity required by Rule 9(b).

### 1. Plaintiffs, Non-Residents, Cannot Assert Claims Under the CFA

Plaintiffs have not and cannot allege a connection with New Jersey that would make application of New Jersey law appropriate. Plaintiff White is alleged to be a resident and citizen of Florida, and Plaintiff Mills of New York. AC ¶¶ 21, 22. Non-residents who purchase products outside the state do not have a claim under the CFA. Under *Maniscalco v. Brothers Int'l*, 709 F.3d 202, 209 (3d Cir. 2013), the law of the consumer's home state will typically govern the dispute, and conclusory allegations of fraudulent conduct emanating from New Jersey offices—the only connection that Plaintiffs allege here—are insufficient to support application of the CFA to claims by out-of-state residents. Plaintiffs' CFA claims should be dismissed with prejudice. *See, e.g.*, *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445-51 (D.N.J. 2012) (dismissing non-resident's CFA claim with prejudice); *Spera v. Samsung Elecs. Am., Inc.*, 2014 WL 1334256, at *9 (D.N.J. Apr. 2, 2014) (same).

When sitting in diversity, as here, this Court must apply New Jersey's two-part choice-of-law test to determine which state law applies to Plaintiffs' claims. *Maniscalco*, 709 F.3d at 206. First, the court must determine whether an "actual

conflict" exists between New Jersey law and the laws of the competing state. *Id*. Second, if there is a conflict, the court must determine which state has the "most significant relationship" with the plaintiff's claims under the guidelines set forth in the Restatement (Second) Conflicts of Laws. *Id*. at 206-07.

There are actual conflicts between the CFA and the consumer fraud statutes in Florida and New York, where Plaintiffs are domiciled. *See, e.g.*, *Cox v. Chrysler Grp.*, 2015 WL 5771400, at *11 (D.N.J. Sept. 30, 2015) ("[T]he [CFA] conflicts with New York's Consumer Protection Act");[4] *Miller v. Samsung Elecs. Am., Inc.*, 2015 WL 3965608, at *5 (D.N.J. Jun. 29, 2015) ("The Court determines that a conflict exists [between the CFA and Florida law].").[5] In the face of these clear conflicts, this Court must evaluate which state has the most significant relationship to Plaintiffs' dispute. *Maniscalco*, 709 F.3d at 206-07. For fraud and misrepresentation

---

[4] While New Jersey's statute provides for treble damages, N.J.S.A. 56:8-19, New York's statute prohibits treble damages in class actions, *see* Gen. Bus. Law 349; CPLR 901(b); *see also Ridge Meadows Homeowners' Ass'n v. Tara Dev. Co.*, 242 A.D.2d 947, 947 (N.Y. 1997) (holding that plaintiffs are "barred by CPLR 901(b) from maintaining a class action for the minimum and treble damages imposed by section 349(h) of the General Business Law"); *Beth Schiffer Fine Photog. Arts, Inc. v. Colex Imaging, Inc.*, 2012 WL 924380, at *15 (D.N.J. Mar. 19, 2012) (noting conflict between New Jersey and New York statutes of limitation).

[5] Florida's Deceptive and Unfair Trade Practices Act only permits recovery of actual damages, Fla. Stat. Ann. § 501.211(2). Moreover, while the CFA mandates recovery of attorneys' fees only for prevailing plaintiffs, N.J.S.A. 56:8-19, Florida law permits either party to recover attorneys' fees, Fla. Stat. Ann. § 501.2105.

claims, this second step of the analysis is guided by Section 148(2) of the Restatement (Second) Conflicts of Laws (*id.* at 207), which focuses on the locations of the parties, the place where plaintiffs received and acted on the representations, the place where defendants made the representations, and the place where the purchased products were located.

Florida and New York have the "most significant relationship" with Plaintiffs' claims. Plaintiffs are residents of Florida and New York who purchased Smart TVs for use in their respective homes. AC ¶¶ 21, 22, 102. Notably, Plaintiffs' AC does not allege that they purchased the Smart TVs in New Jersey. Thus, the AC indicates that, in addition to being Plaintiffs' home states, Florida and New York are the places where Plaintiffs supposedly "acted in reliance" on the alleged misrepresentation concerning the Smart TVs, where Plaintiffs received any alleged misrepresentations, and where the Smart TVs were situated at the time of purchase. *See* Restatement (Second) Conflict of Laws § 148(2).

