# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR. and CHRISTOPHER MILLS, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., SONY CORPORATION, and SONY ELECTRONICS INC.,<br><br>And<br><br>John and Jane Does (1-Unlimited)<br><br>And<br><br>ABC Corporations (1-Unlimited),<br><br>          Defendants. | Civil Action No. 17-1775 (MCA)(SCM)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J.<br><br>**Return Date: April 2, 2018**<br><br>(Oral Argument Requested)<br><br>*Document Electronically Filed* |

---

**DEFENDANTS LG ELECTRONICS USA, INC., SAMSUNG ELECTRONICS AMERICA, INC., AND SONY ELECTRONICS INC.'S JOINT REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

---

| | | |
|---|---|---|
| GIBBONS PC<br>One Gateway Center<br>Newark, NJ 07102<br>Tel.: (973) 596-4500<br>*Attorneys for Samsung Electronics America, Inc.* | SILLS CUMMIS & GROSS P.C.<br>One Riverfront Plaza<br>Newark, NJ 07102<br>Tel.: (973) 643-7000<br>*Attorneys for LG Electronics U.S.A., Inc.* | REED SMITH LLP<br>136 Main St., Suite 250<br>Princeton, NJ 08540<br>Tel.: (609) 987-0050<br>*Attorneys for Sony Electronics Inc.* |

*Additional counsel on signature page*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ..........................................................................................4

    A.    Plaintiffs Have Not Responded To Defendants' VPPA
        Arguments .................................................................................4

        1.    Plaintiffs Do Not Address Binding Third Circuit
                Precedent Foreclosing Their Argument That Defendants
                Collected PII .................................................................4

        2.    Plaintiffs Have Not Alleged That Defendants Are "Video
                Tape Service Providers" Or That Plaintiffs Are
                "Subscribers" Under The VPPA .................................7

    B.    Plaintiffs Have Not Responded to Defendants' Wiretap Act
        Arguments .................................................................................8

    C.    Plaintiffs Have Failed to Refute Defendants' Arguments for
        Dismissing Their CFA Claims ...............................................12

        1.    New Jersey Does Not Have the "Most Significant
                Relationship" to Plaintiffs' Claims .........................12

        2.    Plaintiffs' Narrowed CFA Claim Fails ....................13

    D.    Plaintiffs Fail to Salvage the Unjust Enrichment Claim ....................15

    E.    Plaintiffs Fail to Support the Remaining Contract Claims ................15

CONCLUSION .....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................8

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006) ....................................................................12

*Busse v. Homebank LLC*,
   2009 WL 424278 (D.N.J. Feb. 18, 2009) ..............................................13

*Chattin v. Cape May Greene, Inc.*,
   243 N.J. Super. 590 (App. Div. 1990) ...................................................14

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ............................................................13

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) .....................................................................................14

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ...............................................................4, 5

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ...............................................................8

*Francese v. Am. Modern Ins. Grp., Inc.*,
   2017 WL 4842392 (D.N.J. Oct. 26, 2017) .............................................14

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015) ........................................................... 3, 9, 11

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) .............................................................. passim

*In re Vizio, Inc.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..........................................4, 5, 6, 8

iii

*Maniscalco v. Brothers International*,
   709 F.3d 202 (3d Cir. 2013)..................................................................3, 12

*McDermott v. Clondalkin Grp., Inc.*,
   649 F. App'x 263 (3d Cir. 2016) ...................................................................10

*Meale v. City of Egg Harbor City*,
   2015 WL 3866222 (D.N.J. June 23, 2015) ............................................................1

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) .................................................................13

*Slinko-Shevchuk v. Ocwen Fin. Corp.*,
   2015 WL 1271963 (D.N.J. Mar. 18, 2015).............................................................14

*Spera v. Samsung Elecs. Am., Inc.*,
   2014 WL 1334256 (D.N.J. Apr. 2, 2014) .............................................................13

*Sterk v. Best Buy Stores, L.P.*,
   2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).........................................................6

*Thomas v. Thomas*,
   2012 WL 4895117 (M.D. Pa. Oct. 15, 2012) , *aff'd*, 529 F. App'x 181 (3d
   Cir. 2013) ......................................................................................10

