UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT**<br>**JUDGE** | **MARTIN LUTHER KING**<br>**COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

September 26, 2018

VIA ECF

### LETTER ORDER

Re:   White, et al. v. Samsung Electronics America, Inc., et al.
         Civil Action No. 17-1775

Dear Litigants:

Before the Court is Defendants LG Electronics U.S.A., Inc., Samsung Electronics America, Inc., and Sony Electronics Inc.'s (collectively, "Defendants") Motion to Dismiss, ECF No. 54, Plaintiff Thomas Roger White ("White"), Jr., and Christopher Mills' (Mills and, together with White, "Plaintiffs") Amended Complaint, ECF No. 45. For the reasons stated herein, the motion is granted.

**I.   BACKGROUND**

This matter relates to Smart TVs—televisions that connect to the Internet and allow users to stream movies and television shows—manufactured by Defendants. Plaintiffs contend that these televisions collect information about users' viewing activities, which Defendants then share or sell to third parties. Plaintiffs contend that this collection of data violates federal, state, and common law, and they seek to represent a class of individuals who purchased or leased any LG, Sony, or Samsung smart TVs that used or contained Automatic Content Software from January 1, 2012 through the present.

Defendants are the American subsidiaries of foreign electronics manufacturers. Am. Compl. ¶¶ 23-25. Among other electronics products, Defendants manufacture Smart TVs. Id. ¶ 37. Smart TVs connect to the internet via WiFi and allow consumers to access various forms of audio and visual entertainment, as well as online news, weather, and entertainment sources. Id. ¶ 38. Defendants' Smart TVs are delivered to consumers with many pre-installed applications, including Netflix, YouTube, Amazon, Pandora, Hulu, Twitter, and more. Id. ¶ 39.

Plaintiffs White and Mills are residents of Florida and New York, respectively, who allege they purchased Defendants' Smart TVs sometime after 2012. Id. ¶¶ 21-22. Plaintiffs allege, upon

1

information and belief, that Defendants' Smart TVs[1] continuously monitor and track consumers viewing habits and record consumers' voices[2], then transmit that information to Defendants' servers by means of Automatic Content Software ("ACS").[3]  Id. ¶ 41.  Plaintiffs allege that Defendants then provide this information to third-party advertisers and content providers, who display targeted advertisements to consumers.  Id. ¶ 42-47.

Plaintiffs' further allege that Defendants not only fail to disclose, but actively conceal the collection and distribution of customer data and voice recordings.  Id. ¶¶ 61-67, 75.  Moreover, Plaintiffs assert that "Defendants' customers do not have access to the names of the outside third parties . . . or access to the separate privacy policies of these outside parties . . . or access to the licensing agreements between Defendants and these third parties."  Id. ¶ 67.

Plaintiffs filed their Amended Complaint on January 17, 2018.  ECF No. 45.  The Amended Complaint included eight counts: (1) unfair and deceptive tracking and transmission in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2; (2) deceptive omissions in violation of the NJCFA, N.J. Stat. Ann. § 56:8-2; (3) violations of the Video Privacy Act ("VPPA"), 18 U.S.C. § 2710; (4) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511; (5) common law fraud; (6) breach of express warranty; (7) breach of the duty of good faith and fair dealing; (8) unjust enrichment; and (9) breach of contract.  Subsequently, Plaintiffs withdrew Count 5.  See Pl. Reply at p. 25.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears

---

[1] Throughout the Amended Complaint, Plaintiffs treat Defendants—several distinct companies—as a single entity, without pleading any facts whatsoever to support this treatment.  Moreover, Plaintiffs refer to Defendants' Smart TVs generally, without identifying any specific model or models that form the foundation for their claims.  These deficiencies are particularly noteworthy given that Plaintiffs had over 100 days after the filing of the original motion to dismiss to investigate their allegations and file an amended complaint.  The Court also notes that those facts actually plead by Plaintiffs are largely pleaded "upon information and belief."

[2] Defendants allegedly "developed techniques to monitor and recognize voice communications."  Am. Compl. ¶ 70.  Plaintiffs assert that "unbeknownst to customers, everything a user says in front of Defendants' Smart TVs is recorded by Defendants and transmitted over the internet to a third party regardless of whether it is related to the provision of the service."  Id. ¶ 74.

