# EXHIBIT A

# PART 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR., and PATRICIA CAULEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMSUNG ELCTRONICS AMERICA, INC., and SONY ELECTRONICS INC,<br><br>Defendants. | Case No.  17-1775 (MCA) (SCM)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Thomas Roger White, Jr. and Patricia Cauley, on behalf of themselves and all others similarly situated, allege the following against Defendants Samsung Electronics America, Inc. ("Samsung") and Sony Electronics Inc. ("Sony") (collectively, "Defendants") in this Second Amended Complaint:

## I.    INTRODUCTION AND SUMMARY OF CASE

1.     If you plan a movie-night on your Samsung or Sony Smart TV, the privacy of your home will have a surprisingly *public* audience.  In fact, while using your Smart TV to watch videos, engage "apps," or use other "smart" TV-features, your basic personal, private information (including your video line-up, who and where you are, and even the contents of your conversations) - will become a *public* affair. This is because Defendants' Smart TVs watch and record what you're watching, while you're watching it - and listen to and record what you're speaking, while you're speaking it.[1]

2.     Defendants have violated the federal and state privacy rights of its consumers by failing to obtain "informed consent" and deceptively and unreasonably intercepting, storing, and unilaterally disclosing to third parties consumers' "digital identities;" namely, consumers' private information, sensitive viewing histories, personal preferences, contents of conversations, and other critical information particularly useful to uniquely identify individuals and their location. Such private information wrongfully disclosed by Defendants also includes, but is not limited to, the online services a consumer visited and the presence of a consumer's other Internet-connected devices.[2]

---

[1] Samsung's "Always-On" Voice Recorders
When the voice recognition feature on a Samsung Smart TV is enabled,  everything a user says in front of the Samsung Smart TV is recorded and transmitted over the internet to a third party regardless of whether it is related to the provision of the service. See https://epic.org/privacy/internet/ftc/samsung/

[2] These are the exact concerns recently expressed by Senators Edward J. Markey of Massachusetts and Richard Blumenthal of Connecticut in a Letter dated July 12, 2018, to the Honorable Joseph Simons, Chairman of the Federal Trade Commission ("FTC") wherein they have asked that the FTC investigate the business practices of smart-television manufacturers amid worries that companies are tracking consumers' viewing behavior without informed consent.  See Exhibit 1 (attached hereto).  The Senators explicitly state that "*Smart TV users may not be aware of the extent to which their televisions are collecting sensitive information about their viewing habits . . . [and the Smart TV manufacturers] do[] not provide sufficient information about its privacy practices to ensure users can make truly informed decisions*." Id. (emphasis added).

3.    Defendants also secretly collect and disclose to third parties consumers' Internet Protocol (IP) addresses, media access control (MAC) addresses, and zip codes. In this advanced technological-age, this data and other personally identifiable information disclosed by Defendants to third parties can easily be used by an ordinary person to pinpoint a consumer's physical location (i.e., "geolocation" information) and electronic identity.

4.    Defendants accomplish their massive data-mining enterprise through their use of invasive Automatic Content Software ("ACS") - that is secretly installed by Defendants on millions of their Smart TVs (including Plaintiffs' Smart TVs at issue). Defendants then unilaterally disclose consumers' personally-identifiable information and other consumer-data to advertisers and media content providers (in addition to other third parties, such as data processors), who in turn deliver targeted advertisements to unsuspecting consumers across their devices.

5.    Targeted ads are sent not just to the Smart TVs themselves, but also to any smartphones, tablets, PCs, or other devices within the home that share the same Internet connection as Defendants' Smart TV.

6.    Monetizing consumer data is a critical part of Defendants' business plan because, due to fierce market competition, Defendants reap extremely *slim* profit margins on TV sales. To offset this, Defendants have engaged in the illegal *industry-standard*, described herein, to deceptively utilize ACS technology and profit from their unfair collection and disclosure to third parties of a rich portfolio of "siphoned" consumer data and information.

7.    In essence, Defendants' business plan treats all consumers as Defendants' very own Nielsen family. The critical difference is that, unlike Defendants' Smart TV consumers, Nielsen family members *agree* to share their viewing habits and are paid for their participation.[3]

---

[3] In addition, Nielsen emphasizes to its customers that: "The information from your home is held strictly confidential. You will never be approached by anyone selling something because you participated in one of our surveys."  https://www.nielsen.com/us/en/about-us/nielsen-families.html

8.    By sharp contrast, Defendants' personal data and voice-recording collection and transmission using their hidden ACS technology is, *__by intention__*, unbeknownst to consumers.  And because of that fact, there could be no informed consent in this case.  See infra.

9.    Nowhere on its Smart TV box, or anywhere in its packaging (including the boxes and packaging related to Plaintiffs' Smart TVs at issue) do Defendants inform consumers that Defendants' collect and store indefinitely consumers' viewing histories and other personally identifiable information, or that Defendants sell consumers' private, personal information and contents of conversations to third parties, or that third-parties will respond with targeted ads across devices. Neither do Defendants disclose this material information in their own advertising and/or marketing.

10.    Even though it would be simple and no-cost for Defendants to conspicuously alert consumers about their collections and sale of private consumer information: (i) on the television box itself (*ie*; prior to the purchase of the TV by the consumer); and/or (ii) in the instruction manual in the box; and/or (iii) on a conspicuous, separate and bold *"Privacy Information Sheet" in the box* -- Defendants choose not to do.[4]

11.    Plaintiffs are consumers of Defendants' Smart TVs who did not consent to Defendants' invasive data-collection program. They bring this putative class action suit against Defendants to enforce their and other Samsung and Sony Smart TV-owners' privacy and consumer rights under federal and state law.[5]

12.    In addition, Defendants' collection of consumers' private data and conversations and also their material omissions and misrepresentations regarding its data collection policies and invasive tracking software are deceptive, unfair, and misleading in

---

[4] Consider Defendants' representations in product packaging. While the packaging on Defendants' Smart TVs describe its features and indicate that the televisions are equipped to deliver video content through the Internet and can display content from cable and satellite providers, streaming devices, and other connected media sources, the packaging fails to inform (let alone adequately inform) consumers that if they take advantage of the TV's connectivity platform, their viewing data and other personal information will be collected and shared with others.

[5] On March 7, 2017, WikiLeaks first reported that Samsung Smart TVs were in fact being used by outside parties to spy on consumers' private-conversations, even when the device was supposedly turned "off."

3

violation of state consumer protection laws. Had Plaintiffs known the truth about Defendants' data collection practices and tracking software, they would not have purchased Defendants' Smart TVs or would have paid substantially less for them.

13.    As described herein, Defendants representations were not sufficiently clear or prominent to alert consumers that Defendants engage in second-by-second tracking and recording of consumers using their ACS technology, and/or that Defendants sell consumers' private data and personal information to third parties.

14.    These harms are independently actionable and justify the relief sought here, including statutory damages, actual damages, and restitution. In addition, because Defendants continue to collect sensitive consumer data without consent and have not changed their unfair and deceptive business practices, described herein, equitable relief, including an injunction, is appropriate here.

## II.    PARTIES

### A.    Plaintiffs

15.    Patricia M. Cauley is a resident of Kendall Park, New Jersey.  In January, 2017, Ms. Cauley purchased at a Best Buy store in Monmouth Junction, New Jersey a Samsung Smart TV, Model No. UN55KS8000FXZA.[6]   At all times, Ms. Cauley used her Samsung Smart TV at her home in Kendall Park, New Jersey.  Ms. Cauley connected her Samsung Smart TV to the Internet via a Wi-Fi connection shortly after purchasing it, and used "apps" like the Netflix, Hulu, and YouTube on the television to stream video content. She also uses her Smart TV to watch cable television and use other "smart" features.[7] Ms. Cauley's remote control for her Smart TV has a built-in microphone for voice recording. When Ms. Cauley purchased her Smart TV, she was not aware that Samsung would collect her personal and viewing data and/or the contents of her conversations and disseminate that information to third parties.

---

[6] A copy of Ms. Cauley's purchase receipt for her Samsung Smart TV at issue is attached hereto as Exhibit 2.

[7] A copy of the User Manual and Spec Sheet respecting Ms. Cauley's Samsung Smart TV at issue is attached hereto as Exhibit 3.

16.   Plaintiff Thomas Roger White, Jr. is a resident and citizen of Miami Shores, Florida. During the Class Period, Mr. White purchased in Florida two Samsung Smart TVs (Samsung, Model No. UN55KU6300F, Serial No. 05HX3CAHB11790N and Samsung, Model No. UN32J5500AF, Serial No. 03NL3CGG90593M) and one Sony Smart TV (Sony, Model No. KDL-40W650D, Serial No. 5018352.), which are the subject of this dispute.  Mr. White connected his Smart TVs to the Internet via a Wi-Fi connection shortly after purchasing it, and used "apps" like the Netflix, Hulu, and YouTube on the television to stream video content. He also uses his Smart TV to watch cable television, use other "smart" features, and play PlayStation and use a DVD player.  When Mr. White purchased his Smart TVs, he was not aware that Samsung and/or Sony would collect his personal and viewing data and/or the contents of his conversations and disseminate that information to third parties.

17.   When shopping for their Smart TVs, each Plaintiff looked at the description of the televisions provided on the boxes in which Defendants' Smart TVs were packaged. The packaging for the Defendants' Smart TVs described its features and indicated that the televisions were equipped to deliver video content through the Internet and could display content from cable and satellite providers, streaming devices, and other connected media sources. The packaging, however, failed to inform Plaintiffs that if they took advantage of those features or watched live broadcast programming on Defendants' Smart TVs, their personal and viewing data would be collected by Defendants and disseminated to third parties.  It is also failed to inform Plaintiffs that if they took advantage of those features or watched live broadcast programming on Defendants' Smart TVs, the contents of their voice conversations would be analyzed and disclosed to third parties.

18.   Had Plaintiffs known the truth about Defendants' collection and dissemination of Plaintiffs' personal and viewing data and voice recording practices, Plaintiffs would not have purchased, or would have paid substantially less for, Defendants' Smart TVs.

19.   At no time did Plaintiffs consent to having their personal or viewing information or voice content collected and/or disseminated to third parties.

**B.**  **Defendants**

20.   Defendants are consumer electronics companies with corporate headquarters and contacts to New Jersey.  Defendants sell millions of television and audio sets and other products in over 8,000 retail stores throughout the United States, including large chains such as Costco, Sam's Club, Walmart, and Best Buy.

21.   Defendant Samsung Electronics America, Inc. ("Samsung") is headquartered at 105 Challenger Road Ridgefield Park, N.J. 07660, conducts substantial business in New Jersey; and is the market leader for HDTVs in the U.S.  Defendant Samsung designs, markets, advertises, sells, and distributes for sale consumer electronic devices, including Smart TVs, throughout the United States and in this District.  Defendant Samsung holds the largest market share of Smart TVs in the country.

22.   Defendant Sony Electronics Inc. is a subsidiary of Sony Corporation, conducts substantial business in New Jersey and maintains its corporate campus at Sony Drive, Park Ridge, NJ 07656. Defendants, Inc. designs, markets, advertises, sells, and distributes for sale consumer electronic devices, including Smart TVs, throughout the United States and in this District.

### III.   JURISDICTION AND VENUE

23.   This Court has jurisdiction over the subject matter of this action pursuant to U.S.C. § 1331, as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.   This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (i) at least one Plaintiff is a citizen of a different state than the Defendants; (ii) the amount in controversy exceeds $5,000,000; and (iii) there are at least 100 individuals in the putative class that Plaintiffs seek to represent through this action.

25.   This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in New Jersey are present and licensed to conduct business in New Jersey, and because the events giving rise to this lawsuit occurred, in substantial part, in New Jersey.

26.   Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendants are headquartered in this District, Defendants conduct substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Plaintiff Patricia Cauley also resides in New Jersey and purchased and used her Smart TV in New Jersey, in this District. Venue also properly lies in this District because all Defendants conduct substantial business within this District, and because many of the Class Members reside in this district.

### Application of New Jersey Law To Consumers Nationwide is Appropriate

27.   Each of the defendants are headquartered and/or have a substantial corporate presence in New Jersey and, upon information and belief, Defendants' United States sales strategy, advertising, marketing and product promotion was conceived in substantial part, and emanates from, Defendants' facilities in New Jersey.

28.   Application of New Jersey law to consumers nationwide is appropriate because Defendants are headquartered here and/or maintain their US based corporate, marketing and advertising department(s) in New Jersey where the alleged misconduct, described herein, emanated from. In addition, Defendants' products are distributed throughout the United States to Plaintiffs and Class members located in New Jersey and/or distributed throughout the United States from fulfillment and other facilities located in New Jersey. New Jersey also has a substantial, compelling reason to protect consumers from deceptive and unlawful misconduct of companies with headquarters and a substantial presence there, and who regularly sell products in and/or from New Jersey.

## IV.   FACTUAL ALLEGATIONS

### A.   Smart TV Background

29.   Concerns about the use of televisions to collect consumer information were anticipated in the 1980s.[8]

---

[8] 11 David A. Bode, Interactive Cable Television: Privacy Legislation, 19 Gonz. L. Rev. 725 (1984).

30.     Privacy scholars and policy makers recognized the risk that interactive television would threaten the privacy of users if safeguards were not established.[9]   These risks included the "danger similar to wiretapping," of "misuse and interception of 'private' information" during transmission to the central servers, as well as the insecurity of data once it arrived at the central servers.[10]

31.     Since the mid-2000s, Smart TVs have become increasingly popular in the United States. A Smart TV is essentially a technological cross between a computer and a television. Aside from the traditional function of a television set, a Smart TV is also equipped with integrated software applications that allow users to access the Internet, and on-demand services such as Netflix, Hulu, and Pandora, and other online media content, such as Facebook and Twitter.

32.     Although Smart TVs are more expensive than traditional television sets, Smart TVs are popular because they are equipped to deliver movies and television shows on an on-demand basis, including programming that may not be conventionally available (e.g., broadcast on network or cable television).   Smart TVs thus bring the "video-store" into the home for users.

**B.**     **Defendants Begin Selling Smart TVs**

33.     Defendants bill themselves as leading high definition television producers in the United States.   In addition to Smart TVs, Defendants manufacture and sell various audio and entertainment products.   Defendants generate billions in revenue each year.[11]

---

[9] See William J. Broad, U.S. Counts on Computer Edge in Race for Advanced TV, N.Y. Times (Nov. 28, 1989), http://www.nytimes.com/1989/11/28/science/us-counts-o-computer-edge-in-the-race-for-advancedtv.html ("Finally, scientists say, the advent of digital television will aid the merging of computers and television, with the prospect of a rush of combined uses."); David Flaherty, Protecting Privacy in Two Way Electronic Services, Communications Library (1985).

[10] Bode, supra 13 at 711. See also Cable Television Privacy Act: Protecting Privacy Interests from Emerging Cable TV Technology, 35 Fed. Com. L.J. 71, 79 (1983).

[11] As of 2016, Smart TVs sales reached almost 250 million units.  Sales are expected to grow to 330 million by 2019.

