**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING**<br>**COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

August 20, 2019

<u>VIA ECF</u>

**<u>LETTER ORDER</u>**

Re:   **White, et al. v. Samsung Electronics America, Inc., et al.**
      **Civil Action No. 17-1775**

Dear Litigants:

     Before the Court is Defendants Samsung Electronics America, Inc.'s ("Samsung"), and Sony Electronics Inc.'s ("Sony," and with Samsung, "Defendants") Motion to Dismiss, ECF No. 94, Plaintiffs Thomas Roger White, Jr.'s ("White"), and Patricia Cauley's ("Cauley" and, together with White, "Plaintiffs") Second Amended Complaint ("SAC"), ECF No. 88.  For the reasons stated herein, the motion is granted in part and denied in part.

**I.   BACKGROUND**

     The Court addressed the factual background of this case in its prior Letter Order dismissing Plaintiffs' Amended Complaint, ECF No. 82, and will only briefly summarize the relevant facts.

     Defendants are manufacturers of Smart TVs, televisions that can connect to the internet to deliver content from online sources including popular streaming providers such as Netflix.  SAC ¶¶ 31, 33.  Plaintiffs allege that Defendants' Smart TVs surreptitiously collect data on them, including what programs they watch, when they watch them, and certain identifying information, including their IP addresses, MAC addresses and zip codes.[1]  Id. ¶¶ 40-43, 53.  Defendants then allegedly sell that data to third parties, who use it to provide targeted advertisements to the same consumers.  Id. ¶¶ 51-53.

---

[1] An "IP address" is an internet-protocol address.  It is a "10-digit identification tag used by computers to locate specific websites."  Internet-protocol address, Black's Law Dictionary (11th ed. 2019).  A "MAC address" is a media access control address.  It is a "unique number assigned to all network interface devices.  It is used by many data link layer protocols . . . to distinguish and target the devices attached to a network."  MAC address, Oxford Dictionary of Computing, https://www.oxfordreference.com/view/10.1093/oi/authority.20110803100121531?rskey=jR9squ&result=2 (last visited Aug. 20, 2019).

1

Plaintiffs' Second Amended Complaint alleges that this collection and sale of data gives rise to five causes of action: (1) that the tracking and transmission of consumers' data violates the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2, SAC ¶¶ 114-29; (2) that Defendants failed to disclose their data collection in violation of the NJFCA, id. ¶¶ 130-46; (3) a violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, SAC ¶¶ 147-60; (4) a violation of the Wiretap Act, 18 U.S.C. § 2510, SAC ¶¶ 161-74; (5) a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, SAC ¶¶ 175-98; and (6) common law negligent misrepresentation, id. ¶¶ 199-206. Plaintiffs seek damages and injunctive relief on behalf of themselves and two putative classes.

Plaintiffs filed this action on March 16, 2017. ECF No. 1. Defendants then moved to dismiss, and Plaintiffs amended their complaint while that motion was pending. Defendants then moved to dismiss the Amended Complaint, and this Court granted that motion on September 26, 2018. ECF No. 82 ("Prior Letter Order.") Plaintiffs filed the operative SAC on November 16, 2018, and Defendants now seek dismissal of that pleading.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Plaintiffs' Consumer Fraud Claims

Defendants argue that Plaintiffs' consumer fraud claims fail because they have not plead the particularity required by Federal Rule of Civil Procedure 9(b), and because Plaintiffs have failed to adequately allege their damages. The Court disagrees with the former and agrees with the latter.

As an initial matter, Plaintiffs' attempts to assert NJCFA claims on behalf of White and other members of a putative nationwide class fail for the same reasons that the Court identified in its Prior Letter Order. See SAC ¶¶ 113-14; Prior Letter Order at 4. Previously, the Court found that White, a Florida resident, cannot assert claims under the NJCFA. Prior Letter Order at 4 (citing Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 209 (3d Cir. 2013)). Nothing in the SAC or briefing on Defendants' motion to dismiss gives the Court reason to disturb this determination. Thus, to the extent that the SAC asserts NJCFA claims on behalf of White, those claims are dismissed. The Court does not read the SAC as asserting FDUTPA claims on behalf of Cauley. See SAC ¶¶ 174-75.