In fact, the only alleged connection between Plaintiffs' claims and New Jersey is the location of Defendants' headquarters. However, Plaintiffs' domiciles are more significant for choice-of-law purposes. *See Maniscalco*, 709 F.3d at 209 (citing § 148 cmt. i). Thus, regardless of whether the "sales strategy, advertising, marketing, and product promotion was conceived in … New Jersey" (AC ¶ 19), or whether the products are distributed from New Jersey (*id*. ¶ 20), Florida and New York have a

23

more significant relationship to Plaintiffs' claims. The Third Circuit and an "over-whelming majority" of courts in this District are in accord. *See, e.g.*, *Maniscalco*, 709 F.3d at 209 ("[plaintiff's] home state, in which he received and relied on [de-fendant's] alleged fraud, ha[d] the 'most significant relationship' to his consumer fraud claim") (collecting cases); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (affirming dismissal where "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters"). Plaintiffs' CFA claims should be dismissed with prejudice for identical choice-of-law reasons.

## 2. Plaintiffs' CFA Claims Lack the Particularity Required by Rule 9 of the Federal Rules of Civil Procedure

Even if these non-resident Plaintiffs could bring CFA claims, Plaintiffs have failed to plead those fraud-based claims with the particularity demanded by Rule 9(b) of the Federal Rules of Civil Procedure. To state a CFA claim, a plaintiff must describe: (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2015 WL 7871165, at *3 (D.N.J. Dec. 4, 2015) (Arleo, J.). Rule 9(b) requires that a complaint "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiffs' CFA allegations—nearly unchanged by the AC—fall far short of satisfying Rule 9(b). *See generally Giercyk*, 2015 WL 7871165, at *5-6 (dismissing

CFA claims under Rule 9(b)).

### a. The AC Impermissibly Lumps Defendants Together

Courts in this District routinely dismiss fraud-based claims where a plaintiff does not "detail the allegations of fraud against each defendant individually." *Donachy v. Intrawest U.S. Holdings, Inc.*, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012); *see also Giercyk*, 2015 WL 7871165, at *9 (dismissing conspiracy claim under Rule 9(b) because plaintiffs "lump[ed] all of the Defendants together"); *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2014 WL 1577694, at *4 (D.N.J. Apr. 21, 2014) (same); *John Wiley & Sons, Inc. v. Rivadeneyra*, 2013 WL 6816369, at *6 (D.N.J. Dec. 20, 2013) (same). That is exactly the situation here.

Plaintiffs do not specifically identify any of the six named defendants in the course of pleading fraud or misrepresentation. To the contrary, *every* allegation of fraudulent conduct lumps all six defendants together without differentiation. *E.g.*, AC ¶¶ 9 ("Defendants' representations were not sufficiently clear or prominent to alert consumers to their practices . . ."), 21 ("Defendants had made inadequate disclosures to Plaintiffs . . ."); *see also id.* ¶¶ 134-50, 179-84. For that reason alone, the AC fails to satisfy Rule 9(b).

### b. The AC Does Not Specify an Unlawful Practice Giving Rise to a CFA Claim

The AC also fails to plead with particularity any of the unlawful practices that

may qualify under the CFA: "(1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations." *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *10 (D.N.J. Jul. 21, 2011).

*Misrepresentations*. Although Plaintiffs refer vaguely to "Defendants' representations," (*e.g.*, AC ¶ 9), the AC does not specify a single misrepresentation made by any Defendant, as Rule 9(b) requires. That defect alone mandates dismissal. *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (dismissing CFA claim where plaintiff failed to: "point to any specific statements"; allege the date, place, and time of any claimed misrepresentations; and allege he read any supposedly fraudulent representations prior to purchase).

*Omissions*. A plaintiff asserting a fraud-by-omission claim "must still plead the essential elements" of a claim of fraud. *Montich*, 849 F. Supp. 2d at 453; *see also Kowalsky v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 5770523, at *9 (D.N.J. Sept. 30, 2015) (dismissing omission claim because plaintiff did not allege "which of the two Defendants failed to disclose information, when the failure to disclose occurred, and which documents contained the alleged omissions").