## STATUTES

18 U.S.C. § 2510...................................................................................8

18 U.S.C. § 2510(8) ...........................................................................3, 9

18 U.S.C. § 2520...................................................................................8

18 U.S.C. § 2520(e) ..............................................................................11

18 U.S.C. § 2710(a)(1) ............................................................................8

18 U.S.C. § 2710(a)(4) ............................................................................7

18 U.S.C. § 2710(b) ...............................................................................4

18 U.S.C. § 2710(b)(1)..........................................................................6, 8

18 U.S.C. § 2710(c)(3)............................................................................11

## PRELIMINARY STATEMENT

Plaintiffs' Opposition is a mishmash of rhetoric, hand-waving, unsubstantiated articles, plagiarized portions of out-of-circuit papers, and affirmative misrepresentations of controlling law. Glossing over dispositive problems with their case that they have been unable to cure, despite having had *two* opportunities and nearly a year to do so, the Opposition fails even to respond to most of Defendants' arguments, and rebuts none of them where attempted.

Plaintiffs offer no defense for their failure to identify the specific Smart TVs that purportedly form the foundation for their claims. Nor do they justify their failure to assert any specific factual allegations against a single defendant. Plaintiffs' argument that they are entitled to treat several distinct companies as a single entity because they imagine that Defendants all participated, without differentiation, in an "illegal industry standard" (Opp. at 26) is tautological and predicated on facts not alleged in the Amended Complaint ("AC"). No facts could support such an argument, and they certainly cannot be introduced for the first time in an Opposition brief. *See Meale v. City of Egg Harbor City*, 2015 WL 3866222, at *7 (D.N.J. June 23, 2015) (Plaintiffs "cannot amend [their] complaint via [their] opposition brief."). These failures alone warrant dismissal of the AC, but Plaintiffs have also failed to show that any of their claims are proper as a matter of law.

***Video Tape Privacy Protection Act***. Plaintiffs cannot explain how the

1

information they allege Defendants received—"a selection of pixels on the screen," "IP address, wired and wireless MAC addresses, WiFi signal strength, [and] nearby WiFi access points" (AC ¶¶ 48-49)—qualifies as "personally identifiable information" ("PII") under the Video Tape Privacy Protection Act ("VPPA"). Controlling Third Circuit law defines PII as "information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits." *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 280-90 (3d Cir. 2016) ("*Nickelodeon*"). They also do not allege a disclosure, which the Act requires for liability to attach. These failures doom their VPPA claim.

Rather than confront these deficiencies, Plaintiffs mislead the Court by focusing on a Central District of California case without disclosing that it conflicts with the Third Circuit's controlling *Nickelodeon* decision, or that the California case was effectively overruled when the Ninth Circuit adopted *Nickelodeon*. Plaintiffs also devote a significant portion of their brief to arguments copied *verbatim* from the opposition brief filed in that same inapposite California case for the purpose of asserting (incorrectly) that Defendants are "video tape service providers" and that Plaintiffs are "subscribers" under the VPPA. *See* Opp. at 8-12; Decl. of Jeffrey J. Greenbaum ("Greenbaum Decl."), Ex. 1. These arguments are not supported by Plaintiffs' allegations or Third Circuit law.

***Wiretap Act***. Plaintiffs do not address Defendants' argument that their

Wiretap Act claims fail because each respective Defendant would be a direct party to the communications alleged in the AC, and a party to a communication cannot "intercept" it within the meaning of the Act. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135-45 (3d Cir. 2015) ("*Google*"). Plaintiffs also fail to explain how the electronic data described in their pleading constitutes the "contents" of a "communication." *See* 18 U.S.C. § 2510(8); *Google*, 806 F.3d at 143. Nor do Plaintiffs cite allegations that show the identity, contents, or circumstances of *any* communication they vaguely claim was intercepted—because none exists.