[3] Plaintiffs allege that Defendants' ACS "captures information about a selection of pixels on the screen and sends the data to Defendants' servers, where it is uniquely matched to a database of publicly available television, movie, and commercial content."  Id. ¶ 48.  Plaintiffs also allege that Defendants' ACS "is also designed to scan a consumer's home WiFi networks to secretly collect information that is then utilized to help determine the specific person whose viewing activity has been collected."  Id. ¶ 57.  Additionally, Plaintiffs assert that "Defendants' ACS software also periodically collects other information about the television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items."  Id. ¶ 49.

2

unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

Plaintiffs remaining counts include two fraud-based claims ("unfair and deceptive tracking" and "deceptive omissions" under the NJCFA), violations of two federal statutes (the Video Privacy Protection Act and the Electronic Communications Privacy Act commonly known as the Wiretap Act), and four contract-based claims (breach of contract, breach of the duty of good faith and fair dealing, breach of express warranty, and unjust enrichment).

#### A. Plaintiffs' Fraud-Based Claims

Defendants contend, first, that non-residents of New Jersey, such as Plaintiffs, cannot assert a cause of action under the NJCFA where the only alleged connection between the claims and New Jersey is the location of the defendants' corporate offices and, second, that the fraud-based claims are not pled with particularity as required by Fed. R. Civ. P. 9(b). Plaintiffs respond that Defendants' "super-massive" presence in New Jersey renders their claims under the NJCFA appropriate, that Defendants' choice of law analysis is inappropriate at this stage in the proceedings, and that pleading with particularity is not required for their particular claims. The Court agrees with Defendants.

As a preliminary matter, the Court finds that engaging in a choice of law analysis is appropriate at this juncture. Contrary to Plaintiffs argument, courts routinely engage in such an analysis when the pertinent facts are available at the motion to dismiss stage. See, e.g., Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 255 (3d Cir. 2010); Spera v. Samsung Elecs Am., Inc., 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014); Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 445-451 (D.N.J. 2012).

"A federal court sitting in diversity applies the choice-of-law rules of the forum state—here, New Jersey—to determine the controlling law." Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citations omitted). New Jersey applies a two-part choice-of-law inquiry: first, determine whether or not an actual conflict exists between the laws of the potential forums and, second, assuming there is a conflict, determine which jurisdiction has the "most significant relationship" to the claim. Id. at 206-207 (quoting P.V. v. Camp Jaycee, 197 N.J. 132 (2008)).

Applying the first part of the test, the Court finds there are actual conflicts between the NJCFA and the consumer fraud statutes in Florida and New York, where Plaintiffs are domiciled. See, e.g., Cox v. Chrysler Grp., 2015 WL 5771400, at *11 (D.N.J. Sept. 30, 2015) ("[T]he [NJCFA] conflicts with New York's Consumer Protection Act . . . because New York's Consumer Protection Act is significantly broader, has a different statute of limitations, and limits plaintiff's access to

3

treble damages); Miller v. Samsung Elecs. Am., Inc., 2015 WL 3965608, at *5 (D.N.J. Jun. 29, 2015) (finding a conflict exists between the NJCFA and Florida law because of differences in the damages provisions and the recovery of attorneys' fees).  Plaintiffs do not dispute these conflicts.

Turning to the second step of the analysis, the Court finds that Florida and New York have the "most significant relationship" with Plaintiffs' claims.  Plaintiffs are residents of Florida and New York who purchased Smart TVs for use in their respective homes.  Am. Compl. ¶¶ 21, 22, 102. Plaintiffs do not allege that they purchased the Smart TVs in New Jersey and, thus, the Amended Complaint indicates that Florida and New York are the places where Plaintiffs supposedly relied on the alleged misrepresentations concerning the Smart TVs and where Plaintiffs received the alleged misrepresentations.

The only basis for applying the NJCFA cited by Plaintiffs is Defendants' "super massive presence in, and contacts with," New Jersey.  Pl. Opp. at 24.  However, the Third Circuit has determined that a non-resident plaintiff cannot bring a CFA claim where the sole connection to New Jersey is the defendants' location.  See Maniscalco, 709 F.3d at 209 (adopting the "overwhelming majority of courts' application of New Jersey choice-of-law rules" in finding that plaintiff could not avail himself of the NJCFA merely because defendant's headquarters were in New Jersey, when plaintiff received and relied on defendant's alleged fraud in his home state).