34.    In or around January 2012, Defendants' began selling Smart TVs. Defendants' Smart TVs provide consumers with multiple access points to visual, audio, and other video content. Defendants' Smart TVs are further equipped with HDMI connections, coaxial connectors, analog audio outputs and inputs, and various video input connectors.[12]

35.    Defendants' Smart TVs are also equipped with the ability to connect to the internet via wireless internet networking (hereinafter "WiFi"). Specifically, Defendants' Smart TVs allow consumers to access the WiFi networks to allow consumers to access and watch various forms of audio and visual entertainment online, as well as to find access to online news, weather, and entertainment sources.[13]

36.    Defendants' Smart TVs are delivered to consumers with many pre-installed applications. These include such popular internet applications as Netflix, YouTube, Amazon, Pandora, HuluPlus, Twitter, and more. The list is ever-growing.  Many of these applications stream video and other content to consumers via Defendants' Smart TVs.

37.    Additionally, Defendants' Smart TVs provide access to cable television, satellite television, and on-demand viewing services. Such services also stream video and audio programming directly to Defendants' Smart TVs.[14]

C.    ***Defendants' Business Model*:**
      **Use Automatic Content Software To Secretly Spy On**
      <u>**Consumers And Sell Their Personal Information For Profit**</u>

38.    Defendants developed and use a business platform for the Smart-TV industry that rests on utilizing Automatic Content Software ("ACS") technology to capture, in real time, billions of viewing data points each day from millions of consumers' Smart TVs manufactured and sold by Defendants.

---

[12] <u>See</u>, <u>e.g.</u>, Exhibit 3 attached hereto (User Manual and Spec Sheet respecting Ms. Cauley's Samsung Smart TV at issue).

[13] <u>Id</u>.
[14] <u>Id</u>.

9

39.   Since 2012, Defendants have manufactured Smart TVs that continuously monitor and track, in real time, what consumers are watching, what consumers are saying, and the viewing habits of those consumers. Defendants then transmit this private, confidential information to Defendants' own servers – and sell this private, confidential information to third parties *without* first obtaining informed consent from the consumer.[15]

40.   In other words, Defendants are secretly spying on its customers for profit. Defendants do not deny that they are violating its customers' privacy in this manner.

41.   Defendants' ACS enables Defendants to monitor and identify Plaintiffs' and the Class Members' video viewing habits, personal information, and voice content.

42.   Defendants' secretly provide this private, consumer information to third-party advertisers and content providers who, in turn, display targeted advertisements to consumers (based on consumers' data and information they have acquired from Defendants). In addition, Defendants and the third-party advertisers even place targeted ads on smartphones, tablets, PCs, or other devices within the home that share the same Internet connection as Defendants' Smart TV, and also within some Smart TV apps in Defendants' Smart TVs themselves.

43.   Defendants tracking software captures (and Defendants then disclose) substantial, extensive information about Plaintiffs' and consumers' "*digital identities*;" namely, consumers' video-viewing history, consumers' computer addresses, and other confidential information about other devices connected to the same Wifi network.

44.   Through Defendants' ACS, their Smart TVs are able to transmit information about what a consumer is watching on a second-by-second basis, in addition to the voice content of users. Defendants' tracking software captures information about a selection of pixels on the screen and sends that data to Defendants' servers, where it is matched up to

---

[15] See Consumer Reports, *Samsung, LG, and Vizio smart TVs are recording—and sharing data about—everything you watch, Consumer Reports investigates the information brokers who want to turn your viewing habits into cash*, February 27, 2015, http://www.consumerreports.org/cro/news/2015/02/samsung-lg-vizio-smart-tvs-watch-everything-you-watch/index.htm; The Verge, *Most smart TVs are tracking you – Vizio just got caught*, February 7, 2017, http://www.theverge.com/2017/2/7/14527360/vizio-smart-tv-tracking-settlement-disable-settings.

a database of *publicly available* television, movie, and commercial content. Defendants further collect viewing data from consumers' cable or broadband service providers, set-top boxes, external streaming devices, DVD players, and over-the-air broadcasts. Upon information and belief, Defendants store this data indefinitely.

45.    Defendants' ACS software also periodically collects other information about the television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items.

46.    Defendants' ACS tracking software works by analyzing bits of the video and other visual programming its customers are watching, in real time. The technology then allows Defendants' to determine, amongst other information, the *date, time, channel of programs*, and *whether customers watched this programming in real time or from a recording.*[16]

47.    Defendants' ACS tracking technology also allows Defendants to determine whether a viewer is watching a traditional television or cable program or whether the customer is viewing programming via streaming internet applications such as Netflix, Amazon Prime, or Hulu. The technology determines the time frame during which the programming was viewed, as well as the duration for which the customer actually viewed it.[17]

48.    Defendants, armed with this surreptitiously-collected information on customers' viewing habits, then connect the information to the customers' personal internet protocol (hereinafter "IP") address. This is the internet address that is used to identify every internet connected device in a home, office, or other connected environment. These devices include smartphones, tablet computers, laptop computers, desktop computers, and any other wireless device that shares the same IP address as the Smart TV.

49.    IP addresses are closely connected to the individuals using the specific

---

[16] See, e.g. Cognitive Network's Automatic Content Software Platform Diagram) (attached hereto as Exhibit 4).

[17] Id.

IP address. For instance, hundreds of personal attributes can be connected to a specific IP address, including a customers' age, profession, and certain wealth indicators.

50.    ACS is also designed to scan a consumer's home WiFi networks to secretly collect information that is then utilized to help determine the specific person whose viewing activity has been collected. This allows Defendants to determine, within a certain degree of accuracy, which person in a home is watching what and when.

51.    Defendants then sell consumer private information to third parties, including advertisers. Doing so allows advertisers and marketers to determine which advertisements to display on not only a consumer's Defendants' Smart TV, but also any other "smart" devices connected to the same IP address, such as smartphones, tablets, and computers.

52.    Defendants provide consumers' data, voice content and other sensitive information to third parties for the purpose of targeting advertising to particular consumers on their other digital devices based on their television viewing data. Defendants earn substantial revenue by providing consumers' television viewing history to third parties through licensing agreements, on a television-by-television basis.

53.    Defendants also facilitate the provision of demographic information about Smart TV users to third parties.  Defendants disclose and use consumers' Internet Protocol (IP) addresses, media access control (MAC) addresses, zip codes and other information to identify a particular consumer or household, and then send third parties the demographic information associated with that consumer or household. Upon information and belief, Defendants' contracts with third-party users of the viewing data also allow the following information to be appended: sex, age, income, marital status, household size, education, home ownership, and household value. For all of these uses, Defendants provide highly-specific, second-by-second information about television viewing and other information, which allows third parties – and even an ordinary person – the ability to determine the consumers' electronic identity and location.[18]

---

[18] In this advanced technological-age, this data and other personally identifiable information disclosed by Defendants to third parties can easily be used by an ordinary person to pinpoint a consumer's physical

**D.      Defendants Collaborate With Cognitive Networks And
Other Third Parties To Acquire and Sell Consumer Data**

54.      Defendants "partner[] with TV set manufacturers to enable content providers, advertisers, and others to provide greater engagement and interactivity to TV programming. [Third parties like] Cognitive Networks' ACR (automatic content recognition) platform makes Smart TVs aware of the programming that they are displaying, enabling transactions [and] informational requests . . . ."[19]

55.      A Consumer Report investigation uncovered:

> Here's how it works: Companies such as Cognitive Networks, Enswers, and Gracenote collaborate with television manufacturers to embed [automatic tracking software] technology into smart TVs that monitors either the voice or audio stream – and sometimes both – that the user is watching. The [automatic tracking software] creates a "fingerprint" of the on-screen content, and then send it to a remote server that uses that fingerprint to determine what programming is being watched.   Since much of the [automatic tracking software] process is handled by these third parties, *it is likely that millions of smart TV owners have inadvertently left an extensive data trail chronicling months, if not years, of their TV-watching history on the servers of companies they have never heard of.*[20]

---

location (i.e., "geolocation" information) and electronic identity.  See, e.g., *How to Trace an IP Address to a PC & How to Find Your Own*, https://www.makeuseof.com/tag/how-to-trace-an-ip-address-how-to-find-your-own-nb/

[19] https://techcrunch.com/2015/01/04/cognitive-networks-ces/;
https://www.crunchbase.com/orgaization/cgnitive-neworks.  See also (Cognitive Network's Automatic Content Software Platform Diagram) (attached hereto as Exhibit 4).

[20] See Consumer Reports, *Samsung, LG, and Vizio smart TVs are recording—and sharing data about— everything you watch, Consumer Reports investigates the information brokers who want to turn your viewing habits into cash*, February 27, 2015,
http://www.consumerreports.org/cro/news/2015/02/samsung-lg-vizio-smart-tvs-watch-everything-you-watch/index.htm (emphasis added).

56.    Cognitive Networks has admitted using consumer information it has obtained
from Defendants for advertising purposes.[21]   In a 2013 press release, the company
highlighted the value of ACS for advertisers, who could not otherwise "pinpoint what
viewer's interests are and provide more targeted advertisements based on their
preferences." In fact the market research firm for Cognitive Networks lists the "always on"
nature of ACS as one of its key benefits, and claims: "The consumer does not need to opt-
in to an app or service in order to interact with enhanced TV features."[22]

57.    Enswers has admitted that, in 2012, its tracking software has been embedded
at the hardware level into Samsung smart TVs. Enswers has already used the technology
to push interactive advertisements for retirement-planning financial products in Spain, and
also has prompted Samsung smart TV owners to purchase David Beckham underwear
during the Super Bowl XLVIII using their remote controls.[23]

58.    Defendant Samsung has also identified companies called "Nuance" and
"Enswers" as some of the third parties it transmits consumers' information to. [24]

---

[21]  As Zeev Neumeier, Cognitive Network's Founder and President, explained, the data
recognition/processor, third-party companies like Cognitive Networks that Defendants employ to collect
private confidential information and watching habits about consumer utilize:

> [A]utomatic content recognition (ACR) that looks at the picture on your
> TV and uses that data to identify exactly what you're watching. That, in
> turn, enables a content provider or advertiser to add interactive overlays to
> the TV screen itself, triggered by what's onscreen at the moment — say, a
> poll that's relevant to a scene in a show or a coupon that's tied to an ad.

https://techcrunch.com/2015/01/04/cognitive-networks-ces/. See also (Cognitive Network's Automatic
Content Software Platform Diagram) (attached hereto as Exhibit 4).

[22]  See Consumer Report, http://www.consumerreports.org/cro/news/2015/02/samsung-lg-vizio-smart-tvs-
watch-everything-you-watch/index.htm.

[23]  See Consumer Reports, *Samsung, LG, and Vizio smart TVs are recording—and sharing data about—
everything you watch, Consumer Reports investigates the information brokers who want to turn your
viewing habits into cash*, February 27, 2015,
http://www.consumerreports.org/cro/news/2015/02/samsung-lg-vizio-smart-tvs-watch-everything-you-
watch/index.htm

[24]  Id.

**E.**     **Consumers Are Not Reasonably Informed By Defendants Of Their Tracking And Recording And Disclosure To Third Parties Of Consumers' Private Information**

59.     Consumers have no reason to expect that Defendants engaged in second-by-second tracking of consumer viewing data by surreptitiously decoding content and sending it back to their own servers, and then on to third parties' servers. Further, Defendants' representations were not sufficiently clear or prominent to alert consumers to their practices related to data collection and transmission.

60.     Neither Defendants' Smart TV set up, nor Defendants' TV box, manual, spec sheet, advertising, or marketing specifically states that Defendants monitor, track, and report viewing habits and private information about devices attached to home networks, or that Defendants then transmit that information to third parties for profit.   Nor do Defendants' proactively notify its consumers that the company will be collecting the consumers' viewing data by utilizing the pre-installed tracking software or the specific third-parties Defendants have contracts with. Rather, Defendants omit this material information in its communications with its consumers.

61.     In reality, Defendants conceal their ACS and the method for disabling it. In order to not be subjected to Defendants ACS and monitoring programs forever, the consumer must somehow attempt (while taking the unit out of a cardboard box and attempting to physically install it or, as is often the case, having someone else set it up for the consumer) to:

a. find the privacy policy, read and comprehend the complex legal text;

b. understand how, why, when, and if Defendants are collecting confidential, personally identifiable information about them;

c. determine whether or not Defendants' data collection is for Defendants' profit;

d. figure out if Defendants are monitoring and collecting their personal information in real time;

e. try to compute how much information Defendants are collecting and from which devices; and

f. determine if Defendants are storing consumers' private information on their servers, and for how long.

62.    Then, consumers must then attempt to figure out:

i.  when and if Defendants are transmitting their information to outside third parties,

ii.  how much information they are transmitting to third parties and for what purposes,

iii.  to what third parties they are transmitting consumer information to, and what the privacy policies of the outside third parties are; and

iv.  whether the third parties are storing consumers' private information on their servers, and for how long.

63.    Consumers must further attempt figure out:

a. if those outside third parties are transmitting their personal information to other outside "second level" third parties, and

b. to what "second level" third parties Defendants are transmitting consumer information to;

c.  how much information they are transmitting to "second level" third parties and for what purposes;

d. what the privacy policies of the outside "second level" third parties are; and

e. whether the "second level" third parties are storing consumers' private information on their servers, and for how long.

64.    As a Consumer Reports investigation about Defendants' Smart TVs determined:

> [A] key concern with the user monitoring features now built into smart TVs: Consumers don't know precisely what they're enabling when they click through the TV's privacy policy. When Consumer Reports set up a current Samsung smart TV, we were confronted with a

16

terms of service and privacy agreement that had *nine separate expandable sections to explore*. One section, the "Smart Hub Privacy Policy," *covered 47 screens' worth of text*. . . . Regardless, [] [Samsung Smart] TVs allow you to zip through these agreements by agreeing to them all at once. *And a consumer could hardly be blamed for not wanting to read thousands of words of legal documentation on their TVs when they're trying to set them up for the first time.*[25]

65.    Furthermore, <u>Defendants' customers do **not** have access to the names of the outside third parties (or outside "second level" third parties)</u> or <u>access to the separate privacy policies of these outside parties</u> (or outside "second level" third parties) or access to the licensing agreements between Defendants and these third parties. Thus, for the vast majority of consumers who are unaware of the need to take steps to ensure their privacy, Defendants do nothing to alert them, preferring to keep their invasive monitoring and tracking practices – their "backdoor billion dollar business" -- a secret from its customers.

66.    Further, even were a consumer to understand the privacy policy and the so called "option" to not be subjected to Defendants ACS and automatic monitoring programs, consumers are then unable to use some or most of the "Smart" features on their Smart TV -- the very reason consumers buy (and pay considerable extra) when purchasing Smart TVs in the first place.[26]

---

[25] See Consumer Reports, *Samsung, LG, and Vizio smart TVs are recording—and sharing data about— everything you watch*, *Consumer Reports investigates the information brokers who want to turn your viewing habits into cash*, February 27, 2015, http://www.consumerreports.org/cro/news/2015/02/samsung-lg-vizio-smart-tvs-watch-everything-you-watch/index.htm.

[26] <u>See</u>, <u>e.g.</u> TechDirt, *LG Will Take The Smart Out Of Your Smart TV If You Don't Agree To Share Your Viewing and Search Data With Third Parties*, May 20,2014, https://www.techdirt.com/articles/20140511/17430627199/lg-will-take-smart-out-your-smart-tv-if-you-dont-agree-to-share-your-viewing-search-data-with-third-parties.shtml; <u>See</u> also Slashdot, *Television Privacy Declining LG's New Ad-friendly Privacy Policy Removes Features From Smart TVs* ("Techdirt and Consumerist posted articles about a user  . . . [who] declined their new [LG Smart TV] Privacy Policy, only to find that most Internet-connected features (e.g. BBC iPlayer, Skype) of the TV now no longer work."), May 21, 2014, https://entertainment.slashdot.org/story/14/05/21/1456206/declining-lgs-new-ad-friendly-privacy-policy-removes-features-from-smart-tvs.