Plaintiffs' NJCFA claims and FDUTPA claims must be plead with particularity as required by Rule 9(b). Block v. Seneca Mortg. Servicing, 221 F. Supp. 3d 559, 594 (D.N.J. 2016) (NJCFA claims); Morano v. BMW of N. Am., LLC, 928 F. Supp. 2d 826, 833-34 (D.N.J. 2013) (FDUPTA claims that sound in fraud must meet Rule 9(b)'s particularity requirement).[2] This requires Plaintiffs to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

The NJCFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J.S.A. § 56:8-2. Thus, to state a claim under the NJCFA, a plaintiff must plead "(1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two." Block, 221 F. Supp. 3d at 593. Where a plaintiff seeks to state a claim that an omission was unlawful, he must allege that the defendant acted intentionally. Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 499-500 (D.N.J. 2009).

Here, that standard has been met. Cauley pleads the type of Samsung television, serial number and location of purchase, and further alleges that Samsung was collecting her personal and viewing data, and had it so disclosed, she would not have purchased (or paid substantially less for) the Smart TV. SAC ¶¶ 15, 18. That is sufficient.

The Court reaches a different conclusion with respect to loss. Under the NJCFA, an ascertainable loss is either an out of pocket loss or a diminution in value that is not "hypothetical or illusory" and which is calculable due to the violation. Solo v. Bed Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007). An out of pocket loss may include the entire purchase price of a product if the purchasers "did not receive a refund and the seller's misrepresentations rendered the product essentially worthless." Hammer v. Vital Pharm., Inc., 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012); see also Mladenov v. Wegmans Food Markets, Inc., 124 F. Supp. 3d 360, 375 (D.N.J. 2015) ("An out-of-pocket-loss theory will suffice only if the product received was essentially worthless").

As to a diminution in value theory, only "a consumer who has received a product that is worth objectively less than he or she may reasonab[ly] expect has endured an injury under the statute." Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 335 (D.N.J. 2014). While a plaintiff

---

[2] Here, Plaintiffs' FDUTPA claim sounds in fraud because it alleges that Defendants deceived consumers by not disclosing their viewer tracking activity to purchasers of their Smart TVs. SAC ¶¶ 183-87. See Dimartino v. BMW of N. Am., LLC, No. 15-8447, 2016 WL 4260788, at *6 (D.N.J. Aug. 11, 2016) ("allegations of misrepresentation, omission, deception, and unlawful inducing" under the FDUTPA are subject to the 9(b) particularity requirement.).

3

need not plead a specific dollar amount to state a claim, he or she must plead how they would calculate the loss. This requirement is minimal:

> This is not a Sisyphean pleading burden. '[T]he valuations do not have to be perfect. They need only provide a reasonable basis for valuation that is not speculative or unquantified.'

In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig., 82 F. Supp. 3d 608, 624 (D.N.J. 2015) (quoting Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 102-03 (D.N.J. 2011)).

Here, Cauley has not alleged any theory of ascertainable loss. She generally alleges either that she "would not have purchased, or would have paid substantially less for" Defendants' televisions had she known of their tracking feature. SAC ¶ 18; see also id. ¶ 145 ("Plaintiff and the class have suffered harm in the form of paying monies to purchase the Smart TV[s] when they would not have otherwise."). But because she does not allege that her Smart TV was essentially worthless, she cannot allege an ascertainable loss by arguing that her loss is the purchase price. Mladenov, 124 F. Supp. 3d at 375 (allegations that plaintiffs "would not have purchased" bakery products "or would not have paid as much" insufficient to allege out-of-pocket ascertainable loss). Neither has Cauley alleged any other out-of-pocket loss theory to support her NJCFA claims.