The AC here simply asserts, without more, that Defendants "made material omissions when speaking to Plaintiffs … through written materials," and "intended to actively mislead Plaintiffs." AC ¶¶ 135, 137. Plaintiffs fail to allege what information was required to be disclosed (or even a duty to disclose), who omitted that

information, how they intended to mislead consumers, where the information was omitted, and whether that omission occurred before or after Plaintiffs purchased their Smart TVs. Likewise, Plaintiffs nowhere allege when or even whether they read the printed materials contained in any packaging or the set-up screens. *E.g.*, *Hughes*, 2011 WL 2976839, at *14 (dismissing CFA claims because plaintiff did not allege "when such omissions occurred, let alone whether they occurred before or after plaintiff[] purchased [his] Television"). Plaintiffs' non-specific references to alleged omissions in "printed materials contained in the Smart TV packaging" (AC ¶ 104), and in "communications with … consumers" (*id*. ¶ 62), do not satisfy Rule 9(b). *See Kowalsky*, 2015 WL 5770523, at *9.

**Regulatory Violation**. The purported regulatory violations Plaintiffs allege—violations of immaterial federal laws—are insufficient as a matter of law to support a CFA claim. "The third category of unlawful acts consists of violations of *specific regulations promulgated under the [CFA]*." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994) (emphasis added).

Rather than alleging a violation of any regulation promulgated under the CFA, Plaintiffs amended their complaint to add allegations regarding unrelated federal laws. Specifically, Plaintiffs now allege that Defendants violated the Cable Privacy Act, the FTC Act, the Cable Communications Policy Act, and the Children's Online Privacy Protection Act ("COPPA"). *See* AC ¶¶ 7, 16, 76-91, 132. Such allegations

cannot support a CFA claim because settled New Jersey law forecloses the assertion of a CFA claim premised on alleged violations of regulations other than those promulgated under the CFA.[6] *E.g.*, *Davis v. Bankers Life & Casualty Co.*, 2016 WL 7668452, at *9 (D.N.J. Dec. 23, 2016) (declining to "expand the scope of regulatory violations that give rise to [CFA] liability" because "only regulations enacted under N.J.S.A. 56:8-4 provide a basis for a claim under the [CFA]"); *Stoecker v. Echevarria*, 408 N.J. Super. 597, 624 (App. Div. 2009) (alleged violations of another New Jersey statute did not provide a basis for CFA claim). Moreover, Plaintiffs' conclusory allegations merely quote from those federal statutes, falling well short of stating a claim. *See Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.").[7]

Nor can Plaintiffs' claims be saved by their added reference to a complaint

---

[6] Nor could Plaintiffs assert claims under those federal statutes directly. For example, COPPA does not include a private right of action and is enforced primarily by the Federal Trade Commission. 15 U.S.C. §§ 6501-6506. Similarly, "[t]he FTC Act does not provide for a private right of action." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *8 n.18 (D.N.J. May 2, 2013). Further, Section 551 of the Cable Communications Policy Act applies only to a "cable operator," and not to manufacturers of Smart TVs. 47 U.S.C. § 551.

[7] Plaintiffs' unadorned assertion that "Defendants' actions are an unconscionable commercial practice in violation of the CFA" (AC ¶ 14), similarly misses its mark. They are required to plead "substantial aggravating circumstances" to support such a claim. *Cox*, 138 N.J. at 18; *see also DiNicola v. Watchung Furniture's Country Manor*, 232 N.J. Super. 69, 72-73 (App. Div. 1989), *cert. denied*, 117 N.J. 126 (1989); *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 25-31 (App. Div. 1985). The AC includes no such allegations.

filed by The Electronic Privacy Information Center alleging violations of the FTC Act and COPPA related to Samsung's Smart TVs. AC ¶¶ 92-101. These unrelated grievances filed by a non-party resulted in *no* FTC action against Samsung, and, in any event, alleged violations of federal law cannot sustain a CFA claim. *See Cox*, 138 N.J. at 18.

### c.   Plaintiffs Have Not Alleged Ascertainable Loss

Plaintiffs' CFA claims fail for yet another reason: the AC does not plead an "ascertainable loss" under the CFA that is "quantifiable and measurable," not "hypothetical or illusory." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Plaintiffs cannot plead an ascertainable loss simply by claiming dissatisfaction with their Smart TVs without showing how they received a product worth less than the Smart TVs they were promised. *See, e.g.*, *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) ("Plaintiffs have not explained how they experienced any out-of-pocket loss because of their purchases, or that the soda they bought was worth an amount of money less than the soda they consumed. At most, plaintiffs simply claim that their expectations of the soda were disappointed.").