**New Jersey Consumer Fraud Act**. Plaintiffs, both non-residents, concede that they have no connection to New Jersey. Instead, they argue in the face of controlling case law that the location of Defendants' headquarters in New Jersey is sufficient to support applying the New Jersey Consumer Fraud Act ("CFA") to claims by out-of-state residents. That argument is expressly foreclosed by *Maniscalco v. Brothers International*, 709 F.3d 202, 209 (3d Cir. 2013). Further, Plaintiffs' justification for failing to plead their CFA claims with particularity—namely that their allegations made pursuant to the CFA somehow do not sound in fraud—cannot be squared with their allegations of fraud, case law holding to the contrary, or commonsense.

**Unjust enrichment and contract-based claims**. Plaintiffs did not attempt to plead the most basic elements of these claims or to respond to Defendants' Motion.

More than a year after this lawsuit began, Plaintiffs' second try at pleading

fares no better than their first, and the case should be dismissed with prejudice.

## ARGUMENT

### A.    Plaintiffs Have Not Responded To Defendants' VPPA Arguments

Defendants' Motion demonstrated that to state a VPPA claim, a plaintiff must allege that a "video tape service provider" ("VTSP") knowingly disclosed the PII of a "subscriber." 18 U.S.C. § 2710(b). Third Circuit law compels dismissal of Plaintiffs' VPPA claim because the information Plaintiffs contend Defendants received does not constitute PII under the Act, and they did not allege a disclosure. *See Nickelodeon*, 827 F.3d 262; Mot. at 9-12. Instead of addressing those arguments, Plaintiffs cut-and-paste from a brief filed in an inapposite Central District of California case whose reasoning, they fail to disclose, has been effectively overruled by the Ninth Circuit. *See In re Vizio, Inc. Consumer Privacy Litigation*, Case No. 16-ml-02693-JLS (KESx) (C.D. Cal) (Dkt. 121) ("*Vizio* Opposition"); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) (adopting Third Circuit's *Nickelodeon* PII standard).[1]

### 1.    Plaintiffs Do Not Address Binding Third Circuit Precedent Foreclosing Their Argument That Defendants Collected PII

In *Nickelodeon*, the Third Circuit interpreted the VPPA's phrase "personally identifiable information" to mean "information that would, with little or no extra

---

[1] Greenbaum Decl., Ex. 1.

effort, permit an ordinary recipient to identify a particular person's video-watching habits." 827 F.3d at 284; *see also id.* at 290. Applying that definition, the Court held that "static digital identifiers," like IP addresses, "browser fingerprints," and "unique device identifiers," *do not* constitute PII under the Act. *Id.* at 281-82, 283, 290. *Nickelodeon*'s holding forecloses Plaintiffs' VPPA claim, because Plaintiffs allege only that Defendants received "static digital identifiers." AC ¶ 49. Moreover, Plaintiffs do not (because they cannot) allege how an "ordinary recipient" of that information could use it "to identify a particular person[]" "with little or no extra effort." *Nickelodeon*, 827 F.3d at 284; *see* Mot. at 10-12.

Instead of responding to this argument, Plaintiffs merely restate the very allegations that *Nickelodeon* deems insufficient and declare that they "satisf[y] the VPPA pleading standard laid down by the Third Circuit." Opp. at 13. Plaintiffs' argument relies on the reasoning and holding reached in the out-of-circuit district court *Vizio* case, (Opp. at 12-16), which considered how to interpret the VPPA's "personally identifiable information" phrase with no Ninth Circuit guidance. That court chose to adopt the First Circuit's reasoning in *Yershov* over the *Nickelodeon* standard. *See Vizio*, 238 F. Supp. 3d at 1224. However, the Ninth Circuit subsequently held the opposite and expressly "adopt[ed] the Third Circuit's 'ordinary person' standard." *Eichenberger*, 876 F.3d at 985. The Court should give no weight to *Vizio*.