Here, given the choice-of-law analysis above, the Court will dismiss Plaintiffs' NJCFA claims because the non-resident Plaintiffs here do not have a sufficient connection to New Jersey to sue under the statute.[4]

### B. Plaintiffs' Federal Law Claims

#### 1. VPPA

Defendants contend that Plaintiffs' VPPA claim fails because the Amended Complaint does not allege any disclosure of "personally identifiable information" protected by the statute.  The Court agrees.[5]

To state a claim under the VPPA, Plaintiffs must allege that a "video tape service provider" "knowingly disclose[d]" "personally identifiable information" concerning a "consumer of such provider."  18 U.S.C. § 2701(b)(1).  Personally identifiable information is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2170(a)(3).  The Third Circuit has narrowly construed the statute as preventing "disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits."  In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262, 280-90 (3d Cir. 2016) (finding that disclosure of

---

[4] The Court also agrees with Defendants' contention that Plaintiffs fail to plead their fraud claims with particularity.  To the extent Plaintiffs seek to amend, any asserted consumer fraud claims must be pled with particularity as to the who, what, where and when of the alleged fraud.

[5] Because the Court agrees that the information at issue here does not constitute personally identifiable information based on binding Third Circuit precedent, it will not consider Defendants' other arguments for dismissal.

"static digital identifiers"—such as a user's IP address, a user's browser and operating system settings, and a computing device's unique identifier—are not personally identifiable information).

Defendants argue that the data at issue here constitutes the same type of "static digital identifiers" that the Third Circuit has determined do not constitute personally identifiable information. See id. Additionally, Defendants argue that Plaintiffs fail to allege how an "ordinary recipient" of the data at issue here could use it "to identify a particular person[]" "with little or no extra effort." Id.

Plaintiffs respond that they have sufficiently alleged collection and disclosure of "extensive information about Plaintiffs' and consumers' digital identities; namely, consumers' video-viewing history, consumers' computer addresses, and information about other devices connected to the same Wifi network." Pl. Opp. at 13; Am. Compl. ¶¶45-47. Plaintiffs primarily rely on In re Vizio Inc., Consumer Privacy Litig., a decision from the Central District of California, to support their position. 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) (holding that disclosure of MAC addresses and information about other devices connected to the same network amounts to the disclosure of personally identifiable information).

In re Vizio was decided before the Ninth Circuit adopted the Third Circuit's standard for personally identifying information—namely, disclosure of information that would permit an ordinary person to identify a specific individual's video-watching behavior. See In re Nickelodeon, 827 F.3d at 290; see also Eichenberger v. ESPN, Inc., 876 F.3d 979, 986 (9th Cir. 2017). Consequently, the Court accords this out-of-circuit case little weight. Plaintiffs have failed to allege that an ordinary person could use the information allegedly disclosed by Defendants to identify a specific individual's video-watching behavior. Thus, consistent with In re Nickelodeon, the Court finds that Plaintiffs have failed to state a claim for violation of the VPPA.

### 2. Wiretap Act

Plaintiffs allege that Defendants intercepted electronic communications in violation of the Wiretap Act. Defendants respond that (1) they did not intercept any information because they are parties to the communications at issue and (2) Plaintiffs do not allege that Defendants intercepted the contents of any communication. The Court agrees that Defendants are parties to the communications at issue here and will dismiss Plaintiffs' Wiretap Act claim on that basis.

The Wiretap Act prohibits "interceptions" of electronic communications. 18 U.S.C. § 2510. It defines "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The Wiretap Act also provides that "[i]t shall not be unlawful . . . for a person . . . to intercept a wire, oral or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d).

Defendants contend that they are parties to the communications at issue and, therefore, Plaintiff may not assert a Wiretap Act claim against them. See In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 143 (3d Cir. 2015) (finding no violation of the Wiretap

Act where plaintiffs' browsers sent information directly to defendants' servers, thereby making defendants parties to the communication); see also In re Nickelodeon, 827 F.3d at 274-275 (affirming dismissal of Wiretap Act claims where defendants were parties to the communication). Here, Plaintiffs allege that "consumers' information was . . . acquired by Defendants during transmission of the programming to Defendants' Smart TVs." Pl. Opp. at 17. Thus, Defendants conclude that "[w]hether Plaintiffs' intended focus is on the communications that Defendants' Smart TVs transmit to Plaintiffs at Plaintiffs' own request or those sent to Defendants' servers . . . . Defendants are direct participants in all relevant communications." Def. Resp. at p. 9.