67.    As reported, Defendants' Smart TVs have continued to collect private information about consumers' even when consumers have successfully "opted out" of such monitoring.[27]

### F.    Defendants Know That Information They Disclose Identifies Individual Viewers, Their Viewing Habits, And Their Location

68.    As discussed, consumers' private information that Defendants disclose to advertisers, data brokers, media content providers, and other third parties, such as its partners, includes viewing history and information which identifies individuals. This information reveals sensitive geolocation information and is personally identifying.

69.    Media access control (MAC) addresses, for example, are unique 12-digit identifiers that are assigned to individual mobile devices, computers, Smart TVs, or other electronic devices. These addresses are tied to the devices' physical embedded chipsets and thus are persistent throughout the life of the device. MAC addresses are automatically broadcast when devices search for networks or communicate with other devices.

70.    MAC addresses often can be linked to individuals by name. For example, when you sign into a commercial WiFi hotspot, your MAC address is tied to the information you use to sign up for the service. Additionally, automatic WiFi probes also broadcast the names of the last networks a device has connected to, which can reveal additional information about the individual, such as the name of a home or work network.

71.    MAC addresses can be used to develop highly specific geolocation data. For example, retail analytics firms have used MAC addresses to pinpoint customer locations— a practice which the Federal Trade Commission ("FTC") has investigated.

72.    When Defendants disclose MAC addresses of all the devices that connect to the same network as a Defendants Smart TV, along with IP addresses, zip codes, the online services consumers visit, the presence of other devices connected to the consumer's local

---

[27] See, e.g., NetworkWorld, *LG Smart TV spying, owner claims his USB filenames posted on LG servers*, Nov. 19, 2013, http://www.networkworld.com/article/2225848/microsoft-subnet/lg-smart-tv-spying--owner-claims-his-usb-filenames-posted-on-lg-servers.html.

network, the number of users and frequency of use of Defendants products and services, and other information, the disclosure provides a "game plan" to associate individuals with their viewing habits.

73.     Defendants know that individuals and their viewing histories can be, and are easily being, identified and linked by the information Defendants disclose.

74.     In fact, individuals can be identified with far less information than what Defendants disclose. A groundbreaking study published in 2000 revealed that three pieces of information—zip code, birth date (including year), and sex—uniquely identified 87 percent of the U.S. population.[28]   Other studies have found similarly high rates of identification.[29]

75.     At least since 2006, video service providers have known that the disclosure of viewing data not associated with individual names can nevertheless be associated with specific individuals. That year, Netflix released a data set representing the movies rated by over 480,000 Netflix customers and the date each rating was given. In an apparent effort by Netflix to anonymize the data, the company replaced customers' names with unique numbers and did not include addresses, phone numbers, or other direct identifiers.[30]

76.     Netflix released the data "as part of its Netflix Prize contest, through which researchers competed to improve the algorithm Netflix uses to recommend movies to its subscribers. Netflix's algorithm takes into account past viewing habits and movie preferences of each of its subscribers."[31]

77.     Following the release of this data set, two researchers at the University of

---

[28] Latanya Sweeney, *Uniqueness of Simple Demographics in the U.S. Population*, Carnegie Mellon University, School of Computer Science, Data Privacy Laboratory, Technical Report LIDAP-WP4 (2000).

[29] Philippe Golle, *Revisiting the Uniqueness of Simple Demographics in the US Population*, ACM Workshop on Privacy in the Elec. Society at 77, 78 (2006).

[30] March 12, 2010 Letter from Maneesha Mithal to Reed Freeman, https://www.ftc.gov/sites/default/files/documents/closing_letters/netflix-inc./100312netflixletter.pdf

[31] Id.

Texas announced that it was possible to identify a significant number of subscribers based on the data set released.[32]  The researchers concluded -- **using 2008 technology**:

> We demonstrate that an adversary who knows only a little bit about an individual subscriber can easily identify this subscriber's record in the dataset. Using the Internet Movie Database as the source of background knowledge, we successfully identified the Netflix records of known users, uncovering their apparent political preferences and other potentially sensitive information. .. . . [Using publicly-available movie reviews posted by Netflix subscribers on the popular site IMDb (www.imdb.com)], one could determine all of the Netflix movies that a subscriber had rated for a given period of time.[33]

78.     Defendants thus know that third parties to whom it discloses this information, which includes its partners, can and do connect these dots. And **using 2018 technology**, so can the ordinary person.[34]  The linkage between viewing data and individuals is firm and readily foreseeable to Defendants, in particular because the information it discloses is effectively a correlated look-up table, complete with geolocation data.

> **G.     Defendants' Product Packaging, Advertising,
> Marketing, And Website Are False And/Or
> Misleading And Omit Material Information**

79.     In advertising and marketing, and on product packaging, Defendants promotes the connectivity of its Smart TVs, but Defendants repeatedly fails to adequately inform consumers about its data collection program, including that viewing data and personally identifiable information is being disclosed to third parties. The information

---

[32] Arvind Narayanan & Vitaly Shmatikov, *Robust De-anonymization of Large Sparse Datasets*, Proceedings of the 2008 IEEE Symposium on Security and Privacy at 111-123, https://dl.acm.org/citation.cfm?id=1398064.

[33] Id.  These researchers were able to identify one user's movie choices, which may suggest facts about his or her politics ("Fahrenheit 9/11"), religious views ("Jesus of Nazareth"), or sexual preference ("Queer as Folk").

[34] See, e.g., *How to Trace an IP Address to a PC & How to Find Your Own*, https://www.makeuseof.com/tag/how-to-trace-an-ip-address-how-to-find-your-own-nb/.

disclosed is valuable and useful precisely because it is not anonymous but instead is personally identifying. Defendants also do not properly disclose that it sells this information to third party advertisers and data brokers.

80.     Defendants rather give consumers a false sense of security when it comes to privacy by saying nothing about its ACS technology, which it uses.

81.     Even today, ACS technology is conspicuously absent from Defendants' online advertising for entire product lines, including Plaintiffs' Smart TVs at issue. Defendants' website and Smart TV manuals tout its Smart TVs connectivity but do not disclose that Defendants will collect and disseminate to third parties for profit viewing habits and personal information upon connection.[35]

### H.     Consumers Do Not Believe That Defendants' Voice Recognition Involves Voice Recording or Transmission

82.     The Electronic Privacy Information Center ("EPIC"), a leading consumer group before the FTC, has filed an FTC privacy complaint against Defendant Samsung and deemed the type of conduct by Defendants alleged herein to be misleading and deceptive.[36] EPIC stated: "Samsung users could not reasonably have anticipated that by using a voice-controlled Smart TV, their private conversations would be transmitted, sometimes unencrypted, to a third party company," and has compiled many statements from consumers regarding the fact that they never knew (or could possibly imagine) that voice recognition system in Smart TVs could intercept and record private communications in the home, or that Defendants would transmit those private recordings to outside parties.[37]

---

[35] See, e.g., Exhibit 3 attached hereto (User Manual and Spec Sheet respecting Ms. Cauley's Samsung Smart TV at issue).

[36] See In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 (the "FTC Samsung Brief") (attached hereto as Exhibit 4).

[37] The survey conducted by EPIC only concerned Samsung Smart TV users, but the confusion expressed there applies equally to both Defendants. Counsel for Plaintiffs is more than willing to perform similar surveys for Defendant Sony if the Court so desires.

83.     For example, a Smart TV user Dane Jensen commented:

This is an outrageous invasion of privacy and should be illegal.
Actually it is illegal but not being enforced. You are not
allowed to spy or record someone without consent. I just
bought a Samsung TV and never saw or signed any consent
form to be recorded. I never saw anything.[38]

84.     User Stephen commented:

This should have to be relayed to the customer prior
to purchasing. Shame on Samsung for giving into the
governments constant strive to monitor the entire population[39]

85.     User potrzebie commented, "I own two Samsung TVs and a Samsung
tablet. If they don't stop this right now, I will never buy another Samsung product, ever.
Vote with your wallets people.[40]

86.     Twitter user @Jason_Garber commented, "From now on wherever I have
business meetings and there is a #Samsung #SmartTV present I will ask for its
removal."[41]

87.     Twitter user @CSElder commented, "@Samsungtweets i will NEVER buy
another Samsung tv thanks to your recording feature. You overstep your bounds.
#SamsungFail"[42]

88.     User beverly commented, "why is this info sent to third party at all it
should just stop at the smart tv processor" [43]

89.     User cft6vgy7 commented,

This is why devices like cameras and microphones
should always be sold separately from computers, TVs, and
other electronics. It may not be as "convenient" for the less
tech-savvy, but it will be more secure for

---

[38] Id. at 7, 19.
[39] Id.
[40] Id.
[41] Id.
[42] Id.
[43] Id.

every single consumer. Allow consumers to "opt-in" if they don't mind the security risk; don't force users to have to "opt-out" if they want to preserve their own privacy. [44]

99.    User John Manso wrote,

I'm glad this is getting national attention. When I first saw the smart TV's come out, very few were concerned. A device in your living room with a camera, a microphone, and 24 hour access to the internet. What could go wrong here? Uh, everything. Who knows who can hack into all of these with a simple piece of software. Everything can be "hacked". No we don't cook up

national threats in our living room but privacy is expected and deserved in one's living room wouldn't you say?[45]

100.    User Craig Cheatham commented:

There are a couple problems evident here beside the obvious one of spying on our conversations. All of these User Agreements convey all sorts of rights to the company without articulating them in a clear manner to the consumer. . . . There is NO way to know what is "shared" or who has access to it. . . . This trope of Future Shock is a new societal psychological syndrome, as yet unnamed. It is not really paranoia, it is a response to the unwilling sharing of our personal lives that we are powerless to stop without becoming a tree dwelling Luddite. It is an intrusion into what had been considered private personal space.[46]

## V.    CLASS ACTION ALLEGATIONS

101.    Pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the Nationwide Class (the "Nationwide Class"), which shall initially be defined as:

*All individuals in the United States who purchased a Samsung and/or Sony Smart TV with content-recognition capability for personal or household use, and not for resale, during the applicable statute of limitations period.*

---

[44] Id. at 7-8.
[45] Id. at 8.
[46] Id.

23

102.   Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the New Jersey Class (the "New Jersey Class"), which shall initially be defined as:

> *All persons in New Jersey who purchased a Samsung and/or Sony Smart TV with content-recognition capability for personal or household use, and not for resale, during the applicable statute of limitations period.*

103.   Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all Members of the Florida Class (the "Florida Class"), which shall initially be defined as:

> *All persons in Florida who purchased a Samsung and/or Sony Smart TV with content-recognition capability for personal or household use, and not for resale, during the applicable statute of limitations period.*

104.   Excluded from the Classes are governmental entities, Defendants, any entity In which Defendants have a controlling interest, and Defendants; officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.

105.   The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

106.   Plaintiffs reserve the right to amend or modify the Class and/or Subclass definitions with greater specificity, further division into subclasses, or with limitation to particular issues as discovery and the orders of this Court warrant.

107.   The Court can define the Class and create additional subclasses as may be

necessary or desirable to adjudicate common issues and claims of the Class Members if, based on discovery of additional facts, the need arises.

108.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages appropriate with respect to the Class as a whole. Specifically, Defendants continue to obtain and disseminate sensitive viewing histories and personal information on an opt-in basis and without consent, and to date have not adequately disclosed the true nature of the Defendants Smart TVs with ACS tracking technology, including that the TVs collect and disseminate consumers' personal information and voice-content.

109.    Numerosity and Ascertainability: The exact number of members of the Class is unknown as such information is unavailable to Plaintiffs at this time. However, Plaintiffs believe individual joinder in this case is impracticable. The Class likely consists of hundreds of thousands of individuals. These individuals can be readily ascertainable through Defendants or their agents' records and are obtainable to Plaintiffs only through the discovery process.

110.    Predominance of Common Questions of Fact and Law: Questions of law and fact common to all Class members exist and predominate over any questions affecting only individual Class members, including, but not limited to, the following:

a. Whether Defendants unlawfully collected and disseminated Plaintiffs' and Class members' personal information;

b. Whether Defendants disclosed to Plaintiffs and Class members before the tracking software was activated on Defendants' Smart TVs that their personal information would be collected and disseminated to third parties;

c. Whether Defendants misrepresented or omitted material facts with regard to the ACS feature of Defendants' Smart TVs;

d. Whether Plaintiffs and Class members consented to the collection of their personal information and its sale to third parties;

e. Whether Plaintiffs and Class members have a reasonable expectation of privacy in the information collected and disseminated by Defendants;

f. Whether Defendants' conduct constitutes violations of the laws and statutes asserted herein;

g. Whether Defendants' conduct was knowing;

h. Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to damages, including compensatory, statutory, or punitive, and the amount of such damages;

i. Whether, as a result of Defendants' conduct, Plaintiffs and Class members are entitled to equitable relief, such as declaratory or injunctive relief;

j. Whether Defendants were unjustly enriched by their conduct;

k. Whether, for the Nationwide Class noted above, New Jersey has a significant contact to the claims of each class member to apply New Jersey law to all members of the Nationwide Class;

l. Whether, for the Nationwide Class noted above, the Video Privacy Protection Act and/or the Wiretap Act applies to all members of the Nationwide Class; and

m. Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

111.   Typicality: Plaintiffs' claims, and Defendants' defenses, are typical of the claims and defenses of and to the Class. Every member of the Class was similarly affected by Defendants' course of conduct and experienced the same harm, damages and loss based on Defendants' unlawful conduct. As such, Plaintiffs and Class members must establish the same facts in order to prove the claims asserted herein.

112.   Adequacy of Representation: Plaintiffs do not have any conflicts with any other members of the Class, and will fairly and adequately represent and protect the interests of the members of the Class and any other subclass. Plaintiffs have retained counsel competent and experienced in consumer protection and class action litigation, trials, and appeals.

113.   Superiority of a Class Action: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of the individual litigation would make it impracticable or impossible for the Class members to prosecute their claims individually. Absent a class action, Defendants likely will retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for these wrongs. Absent a representative action, the Class members will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiffs' and Class members' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment. Thus, the benefits of proceeding as a class action outweigh the difficulties.

## VI.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Unfair and Deceptive Tracking and Transmission - Violations of the NJCFA**

**(On Behalf Of Plaintiffs And The Nationwide Class, And Separately, On Behalf Of Plaintiff Cauley The New Jersey Class)**

114.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

115.   Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

116.   The CFA, N.J. Stat. Ann. § 56:8-2, prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment,

suppression or omission, in connection with the
sale or advertisement of any merchandise . . . .

117.   The CFA defines "merchandise" as "any objects, wares, goods commodities,
services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. §
56:8-1(c).

118.   At all relevant times, Defendants have engaged in the advertisement, offering
for sale and sale of merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c),
specifically Defendants' Smart TVs and related services.

119.   Defendants use ACS technology to comprehensively collect the sensitive
television viewing activity of consumers or households across cable or broadband services,
set-top boxes, external streaming devices, DVD players, and over-the-air broadcasts, on a
second-by-second basis and store this viewing data indefinitely.

120.   Defendants provided this viewing data to third parties, which used it to track
and target advertising to individual consumers across devices. Defendants engaged in these
practices through a medium that consumers would not expect to be used for tracking,
without consumers' consent; namely, consumers' own Smart TVs.