Nor has Cauley adequately pled a diminution-in-value. She has not alleged any method by which the Court could calculate the difference in value between a Smart TV with Defendants' tracking technology, and one without. As in Eberhart v. LG Electronics. USA, Inc., a case involving televisions allegedly misrepresented to have higher refresh rates, Cauley has not alleged either "a method to determine the premium paid" for Smart TVs without the tracking feature, or even any "prices for comparable televisions." No. 15-1761, 2015 WL 9581752, at *5 (D.N.J. Dec. 30, 2015). As in Eberhart, without this specificity, she cannot state a claim under a diminution-in-value theory. Id.

Plaintiffs also argue that that "Defendants' privacy violations caused Plaintiffs' loss." Pl. Mem. at 10 n.6. But to have this loss form the basis of an NJCFA claim, Plaintiffs must explain how the Court could calculate or quantify an ascertainable loss arising the violation. Plaintiffs do not allege that they suffered an out-of-pocket loss when Defendants acquired their personal data without their consent, they do not allege any emotional damages from having their personal information exposed or sold, and they do not provide any other theory of loss. Without some allegation as to how damages arising from the exposure of Plaintiffs' personal data could be calculated, Cauley has failed to demonstrate that her loss is "quantifiable or measurable," and therefore cannot state a claim under the NJCFA. Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)

To state a claim under the FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Dimartino, 2016 WL 4260788, at *5 (quoting Librizzi v. Ocwen Loan Servicing, LLC, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015)). As noted above, this claim must be plead with particularity under Rule 9(b), and White has done so here.

White alleges that he purchased two Samsung Smart TVs and one Sony Smart TV, both of which are alleged to collect data on his viewing habits in the same fashion. SAC ¶ 16. He further

4

alleges that the packaging of these Smart TVs did not disclose defendants' tracking activities, and had he known of the alleged tracking, he would not have purchased either television. Id. ¶¶ 16-18. Although White's allegations are not as detailed as Cauley's, he has framed his allegations with sufficient particularity to state a claim.

However, White's FDUTPA claim fails for the same reason as Cauley's NJCFA claim: he has not alleged his actual damages. "[T]here are only two possible ways to measure actual damages in a FDUTPA claim: (1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service." HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc., 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016), aff'd, 703 F. App'x 814 (11th Cir. 2017). Actual damages do not include consequential or special damages. See BPI Sports, LLC v. Labdoor, Inc., No. 15-62212, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016). Here, White has not alleged that the Smart TVs in question were worthless, but rather alleges that the tracking feature impaired the value of the televisions. Because he has not alleged the value of the television that he did receive, he cannot state a claim under the FDUTPA.

The Court therefore dismisses both of Plaintiffs' consumer fraud claims, without prejudice.

## B. Plaintiffs' Federal Law Claims

### 1. VPPA

As the Court noted in its prior order, Plaintiffs' claims under the VPPA are squarely foreclosed by controlling Third Circuit precedent.

To state a claim under the VPPA, Plaintiffs must allege that a "video tape service provider" "knowingly disclose[d]" "personally identifiable information" concerning a "consumer of such provider." 18 U.S.C. § 2710(b)(1). Personally identifiable information "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

The Third Circuit has limited the definition of "personally identifiable information" to include only "information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits." In re Nickelodeon Consumer Privacy Litig. 827 F.3d 262, 284 (3d Cir. 2016). In Nickelodeon, the Court of Appeals held that a person's IP address and other "static identifiers" did not permit an ordinary person to determine which online videos another person had watched, and thus could not constitute personally identifiable information under the VPPA. Id. at 290.