To plead "ascertainable" loss, New Jersey courts require "the consumer to quantify the difference in value between the promised product and the actual product received." *Spera*, 2014 WL 1334256, at *5 (dismissing CFA claim). While the exact amount of loss does not need to be stated in the complaint, a "[p]laintiff must allege

29

a means of quantifying his loss in order to show ascertainable loss." *Eberhart v. LG Elecs. USA, Inc.*, 2015 WL 9581752, at *5 (D.N.J. Dec. 30, 2015) (Arleo, J.); *see also Thiedemann*, 183 N.J. at 248 ("The certainty implicit in the concept of an 'ascertainable loss' is that it is quantifiable or measurable.").

The AC articulates no "means of quantifying" Plaintiffs' hypothetical claim of loss. Instead, Plaintiffs allege merely that they "have suffered harm in the form of paying monies to purchase the Smart TV when they would not have otherwise." AC ¶ 149. As a matter of law, this is not enough. *See Eberhart*, 2015 WL 9581752, at *5 (dismissing CFA claim where allegations "[did] not provide a method to determine the premium paid for a higher refresh rate on his television … [or] prices for comparable televisions without the deceptive advertising").[8]

### B. Plaintiffs' Common Law Fraud Claim Still Lacks the Particularity Required by Rule 9(b)

For many of the same reasons, Plaintiffs' common law fraud claim also fails to satisfy Rule 9(b). *See Eberhart*, 2015 WL 9581752, at *5.

---

[8] *See also Hoffman v. Nordic Naturals, Inc.*, 2015 WL 179539, at *6 (D.N.J. Jan. 14, 2015), *aff'd*, 837 F.3d 272 (3d Cir. 2016) (dismissing CFA claim because allegations were "the same canned buzzwords that this Court [has] deemed broad and conclusory, and insufficient to provide the specificity that is required in pleading ascertainable loss"); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) ("[A]bsent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.").

Under both New Jersey and Florida law,[9] to prosecute a fraud claim, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Eberhart*, 2015 WL 9581752, at *5; *accord Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344, 1352 (S.D. Fla. 2015). Plaintiffs have not pleaded any of those elements with particularity.

Plaintiffs' AC includes no facts in support of Plaintiffs' assertion that "Defendants made material misstatements and omissions concerning the Smart TVs that they sold to Plaintiffs and the Class Members." AC ¶ 181. This boilerplate assertion lacks the "date, time and place of the alleged fraud,"[10] and the AC does not "otherwise inject precision or some measure of substantiation into a fraud allegation" sufficient to sustain such a claim. *Frederico*, 507 F.3d at 200; *accord Space Coast*

---

[9] New Jersey law applies to Plaintiff Mills' common law fraud claim because no actual conflict exists between the relevant laws of New York and New Jersey. *Maniscalco*, 709 F.3d at 206 (applying forum state law absent conflict). However, there is an actual conflict between Florida and New Jersey common law fraud, and thus Florida law applies to Plaintiff White's claim, as explained in Section II.A.1, *supra*. *See Miller*, 2015 WL 3965608, at *6 (applying Florida law because "a conflict exists between New Jersey and Florida common law fraud").

[10] Common law fraud claims in Florida are subject to a four-year statute of limitations, Fla. Stat. § 95.11(3)(j), shorter than New Jersey's six-year statute of limitations, N.J.S.A. 2A:14–1. To the extent Plaintiff White's Smart TV purchases occurred prior to March 16, 2013, his claims are time-barred.

*Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) (dismissing common law fraud claim under Rule 9(b)). Moreover, the AC attributes no particular statement or omission to any Defendant. On this basis alone, the common law fraud claim should be dismissed. *See Donachy*, 2012 WL 869007, at *3 (dismissing claims where defendants "lump[ed]" together).

Plaintiffs also have not adequately alleged reasonable reliance and actual damages. Nor could they, because their AC concedes that Defendants' privacy policies included instructions for uninstalling the features about which Plaintiffs now complain. *See* AC ¶¶ 63, 68. The boilerplate allegation that Plaintiffs "reasonably relied on these misstatements and omissions, and suffered damages as a result," (AC ¶ 184), is conclusory and implausible. *See Eberhart*, 2015 WL 9581752, at *6 (dismissing fraud claim alleging plaintiff had "reviewed advertisements and technical specifications," as "not meaningfully more specific than the vague statement that plaintiff 'relied on … representations'"); *accord Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1126 (M.D. Fla. 2009) (dismissing fraud claim where plaintiff did not "describe his reliance on the alleged misrepresentations and concealments of Defendants").[11]