In any event, having only alleged that Defendants received "static digital identifiers," Plaintiffs have not alleged disclosure of PII. *See Nickelodeon*, 827 F.3d at 281-83. Certainly, Plaintiffs do not provide any explanation as to how their allegations show that an "ordinary recipient" could use such information to identify a specific individual "with little or no extra effort." *Id.* at 284. Plaintiffs' VPPA claim fails.[2]

The VPPA claim also fails for another reason: Plaintiffs fail to answer Defendants' argument that the AC does not allege any disclosure of PII, as required by the Act. *See* Mot. at 11-12; 18 U.S.C. § 2710(b)(1). While the AC alleges that Defendants received information and sent it to their own servers, (AC ¶¶ 48-57), neither allegation amounts to a "disclosure" under the VPPA. Mot. at 11-12; *see Nickelodeon*, 827 F.3d at 280-81 (parties who receive PII cannot be held liable under VPPA); *Sterk v. Best Buy Stores, L.P.*, 2012 WL 5197901, at *3 (N.D. Ill. Oct. 17, 2012) (intra-company disclosure of PII not a "disclosure" under VPPA).[3]

---

[2] Plaintiffs include a block quotation from *Vizio* that discusses MAC addresses, but the quotation does not help Plaintiffs. As noted above, *Vizio* is inapposite and no longer good law on this very point. And the fact-laden allegations regarding MAC addresses in the *Vizio* complaint stand in stark contrast to the threadbare allegation in the AC, which simply references "wired and wireless MAC addresses" and says no more. *Compare* Greenbaum Decl., Ex. 2 at ¶¶ 68-80, *with* AC ¶ 49.

[3] Lifting straight from the *Vizio* Opposition again, Plaintiffs argue that the Court cannot hold that the AC fails to allege a disclosure of PII because that question poses "a dispute of scientific fact." Opp. at 15. While it is not clear what exactly that

2.      **Plaintiffs Have Not Alleged That Defendants Are "Video Tape Service Providers" Or That Plaintiffs Are "Subscribers" Under The VPPA**

Skirting the dispositive PII issue, Plaintiffs delve into a lengthy argument that Defendants are "video tape service providers" ("VTSP") and Plaintiffs are "subscribers" under the Act. Opp. at 8-12. Neither argument is correct.

Defendants bear no resemblance to a "person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." § 2710(a)(4). Indeed, it is Plaintiffs who allege that Defendants are manufacturers of electronics, including Smart TVs that purportedly allow users to download third-party applications, some of which can play videos. AC ¶¶ 36-40. But that same functionality exists in or can be added to almost every personal electronic device on the market. As a practical matter, the VPPA cannot reach that far.

Plaintiffs, nevertheless, again rely on *Vizio*—a single, non-binding out-of-district *case*—to argue that the AC's single nonspecific allegation that "Defendants' Smart TVs are delivered to consumers with many pre-installed applications … includ[ing] … Netflix, YouTube, [etc.]," (AC ¶ 49), suffices to render Defendants VTSPs under the Act. Opp. at 8-10. But even putting aside the fact that *Vizio* does not bind this Court, the fact is that Plaintiffs here have not made any factual

---

means, *Nickelodeon* makes clear that dismissal at the pleading stage is perfectly appropriate where, as here, a plaintiff does not and cannot allege the requisite disclosure. 827 F.3d at 290.

allegations sufficient to plead that Defendants are VTSPs. The complaint in *Vizio* alleged that Vizio developed sophisticated "discovery and engagement software" that it built into the specific TVs identified in the complaint that allowed consumers, who paid a premium price, to "seamlessly access [third-party app] content in their homes," and effectively turned the TVs into streaming devices. *Vizio*, 238 F. Supp. 3d at 1221-22. There are no similar allegations against Defendants in the AC, and Defendants cannot plausibly be considered VTSPs under the Act. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs must also allege they are "subscribers" of the pertinent VTSP to state a VPPA claim. § 2710(a)(1), (b)(1). While Plaintiffs cut-and-paste their "subscriber" argument from the *Vizio* Opposition, the AC *in this case* alleges absolutely nothing about them being subscribers—nor could it. Plaintiffs never paid Defendants for any of the third-party applications that purportedly rendered Defendants VTSPs. Plaintiffs' inability to allege otherwise is yet another reason for dismissal. *See Nickelodeon*, 827 F.3d at 279 n.106 ("[P]ersons who download a free application to watch videos on their smartphones are not 'subscribers' under the Act.") (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015))

### B.   Plaintiffs Have Not Responded to Defendants' Wiretap Act Arguments

The Wiretap Act provides a narrow right of action against someone who "intentionally intercepts" the "contents" of a "wire, oral, or electronic

8

communication" using a "device." 18 U.S.C. §§ 2510, 2520.[4] The Defendants'
Motion established three independent grounds for dismissal of the Wiretap Act
claims. Plaintiffs' Opposition does not overcome one of these fatal flaws, much less
all.