Plaintiffs do not dispute this contention in their opposition, focusing instead on whether Defendants "took . . . Plaintiff's and consumers' confidential, identifying information *in real time*." Pl. Opp. at 17 (emphasis in original). This argument is irrelevant to the dispositive issue of whether Defendants were parties to the communications at issue. Consequently, the Court finds that Plaintiffs have failed to allege a Wiretap Act violation because Defendants are parties to the communications discussed in the Amended Complaint. Accordingly, the Wiretap Act claim is dismissed.

### C. Plaintiffs' Contractual Claims

Plaintiffs allege breach of contract, breach of the duty of good faith and fair dealing, breach of express warranty, and unjust enrichment. Defendants contend that the first three claims fail because Plaintiffs do not identify any actual contract or agreement and that the unjust enrichment claim fails because Plaintiffs have not identified a loss sustained by Plaintiffs or a benefit received by Defendants. The Court agrees with Defendants.

To sustain a claim for breach of contract and breach of the duty of good faith and fair dealing, a plaintiff must identify a contract. See Yapak, LLC v. Mass. Bay Ins. Co., 2009 WL 3366464, at *1 (D.N.J. Oct. 16, 2009) (identifying the existence of a valid contract as an element of breach of contract); Eberhart, 2015 WL 9581752, at *7 (stating that a claim for breach of an implied covenant of good faith and fair dealing requires plaintiff to allege that a contract exists between plaintiff and defendant). Plaintiffs fail to identify the specific contract they contend Defendants breached. This is fatal to both their claim for breach of contract and their claim for breach of the duty of good faith and fair dealing.

Similarly, to state a claim for breach of express warranty, plaintiffs must "allege the specific affirmation, promise, or guarantee made" to them by the relevant manufacturer. Mendez v. Shah, 28 F. Supp. 3d 282, 295 (D.N.J. 2014). Plaintiffs merely allege that Defendants warranted they would "properly and adequately protect Plaintiffs' and the Class members' private data and personal information," Am. Compl. ¶ 187, without identifying any specific affirmation, promise, or guarantee required to sustain a claim for breach of an express warranty. Consequently, the Court will dismiss this claim as well. See, e.g., Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (dismissed express warranty claim for failure to "identify the actual language or any source of the alleged warranty").

Finally, to state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for

6

defendant to retain [the] benefit without paying for it." <u>Snyder v. Farnam Cos.</u>, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011).  Defendants claim that Plaintiffs fail to allege either a loss to Plaintiffs or a benefit to Defendants.  Plaintiffs respond that Defendants benefited from the sale of Plaintiffs' data, which Plaintiffs would not have voluntarily provided for free.

The trial court in <u>In re Nickelodeon</u> dismissed a claim for unjust enrichment under similar circumstances to those alleged here.  There, plaintiffs claimed that defendants had surreptitiously collected information about their online activities and resold it.  2014 WL 3012873, at 1-2.  The court dismissed the claim, stating "[t]here are no allegations that [p]laintiffs conferred any benefit on Defendants, nor are there any allegations that [p]laintiffs expected or should have expected any sort of remuneration from them."  <u>Id.</u>  The court went on to state that "the unjust enrichment doctrine requires that the plaintiff show that it expected remuneration from the defendant at the time it performed."  <u>Id.</u>  Here, Plaintiffs have likewise failed to demonstrate any expectation of remuneration for their data.  Consequently, the Court will dismiss the unjust enrichment claim is dismissed.

## IV.  CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**.

**IT IS** on this 26th day of September, 2018,

**ORDERED** that LG Electronics U.S.A., Inc., Samsung Electronics America, Inc., and Sony Electronics Inc.'s Motion for to Dismiss, ECF No. 54, is **GRANTED**.

*/s Madeline Cox Arleo*_____
**Hon. Madeline Cox Arleo**
**United States District Judge**