121.   As described herein, Defendants' continued utilization of unlawful and
unconscionable marketing practices, and their continuing practice of monitoring, tracking,
and reporting viewing habits and personally identifiable information to unauthorized third
parties, without consent, constitutes a deceptive act or practice in violation of the CFA.

122.   Further, such is also an unconscionable commercial practice in violation of
the CFA. Each instance of Defendants' unfair tracking constitutes a separate violation
under the CFA, N.J. Stat. Ann. § 56:8-2.

123.   The disclosure of personal viewing history, spending and watching habits,
personal voice content, and personally-identifiable information is a material term of the
transactions at issue as it is likely to affect a consumer's choice of, or conduct regarding,
whether to purchase a product or service. The failure to inform consumers that this personal
information would be shared with third parties is materially misleading.

124.   Defendants' omission of this information was an act likely to mislead Plaintiff and the Class acting reasonably under the circumstances and constitutes a deceptive trade practice in violation of the CFA.

125.   Defendants conduct was deceptive and unconscionable because, among other misconduct described in this Complaint, Defendants monitored, tracked, recorded and transmitted to third parties Plaintiffs' and Class members' personal viewing and spending habits and personally identifiable information without providing clear and conspicuous notice and without consent.

126.   Defendants' collection and sharing of confidential sensitive data and voice content without consumers' consent has caused or is likely to cause substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers themselves.

127.   This is an unfair act or practice, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

128.   Defendants' practice of monitoring, tracking, and transmitting to third parties Plaintiffs' and Class members' personal viewing and spending habits and personally identifiable information and voice content without providing clear and conspicuous notice and without consent is also unlawful, deceptive and misleading, and violates the Wiretap Act, 18 U.S.C. § 2510 et seq., and Video Privacy Protection Act, 18 U.S.C. §§ 2710 et seq.

129.   Defendants violations of these statutes constitute additional violations by Defendants of the CFA.

## SECOND CLAIM FOR RELIEF

### Deceptive Omissions - Violations of the NJCFA

### (On Behalf Of Plaintiffs And The Nationwide Class, And Separately, On Behalf Of Plaintiff Cauley The New Jersey Class)

130.   Plaintiffs incorporate by reference all the foregoing paragraphs.

131.   Defendants engaged in deceptive practices as defined under the CFA. Defendants' actions were part of a scheme intended to actively mislead Plaintiffs and the Class into believing that the Smart TVs were of a specific quality, namely that the Smart TVs would not violate their privacy and were not designed to violate consumer's privacy by secretly monitoring and recording consumers' viewing habits, while Defendants did in fact know that their Smart TVs were designed to accomplish precisely this objective.

132.   Additionally, Defendants did not disclose that their tracking software was installed and/or used on the Smart TVs because they knew that Plaintiffs and the members of the Class would not likely purchase the Smart TVs if they knew of the tracking software.

133.   Defendants also made material omissions when speaking to Plaintiffs and Class Members through written materials. As described fully above, Defendants failed to clearly and conspicuously inform consumers that once their Smart TVs were hooked up to the internet through an IP address, Defendants would monitor, track, and transmit personal viewing histories and personally-identifiable information and voice content to third parties without Plaintiffs' and Class Members' consent.

134.   Defendants failed to clearly and conspicuously inform Plaintiffs that once their Smart TV were hooked up to the internet through an IP address, Defendants would monitor and track their and their family's personal viewing histories and personally-identifiable information, and then transmit that confidential information and voice content to third parties without Plaintiffs' consent.

135.   Defendants also failed to adequately disclose that the ACS feature of their Smart TVs comprehensively collected and shared consumers' television viewing activity from cable boxes, DVRs, streaming devices, and airwaves, which Defendants then provided on a household-by-household basis to third parties (and then to "second-level" third parties) .

136.   Defendants' deceptive acts and practices were capable of deceiving a

substantial portion of the purchasing public. In fact, the Defendants knew and intended that Plaintiffs and the Class could not be expected to learn about or discover the existence of the Automatic Content Software on the Defendants' Smart TVs.

137. Through these deliberate omissions, the Defendants deceived the Plaintiffs about the quality of the Defendants Smart TVs and, as such, wrongfully induced Plaintiffs to purchase the Smart TVs.

138. The relationship between Defendants and Plaintiffs and the Class gave rise to the duty to speak because Defendants knew that their Smart TVs would, once connected to the internet, obtain confidential information about consumers, including viewing histories and personally identifiable information, and transmit that information to third parties without the knowledge or consent of the viewer. Defendants had superior knowledge as to the information withheld, and such information was material.

139. By engaging in the deceptive conduct, Defendants obtained substantial financial benefits by selling information about the Plaintiffs and the Class, including personally identifiable information, to unauthorized third parties.

140. The injuries caused by the Defendants' conduct are not outweighed by any countervailing benefits to consumers or competition, and neither Plaintiff nor the Class could have reasonably avoided the injuries they sustained.

141. Defendants intended that Plaintiffs and the Class would rely upon Defendants' deceptive conduct and not be aware of or understand Defendants' Automatic Content software.

142. The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business acts or practices in violation of the CFA. Such acts and practices have not abated and will continue to occur unless enjoined.

143. The unfair, unlawful, or fraudulent business acts or practices set forth above have and continue to injure Plaintiffs, the Class, and the general public and cause the loss of money. These violations have unjustly enriched Defendants at the

expense of Plaintiffs and the Class.

144.   The unfair, unlawful, or fraudulent business acts or practices at issue in this Complaint and carried out by Defendants took place in the course of trade or commerce.

145.   As a direct and proximate result of Defendants' violations of the CFA, Plaintiff and the Class have suffered harm in the form of paying monies to purchase the Smart TV when they would not have otherwise.

146.   Defendants' failure to adequately disclose its practice of secretly monitoring and tracking consumers and then and then transmitting that private, sensitive data and information and voice content to third parties, and other misconduct by Defendants (described herein), also constitute unconscionable commercial practices in violation of the CFA.  Each separate instance of Defendants' failure to adequately disclose its practice of secretly monitoring and tracking consumers and then transmitting that private, sensitive data and information and voice content to third parties, and other misconduct by Defendants, constitutes a separate violation under the CFA, N.J. Stat. Ann. § 56:8-2.

## THIRD CLAIM FOR RELIEF

### Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710

### (On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)

147.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

148.   Defendants are each a video tape service provider subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). Defendants are "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" by delivering videos to consumers through its Internet-connected Smart TVs. Defendants facilitates the transmission of specific video titles to be made to consumers through its video services that

allow consumers to watch movies and TV shows, listen to music, and access applications on demand.

149.   As users of Defendants' Smart TVs, Plaintiffs and members of the Class are consumers within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

150.   Plaintiffs and the members of the Class have watched many movies and television shows on the Defendants' Smart TVs. At all times during the Class Period, Defendants' secretly monitored Plaintiffs' and Class members'' usage of their Smart TVs, collected information on Plaintiffs' and Class members' viewing habits, and performed scans of Plaintiffs' and Class members' home WiFi.

151.   Unbeknownst to Plaintiffs and members of the Class, Defendants have disclosed and continue to disclose Plaintiffs' and the Class members' information, including their personally identifying information, to unidentified, unauthorized third parties.

152.   Defendants' transmissions of Plaintiffs' and the Class members' personally identifiable information to these third party brokers and advertisers constitutes "knowing[] disclosures" of Plaintiffs' and the Class members' "personally identifiable information" to a person under the VPAA. 18 U.S.C. § 2710(a)(1).

153.   The collection of consumers' viewing information – including movies, shows, and programs viewed, IP addresses, media access control (MAC) addresses, zip codes, computer names, and product serial numbers – constitutes the collection of personally identifiable information ("PII") within 18 U.S.C. § 2710(a)(3), because it "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

154.   Defendants has disclosed, and continues to disclose, PII to third-parties, including data brokers and advertisers, to generate revenue and profit. 1

155.   Defendants failed to solicit and/or obtain consent from Plaintiffs and the Class Members to collect and disclose their PII, nor did Defendants provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

156.   Defendants' disclosures were not made in the ordinary course of business as

defined by 18 U.S.C. § 2710(a)(2), which limits disclosures to "debt collection activities, order fulfillment, request processing, and the transfer of ownership."

157.   Defendants are "video tape service providers" as defined by the VPPA. Defendants "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale or deliver of prerecorded video cassette tapes *or similar audio visual materials*." 18 U.S.C. § 2710(a)(4).  Specifically, Defendants delivers videos and "similar audio visual materials" to consumers through its internet-connected Smart TVs, as well as through many of the pre-loaded applications available on its Smart TVs.

158.   Plaintiffs are considered "consumers" under the VPPA because they are each a "renter, purchaser or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1).  As described above, Plaintiffs and the Class caused to be purchased Smart TVs manufactured, marketed, and distributed by Defendants.

159.   The knowing disclosure and transmission of PII by Defendants violates the VPPA within the meaning of 18 U.S.C § 2710(b)(1).

160.   Accordingly, Plaintiffs and members of the Class are entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such other preliminary and equitable relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF

### Violation of the Wiretap Act, 18 U.S.C. § 2510 et seq.

### (On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)

161.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

162.   The Federal Wiretap Act, 18 U.S.C. § 2510 et seq., prohibits the interception of any wire, oral, or electronic communications. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

163.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

164.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

163.    "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

165.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).  Plaintiffs and Class members are persons as defined under § 2510(6) of the Act.

166.    Defendants' automated content software technology, which is installed and/or used by Defendants on their Smart TVs, is a device for purposes of the Wiretap Act because it is software used to intercept electronic communication.

167.    Defendants, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with ACS software have intentionally intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to intercept, electronic communications as described herein, in violation of 18 U.S.C. § 2511(1)(a). This interception was acquired during transmission, Defendants' ACS operated in real time to acquire the content of Plaintiffs' and the Class members' electronic communications, including their viewing habits and identifying information, as described above.

168.    The contents intercepted include information concerning the substance, purport, or meaning of that communication, including, but not limited to, viewing histories and preferences, IP addresses, MAC addresses, zip codes, product model numbers, hardware and software versions, chipset IDs, and region and language settings.

35

169.   Plaintiffs' and the Class members' electronic communications were intercepted without their consent and for the unlawful and/or wrongful purpose of monetizing their private information, including by using their private information to create targeted advertisements for profit, without Class members' consent, and for tortious purposes and for the purpose of committing unfair business practices.

170.   Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Members' electronic communications.

171.   Neither Plaintiffs nor Class Members authorized or consented to Defendants interception of electronic communications.

172.   As a result, Plaintiffs and Class members have suffered harm and injury, including due to the interception and transmission of private and personal, confidential, and sensitive communications, content, and data.

173.   Plaintiffs and the Class have been damaged by the interception or disclosure of their communications in violation of the Wiretap Act, as described herein, and are thus entitled to preliminary, equitable, or declaratory relief; statutory and punitive damages; and reasonable attorney's fees and litigations costs reasonably incurred. 18 U.S.C. § 2520(b).

174.   18 U.S.C. § 2520 also provides for a private cause of action and allows for declaratory and equitable relief as appropriate, damages, disgorgement of profits, and statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF

**Violation of Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA")
Fla. Stat. § 501.201, et seq.**

**(On Behalf Of Plaintiff White And The Florida Class)**

175.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

176.   Plaintiffs and each member of the Class are "consumers" as defined by Fla. Stat. § 501.203(7).

177.   Defendants, through their conduct alleged herein, are engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

178.   The FDUTPA was enacted to protect consumers and businesses from unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

179.   To this end, the FDUTPA declares as unlawful all unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

180.   Defendants violated the FDUTPA because their conduct, as alleged herein, is deceptive and unfair.

181.   Defendants' conduct is deceptive because it is likely to mislead a reasonable Consumer.

182.   The specifications of a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product.

183.   Despite the importance of specifications to consumer purchase decisions, Defendants do not disclose that their Smart TVs have the tracking software installed, and that the tracking software monitors, collects and disseminates consumer data.

184.   On the boxes in which the Smart TVs were packaged, Defendants informed Plaintiffs that one would be able to stream and view video content from the Smart TVs, as well as connect the Smart TVs to other devices such as Blu-ray DVD players and gaming consoles. However, Defendants failed to inform Plaintiffs that if they take advantage of these features and/or watch live broadcast programming on their Smart TVs, their viewing data and voice content is collected and disseminated to third parties. Had Plaintiffs known the full truth about Defendants' collection and dissemination of Defendants' viewing data, Plaintiffs would not have purchased or would have paid less for their Smart TVs.

185.   Defendants' failure to disclose these specifications of their Smart TVs, as well as Defendants' failure to gain consumer consent to allow Defendants to monitor and collect consumer information by use of the tracking software, deceived consumers into believing they were purchasing a benign entertainment device.

186.   Had Defendants disclosed to consumers that their Smart TVs employed the tracking software, and that consumer viewing habits and other information would be collected and disseminated without consent or knowledge, consumers would not have bought, or would have paid less for, Defendants' Smart TVs and would have avoided Defendants' products and data practices.

187.   In fact, Defendants did not disclose facts about the tracking software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase, or would pay less for, the Smart TVs if the fact that tracking software was installed on the Smart TVs was disclosed prior to purchase.

188.   Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

189.   Defendants' conduct offends established public policy because it violated 18 U.S.C. § 2710 and 18 U.S.C. § 2510 et seq., as explained above.

190.   Defendants' conduct is substantially injurious, and is immoral, unethical, oppressive and unscrupulous because Defendants monitor, collect, and record consumer viewing habits and other information in order to sell it to third parties for profit, and does so without disclosing its data practices to consumers or obtaining consumer consent for the collection and sale of consumer data.

191.   Had consumers known Defendants' Smart TVs employed software that monitored, collected and disseminated consumer viewing habits and other data, consumers would not have purchased, or would have paid less for, Defendants' Smart TVs.

192.   Moreover, by surreptitiously monitoring, collecting, and recording consumer viewing habits and other information, and by selling, or otherwise disclosing, that information to third parties without consumer knowledge or consent, Defendants prevent consumers from avoiding its data practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

193.   Defendants knew or had reason to know that Plaintiffs and the Class could not have reasonably known or discovered the existence of the tracking software, without disclosure by Defendants.

194.   The injury to consumer privacy rights, and the causing of consumers to buy products they otherwise would have avoided, outweighs the profit motive and ultimate goal for Defendants' unauthorized and secretive monitoring, collection and dissemination of consumer data.

195.   Defendants' deceptive and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

196.   Defendants' conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the Smart TVs.

197.   If Defendants had disclosed that their tracking software was installed and

operating on the Defendants Smart TVs, Plaintiffs and Class members would not have purchased, or would have paid less for, the Smart TVs.

198.   Pursuant to Fla. Stat. § 501.211, Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay damages to Plaintiffs and the Class; and (3) awarding attorney's fees and court costs.

## SIXTH CLAIM FOR RELIEF

### Negligent Misrepresentation/Omission

### (On Behalf of Plaintiffs Cauley and White, and the New Jersey and Subclasses)

199.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

200.   Defendants negligently concealed, suppressed, or omitted a material fact. To wit, Defendants concealed the existence of their Smart TV tracking (ACS) software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network and its disclosure of such viewing history, along with other personally identifiable information.

201.   Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software and that it disseminated such data due to the following reasons:

a. Defendants, as the manufacturers, were in a superior position to know of the existence of the pre-enabled tracking software and the dissemination of data on Defendants' Smart TVs;

b. The Video Protection Privacy Act prohibits the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;

c. Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on the Smart TVs, including the dissemination of such data;

d. Defendants should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on its TVs, and in fact, Defendants took steps to actively conceal the tracking software; and

e. Defendants should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members.