Here, Plaintiffs have only alleged that Defendants obtained their IP addresses, MAC addresses, and zip codes.[3] See e.g., SAC ¶ 53. As the Third Circuit has squarely held that such

---

[3] The Third Circuit explicitly stated that its decision in Nickelodeon should not be read to conflict with Yershov v. Gannett Satellite Info. Network, Inc., which held that a consumer's iPhone device identifier, combined with their GPS coordinates while watching a video, constituted personally identifying information under the VPPA. 820 F.3d 482, 486 (1st Cir. 2016). While Plaintiff's SAC does allege that Defendants collected zip code information, SAC ¶¶ 3, 53, 72, 74, 153, 168,

5

static identifiers do not constitute personally identifiable information, Plaintiffs' VPPA claims must be dismissed.

### 2. Wiretap Act

Defendants argue that Plaintiffs have failed to state a claim under the Wiretap Act because Defendants were parties to the communications at issue, and because they have not alleged that the contents of the communications were intercepted. The Court disagrees as to both points.

The Wiretap Act prohibits the intentional interception of the contents of any wire, oral or electronic communication, and grants a private cause of action to any person whose communication is intercepted or disclosed in a manner prohibited by the act. 18 U.S.C. §§ 2511, 2520(a). A plaintiff pleads a prima facie case under the Wiretap Act if he or she shows that the defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept (3) the contents of (4) an electronic communication, (5) using a "device." In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 135 (3d Cir. 2015). The Act has a statutory exception for persons who intercept communications to which they are "parties," stating that it "shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d).

Defendants argue that this "party" exception applies here—because Plaintiffs have alleged that the communications in question were transmissions from Plaintiffs' Smart TVs to Defendants' servers. This argument misstates Plaintiffs' allegations. Plaintiffs allege that Defendants' Smart TVs "continuously monitor and track, in real time, what consumers are watching" and that "Defendants then transmit this private, confidential information to third parties." SAC ¶ 39. (emphasis added). Plaintiffs have therefore alleged that there are two separate "communications": one from the content provider to the Smart TV, and another from the Smart TV to Defendants' servers. And while Defendants are parties to the latter communication, it is the former that Plaintiffs allege was unlawfully intercepted. Because Defendants are not a party to that communication, the exception does not apply.

For this reason, Defendants' arguments from cases involving the tracking of website visitors are inapposite. See In re Google, 806 F.3d at 144-45 (finding that defendant did not violate Wiretap Act by surreptitiously implanting tracking cookies in plaintiffs' web browsers because they directly received their communications and thus were parties to the communications); In re Nickelodeon, 827 F.3d at 275 (same). In Allen v. Quicken Loans Inc., a similar website tracking case, the plaintiff accessed Quicken's website, and Quicken then shared Plaintiff's information with a third-party tracking software provider. No. 17-12352, 2018 WL 5874088, at *2 (D.N.J. Nov. 9, 2018). The court held that because the Act "is a one-party consent statute, and so long as 'one of the parties to the communication has given prior consent to such interception,' no liability

---

zip code data does not have the same specificity as GPS coordinates and thus is at "a point at [in] the linkage of information to identity [that is] too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work" to trigger liability under this statute." In re Nickelodeon, 827 F.3d at 289 (quoting Yershov, 820 F.3d at 486).

exists under section 2511." Id. at *5 (quoting 18 U.S.C. § 2511(2)(d)). Here, Plaintiffs have not alleged that their content providers have shared their viewing histories with Defendants, they instead allege that Defendants surreptitiously embedded software in their televisions that permits Defendants to determine what Plaintiffs were requesting from their content providers.

Plaintiffs have alleged a situation more akin to that in Luis v. Zang, where a plaintiff claimed that the manufacturer of communications monitoring software installed by a suspicious husband on his wife's computer violated the Wiretap Act. 833 F.3d 619, 634 (6th Cir. 2016). The Court of Appeals reversed the District Court's grant of the manufacturer's motion to dismiss, holding that the plaintiff, who was communicating with the wife, had stated a claim against the manufacturer. Id.[4] As here, Plaintiffs allege that Defendants surreptitiously installed software on their televisions that permitted Defendants to track their communications with streaming services, their cable providers, or other content providers to their televisions. Defendants' argument that they were parties to these communications is unavailing.