---

[11] *See also, e.g.*, *McBrearty v. Fifth Generation, Inc.*, 2015 WL 4749040, at *4 (D.N.J. Aug. 6, 2015) (dismissing fraud claim where complaint "fails to identify with specificity how Plaintiffs relied on Defendant's [representations], how that reliance was reasonable, and how that reliance caused them any detriment"); *Montich*,

In short, Plaintiffs' claim of common law fraud "simply parrots the elements of the cause of action," and should be dismissed with prejudice. *Hoffman v. DSE Healthcare Sols., LLC*, 2014 WL 2119753, at *5 (D.N.J. May 21, 2014).

## III.   PLAINTIFFS' CONTRACT CLAIMS FAIL

As is true of their other claims, Plaintiffs fail to plead the predicate facts required to support their contract-based causes of action, such as the existence of a contract or warranty in the first place. Plaintiffs merely recite the elements of these claims. Such allegations are insufficient to satisfy the federal pleading standard in the Third Circuit, and are shockingly (and tellingly) sparse given the amount of time Plaintiffs have had to research their claims.

### A.   Plaintiffs Fail to State a Claim For Breach of Contract

Plaintiffs have failed to allege any of the elements of a breach of contract claim—the one new claim in the AC. "The classic elements of a breach of contract claim are (1) the existence of a valid contract, (2) defective performance, and (3) damages." *Yapak, LLC v. Mass. Bay Ins. Co.*, 2009 WL 3366464, at *1 (D.N.J. Oct. 16, 2009).

Here, Plaintiffs merely allege that Defendants "breached as a matter of law

---

849 F. Supp. 2d at 453 (dismissing fraud claim where plaintiff did not allege "what representations she relied on, if any, or where and how those representations were made, … and whether Plaintiff would have acted differently had she known about the alleged defect").

any words transmitted to Plaintiffs … that are construed in any way to form a valid contract." AC ¶ 205. Plaintiffs must allege facts sufficient to satisfy the elements of a contract claim, *Yapak*, 2009 WL 3366464, at *1, yet Plaintiffs do not even identify the specific contract they contend Defendants breached, let alone any factual allegations of breach or resulting damages. These threadbare allegations will not suffice. Plaintiffs' breach of contract claim must be dismissed. *See id.* (dismissing claim where plaintiff alleged no contract terms or damages).[12]

### B.    Plaintiffs Still Fail to State a Claim For Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the covenant good faith and fair dealing fails for similar reasons. Plaintiffs summarily allege that Defendants, acting "in bad faith and/or with malicious motive," "breached the covenant of good faith and fair dealing by secretly monitoring and tracking Plaintiffs and the members of the Class and transmitting their private, confidential data to third parties." AC ¶¶ 192-96. Such conclusory allegations fail to state a claim. *See, e.g.*, *Freshpair.com, Inc. v. Butlein*,

---

[12] Plaintiffs assert that any contract between Plaintiffs and Defendants "would be … a classic Contract of Adhesion." AC ¶ 204. That is not a cause of action under New Jersey law. *See Alboyacian v. BP Prods. N. Am., Inc.*, 2011 WL 5873039, at *5 (D.N.J. Nov. 22, 2011) ("unconscionability is actually [not] a cause of action that a plaintiff may bring in the affirmative"). Under Florida law, unconscionability is also a defense to enforcement of a contract rather than an affirmative cause of action. *See, e.g.*, *Cowin Equip. Co. v. Gen. Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) ("the equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages" (quotations omitted)).

2017 WL 2968395, at *3 (D.N.J. July 11, 2017) (dismissing claim where plaintiff's "conclusory allegations and vague group pleading" failed "to provide with any specificity which Defendants or which actions allegedly breached the covenant[.]").

To state a claim for breach of an implied covenant of good faith and fair dealing in New Jersey, Plaintiff Mills (and Plaintiff White, if the Court determines New Jersey law should apply to his claim[13]) must allege that:

> (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm.

*Eberhart*, 2015 WL 9581752, at *7. Plaintiffs have not satisfied these requirements.