*First*, as the Third Circuit has held, a Wiretap Act claim cannot lie against a
defendant who was a party to the communication at issue. *Google*, 806 F.3d at 143
(dismissing Wiretap Act claim, as "it is not unlawful for a private person 'to intercept
a wire, oral, or electronic communication where such person is a party to the
communication'"); Mot. at 15-17. "Tautologically, a communication will always
consist of at least two parties: the speaker and/or sender, and at least one intended
recipient." *Google*, 806 F.3d at 143. Whether Plaintiffs' intended focus is on the
communications that Defendants' Smart TVs transmit to Plaintiffs at Plaintiffs' own
request or those sent to Defendants' servers, the result is the same—Defendants are
direct participants in all relevant communications. Plaintiffs do not address this
argument in Opposition, and cannot cure this defect by amendment.[5]

---

[4] After addressing the Wiretap Act on pages 16-22 of their brief, Plaintiffs curiously
tack a five-line argument on to the end of their brief entitled "Plaintiffs' Have
Properly Pled Violations Of The Electronic Communications Privacy Act," which
contains no substantive content. Opp. at 28. The Electronic Communications Privacy
Act is the formal name of the Wiretap Act.

[5] The Opposition's extended discussion of "real-time interception," Opp. at 16-18,
is apropos of nothing. *In re Carrier IQ, Inc.* is not relevant because Carrier IQ was

9

*Second*, a Wiretap Act claim must allege the interception of the "contents" of a communication that go to its "substance, purport, or meaning." § 2510(8); Mot. at 17-18. At its core, "contents" under the Wiretap Act means "information the user intended to communicate, such as the spoken words of a telephone call." *Nickelodeon*, 2014 WL 3012873, at *14 (D.N.J. 2014). However, the AC does not allege that Defendants intercepted *any* specific communications of Plaintiffs. Plaintiffs' assertion that Defendants captured "Plaintiffs' requests for programming," (Opp. at 18), is a gross mischaracterization of what the AC actually alleges. The AC alleges only that Defendants intercepted "pixels on the screen," (AC ¶ 48), which, upon Plaintiffs' information and belief,[6] can be used to identify visual programming "by employing the services of sophisticated data processors and information-recognition companies," (*id.* ¶ 4; *see also id.* ¶¶ 5, 44, 53). Plaintiffs do not allege in the AC, as their Opposition suggests, that the "substance" of their programming requests is self-evident from the communications at issue. And the

_____

not a direct party to any of the relevant communications. 78 F. Supp. 3d 1051, 1078-79 (N.D. Cal. 2015).

[6] Plaintiffs allege over 30 conclusory allegations *on information and belief*. Plaintiffs' sole justification for doing so is that they also cite various "authorities" throughout their AC. Opp. at 21. However, Plaintiffs' argument does not point to a single case that supports their proposition that simply cross-referencing a universe of unverified news articles or a complaint to the FTC that did not result in agency action renders plausible the multiple "information and belief" allegations that plague Plaintiffs' AC.

Third Circuit has never recognized metadata of the sort at issue here as "content" for purposes of a Wiretap Act claim. Because Plaintiffs have failed to plead that any "content" was intercepted, their Wiretap Act claim fails as a matter of law. *See Thomas v. Thomas*, 2012 WL 4895117, at *4-5 (M.D. Pa. Oct. 15, 2012) (dismissing Wiretap Act claim for failing to allege the specific communication intercepted or the circumstances surrounding the interception), *aff'd*, 529 F. App'x 181 (3d Cir. 2013).