202.    Defendants negligently concealed and/or suppressed information about the tracking software and the dissemination of data collected by that software and other software. Defendants should have known that Plaintiff and Class members would not have purchased the Smart TVs for the price they paid if Defendants had disclosed the existence of pre-enabled tracking software.

203.    Defendants recognized the materiality of the tracking software and its ability to profit from the sale of users' personally identifiable information to third parties

204.    Plaintiff and Class members were unaware of the existence of the tracking software on Defendants' Smart TVs at the time of the purchases, along with the dissemination of data by that software and other software. Had they known, Plaintiff and Class members would not have purchased Defendants Smart TVs or would have paid less for them.

205.    Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized access.

206.    On behalf themselves and the Class, Plaintiffs seeks damages, including expenses, attorneys' fees, and costs, as a result of Defendants' negligence.

## VII.   PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a.      Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and appoint Plaintiffs' Counsel as counsel for the Class;

b.      Enter an order declaring Defendants' actions are unlawful;

c.      Award Plaintiffs and class members appropriate relief, including actual, statutory, and punitive damages;

d.      Award Plaintiffs and class members restitution, disgorgement, and other equitable relief as the Court deems proper;

e.      Award injunctive and declaratory relief as may be appropriate;

f.      Award attorneys' fees and all other costs of prosecuting this action;

g.      Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

h.      Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: October 29, 2019

By:     /s/ Mack Press

Mack Press, Esq.
BERMAN CLASS LAW
18 Watergate Lane
Patchogue, NY 11772
Mack@MackPress.com
516-330-7213

# United States Senate

WASHINGTON, DC 20510

July 12, 2018

The Honorable Joseph Simons
Chairman
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Dear Chairman Simons:

We write to express our concerns about the consumer privacy issues raised by the proliferation of smart TV technology. While the evolution of the smart TV has ushered in a new era of innovation and interactivity, we must ensure that these technological advancements do not come at the expense of our privacy. We request that the Federal Trade Commission (FTC) continue its previous work on smart TVs and launch an investigation into the privacy policies and practices of smart TV manufacturers.

Many internet-connected smart TVs are equipped with sophisticated technologies that can track the content users are watching and then use that information to tailor and deliver targeted advertisements to consumers. By identifying the broadcast and cable shows, video games, over-the-top content like Netflix, and other applications that users are viewing, smart TVs can compile detailed profiles about users' preferences and characteristics. Recent reports even suggest that smart TVs can identify users' political affiliations based on whether they watch conservative or liberal media outlets. This information about consumers' viewing habits, by itself or in combination with the troves of additional personal data collected online and across other devices, allows companies to personalize advertisements based on detailed dossiers of individual users. Advertisements can then be sent to customers' computers, phones, or any other device that shares the smart TVs' internet connection.[1]

Regrettably, smart TV users may not be aware of the extent to which their televisions are collecting sensitive information about their viewing habits. Recent reports suggest that Samba TV, one of the largest companies tracking smart TV users' viewing behavior, offers consumers the opportunity to enable their tracking service, but does not be provide sufficient information about its privacy practices to ensure users can make truly informed decisions.[2] For example, when prompting consumers to opt-into their 'Interactive TV' service, Samba TV denotes that that the service allows users to obtain "exclusive content and special offers," but does not clearly convey how much sensitive information about a user will be collected or whether the data will be used for targeted advertisements across different devices.[3]

---

[1] Sapna Maheshwari, *How smart TVs in Millions of U.S. Homes Track More Than What's On Tonight*, N.Y. TIMES (July 5, 2018), https://www.nytimes.com/2018/07/05/business/media/tv-viewer-tracking.html.
[2] *See id.*
[3] *See id.*

Congress has long recognized the unique privacy concerns raised by data companies tracking and collecting information about the content viewers watch on television. In 1984, Congress required cable operators to detail their data practices, and required these operators to receive consent prior to the collection or disclosure of this sensitive information.[4] Two decades later, Congress extended these protections to satellite carriers.[5]  However, these protections do not cover data companies using internet connectivity, rather than cable or satellite systems, to track smart TV users' viewing habits.

Similarly recognizing the privacy concerns raised by smart TVs, the FTC has begun taking action. In December 2016, the FTC held a workshop on the issues surrounding smart TV tracking of consumer viewing habits.[6] In February 2017, after investigating VIZIO, one of the world's largest manufacturers and sellers of smart TVs, the FTC reached a settlement with the company, resolving charges that VIZIO had "installed software on its TVs to collect viewing data on 11 million consumer TVs without consumers' knowledge or consent."[7]

Televisions have entered a new era, but that does not mean that users' sensitive information no longer deserves protection. The content consumers watch is private, and it should not be assumed that customers want companies to track and use information on their viewing habits. Any entity collecting and using sensitive information should comprehensively and concisely detail who will have access to that data, how that data will be used, and what steps will be taken to protect that information. Users should then be given the opportunity to affirmatively consent to the collection and use of their sensitive information, while still having access to the core functions of smart TV technology.

In light of the recent reports described above, we respectfully request that the FTC continue its efforts on smart TVs and launch an investigation into the privacy policies and practices of smart TV manufacturers.

Thank you for your attention to this important matter.

Sincerely,

Edward J. Markey
United States Senator

Richard Blumenthal
United States Senator

---

[4] *See* 47 U.S.C. § 551.
[5] *See* 47 U.S.C. § 338(i).
[6] Federal Trade Commission, *Fall Technology Series: smart TV*, FTC.GOV (Dec. 7, 2016),
https://www.ftc.gov/news-events/events-calendar/2016/12/fall-technology-series-smart-tv.
[7] Press Release, Federal Trade Commission, VIZIO to Pay $2.2 Million to FTC, State of New Jersey to Settle Charges It Collected Viewing Histories on 11 Million smart Televisions without Users' Consent (Feb. 6, 2017), https://www.ftc.gov/news-events/press-releases/2017/02/vizio-pay-22-million-ftc-state-new-jersey-settle-charges-it.



1117029679076

**Welcome to Best Buy**
4180 US HWY 1
STE 400C
MONMOUTH JUNCTION NJ 08852-1971
Sales Associate:  David R

Order Number:  1117029679076

Order Date:  01/29/2017

Printed On:  01/29/2017 2:55 PM

**Purchaser Info**

First Name:  PATRICIA
Last Name:  CAULEY
Home Phone:  732-
Mobile Phone:
Address 1:  ▓ LEHIGH DR
Address 2:
City:  KENDALL PARK
State: NJ                    ZIP:  08824-1912
Email:

| SKU | Price | Description | Quantity | Fulfillment Method | Fulfillment Address | Fulfillment Date/Time |
|-----|-------|-------------|----------|--------------------|--------------------|----------------------|
| 5034800 | $999.99 | SAMSUNG UN55KS8000FXZA LED 2160P SMART4K Model# UN55KS8000FXZA | 1 | Pickup | 251 NASSAU PARK BLVD, NASSAU PARK SHOPPING CTR,PRINCETON,NJ,08540-5935,US 609-514-9500 | 01/29/2017 |

| | |
|---|---|
| Est. Order Subtotal | $999.99 |
| Delivery | $0.00 |
| Shipping | $0.00 |
| Estimated Tax | $68.75 |
| Extended Delivery | $0.00 |
| Total Discounts | $0.00 |
| Est. Order Total | $1,068.74 |

# KS8000 SUHD TV

**SPEC SHEET**



## PRODUCT HIGHLIGHTS

- Quantum Dot Color
- HDR 1000
- MR 240
- New Smart Hub

## SIZE CLASS

   

| 65" | 60" | 55" | 49" |
|-----|-----|-----|-----|
| UN65KS8000 | UN60KS8000¹ | UN55KS8000 | UN49KS8000 |

The Samsung 4K SUHD TV completely redefines the viewing experience with the revolutionary Quantum Dot nano-crystal technology. The KS8000 features innovations that produce a remarkable High Dynamic Range picture experience, regardless of room-light interference. Access your favorite streaming content services easier and faster with our premium design Smart Remote Controller.

## KEY FEATURES

### PICTURE QUALITY

- Quantum Dot Color
- 4K Ultra High Definition
- HDR 1000
- Ultra Black
- Peak Illuminator Pro
- MR 240
- Contrast Enhancer
- Precision Black
- UHD Dimming

### SMART FEATURES

- Quad Core Processor
- Smart Hub
- Apps and Games
- Web Browser

### SMART CONNECTIVITY

- TV to Mobile/Mobile to TV Mirroring
- Smart View App (Content Sharing + 2nd TV + App Casting)
- Briefing on TV

### SMART INTERACTION

- Voice Control

### SMART HOME SUPPORT

- Smart Home Control
- Smart Home Hub Support

### CONNECTIONS

- 4 HDMI Connections²
- 3 USB Connections
- 802.11 AC Built-In WiFi
- Bluetooth® LE
- RS232 Control

### AUDIO

- Dolby® Digital Plus
- DTS® Premium Sound | 5.1™ Decoding
- 40 Watt 2.1 Channel

### INCLUDED ACCESSORIES

- Premium Smart Remote Control
- One Connect Mini
- One Connect Cable

### INDUSTRY CERTIFICATIONS

- Ultra HD Premium
- 4K Ultra HD Connected

¹ UN60KS8000 not bezel-less
² HDMI – CEC (Consumer Electronics Control) facilitates convenient control functions with compatible devices



SEE BACK FOR DETAILS

# KS8000 SUHD TV

## KEY FEATURES (page 1 of 2)

### PICTURE QUALITY

**QUANTUM DOT COLOR**
Accurate shades and lifelike colors come alive in detail with
SUHD Quantum Dot.

**4K ULTRA HIGH DEFINITION**
Enjoy an incredible picture and dramatic detail with 4x the resolution
of Full HD.

**HDR 1000**
See the sunlight in its full radiant glory and find the small detail
in the dark shadows with our best HDR innovation.

**ULTRA BLACK**
Enhances contrast and preserves deep blacks and color richness
in brighter room light settings.

**EDGE-ARRAY BACKLIGHTING**
Experience the full vibrancy of your favorite media and
entertainment with expanded brightness levels across
the entire screen.

**PEAK ILLUMINATOR PRO**
See extended shades of colors pop, enjoy greater dynamic range,
improved contrasting detail, and darker scene highlights that
come alive.

**MR 240**
Enjoy our fast-action moving picture resolution with exceptional
refresh rate, processing speed, and backlight technology.

**CONTRAST ENHANCER**
Experience a greater sense of depth with optimized contrast across
multiple zones of the picture.

**PRECISION BLACK**
Feel the drama of every entertainment experience with darker blacks
and a greater contrasting picture.

**UHD DIMMING**
Optimizes color, contrast, and image detail by processing the image
characteristics prior to them being displayed on the screen.

**ULTRA CLEAR PANEL**
Get the best picture with minimized glare from any angle with
a screen that absorbs ambient light, reduces reflections, and lets
the picture come to life.

**UHD UPSCALING**
Upgrade lower resolution media to a stunning near ultra
high-definition experience with enhanced detail and optimized
picture quality.

### SMART FEATURES

**QUAD-CORE PROCESSOR**
Enjoy a fluid browsing experience and faster control – switching
between apps, streaming content, and other media effortlessly.[1]

**SMART HUB**
Simple access to live TV, streaming content sources, and apps
in one place with Smart Hub – and you only need one remote
control for it all.[2]

**SMART APPS**
Put your favorite media and entertainment at your fingertips with
apps built for your Samsung Smart TV – including streaming TV and
movies, sports, social media, interactive games, weather, and more.[2]

**FULL WEB BROWSER**
Easily browse the web right on your TV – enjoy everything from
online shopping and social media to entertainment news.[2]

### SMART CONNECTIVITY

**SCREEN MIRRORING**
Mirror your phone or other compatible device's screen onto the
TV's screen, instead of using your device's smaller screen to show
content, media playback, or other functions.

**CONNECTSHARE™ MOVIE**
Plug your favorite entertainment and media into your TV – watch
videos, play music, or view photos through a USB connection.

**SMART VIEW 2.0**
Watch your TV entertainment on your mobile device – or your
mobile media on your TV.[2]

**BRIEFING ON TV**
Have your Samsung Smart TV act as an alarm when synchronized
with your other Samsung mobile devices. Use the large screen to
display important items such as the time, weather, and your
daily schedule.

### SMART INTERACTION

**VOICE CONTROL**
Voice recognition makes it easier and more fun when navigating
through your favorite content choices.

**SAMSUNG**

# KS8000 SUHD TV

**SPEC SHEET**

## KEY FEATURES (page 2 of 2)

### SMART HOME SUPPORT

**SMART HOME CONTROL**
Control your TV experience via the SmartThings mobile device App. Once connected, your Smart TV can be turned on and off remotely. Requires an Internet connection, a SmartThings platform Hub, and the SmartThings App.

**SMART HOME HUB SUPPORT**
Take your TV to the next level and turn it into the brain of your smart home. The optional Samsung SmartThings USB EXTEND dongle connects the TV. Simply activate the SmartThings app and your TV is set up as the SmartThings Hub. The SmartThings app on your TV or mobile device facilitates control over other devices such as connected lights, locks, sensors, thermostats and more. Creating the perfect entertainment experience is now in your hands. WiFi Internet connection, SmartThings App, and the optional SmartThings USB EXTEND are required. See product carton packaging for more details.

### CONNECTIONS

**HDMI®**
Enjoy higher quality audio and video with an HDMI connection that transmits both signals over a single cable. Compatible with next generation Ultra HD Blu-ray players and HDR content decoding.[1]

**WI-FI**
Enjoy your favorite on-demand content seamlessly through your existing network with built-in Wi-Fi (802.11 AC).

**1 COMPONENT IN**
Analog video connection transmits HD RGB video using three RCA connections.

**1 COMPOSITE IN (SHARED WITH AV COMPONENT INPUT)**
Analog video connection transmits video using one RCA connection.

### AUDIO

**DOLBY® DIGITAL PLUS**
Enjoy the ultimate in digital sound quality on all your favorite movies, TV shows, and streaming content. Dolby Digital Plus optimizes your entertainment experience with enhanced sound richness and clarity.

**DTS® PREMIUM SOUND 5.1™**
Feel like you're part of the action by immersing your senses in 5.1 surround sound.

### INCLUDED ACCESSORIES

**PREMIUM SMART REMOTE CONTROL (TM1680)**
Take control of your Smart TV – simplified button configuration makes it easier to navigate quickly, perform voice commands with the built-in microphone, or use the remote for basic TV control operations.

**ONE CONNECT MINI**
No more reaching behind the TV to make or change component connections. Connect your cable or satellite box, Blu-ray player, other components, and USB devices into the One Connect Box. The supplied cable provides a clutter-free, single cable connection to the TV.

### INDUSTRY CERTIFICATION LOGOS

**ULTRA HD PREMIUM**
The UHDA's ULTRA HD PREMIUM logo identifies products and services that meet or exceed strict performance levels for resolution (4K – 4 times sharper than HD), high dynamic range (HDR – brilliant brights, deepest darks), and wide color spectrum (more lifelike colors), along with recommendations for immersive audio (multi-dimensional sound), among others. These performance advances enable certified televisions, content, and other devices to fully replicate the richness of life's sights and sounds, and allow viewers to more accurately experience the content creator's vision.