The Court also concludes that at this stage of the litigation, Plaintiffs have adequately alleged that their "content" was intercepted, as that term is used in the Wiretap Act. Defendants argue that Plaintiffs only allege that their "static identifiers," such as their IP addresses, and other non-content information was transmitted to Defendants' servers. Def. Mem. at 15. But Plaintiffs allege that Defendants obtained more than static identifiers, and are able to track what Smart TV viewers are watching by capturing "information about a selection of pixels on the screen." SAC ¶ 44. This is plainly "information concerning the substance, purport, or meaning" of the relevant communications, within the meaning of the Wiretap Act. 18 U.S.C. § 2510(4).

Finally, Defendants argue that the claims under the Wiretap Act are time barred, because certain exhibits attached to the SAC indicate public reporting of substantially similar claims of surveillance by Defendants, putting them on inquiry notice of their claims. Def. Mem. at 15. Plaintiffs counter that because the alleged surreptitious surveillance is still ongoing, the continuing violation doctrine preserves their claims. See Pl. Mem. at 28.

A plaintiff must bring a civil claim under the Wiretap Act within "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). In determining whether Plaintiffs' claims are barred, "the question is whether the person had a reasonable opportunity to discover the wiretapping" at the earlier date. Sparshott v. Feld Entm't, Inc., 311 F.3d 425, 429 (D.C. Cir. 2002). Determining whether a plaintiff should have been on inquiry notice as of a given date is a fact intensive inquiry that is rarely appropriate for resolution on a motion to dismiss. Edelson V., L.P. v. Encore Networks, Inc., No. 11-5802, 2013 WL 1952309, at *9 (D.N.J. May 9, 2013). Accordingly, the Court declines to determine, at this stage of the litigation and on the sparse record before the court, whether Plaintiffs should have been on inquiry notice of their claims as early as 2015.

---

[4] Defendants in Luis did not argue that they were parties to the communication, but rather that there was no contemporaneous interception, as required by the statute. Luis, 833 F.3d at 627 However, the posture is substantially similar to the facts of this case.

7

### C. Negligent Misrepresentation Claims

Defendants argue that Plaintiffs' failure to allege a relationship that would require disclosure dooms their negligent misrepresentation claim. The Court agrees.

Under both New Jersey and Florida law,[5] to "prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement upon which the plaintiff justifiably relied." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 603 (D.N.J. 2016); accord Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1342 (S.D. Fla. 2018) (applying same elements for negligent misrepresentation claim under Florida law). To state a claim for negligent misstatement based on an omission, a plaintiff must allege a "special relationship" between the seller and purchaser, such as a fiduciary relationship, a transaction that is inherently fiduciary and calls for good faith and full disclosure, or where one party expressly places special trust and confidence in the other. Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 457 n.9 (D.N.J. 2015); accord Behrman v. Allstate Ins. Co., 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) (holding same requirement applies under Florida law), aff'd, 178 F. App'x 862 (11th Cir. 2006).

Here, because neither Cauley nor White has pleaded that any special relationship existed between them and either Sony or Samsung, they cannot state a claim for negligent misrepresentation on the basis of Defendants' alleged omissions. The negligent misrepresentation claim is therefore dismissed.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss, ECF No. 94 is **GRANTED IN PART and DENIED IN PART**.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**

---

[5] Count Six for negligent misrepresentation is asserted "on behalf of Plaintiffs Cauley and White, and the New Jersey and [sic] Subclasses." SAC ¶¶ 198-99. The SAC does not allege which state's law these claims arise under, but the Court reads the reference to two subclasses as asserting a claim under New Jersey law as to Cauley and under Florida law as to White.