*First*, as was the case with their breach of contract claim, Plaintiffs' good faith and fair dealing claim fails to identify the specific contract at issue. "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Wade v. Kessler Institute*, 343 N.J. Super. 338, 345 (App. Div. 2001), *aff'd*

---

[13] Florida does not recognize the doctrine as giving rise to an independent cause of action. *See Saxon Fin. Grp., Inc. v. Rath*, 2012 WL 3278662, at *7 (S.D. Fla. Aug. 9, 2012) ("The breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation."); *see also Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("[A] claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."). Because Florida and New Jersey law (which recognizes this cause of action), are in conflict, Florida law should apply to Plaintiff White's claim. *See* Section II.A.1, *supra*.

*as modified*, 172 N.J. 327 (2002). This omission is fatal and demands dismissal.

*Second*, Plaintiffs' allegation that Defendants acted in bad faith (AC ¶ 196), is "no more than a legal conclusion of bad faith which cannot support a claim for relief under the *Iqbal* standard." *Ziyadeh v. ACE European Grp.*, 2013 WL 12148853, at *5 (D.N.J. Sept. 5, 2013) (dismissing covenant of good faith and fair dealing claim). "[B]ad motive or intention is essential, and an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co*., 457 F.3d 312, 329 (3d Cir. 2006) (citation omitted). Here, Plaintiffs have not pleaded any facts to support their assertion of bad faith. Nor could they. As Plaintiffs concede, Defendants' privacy policies include instructions for uninstalling the very features about which Plaintiffs complain. AC ¶¶ 63, 68.

*Third*, Plaintiffs fail to allege any damages suffered as a result of a breach of this duty. "Damage is an element of the [good-faith covenant] claim which Plaintiff must allege to survive Defendant's motion to dismiss." *DeHart v. U.S. Bank, N.A., ND*, 811 F. Supp. 2d 1038, 1048 (D.N.J. 2011). The AC merely alleges damages for unspecified "injuries in an amount to be determined at trial." AC ¶ 196. Where, as here, Plaintiffs have alleged nothing more than that they "[have] been damaged," the claim should be dismissed. *DeHart*, 811 F. Supp. 2d at 1048; *see also Giercyk*, 2015 WL 7871165, at *6 (same).

### C.     Plaintiffs Still Fail to State a Claim For Breach of Express Warranty

Plaintiffs' claim for breach of express warranty is similarly devoid of the most basic factual support. To state a claim for breach of express warranty, Plaintiffs must "allege the specific affirmation, promise or guarantee made" to them, by the relevant manufacturer, as to the relevant device. *See*, *e.g.*, *Mendez v. Shah*, 28 F. Supp. 3d 282, 295 (D.N.J. 2014) (dismissing breach of express warranty claim for failure to allege "what [defendant] expressly warranted").

Plaintiffs assert that Defendants "expressly warranted, among other things, that they would properly and adequately protect Plaintiffs' and the Class members' private data and personal information" (AC ¶ 187), and, on that basis, they claim Defendants breached an alleged express warranty "by not providing a product that … adequately protect[ed] consumers' private information and data, as advertised by Defendants," (*id*. ¶ 190). But in their 44-page, 205-paragraph AC, Plaintiffs do not identify a single affirmative statement by any of the Defendants about anything, let alone a promise of the sort Plaintiffs allege above. This omission dooms their claim. *E.g.*, *Arlandson v. Hartz Mountain Corp*., 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (dismissing express warranty claim for failure to "identify the actual language or any source of the alleged warranty"); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 602 (D.N.J. 2015) (dismissing claims where "[w]ho said what to whom,

where, when, and how, are left unexpressed"). Indeed, Plaintiffs have not even al-
leged that they read the warranties to which they vaguely refer. *E.g.*, *Eberhart*, 2015
WL 9581752, at *7 (dismissing express warranty claim for failure to allege that the
identified statement was actually read). These failures warrant dismissal.[14]

### D.    Plaintiffs Still Fail to State a Claim For Unjust Enrichment

Plaintiffs' unsupported claim that Defendants were unjustly enriched by sell-
ing Plaintiffs' private information for monetary gain also fails. "[T]o claim unjust
enrichment, a plaintiff must allege that (1) at plaintiff's expense (2) defendant re-
ceived [a] benefit (3) under circumstances that would make it unjust for defendant
to retain [the] benefit without paying for it." *Snyder v. Farnam Cos.*, 792 F. Supp.
2d 712, 723-24 (D.N.J. 2011). "Unjust enrichment is not an independent tort cause
of action; rather, it is generally used in the context of quasi-contractual liability."
*Adamo v. Jones*, 2016 WL 356031, at *12 (D.N.J. Jan. 29, 2016) (Arleo, J.).