*Third*, Plaintiffs' amended Wiretap Act claim relies on vague, generalized, and highly implausible allegations. A Wiretap Act claim cannot proceed without identification of the "device" at issue. *Google*, 806 F.3d at 142 (dismissing Wiretap Act claim, noting, *inter alia*, that plaintiffs had not identified the type of tracking cookie at issue); Mot. at 13-14. Again, Plaintiffs do not respond to this argument. Plaintiffs simply continue to vaguely reference "Smart TVs" as though that does not encompass countless, varied makes and models produced by these three major (competitor) brands. Plaintiffs also do not allege the identity, contents, or circumstances of the communications that were allegedly recorded and transmitted to third parties, as is required to state a Wiretap Act claim. *See id.* at 14-15 (collecting cases). Plaintiffs' AC and Opposition are fatally vague as to their voice recording allegations—the only "new" contentions Plaintiffs added to their complaint after the four additional months they had to investigate their claims.

For each of these reasons, Plaintiffs' Wiretap Act claims must be dismissed.[7]

## C. Plaintiffs Have Failed to Refute Defendants' Arguments for Dismissing Their CFA Claims

Plaintiffs' Opposition all but concedes that they cannot bring CFA claims.

### 1. New Jersey Does Not Have the "Most Significant Relationship" to Plaintiffs' Claims

Plaintiffs do not dispute that they have no connection to New Jersey. They do not (and cannot) refute that there are actual conflicts between New Jersey's Consumer Fraud Act, on the one hand, and the analogue statutes of Florida and New York, where they reside, on the other hand. Finally, they do not (and cannot) dispute that, under the Restatement test, Florida and New York have the "most significant relationship" with Plaintiffs' claims.

Instead, Plaintiffs assert that Defendants' "super massive presence in, and contacts with" New Jersey justify application of the CFA. Opp. at 24. But, under controlling law, a non-resident plaintiff cannot bring a CFA claim where the sole connection to New Jersey is the defendant's location. *See Maniscalco*, 709 F.3d at

---

[7] Plaintiffs' federal claims are also barred by a two-year statutes of limitations. Mot. at 18-20. Plaintiffs' AC relies on materials published six-plus years ago, thus suggesting Plaintiffs were on notice of the facts upon which their claims are based many years before the date this suit was commenced. *See id*. at 19. Plaintiffs argue that it was a March 7, 2017 WikiLeaks article—that they did not even cite—that "made Plaintiffs . . . aware of the Defendants' misconduct[.]" Opp. at 20. But Plaintiffs offer no explanation for why *that* article put them on notice of Defendants' conduct, as opposed to the numerous other articles from 2012 and 2015 that they did cite in dozens of paragraphs and footnotes across the AC.

209; *see also* Mot. at 21-24 (citing cases).

Plaintiffs alternatively argue that a choice-of-law determination is premature. Opp. at 24. But New Jersey courts routinely make this determination at the pleading stage. *See, e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445-51 (D.N.J. 2012); *Spera v. Samsung Elecs. Am., Inc.*, 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014).

As a last resort, Plaintiffs argue that they should be given leave to add a plaintiff from New Jersey. Opp. at 25 n.17. But Defendants identified this fatal defect in Plaintiffs' original complaint six months ago, and Plaintiffs had four months to amend their complaint and still failed to add a New Jersey plaintiff. Plaintiffs' CFA claims should therefore be dismissed with prejudice.

## 2. **Plaintiffs' Narrowed CFA Claim Fails**

Plaintiffs have withdrawn their fraud claims (under the CFA and common law) and do not attempt to argue that they pleaded their CFA claims with particularity. Instead, Plaintiffs argue that a CFA claim based only on "unconscionable commercial practice[s]," need not be pleaded with particularity. Opp. at 25-26. Under any standard, however, Plaintiffs' narrowed CFA claims fail.

*First*, "unconscionable commercial practices are categorized as 'affirmative

acts.'"[8] *Busse v. Homebank LLC*, 2009 WL 424278, at *9 (D.N.J. Feb. 18, 2009). Because Count II is based on alleged *omissions*, (*see* AC ¶¶ 134-150), it is, as a matter of law, not an "unconscionable commercial practice" claim.

*Second*, many courts in this District have required that CFA claims alleging "unconscionable commercial practices" satisfy Rule 9(b)'s particularity standard. *See, e.g., Francese v. Am. Modern Ins. Grp., Inc.*, 2017 WL 4842392, at *3 (D.N.J. Oct. 26, 2017) ("Plaintiff has failed here to allege with particularity an unconscionable commercial practice.").[9] Plaintiffs do not pretend they have met this standard.