The UHD (Ultra High Definition) Alliance is composed of leading global entertainment, electronics, and technology companies united to establish a series of features with strict performance levels that collectively define a premium Ultra HD entertainment experience.

**4K ULTRA HD CONNECTED**
All Samsung 2016 4K UHD and SUHD televisions comply with the CTA 4K Ultra High-Definition Connected definition requirements. The trade organization known as the Consumer Technology Association (CTA)® is considered an industry authority on engineering standards for consumer electronics in the United States. Visit www.cta.tech for more information.

---

[1] HDMI – CEC (Consumer Electronics Control) facilitates convenient control functions with compatible devices

©2016 Samsung Electronics America, Inc. Samsung is a trademark or registered trademark of Samsung Electronics Co., Ltd. Samsung and Samsung SMART TV are trademarks or registered trademarks of Samsung Electronics Co., Ltd. All other brand, product and service names and logos are marks and/or registered trademarks of their respective owners. Screen images are simulated. Some devices may require Internet access. Apps may vary by product model. 4K UHD launch timing may vary by provider. Selection of 4K UHD content subject to individual content provider availability. Only select titles are available in 4K UHD. The Ultra HD Premium logo is a trademark of UHD Alliance, Inc.

**SAMSUNG**

# KS8000 SUHD TV

**SPEC SHEET**

## MODELS

**MODEL:** UN65KS8000
**ORDER CODE:** UN65KS8000FXZA

**SCREEN SIZE CLASS:** 65"

**SCREEN DIAGONAL MEASUREMENT:** 64.5"

**UPC CODE:** 887276149219

**COUNTRY OF ORIGIN:** Mexico

**DIMENSIONS (INCHES W x H x D):**

- **TV WITHOUT STAND:** 56.8 x 32.8 x 1.8
- **TV WITH STAND:** 56.8 x 35.7 x 11.6
- **SHIPPING:** 61.6 x 37.3 x 6.1
- **STAND FOOTPRINT:** 11.6 x 3.2 x 7.9
- **ONE CONNECT BOX (OCB):** 8 x 1 x 2.8

**WEIGHT (LBS):**

- **TV WITHOUT STAND:** 51.8
- **TV WITH STAND:** 52.9
- **SHIPPING:** 66.8

**VESA SUPPORT:** Yes (400 mm x 400 mm)

**ACCESSORIES INCLUDED IN BOX:**

- **REMOTE MODEL:** Premium Smart TM1680
- **ONE CONNECT BOX**
- **OCB CABLE LENGTH:** 3M (9.84')

**MODEL:** UN60KS8000
**ORDER CODE:** UN60KS8000FXZA

**SCREEN SIZE CLASS:** 60"

**SCREEN DIAGONAL MEASUREMENT:** 60"

**UPC CODE:** 887276149288

**COUNTRY OF ORIGIN:** Mexico

**DIMENSIONS (INCHES W x H x D):**

- **TV WITHOUT STAND:** 53.2 x 30.9 x 1.7
- **TV WITH STAND:** 53.2 x 33.7 x 11.6
- **SHIPPING:** 57.6 x 34.9 x 5.9
- **STAND FOOTPRINT:** 11.6 x 3.2 x 7.9
- **ONE CONNECT BOX (OCB):** 8 x 1 x 2.8

**WEIGHT (LBS):**

- **TV WITHOUT STAND:** 48.7
- **TV WITH STAND:** 49.8
- **SHIPPING:** 63.5

**VESA SUPPORT:** Yes (400 mm x 400 mm)

**ACCESSORIES INCLUDED IN BOX:**

- **REMOTE MODEL:** Premium Smart TM1680
- **ONE CONNECT BOX**
- **OCB CABLE LENGTH:** 3M (9.84')

**SAMSUNG**

# KS8000 SUHD TV

**SPEC SHEET**

## MODELS

**MODEL:** UN55KS8000
**ORDER CODE:** UN55KS8000FXZA

**SCREEN SIZE CLASS:** 55"

**SCREEN DIAGONAL MEASUREMENT:** 54.6"

**UPC CODE:** 887276149189

**COUNTRY OF ORIGIN:** Mexico

**DIMENSIONS (INCHES W x H x D):**
- **TV WITHOUT STAND:** 48.2 x 28 x 1.7
- **TV WITH STAND:** 48.2 x 30.5 x 9.2
- **SHIPPING:** 52 x 31.8 x 5.3
- **STAND FOOTPRINT:** 9.2 x 2.8 x 6.8
- **ONE CONNECT BOX (OCB):** 8 x 1 x 2.8

**WEIGHT (LBS):**
- **TV WITHOUT STAND:** 38.4
- **TV WITH STAND:** 39.2
- **SHIPPING:** 48.7

**VESA SUPPORT:** Yes (400 mm x 400 mm)

**ACCESSORIES INCLUDED IN BOX:**
- **REMOTE MODEL:** Premium Smart TM1680
- **ONE CONNECT BOX**
- **OCB CABLE LENGTH:** 3M (9.84')

**MODEL:** UN49KS8000
**ORDER CODE:** UN49KS8000FXZA

**SCREEN SIZE CLASS:** 49"

**SCREEN DIAGONAL MEASUREMENT:** 48.5"

**UPC CODE:** 887276149172

**COUNTRY OF ORIGIN:** Mexico

**DIMENSIONS (INCHES W x H x D):**
- **TV WITHOUT STAND:** 42.9 x 24.9 x 1.7
- **TV WITH STAND:** 42.9 x 27.5 x 9.2
- **SHIPPING:** 46.7 x 28 x 4.9
- **STAND FOOTPRINT:** 9.2 x 2.8 x 6.8
- **ONE CONNECT BOX (OCB):** 8 x 1 x 2.8

**WEIGHT (LBS):**
- **TV WITHOUT STAND:** 30.4
- **TV WITH STAND:** 31.3
- **SHIPPING:** 35.9

**VESA SUPPORT:** Yes (400 mm x 400 mm)

**ACCESSORIES INCLUDED IN BOX:**
- **REMOTE MODEL:** Premium Smart TM1680
- **ONE CONNECT BOX**
- **OCB CABLE LENGTH:** 2M (6.56')

**SAMSUNG**

**SAMSUNG**

# E-MANUAL

Thank you for purchasing this Samsung product.
To receive more complete service, please register your
product at

www.samsung.com/register

Model_____ Serial No._____

# Contents

## Quick Guides

Connecting the Samsung Smart Remote to the TV

Using Smart Hub

2    Using Smart Hub

Using Voice Interaction

3    Setting up Voice Interaction

3    Running Voice Interaction


## Connections

Connecting an Antenna

Connecting to the Internet

4    Connecting to your Internet network

Troubleshooting Internet Connectivity Issues

6    Troubleshooting wired Internet connectivity issues

7    Troubleshooting wireless Internet connectivity issues

Connecting Video Devices

8    Connecting with an HDMI cable

8    Connecting with a component cable (only for models with COMPONENT IN / AV IN)

9    Connecting with a composite cable (only for models with COMPONENT IN / AV IN)

Audio Input and Output Connections

10   Connecting with an HDMI (ARC) cable

10   Connecting with a digital audio (optical) cable

11   Connecting through wireless network

11   Connecting Bluetooth Devices

Connecting a Computer

12   Connecting through the HDMI port — Screen sharing

12   Connecting through the Smart View app — Content sharing

Connecting a Mobile Device

13   Using Smart View (Screen Mirroring) or contents sharing

13   Connecting mobile devices without a wireless router (Wi-Fi Direct)

13   Connecting a mobile device via the Smart View App

Switching between external devices connected to the TV

14   Changing the input signal

14   Editing external devices

14   Using additional functions

Connection Notes

15   Connection notes for HDMI

16   Connection notes for audio devices

16   Connection notes for computers

16   Connection notes for mobile devices


## Remote Control and Peripherals

About the Samsung Smart Remote (Voice Interaction version)

About the Samsung Smart Remote (No Voice Interaction)

Connecting to the Samsung Smart Remote

Controlling External Devices with the Samsung Smart Remote - Using the Universal Remote

Controlling the TV with a Keyboard or Gamepad

22   Connecting a USB keyboard

22   Connecting a Bluetooth keyboard and gamepad

22   Using the keyboard

Entering Text using the On-Screen QWERTY Keyboard

23   Using additional functions

## Smart Features

Smart Hub

24    Displaying the Home Screen

26    Launching Smart Hub automatically

26    Testing Smart Hub connections

26    Resetting Smart Hub

Using a Samsung account

26    Creating a Samsung account

27    Signing in to a Samsung account

Using the GAMES Service

28    Installing and running a game

29    Managing purchased or installed games

30    Rating games

Using the APPS Service

31    Installing and running an app

31    Managing purchased or installed apps

33    Rating apps

33    Using other app features and functions

Using the e-Manual

33    Launching the e-Manual

33    Using the buttons in the e-Manual

Using the Web Browser

Playing pictures/video/music

35    Playing media content

35    Functions on the media content list screen

Using Voice Interaction

36    Setting up Voice Interaction

36    Running Voice Interaction

## TV Viewing

Viewing Broadcast Information at a Glance

37    Using the guide

38    Changing the broadcast signal

38    Checking digital channel signal info and strength

Recording Programs

38    Recording programs

39    Managing the schedule recording list

39    Viewing recorded programs

Setting Up a Schedule Viewing

40    Setting up a schedule viewing for a channel

40    Editing a schedule viewing

Using Timeshift

Using the Channel List

Editing channels

42    Re-registering and deleting a channel

42    Editing registered channels

42    Using Program Rating Lock

Creating a Personal Favorites List

43    Registering channels as favorites

43    Viewing and selecting channels on Favorites lists only

Editing a Favorites List

44    Removing channels from a favorites list

44    Rearranging a favorites list

44    Renaming a favorites list

Making Sports Programs More Realistic with Sports Mode

44    Extracting highlights automatically

45    Viewing a game recorded in sports mode

TV-Viewing Support Functions

45    Scanning for available channels

46    Configuring advanced broadcasting settings

46    Selecting the broadcast audio language

46    Fine-tuning analog broadcasts

## Picture and Sound

Adjusting the Picture Quality

47   Choosing a picture mode

47   Configuring advanced picture settings

Picture Support Functions

49   Viewing a picture-in-picture (PIP)

49   Viewing a HDR mode

50   Changing the picture size

Adjusting the Sound Quality

51   Choosing a sound mode

51   Configuring advanced sound settings

Using the Sound Support Functions

52   Selecting speakers

52   Listening to the TV through Bluetooth devices

53   Listening to the TV through a Multiroom speaker

## System and Support

Setting the Time and Using the Timer

54   Setting the current time

55   Using the timers

Using the Screen Burn Protection and Energy Saving Functions

56   Preventing screen burn

56   Reducing the energy consumption of the TV

Using Anynet+ (HDMI-CEC)

57   Connecting an external device through Anynet+ and using their menus

Updating the TV's Software

58   Updating the TV's software to the latest version

58   Updating the TV automatically

Protecting the TV from Hacking and Malicious Code

59   Checking the TV and connected storage for malicious code

59   Scanning for viruses in real time

59   Viewing scan results

Using Other Functions

60   Running the accessibility functions

60   Enabling voice guides for the visually impaired

60   Enabling audio for the video description function

61   Showing captions

61   Adjusting the menu transparency

61   White text on black background (high contrast)

62   Enlarging the font (for the visually impaired)

62   Learning about the remote control (for the visually impaired)

62   Listening to the TV through Bluetooth devices (for the hearing impaired)

62   Configuring advanced system settings

64   Enabling game mode

64   Restoring the TV to the factory settings

# Troubleshooting

Getting Support

    65   Getting support through Remote Management

    65   Finding the contact information for service

    66   Requesting service

Diagnosing TV operational issues

There Is a Problem with the Picture

    66   Testing the picture

I Can't Hear the Sound Clearly

    68   Testing the sound

There Is a Problem with the Broadcast

My Computer Won't Connect

The TV Won't Connect to the Internet

The Schedule Recording/Timeshift Function Isn't Working

Anynet+ (HDMI-CEC) Isn't Working

I Have Trouble Launching/Using Apps

My File Won't Play

I Want to Reset the TV

Other Issues

# Precautions and Notes

Before Using the Recording and Timeshift Functions

    75   Before using the recording and schedule recording functions

    76   Before using the timeshift function

Supported Resolutions for UHD Input Signals

    77   If HDMI UHD Color is set to Off

    77   If HDMI UHD Color is set to On

Read Before Using Voice Interaction

    78   Precautions for voice interaction

    78   Requirements for using voice interaction

Read Before Using Apps

Read Before Using the Internet

Read Before Playing Photo, Video, or Music Files

    81   Limitations on use of photo, video, and music files

    82   Supported external subtitles

    82   Supported internal subtitles

    83   Supported image formats and resolutions

    83   Supported music formats and codecs

    84   Supported video codecs

Read After Installing the TV

    86   Picture sizes and input signals

    87   Installing an anti-theft lock

    87   Read before setting up a wireless Internet connection

Read Before Connecting a Computer (Supported Resolutions)

    88   IBM

    88   MAC

    89   VESA DMT

Supported Resolutions for Video Signals

90    CEA-861

Read Before Using Bluetooth Devices

91    Restrictions on using Bluetooth

Blocking programs based on their TV Rating

93    Blocking movies base on their Movie Rating (MPAA)

93    Blocking programs based on their Canadian English Rating

94    Blocking programs based on their Canadian French Rating

94    Blocking Programs based on their Downloadable U.S. Rating

Buttons and Functions

95    Buttons and functions available while playing multimedia
      content

97    Buttons and functions available while using sports mode

98    Buttons and functions available while recording a program or
      Timeshift

License

# Connecting the Samsung Smart Remote to the TV

Connect the Samsung Smart Remote to your TV to operate the TV.

When you turn on the TV for the first time, the Samsung Smart Remote pairs to the TV automatically. If the Samsung Smart Remote does not pair to the TV automatically, point it at the remote control sensor of the TV, and then press and hold the Return and Play/pause buttons simultaneously for 3 seconds or more.



🖉 The images, buttons, and functions of the Samsung Smart Remote may differ by model.

🖉 For more information, refer to "About the Samsung Smart Remote (Voice Interaction version)."

🖉 Availability depends on the specific model.

## Using Smart Hub

Connect to Smart Hub for apps, games, movies, and more.

## Using Smart Hub

Enjoy the multiple functions provided by Smart Hub simultaneously on a single screen.



When you press the ⌂ button on your remote control, you can use the following functions and features.

- ⚙ Settings

  When the focus is moved, a quick settings appears on the top of the menu. You can quickly set frequently used functions.

- ⬚ Source

  You can select an external device connected to the TV.

  🖉　For more information, refer to "Switching between external devices connected to the TV."

- 🔍 Search

  You can search data for channels, programs, movie titles, and apps from Smart Hub.

🖉　The image on your TV may differ from the image above depending on your model and geographical area.

🖉　For more information, refer to "Smart Hub."

# Using Voice Interaction

Speak into the microphone on your Samsung Smart Remote to control your TV.

🖉   Availability depends on the specific model.

## Setting up Voice Interaction

### Turning the TV's verbal response (voice) on/off

⌂ > ⚙ Settings > System > Expert Settings > Voice Interaction > Voice Feedback

Turn **Voice Feedback** on to have the TV respond verbally to your voice commands.

### Selecting the voice's gender

⌂ > ⚙ Settings > System > Expert Settings > Voice Interaction > Voice Gender

You can select the gender of the voice that responds to your voice commands.