Plaintiffs assert without factual support that Defendants "[took] Plaintiffs' and
Class Members' private information and capitaliz[ed] on it by selling it to third par-
ties for Defendants' monetary gain" where "Plaintiffs and Class Members would not
have voluntarily provided that information for free." AC ¶¶ 197-202. Such allega-
tions are insufficient as a matter of law.

---

[14] To the extent Plaintiffs' claims arise from purchases made prior to March 16, 2013,
they also are time-barred. *See* N.J. Stat. § 12A:2-725(1) (requiring breach of war-
ranty claim "be commenced within four years after the cause of action has accrued").

38

*First*, the AC fails to allege that Plaintiffs purchased their Smart TVs directly from Defendants, rather than from a third-party retailer, and therefore fails to allege that Plaintiffs conferred any benefit on Defendants. "Under New Jersey law, an indirect purchaser cannot succeed on a claim for unjust enrichment." *Weske v. Samsung Elecs. Am., Inc.*, 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012). For this reason alone, the Court should dismiss Plaintiffs' unjust enrichment claim.

*Second*, in *Google*, plaintiffs similarly claimed that Google had caused them "loss" by using their browsing history to sell advertisements. 806 F.3d at 148-49. Plaintiffs argued they could have realized on their own the value of their browsing history, and that Google had deprived them of a potential earning opportunity. *Id.* The district court rejected this theory, and the Third Circuit affirmed:

> [Plaintiffs] allege no facts suggesting that they ever participated or intended to participate in the market they identify, or that the defendants prevented them from capturing the full value of their internet usage information for themselves. For example, they do not allege that they sought to monetize information about their internet usage, nor that they ever stored their information with a future sale in mind. Moreover, the plaintiffs do not allege that they incurred costs, lost opportunities to sell, or lost the value of their data as a result of their data having been collected by others.

*Id.* at 148-49.

Similarly, in *Nickelodeon*, the plaintiffs sued for unjust enrichment, claiming that the defendants had surreptitiously collected information about their online activities and resold it. 2014 WL 3012873, at *1-2. The court dismissed the claim,

noting "[t]here are no allegations that Plaintiffs conferred any benefit on Defendants, nor are there any allegations that Plaintiffs expected or should have expected any sort of remuneration from them." *Id*. The court further held that "the unjust enrichment doctrine requires that the plaintiff show that it expected remuneration from the defendant at the time it performed." *Id.*

Like the plaintiffs in *Google* and *Nickelodeon*, Plaintiffs have not alleged that they expected some benefit from Defendants. Nor have they pleaded facts showing that they could have monetized the information that Defendants allegedly collected. For all of these reasons, Plaintiffs' unjust enrichment claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the AC in its entirety with prejudice. *See, e.g.*, *VT Investors v. R&D Funding Corp.*, 733 F. Supp. 823, 825, 843 (D.N.J. 1990) (dismissing certain claims with prejudice after amendments "fail[ed] to remedy the original deficiencies").

Dated: February 23, 2018

By: *s/ Michael R. McDonald*
MICHAEL R. MCDONALD
mmcdonald@gibbonslaw.com
KATE ELIZABETH JANUKOWICZ
kjanukowicz@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500

ERIC C. BOSSET (*pro hac vice*)
ebosset@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000

SIMON J. FRANKEL (*pro hac vice*)
sfrankel@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: (415) 591-6000

**Attorneys for Defendant**
**SAMSUNG ELECTRONICS**
**AMERICA, INC.**

Respectfully submitted,

By: *s/ Jeffrey J Greenbaum*
JEFFREY J. GREENBAUM
jgreenbaum@sillscummis.com
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Fax: (973) 643-6500

MICHAEL H. RUBIN (*pro hac vice*)
michael.rubin@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8154

**Attorneys for Defendant**
**LG ELECTRONICS U.S.A. INC.**

By: *s/ Mark S. Melodia*
MARK S. MELODIA
mmelodia@reedsmith.com
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 205-6078
Fax: (212) 521-5450

PAUL J. BOND
pbond@reedsmith.com
136 Main St., Suite 250
Princeton, NJ 08540
Telephone: (609) 520-6393
Fax: (609) 951-0824

**Attorneys for Defendant**
**SONY ELECTRONICS INC.**