*Third*, "conduct that is merely unfair or that causes consumer dissatisfaction is not necessarily an unconscionable commercial practice." *Slinko-Shevchuk v. Ocwen Fin. Corp.*, 2015 WL 1271963, at *6 (D.N.J. Mar. 18, 2015). Instead,

---

[8] Generally, the CFA creates two categories of prohibited acts. "The first category (unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation) consists of *affirmative* acts, and the second category (concealment, suppression or omission of any material fact) consists of *acts of omission*." *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 598 (App. Div. 1990) (emphasis in original).

[9] *See also Morris Cty. Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*, 2009 WL 3068260, at *2 (D.N.J. Sept. 21, 2009) ("The allegations in the Complaint as pled against all Defendants do not rise to the level of an unconscionable commercial practice under the CFA and do not meet the particularity requirements of Rule 9(b)."); *Guers v. Jones Lang LaSalle Americas, Inc.*, 2014 WL 4793021, at *6 (D.N.J. Sept. 25, 2014) (dismissing unconscionable commercial practice CFA claim under Rule 9(b)).

"substantial aggravating circumstances must be present" to state such a CFA claim. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994). Plaintiffs have pleaded none.[10]

*Finally*—and regardless of whatever pleading standard is applied—a CFA claim requires pleading an "ascertainable loss." Mot. at 29-30. Plaintiffs do not refute that the AC fails to plead such a loss. *Id.*

### D.   Plaintiffs Fail to Salvage the Unjust Enrichment Claim

Rather than respond to Defendants' arguments regarding the insufficiency of the unjust enrichment claim, Plaintiffs instead argue that the Court should defer consideration. Opp. at 27-28. But there is no basis to defer consideration of a claim that Plaintiffs have not adequately pleaded. *See* Mot. at 39-40. The Court should dismiss the unjust enrichment claim with prejudice.

### E.   Plaintiffs Fail to Support the Remaining Contract Claims

Plaintiffs fail to respond to *any* of Defendants' arguments for dismissing the three remaining contract claims. *See id*. at 33-38. Thus, those contract claims should be dismissed with prejudice.

## CONCLUSION

Plaintiffs' AC should be dismissed with prejudice.

---

[10] Plaintiffs' reliance upon the EPIC complaint (*see* AC, Ex. 1) to furnish the specificity lacking in their own complaint is unavailing. Those equally baseless allegations involved other federal statutes that afford no private rights of action, and fail to support any CFA claim. *See* Mot. at 27-29. Even more significantly, EPIC's complaint did not result in any FTC enforcement action of any kind.

15

Dated: March 23, 2018

GIBBONS P.C.

By: *s/ Michael R. McDonald*
MICHAEL R. MCDONALD
mmcdonald@gibbonslaw.com
KATE ELIZABETH JANUKOWICZ
kjanukowicz@gibbonslaw.com
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500

ERIC C. BOSSET (*pro hac vice*)
ebosset@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000

SIMON J. FRANKEL (*pro hac vice*)
sfrankel@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: (415) 591-6000

***Attorneys for Defendant***
**SAMSUNG ELECTRONICS
AMERICA, INC.**

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.

By: *s/ Jeffrey J Greenbaum*
JEFFREY J. GREENBAUM
jgreenbaum@sillscummis.com
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Fax: (973) 643-6500

MICHAEL H. RUBIN (*pro hac vice*)
michael.rubin@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8154

***Attorneys for Defendant***
**LG ELECTRONICS U.S.A. INC.**

REED SMITH LLP

By: *s/ Mark S. Melodia*
MARK S. MELODIA
mmelodia@reedsmith.com
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 205-6078
Fax: (212) 521-5450

PAUL J. BOND
pbond@reedsmith.com
136 Main St., Suite 250
Princeton, NJ 08540
Telephone: (609) 520-6393
Fax: (609) 951-0824

***Attorneys for Defendant***
**SONY ELECTRONICS INC.**

16