## Running Voice Interaction

Press and hold the ⇩ button on your Samsung Smart Remote, say a command, and then release the ⇩ button. The TV recognizes the voice command.

🖉   If the command is not recognized, try again with clearer pronunciation.



# Connecting an Antenna

You can connect an antenna cable to your TV.

🖉 An antenna connection is not necessary if you connect a cable or satellite box.



# Connecting to the Internet

You can get access to the Internet through your TV.

## Connecting to your Internet network

⌂ > ⚙ Settings > Network > Open Network Settings Try Now

Connect to an available network.

### Establishing a wired Internet connection



🖉 If you connect a LAN cable, the TV automatically accesses the Internet.

🖉 Use a CAT 7 (*STP type) cable for the connection.

   * Shielded Twist Pair

🖉 The TV will not be able to connect to the Internet if your network speed is below 10 Mbps.

## Establishing a wireless Internet connection

⌂ > ⚙ Settings > Network > Open Network Settings > Wireless

Make sure that you have the wireless router's SSID (name) and password settings before attempting to connect, and then follow the directions on the screen.





🖉   The image on your TV may differ from the image above depending on your model and geographical area.

🖉   If there is no wireless router found, select **Add Network** at the bottom of the list and enter the network name (SSID).

🖉   If a wireless router has a WPS or PBC button, select **Use WPS** at the bottom of the list and click the button. Then the TV is automatically connected.

## Checking the Internet connection status

⌂ > ⚙ Settings > Network > Network Status `Try Now`

View the current network and Internet status.

## Changing the name of the TV on a network

⌂ > ⚙ Settings > Network > Device Name `Try Now`

You can change the name of the TV on the network. Select **User Input** at the bottom of the list and change the name.

# Troubleshooting Internet Connectivity Issues

If your TV won't connect to the Internet, try the solutions below.

## Troubleshooting wired Internet connectivity issues Try Now

After reading the following content, troubleshoot the wired Internet connection issue. If the problem persists, contact your Internet Service Provider.

### No network cable found

Make sure that the LAN cable is plugged in on both ends. If it is plugged in, make sure that the router is turned on. If the router is on, try turning it off and then on.

### IP auto setting failed

1. Configure the settings in **IP Settings**.
2. Make sure that the DHCP server is enabled on the router, and then reset the router.

### Unable to connect to the network

1. Check all **IP Settings**.
2. After checking t he DHCP server status (must be active) on the router, remove the LAN cable and connect it again.

### Connected to a local network, but not to the Internet

1. Make sure that the Internet LAN cable is connected to the router's external LAN port.
2. Check the DNS values in **IP Settings**.

### Network setup is complete, but unable to connect to the Internet

If the problem persists, contact your Internet Service Provider.

# Troubleshooting wireless Internet connectivity issues

After reading the following content, troubleshoot the wireless Internet connection issue. If the problem persists, contact your Internet Service Provider.

## Wireless network connection failed

If a selected wireless router is not found, go to **Open Network Settings**, and then select the correct router.

## Unable to connect to a wireless router

1. Check if the router is turned on. If it is, turn it off and then on.
2. Enter the correct password if required.

## IP auto setting failed

1. Configure the settings in **IP Settings**.
2. Make sure that the DHCP server is enabled on the router. Then, unplug the router and plug it back in.
3. Enter the correct password if required.

## Unable to connect to the network

1. Check all **IP Settings**.
2. Enter the correct password if required.

## Connected to a local network, but not to the Internet

1. Make sure that the Internet LAN cable is connected to the router's external LAN port.
2. Check the DNS values in **IP Settings**.

## Network setup is complete, but unable to connect to the Internet

If the problem persists, contact your Internet Service Provider.

# Connecting Video Devices

Make the correct video connections between your TV and your external devices.

## Connecting with an HDMI cable



## Connecting with a component cable (only for models with COMPONENT IN / AV IN)

After referencing the figure below, connect the Component IN on the TV to the Component OUT of the external device by using the provided adapter and component cable. Make sure to connect the same color connectors together. (blue to blue, yellow to yellow, etc.)



🖉   To use component equipment, connect both a component cable (blue) and an AV cable (yellow).

## Connecting with a composite cable (only for models with COMPONENT IN / AV IN)

After referencing the figure below, connect the AV IN on the TV to the AV OUT of the external device by using the provided adapter and composite cable. When connecting the cables, be sure to match the colors between the cables and ports.



🖉  Connect AV (composite) equipment to AV In only. Do not connect to Component In.

# Audio Input and Output Connections

Make the correct audio connections between your TV and your external devices.

## Connecting with an HDMI (ARC) cable



## Connecting with a digital audio (optical) cable



## Connecting through wireless network



You can connect the TV to a Samsung wireless audio device through wireless network. At this time, two devices must be connected on the same network. For more information, refer to Wireless Speaker Manager (⌂ > ⚙ Settings > Sound > Expert Settings > Wireless Speaker Manager).

## Connecting Bluetooth Devices

You can connect the TV or audio devices via Bluetooth. For more information, refer to the Connection Guide (⌂ > ⊡ Source > Connection Guide).

🖉 This function is not available on certain models in specific geographical areas.

# Connecting a Computer

Use the TV as a computer monitor or connect the TV to a computer via your network and access the computer's content.

## Connecting through the HDMI port — Screen sharing



🖉 When your PC is connected, select PC for the **Device Icon**. For more information about the port settings, refer to "Editing external devices."

## Connecting through the Smart View app — Content sharing

When the TV is connected through the Smart View program on your PC, you can easily play content for photos, videos, and audios through the TV. For more information, refer to the **Connection Guide** (⌂ > ▣ **Source** > **Connection Guide**).

# Connecting a Mobile Device

View a mobile device's screen by connecting the mobile device to your TV or network.

## Using Smart View (Screen Mirroring) or contents sharing

You can play media content saved on your mobile device on the TV's screen and share contents by connecting with the mirroring function.

1. Launch the Smart View (Screen Mirroring) function on your mobile device. The mobile device searches for available devices to connect to.

2. Select the TV from the list. The TV connects to the mobile device.

   🖉 If your mobile device does not find your TV, turn the TV and the mobile device off and then on and try again.

   🖉 If there are multiple TVs, you can easily select any of different TV names in ⌂ ❯ ⚙ **Settings** ❯ **Network** ❯ **Device Name**.

## Connecting mobile devices without a wireless router (Wi-Fi Direct)

⌂ ❯ ⚙ **Settings** ❯ **Network** ❯ **Expert Settings** ❯ **Wi-Fi Direct**

🖉 To use Wi-Fi Direct, the Wi-Fi Direct function in the mobile device must be active.

## Connecting a mobile device via the Smart View App

When you install the Smart View App on your mobile device, you can play the mobile device's multimedia content on your TV or control the TV using the mobile device. You can download the app from Google Play Store, Samsung Apps, or the App Store.

🖉 To use the Smart View function, the mobile device must support the mirroring function such as AllShare Cast and Smart View. To check whether your mobile device supports the mirroring function, please visit the mobile device manufacturer's website.

# Switching between external devices connected to the TV

You can switch between TV programs and the content of external devices.

## Changing the input signal

⌂ ❯ ⊡ Source

When you select a connected external device on the Source screen, the output of the selected device is displayed on the TV's screen.

✎ In case of the models that support the universal remote control, connect an external device (e.g. Blue-ray device, game console) to the HDMI port and turn on the device. Then a pop-up message appears to switch to the device or automatically configure the settings. For automatic configuration for the universal remote control, turn on the external device and point the remote control to the device. Note that this function may not be supported depending on the device type.

✎ When a USB device is connected to the USB port, a pop-up message appears that lets you switch easily to the media content listed on the device.

## Editing external devices

⌂ ❯ ⊡ Source

You can change the port name for a connected external device or add it to Home Screen.

1. Move the focus to the device to edit.

2. Press the Up directional button. The following functions become available. (Note that available functions may differ with the port type.)

   – Edit: You can change the port name of an external device for easy identification.

   – Add to Home: You can add the port of an external device to the Home Screen for quick switching.

## Using additional functions

You can use the following features on the Source screen.

- Connection Guide: The guide to device connections

- Universal Remote Setup: The function that lets you register external devices to your Samsung Smart Remote

  ✎ This function is not available on certain models in specific geographical areas.

  ✎ For more information, refer to "Controlling External Devices with the Samsung Smart Remote - Using the Universal Remote."

# Connection Notes

When connecting an external device, note the following:

🖉   The number of connectors and their names and locations may differ with the model.

🖉   Refer to the external device's operating manual when connecting it to the TV. The number of external device connectors and their names and locations may differ with the manufacturer.

## Connection notes for HDMI

- The following types of HDMI cables are recommended:

  – High-Speed HDMI Cable

  – High-Speed HDMI Cable with Ethernet

- Use an HDMI cable with a thickness of 0.66 inches (17 mm) or less.

- Using a non-certified HDMI cable may result in a blank screen or a connection error.

- Some HDMI cables and devices may not be compatible with the TV due to different HDMI specifications.

- This TV does not support HDMI Ethernet Channel. Ethernet is a Local Area Network (LAN) built with coaxial cables standardized by the IEEE.

- Use a cable shorter than 10 feet (3m) to get the best UHD viewing quality.

- Many computer graphics adaptors do not have HDMI ports, but have DVI ports instead. When the PC that does not support HDMI video out, connect your PC with the HDMI-DVI cable.

  🖉   For more information, refer to "Connecting a Computer."

## Connection notes for audio devices

- For better audio quality, it is a good idea to use an AV receiver.

- Connecting a device using an optical cable does not automatically turn off the TV speakers. To turn off the TV speakers, set Select Speaker (⌂ > ⚙ Settings > Sound > Select Speaker) to Audio Out/ Optical.

- An unusual noise coming from a connected audio device while you are using it may indicate a problem with the audio device itself. If this occurs, ask for assistance from the audio device's manufacturer.

- Digital audio is only available with 5.1-channel broadcasts.

## Connection notes for computers

- For the resolutions supported by the TV, refer to "Read Before Connecting a Computer (Supported Resolutions)."

- As long as file sharing is activated, unauthorized access may occur. When you do not need to access data, disable file sharing.

- Your PC and Smart TV must be connected to each other on the same network.

- When sharing content with other network-based devices such as those in an IP (Internet Protocol) storage system, sharing may not be supported due to the network's configuration, quality, or functionality, for example, if the network has an NAS (Network-Attached Storage) device.

## Connection notes for mobile devices

- To use the Smart View function, the mobile device must support a mirroring function such as AllShare Cast or Smart View. To check whether your mobile device supports the mirroring function, please visit the mobile device manufacturer's website.

- To use Wi-Fi Direct, the mobile device must support the Wi-Fi Direct function. Please check if your mobile device supports Wi-Fi Direct.

- The mobile device and your Smart TV must be connected to each other on the same network.

- The video or audio may stop intermittently, depending on network conditions.

- When sharing content with other network-based devices such as those in an IP (Internet Protocol) storage system, sharing may not be supported due to the network's configuration, quality, or functionality, for example, if the network has an NAS (Network-Attached Storage) device.

# About the Samsung Smart Remote (Voice Interaction version)

Voice Interaction is available for Samsung Smart Remotes that have a microphone. However, this function may not be supported depending on the model or geographical region.



Directional pad (up/down/left/right)

Select

| Button | Description |
|---|---|
| 🎤 (Voice recognition) | Runs Voice Interaction. Press the button, say a voice command, and then release the button to run Voice Interaction. When pressed once, the guide to Voice Interaction appears. |
| 123 (Number pad) | When pressed, a number strip appears on the screen. Select numbers and then select **Done** to enter a numeric value. Use to change the channel, enter a PIN, enter a ZIP code, etc. If the **Color Button** appears with a number strip on the screen, select the **Color Button** and then select a specific color by using the directional pad (up/down/left/right). Use this to access additional options that are specific according to the feature in use. |
| EXTRA | While watching content, press to display extra information from the content provider. |
| ● ● ● ● | Use these colored buttons to access additional options that are specific according to the feature in use. 🖉 These buttons are not available in the U.S.A. and Canada. |
| Directional pad (up/down/left/right) | Moves the focus and changes the values seen on the TV's menu. |
| Select | Selects or runs a focused item. When pressed while you are watching content, detailed program information appears. |
| ↩ (Return) | Press to return to the previous menu. When pressed for 1 second or more, the running function is terminated. When pressed while you are watching a program, the previous channel appears. |
| ⌂ (Smart hub) | Press to return to the Home Screen. |
| ▷❙❙ (Play/pause) | When pressed, the playback controls appear. Using these controls, you can control the media content that is playing. |
| VOL (Volume) | Move the button up or down to adjust the volume. To mute the sound, press the button. When pressed for 1 second or more, the **Accessibility Shortcuts** appears. |
| CH (Channel) | Move the button up or down to change the channel. To see the **Guide** screen, press the button. |

🖉 Use the Samsung Smart Remote less than 20 feet from the TV. The usable distance may vary with the wireless environmental conditions.

🖉 The images, buttons, and functions of the Samsung Smart Remote may differ with the model.

🖉 To use the Samsung Smart Remote through the external device, it is required to configure its settings. For more information, refer to "Controlling External Devices with the Samsung Smart Remote - Using the Universal Remote."

## About the Samsung Smart Remote (No Voice Interaction)

Functions available on the Samsung Smart Remote may differ by model or geographical region.



Directional pad (up/down/left/right)

Select

| Button | Description |
|---|---|
| 123 (Number pad) | When pressed, a number strip appears on the screen.<br><br>Select numbers and then select **Done** to enter a numeric value. Use to change the channel, enter a PIN, enter a ZIP code, etc.<br><br>If the **Color Button** appears with a number strip on the screen, select the **Color Button** and then select a specific color by using the directional pad (up/down/left/right). Use this to access additional options that are specific according to the feature in use. |
| EXTRA | While watching content, press to display extra information from the content provider. |
| ● ● ● ● | Use these colored buttons to access additional options that are specific according to the feature in use.<br><br>🖉 These buttons are not available in the U.S.A. and Canada. |
| Directional pad (up/down/left/right) | Moves the focus and changes the values seen on the TV's menu. |
| Select | Selects or runs a focused item. When pressed while you are watching content, detailed program information appears. |
| ↩ (Return) | Returns to the previous menu. When pressed for 1 second or more, the running function is terminated. When pressed while you are watching a program, the previous channel appears. |
| ⌂ (Smart hub) | Press to return to the Home Screen. |
| ▷❚❚ (Play/pause) | When pressed, the playback controls appear. Using these controls, you can control the media content that is playing. |
| VOL (Volume) | Move the button up or down to adjust the volume. To mute the sound, press the button. When pressed for 1 second or more, the **Accessibility Shortcuts** appears. |
| CH (Channel) | Move the button up or down to change the channel. To see the **Guide** screen, press the button. |

🖉 The images, buttons, and functions of the Samsung Smart Remote may differ with the model.

🖉 Some Samsung Smart Remotes do not support certain functions. They are listed below.

**BN59-01260A**: Does not support Voice Interaction.

**BN59-01259B and BN59-01259E**: Does not support Voice Interaction, pairing, and Universal Remote Control.

You can find the model number of the remote on the inside of the battery cover. Open the battery cover to view.

## Connecting to the Samsung Smart Remote

Pair the TV with the Samsung Smart Remote.

✎  Availability depends on the specific model.

When you turn on the TV for the first time, the Samsung Smart Remote pairs to the TV automatically. If the Samsung Smart Remote does not pair to the TV automatically, point it at the remote control sensor of the TV, and then press and hold the Return and Play/pause buttons simultaneously for 3 seconds or more.



## Controlling External Devices with the Samsung Smart Remote – Using the Universal Remote

Control the TV and connected external devices with the Samsung Smart Remote.

⌂ ❯ ▣ Source ❯ Universal Remote Setup

You can control external devices connected to the TV by using the remote control. To control external devices, register them by following the instructions on the screen.

✎  Availability depends on the specific model.

✎  You can also use the **Anynet+ (HDMI-CEC)** function to operate external Samsung devices with your TV's remote control without any additional setup. For more information, refer to "Using Anynet+ (HDMI-CEC)."

✎  Certain external devices connected to the TV may not support the universal remote feature.

✎  Do not place any obstacles in front of an external device. It may cause signals from the remote control not to be transmitted properly.

✎  The TV memorizes both the external device and its connection port (HDMI 1, HDMI 2, etc.).

# Controlling the TV with a Keyboard or Gamepad

Connecting a keyboard or gamepad makes it easier to control the TV.

## Connecting a USB keyboard

Plug the keyboard cable into the USB port.

## Connecting a Bluetooth keyboard and gamepad

⌂ ⟩ ⚙ Settings ⟩ System ⟩ Input Device Manager ⟩ Add Bluetooth Keyboard & Gamepad

🖉    This function is not available on certain models in specific geographical areas.

🖉    If your device was not detected, position the keyboard close to the TV, and then select **Refresh**. The TV scans for available devices again.

## Using the keyboard

| Keyboard | Remote control functions |
| --- | --- |
| Directional keys | Moves the focus |
| Windows key | Displays the TV settings |
| Enter key | Selects or runs a focused item |
| ESC key | Returns to the previous screen |
| F1 / F2 / F3 / F4 key | Color buttons — 🟥 / 🟩 / 🟨 / 🟦 |
| F5 key | Launches the Home Screen |
| F6 key | Displays the source screen |
| F7 key | Launches the Channel List |
| F8 key | Mutes the sound |
| F9 / F10 key | Adjusts the volume |
| F11 / F12 key | Changes the channel |

## Setting up the keyboard

In ⌂ > ⚙ Settings > System > Input Device Manager, you can set the following functions.

- Keyboard Language

- Keyboard Type

- Input Language Shortcut

# Entering Text using the On-Screen QWERTY Keyboard

Use the QWERTY keyboard to enter text on your TV.



✎ The image on your TV may differ from the image above depending on your model and geographical area.

## Using additional functions

Select ⚙ on the QWERTY keyboard screen. The following options are available:

✎ The options available may differ depending on the function running currently.

- Recommended text

- Reset recommended text data

- Predict Next Character (when using direction buttons)

- Language

# Smart Hub

View descriptions of Smart Hub's basic functions.

Press the ⌂ button.



🖊 The image on your TV may differ from the image above depending on your model and geographical area.

After pressing the ⌂ button on your remote control, you can surf the web and download apps with Smart Hub.

🖊 Some of the **Smart Hub** services are paid services. To use a paid service, you must have an account with the service provider or a Samsung account. For more information, refer to "Using a Samsung account."

🖊 To use Smart Hub, the TV must be connected to the Internet.

🖊 Some **Smart Hub** features may not be available depending on the service provider, language, or region.

🖊 Smart Hub service outages can be caused by disruptions in your Internet service.

🖊 You can view the entire text of the **Terms & Policy** document by navigating to ⌂ ❯ ⚙ **Settings** ❯ **Support** ❯ **Terms & Policy**. If you want to stop using **Smart Hub**, you can cancel the agreement. Try Now

## Displaying the Home Screen

On the Home Screen, you can easily run the apps that have been used previously or frequently. The apps can also be moved or deleted from the screen.

When you press the ⌂ button on your remote control, you can use the following functions and features.

- ⚙ **Settings**

  When the focus is moved, a quick settings appears on the top of the menu. You can quickly set frequently used functions.

  – **Picture Mode**

    You can select the picture mode that provides the best viewing experience.

  – **Select Speaker**

    You can select which speakers the TV uses for audio output.

  – **Sound Mode**

    You can select a sound mode to optimize your listening experience.

  – **Caption**

    You can watch TV broadcasts with captions.

    🖉 This function is not available on certain models in specific geographical areas.

  – **PIP**

    While using a connected external device, you can watch a TV broadcast in a small picture-in-picture (PIP) window.

    🖉 This function is not available in the U.S.A. and Canada.

    🖉 This function is not available on certain models in specific geographical areas.

  – **Network**

    You can view the current network and Internet status.

  – **Sleep Timer**

    You can automatically shut off the TV after a pre-set period of time.

  – **More**

    Displays TV settings.

- ▣ **Source**

  You can select an external device connected to the TV.

  🖉 For more information about connecting external devices, refer to "Switching between external devices connected to the TV."

- 🔍 **Search**

  You can search the apps or games in Smart Hub services.

## Removing an item on the Home Screen

To remove an item on the Home Screen, move the focus to the item you want to remove, press the down directional button, and then select Remove.

## Moving an item on the Home Screen

To move an item on the Home Screen, move the focus to the item you want to move to a new position, press the down directional button, and then select Move.

# Launching Smart Hub automatically

⌂ > ⚙ Settings > System > Expert Settings > Autorun Smart Hub

When you set Autorun Smart Hub to On, the TV displays the Home Screen automatically when you turn the TV on.

# Testing Smart Hub connections

⌂ > ⚙ Settings > Support > Self Diagnosis > Start Smart Hub Connection Test

# Resetting Smart Hub

⌂ > ⚙ Settings > Support > Self Diagnosis > Reset Smart Hub

# Using a Samsung account

Create and manage your own Samsung account.

## Creating a Samsung account

⌂ > ⚙ Settings > System > Samsung Account > Create Account

Some of the Smart Hub services are paid services. To use a paid service, you must have an account with the service provider or a Samsung account.

✎ You can view the entire text of the Terms & Policy in ⌂ > ⚙ Settings > System > Samsung Account > Samsung account Terms & Conditions, Privacy Policy after logging in to your Samsung account.

✎ You can also create a Samsung account at http://content.samsung.com. Once you have an account, you can use the same ID on both the TV and the Samsung website.

🖉 If you want to review the Terms and Conditions, select **View Details**.

🖉 If you want your account to be protected, select **Profile image selection and password entry (High security)** in the field below the password field.

🖉 If you want the TV to log you in to your account automatically when you turn the TV on, click **Sign me in automatically**.

## Creating a Samsung account using a Facebook account

⌂ > ⚙ **Settings** > **System** > **Samsung Account** > **Create with Facebook**

# Signing in to a Samsung account

⌂ > ⚙ **Settings** > **System** > **Samsung Account** > **Sign In**

## Changing and adding information to a Samsung account

⌂ > ⚙ **Settings** > **System** > **Samsung Account** > **Edit Profile**

🖉 To change the account information, you must be logged in to your Samsung account.

## Managing payment information saved on the TV

⌂ > ⚙ **Settings** > **System** > **Samsung Account** > **Payment info**

🖉 To manage the payment information, you must be logged in to your Samsung account.

## Deleting a Samsung account from the TV

⌂ > ⚙ **Settings** > **System** > **Samsung Account** > **Remove Account**

🖉 To remove the account information, you must be logged in to your Samsung account.

# Using the GAMES Service

Enjoy games provided with Smart Hub.

🖉 Availability depends on the specific model.

⌂ ❯ GAMES



🖉 The image on your TV may differ from the image above depending on your model and geographical area.

You can install or run games. The installed games are stored in My Games.

🖉 This function is not available on certain models in specific geographical areas.

## Installing and running a game

### Installing games

1. Move to the game you want to install, and then press the Select button. The detailed information screen appears.

2. Select Install. When the installation is complete, you can run it immediately.

🖉 You can see the installed games on the My Games screen.

🖉 To get the information about the game controllers that are compatible with the downloaded game, select GAMES ❯ Controller.

🖉 When the TV's internal memory is insufficient, you can install a game on a USB device.

🖉 You can play a game installed on a USB device only when the USB device is connected to the TV. If the USB device is disconnected during game playing, the game is terminated.

🖉 You cannot play a game installed on a USB device on a PC or another TV.

## Running an installed game

To run a game, select GAMES > My Games.

# Managing purchased or installed games

On the My Games screen, move the focus to the desired game, and then press and hold the Select button. You can also, select My Games > Options to manage installed games.

## Adding a game to the Home Screen

1. Select My Games > Options > Add to Home.
2. Select a game to add to the Home Screen. The selected game is added to the Home Screen.

## Removing a game

1. Select My Games > Options > Delete.
2. Select a game to delete.
3. Select Delete. The selected game is deleted.

## Updating a game

1. Select My Games > Options > Update.
2. Select a game to update.
3. Press the Select button. The game is updated.

✐ Update can only be selected when there are updates available.

## Locking or Unlocking a game

1. Select My Games > Options > Lock/Unlock. Check boxes appear for individual games.
2. Select a game to lock or unlock. To lock a game, click on it to check it. To unlock the game, click on it to remove the check.
3. Select Done. The selected games are locked or unlocked.

## Automatically updating games

The installed games can be automatically updated. If you do not want games automatically updated, set **My Games > Options > Auto Update** to **Off**.

🖉 Automatic update is enabled only when the TV is connected to the Internet.

## Rating games

You can rate each game in the detailed information screen.

🖉 This feature is only available when the game is installed on your TV.

# Using the APPS Service

Download and run various apps from Smart Hub.

⌂ **> APPS**



🖉 The image on your TV may differ from the image above depending on your model and geographical area.

You can enjoy a wide range of content including news, sports, weather, and games by installing the corresponding apps on your TV.

🖉 To use this feature, the TV must be connected to the Internet.

🖉 When Smart Hub is launched for the first time, the default apps are automatically installed. The default apps may differ with the geographical area.

## Installing and running an app

### Installing an app

1. Move to the app you want to install, and then press the Select button. The detailed information screen appears.

2. Select Install. When the installation is complete, you can run it immediately.

  ✎ You can view installed apps on the My Apps screen.

  ✎ When the TV's internal memory is insufficient, you can install an app on a USB device.

  ✎ You can run an app installed on a USB device only when the USB device is connected to the TV. If the USB device is disconnected while an app is running, the app is terminated.

  ✎ You cannot run an app installed on a USB device on a PC or another TV.

### Launching an app

You can run a selected app on the My Apps screen. The icons below appear within the selected app's icon and indicate the following:

- ▭◨ : The app is installed on a USB device.

- 🔒 : The app has a password.

- ⊘ : The app is installed.

- ⬆ : The app needs to be updated.

- 📺 : The app supports Smart View.

## Managing purchased or installed apps

On the My Apps screen, move the focus to the desired app, and then press and hold the Select button. You can also select My Apps > Options to manage installed apps.

### Adding apps to the Home Screen

1. Select My Apps > Options > Add to Home.

2. Select an app to add. The selected app is added to the Home Screen.

## Moving apps

1.  Select **My Apps** > **Options** > **Move.**
2.  Select an app to move.
3.  Move the app to the desired location.
4.  Press the Select button.
5.  Select **Done.**

🖉 This function is not available on certain models in specific geographical areas.

## Removing an app

1.  Select **My Apps** > **Options** > **Delete.**
2.  Select an app to delete.
3.  Select **Delete.** The selected app is deleted.

🖉 Ensure that the related app data is also removed when you remove an app.

## Updating apps

1.  Select **My Apps** > **Options** > **Update.**
2.  Select an app to update.
3.  Press the Select button. The app is updated.

🖉 This function is only available when **My Apps** contains an app that needs updating.

## Locking and unlocking apps

1.  Select **My Apps** > **Options** > **Lock/Unlock.** Check boxes appear on the apps.
2.  Select an app to lock or unlock. To lock an app, click on it to check it. To unlock an app, click on it to remove the check.
3.  Select **Done.** The selected app is locked or unlocked.

## Automatically updating apps

The installed apps can be automatically updated. If you do not want apps automatically updated, set **My Apps** > **Options** > **Auto Update** to **Off.**

🖉 Automatic update is enabled only when the TV is connected to the Internet.

## Rating apps

You can rate an app on the detailed information screen using the left or right directional button on the remote.

## Using other app features and functions

⌂ > ⚙ Settings > Broadcasting > Expert Settings > Channel-bound Apps

A channel bound app provides information about offerings and services available on one channel. You can receive information about TV programs and other relevant services available on one channel while viewing TV by using a channel bound app that is installed on the TV and linked to that specific channel.

🖉 This function is only available when an app supporting Channel-bound Apps is installed on the TV.

🖉 Among the channels received through the antenna, this function is available only in the channels that support Channel-bound Apps.

# Using the e-Manual

Control and read the manual embedded in your TV.

## Launching the e-Manual

⌂ > ⚙ Settings > Support > Open e-Manual

You can view the embedded e-manual that contains information about your TV's key features.

🖉 Alternatively, you can download a copy of the e-Manual from Samsung's website.

🖉 Words in blue (e.g., Picture Mode) indicate a menu item.

## Using the buttons in the e-Manual

🔍 (Search)

A-Z (Index)

🕐 (Recently Viewed Topics)

⌕ (Try Now): Allows you to access the corresponding menu item and try out the feature right away.

◉ (Link): Allows you to access the corresponding reference page.

🖉 Some menu screens cannot be accessed from the e-Manual.

# Using the Web Browser
Surf the Internet on your TV.

⌂ > **WEB BROWSER**

✎ When you select ⌂ > **WEB BROWSER**, you can see recently viewed web sites or featured recommendations. When you select a desired web site, you can get immediate access to it.

✎ You can use the **WEB BROWSER** more easily after connecting a keyboard and mouse.

✎ You can scroll web pages with the Directional pad.

✎ The web pages may differ from those on a PC.

# Playing pictures/video/music
Play media content stored on your TV, USB devices, smartphones, cameras, PCs, etc.

⌂ > ⏏ **Source**



✎ The image on your TV may differ from the image above depending on your model and geographical area.

You can play media content saved on storage devices, such as USB devices, mobile devices, and cameras, on the TV. Try Now

✎ You cannot play media content if the content or the storage device is not supported by the TV. For more information, refer to "Read Before Playing Photo, Video, or Music Files."

✎ To connect the TV to a computer, refer to "Connecting a Computer."

✎ Backup important files before connecting a USB device. Samsung is not responsible for damaged or lost files.

✎ To connect the TV to a mobile device, refer to "Connecting a Mobile Device."

## Playing media content

1. Select a device with media content in ⌂ 〉 ⊡ Source. The media content list in the device appears.

2. Select a media content item from the list. The content is played.

✎ For more information about buttons, refer to "Buttons and functions available while playing multimedia content."

✎ The content may not be played depending on the encoding method or file format. Furthermore, several functions may be restricted.

✎ Content on devices connected to the TV via your network may not play smoothly due to the network communication problems. If this occurs, use a USB device.

✎ When you connect a USB device to a USB port, a pop-up message appears that lets you switch easily to the media content list on the device.

## Functions on the media content list screen

You can use the following functions on the media content list screen of a storage device.

- **Filter By**

  Filters the media content by type of media. (music, photo, video, etc.)

- **Sort By**

  Sorts the content list.

- **Options**

  Deletes or plays the selected media content in the media content list.

  ✎ You can delete only the recorded content. To delete content, change the **Filter By** option to **Recorded**.