# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR. and PATRICIA CAULEY on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SONY ELECTRONICS INC.,<br><br>          Defendants. | Civil Action No. 17-1775 (MCA) (JAD)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Joseph A. Dickson, U.S.M.J.<br><br>*Document Electronically Filed*<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL (NON-CLASS) ARBITRATION AND/OR DISMISS FOR LACK OF JURISDICTION** |

---

**DEFENDANT SONY ELECTRONICS, INC. MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL (NON-CLASS) ARBITRATION AND/OR DISMISS FOR LACK OF JURISDICTION**

---

Holland & Knight LLP
31 W. 52nd Street
New York, NY  10019
Tel:  (212)-513-3200

*Attorneys for Sony Electronics, Inc*.

i

**Table of Contents**

**Page**

I.      PRELIMINARY STATEMENT ......................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................2

     A.   The Arbitration Agreements ......................................................................2

     B.   Relevant Procedural Posture ......................................................................3

III.    COMPELLING ARBITRATION ..................................................................5

     A.   Legal Standard for Compelling Arbitration ..............................................5

     B.   Legal Argument for Compelling Arbitration ............................................6

        1. The EULA Constitutes An Express, Unequivocal Agreement to

           Arbitrate ........................................................................................6

        2. This Dispute Falls Within The Scope of That Valid Agreement..........8

        3. Arbitration Must Be Held On An Individual (Non-Class) Basis..........9

        4. Sony Has Not Waived Its Right to Demand Arbitration ...................10

IV.    CONCLUSION.............................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AT&T Mobility LLC v. Concepcion,
     563 U.S. 333 (2011)................................................................................14

BGW Design Ltd., Inc. v. Serv. Am. Corp.,
     10-20730-CIV, 2011 WL 13220382 (S.D. Fla. Nov. 30, 2011)................................7

Blair v. Scott Specialty Gases,
     283 F.3d 595 (3d Cir. 2002)(Simandle, J.) ....................................6

Century Indem. Co. v. Certain Underwriters at Lloyd's, London,
     584 F.3d 513 (3d Cir. 2009)........................................................5

Chassen, v. Fid. Nat'l Fin., Inc.,
     836 F.3d 291 (3d Cir. 2016)........................................10, 14, 15

Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.,
     367 F. Supp. 2d 711 (E.D. Pa. 2005) ...........................................15

Flintkote Co. v. Aviva PLC,
     769 F.3d 215 (3d Cir. 2014)........................................................6

Frissell v. Nichols,
     94 Fla. 403, 114 So. 431 (1927)..................................................7

Grandalski v. Quest Diagnostics Inc.,
     767 F.3d 175 (3d Cir. 2014)........................................................7

Great W. Mortg. Corp. v. Peacock,
     110 F.3d 222 (3d Cir. 1997)........................................................11

Hoxworth v. Blinder, Robinson & Co.,
     980 F.2d 912 (3d Cir. 1992)..................................................12, 16

Jenkins v. City Ice & Fuel Co.,
     118 Fla. 795, 160 So. 215 (1935)................................................8

Kirleis v. Dickie, McCamey & Chilcote,
     560 F.3d 156 (3d Cir. 2009)........................................................6

Lamps Plus, Inc. v. Varela,
     139 S. Ct. 1407 (2019)..............................................................9

Laudano v. Credit One Bank,
    No. 15-7668(NLH/KMW), 2016 U.S. Dist. LEXIS 81028 (D.N.J. June 22,
    2016)(Hillman, J.) ................................................................................................6

Midlantic Nat'l Bank v. Holewinski,
    465 So. 2d 669 (Fla. Dist. Ct. App. 1985) ..........................................................7

Nino v. Jewelry Exch., Inc.,
    609 F.3d 191 (3d Cir. 2010) ...............................................................................16

Painewebber Inc. v. Faragalli,
    61 F.3d 1063 (3d Cir. 1995) ................................................................10, 11, 12

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,
    636 F.2d 51 (3d Cir. 1980) ...................................................................................6

In re Pharmacy Ben. Managers Antitrust Litig.,
    700 F.3d 109 (3d Cir. 2012) ...............................................................................16

Sutter v. Oxford Health Plans LLC,
    675 F.3d 215 (3d Cir. 2012) ...............................................................................14

T.V. v. Camp Jaycee,
    197 N.J. 132, 962 A.2d 453 (N.J. 2008) ..............................................................7

Wood v. Prudential Ins. Co. of Am.,
    207 F.3d 674 (3d Cir. 2000) ...............................................................................15

**Statutes**

9 U.S.C.A. §1 .............................................................................................................2

9 U.S.C. § 3 ...............................................................................................................6

9 U.S.C. §4 ................................................................................................................5

**Other Authorities**

11 Fla Jur Contracts § 25 .........................................................................................7

11 Fla Jur Contracts § 93 .........................................................................................8

## I.     PRELIMINARY STATEMENT

Plaintiff Thomas Roger White, Jr. has sued Sony Electronics Inc. ("Sony") in this action.[1]  As set forth below, the Complaint arises from an alleged purchase of a Smart TV.  White did not identify the make and model of the Sony Smart TV in his initial Complaint (voluntarily withdrawn) or his First Amended Complaint ("FAC") (dismissed in its entirety via motion).  White has subsequently provided the needed information.

The make and model in question was subject to an End-User License Agreement ("EULA") between the parties.  See, Exhibit A-1 (attachment to the Sony Affidavit).  The EULA was presented as a stand-alone disclosure contained in the packaging for his Sony Smart TV, grouped with the instruction manual and other documentation.  White accepted the EULA by proceeding to set up and use his Sony Smart TV, and by not opting out within the 30 days allotted by the terms of the EULA.

---

[1] Plaintiff Patricia Cauley has brought an action against Defendant Samsung Electronics America, Inc. ("Samsung").  Cauley does not allege that she bought any Sony TVs.  The cases against Sony and Samsung are currently misjoined.  Sony has moved to sever the cases by means of a separate filing.  That motion should be decided first, as severance is appropriate regardless of forum.  Samsung and Plaintiff Cauley are strangers to the contractual agreements between Sony and Plaintiff White that are the subject of this motion and their broader dispute.

The EULA requires all disputes to be resolved by individual (non-class) arbitration before the American Arbitration Association ("AAA").   Sony has demanded that Plaintiff submit this matter to arbitration.  Exhibit B (demand letter from Sony counsel).  To date, Plaintiff has refused.  Therefore, Sony asks the Court to compel this action to individual (non-class) arbitration before the AAA pursuant to the Federal Arbitration Act, 9 U.S.C.A. §1, et seq. (the "FAA").  Sony asks that the Court dismiss the case for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) or retain the action solely for purposes of effectuating the terms of the EULA.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     The Arbitration Agreements

Per the Second Amended Complaint ("SAC") in the Action, ¶16, the claims in the Action arise from White's alleged purchase of a Sony Model No. KDL-40W650D.  Every box of this make and model contained an END USER LICENSE AGREEMENT or "EULA," a copy of which is attached as Exhibit A-1:

> If you do not agree to the terms of this EULA as amended from time to time by Sony in its discretion, Sony is unwilling to license the Sony Software (as defined below) to you and you should before using the Sony Product promptly contact Sony for instructions on the return of the entire Sony Product and included Sony Software for a refund of the purchase price of the Sony Product.

This EULA included an agreement to arbitrate all "Disputes."  "Dispute" is defined as "any disagreement, cause of action, claim, controversy, or proceeding

between you and any Sony entity related to or arising out of the Sony Product, Sony
Software, Sony Services & Content or this EULA." Id., in the Section marked
**"RESOLVING DISPUTES; ARBITRATION; SMALL CLAIMS WAIVER."**
The EULA requires that all disputes be submitted to arbitration with AAA, pursuant
to AAA's Expedited Procedures of the Commercial Arbitration Rules. Id., in the
section marked "**ANY DISPUTE THAT IS NOT RESOLVED THROUGH THE
INFORMAL NEGOTIATION PROCESS DESCRIBED ABOVE SHALL BE
RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION**." The
EULA also provided Plaintiff a chance to opt out within 30 days.

Plaintiff set up and used his Sony Smart TV. As set forth in the Second
Amended Complaint, paragraph 16:

> Mr. White connected his Smart TVs to the Internet via a Wi-Fi
> connection shortly after purchasing it, and used "apps" like the Netflix,
> Hulu, and YouTube on the television to stream video content. He also
> uses his Smart TV to watch cable television, use other "smart" features,
> and play PlayStation and use a DVD player.

Plaintiff did not opt out within the 30 days as required by the EULA.

## B.    Relevant Procedural Posture

This action was originally filed on March 16, 2017. The defendants originally
included Sony, Samsung, and LG Electronics USA, Inc. as well as their foreign
parent companies (which Plaintiff never served). **[DE #1]**. Six months later, on
September 26, 2017, the case was administratively terminated so that Plaintiff could

consider amendments.  **[DE #38]**.  The case was restored to the active list on January 2, 2018, at Plaintiff's request.  **[DE #42]**.  Plaintiff filed a First Amended Complaint on January 17, 2018.  **[DE #45]**.  Neither the complaint nor the First Amended Complaint included any information regarding the model number of the Sony Smart TV in question.   Defendants filed a joint motion to dismiss the First Amended Complaint on February 23, 2018 **[DE #54]**.  Plaintiff finally provided make and model information and corresponding serial numbers in a Rule 26 disclosure on April 11, 2018.  On September 26, 2018, the Court granted Sony and Samsung's Motion to Dismiss in its entirety but left open the prospect of amendment.  **[DE #82]**.

On November 16, 2018, Plaintiff filed the SAC **[DE #88]**.  The SAC is the first complaint to allege what make and model Sony Smart TV Plaintiff White allegedly purchased.  However, because the SAC was in all material respects the same as the First Amended Complaint, on December 17, 2018 Defendants moved to dismiss it on essentially the same grounds as before.  **[DE #94]**.  On August 21, 2019, the Court granted that motion in part, and denied that motion in part, **[DE #104]**, dismissing every claim but the federal Wiretap Act cause of action.

Defendants moved for reconsideration of the Court's August 21 order.  **[DE #105]**.  On March 24, 2020, the Court denied that Motion.  **[DE #131]**.  This motion

follows that March 24, 2020 Order.[2]  On May 6, 2020, Sony sent a demand for individual (non-class) arbitration with AAA pursuant to the EULA.  Exhibit B.

## III.   COMPELLING ARBITRATION

### A.   Legal Standard for Compelling Arbitration

By enacting the FAA, Congress "expressed a strong federal policy in favor of resolving disputes through arbitration."  Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).  The FAA states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court[.]" 9 U.S.C. §4.  The court shall hear the parties, and:

> upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

In deciding whether a party may be compelled to arbitrate under the FAA, the Court considers (1) whether there is an "express, unequivocal" agreement to arbitrate between the parties and, if so, (2) whether the dispute falls within the scope of that

---

[2] The State of New Jersey has been under a State of Emergency with respect to the COVID-19 pandemic.  This is reflected in this Court's Standing Order of 2020-04 which directed that all filing and discovery deadlines in civil matters that currently fall between March 25, 2020 and April 30, 2020, are extended by forty-five (45) days, unless the presiding judge in an individual case directs otherwise.

valid agreement. <u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.</u>, 636 F.2d 51, 54
(3d Cir. 1980); <u>Flintkote Co. v. Aviva PLC</u>, 769 F.3d 215, 219-20 (3d Cir. 2014).

When "all the claims involved in an action are arbitrable," the Court may
dismiss the proceedings or stay them under 9 U.S.C. § 3, as appropriate "for reasons
of judicial efficiency." <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 600 (3d Cir.
2002)(granting motion to dismiss under Rule 12(b)(1) for lack of subject-matter
jurisdiction, in light of agreement to arbitrate)(Simandle, J.). <u>Accord</u>, <u>Laudano v.
Credit One Bank</u>, No. 15-7668(NLH/KMW), 2016 U.S. Dist. LEXIS 81028, at *10-
11 (D.N.J. June 22, 2016)(noting that "[i]n this Circuit, courts generally, but not
uniformly, have accepted and embraced Rule 12(b)(1) as a proper vehicle for
deciding whether to dismiss a suit by virtue of an arbitration agreement between the
parties")(Hillman, J.).

**B.    Legal Argument for Compelling Arbitration**

**1.    The EULA Constitutes An Express, Unequivocal Agreement to Arbitrate**

"To determine whether the parties agreed to arbitrate, we turn to ordinary
state-law principles that govern the formation of contracts." <u>Kirleis v. Dickie,
McCamey & Chilcote</u>, 560 F.3d 156, 160 (3d Cir. 2009).  We apply Florida law for
purposes of illustration, but the relevant contract law principles are fairly uniform

among the states.[3]   Under Florida law, "To prove the existence of a valid contract, a plaintiff must prove the existence of: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." BGW Design Ltd., Inc. v. Serv. Am. Corp., 10-20730-CIV, 2011 WL 13220382, at *6 (S.D. Fla. Nov. 30, 2011).   "An offer …merely contemplates the proffer, proposal, presentation, or exhibition of something to another for acceptance or rejection. 11 FLA JUR CONTRACTS § 25, citing to Frissell v. Nichols, 94 Fla. 403, 114 So. 431 (1927).  By means of the EULA, Sony offered an agreement by which both parties would submit disputes exclusively to arbitration (with limited carve outs not applicable here). Sony offered a means to reject this offer within thirty (30) days.  Plaintiff did not, but instead proceeded to set up and use his Sony Smart TV.

Acceptance of an offer can be "implied from acts," unless otherwise specified in the contract.  See, e.g., Midlantic Nat'l Bank v. Holewinski, 465 So. 2d 669 (Fla. Dist. Ct. App. 1985)(finding a contract may be found by a borrower accepting funds

---

[3] There is no significant conflict between New Jersey and Florida law on any of these issues.  However, even if there were a conflict, Florida law would control.  A federal court sitting in diversity typically applies the choice of law analysis of its forum state.  New Jersey's choice of law analysis focuses on which forum has the "most significant relationship" with the action.  T.V. v. Camp Jaycee, 197 N.J. 132, 962 A.2d 453, 459-60 (N.J. 2008).  In this action, White alleges he is a resident in Florida, and presumably made the underlying purchase in Florida and used the Sony Smart TV in Florida.  Therefore, the law of his home state should control.  Cf.  Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 182 (3d Cir. 2014)(finding the law to apply to each consumer in putative class action was their respective home state).

from a lender after being presented with the terms). In this case, the EULA expressly states:

> If you do not agree to the terms of this EULA or Sony's applicable privacy policy, as amended from time to time by Sony in its discretion, Sony is unwilling to allow you to access the applicable Sony Content Services and Sony Content…Sony Software includes software in your Sony Product, including updates or modified software, provided to you by Sony, whether stored on media or downloaded to the Sony Product via any method[.]

Exhibit A-1.  It is reasonable to imply from the fact that Plaintiff went on to set up and use his Sony TV as alleged in the SAC that he did not take advantage of the thirty (30) day opt out period and therefore agreed to these terms.

Lastly, the parties need to exchange consideration.  Mutual promises are sufficient to support consideration.  Both White and Sony agreed to arbitrate disputes.  See., e.g., 11 FLA JUR CONTRACTS § 93, citing to Jenkins v. City Ice & Fuel Co., 118 Fla. 795, 160 So. 215 (1935).  By means of the EULA, Sony further offered to license its software to White.  White accepted the terms of the EULA by using the software.

## 2.    This Dispute Falls Within The Scope of That Valid Agreement

Under the EULA a dispute "is defined as any disagreement, cause of action, claim, controversy, or proceeding between you and any Sony entity related to or arising out of the Sony Product, Sony Software, Sony Services & Content or this EULA."  Exhibit A-1.

All of White's allegations against Sony in the SAC arise from his use of a Sony Smart TV, software and/or content.  In paragraph 16, Plaintiff alleges that he purchased a specific make and model of Sony Smart TV.  In the same paragraph, he contends that he used the product to watch content.  In paragraph 35, Plaintiff makes allegations about the hardware components of his Sony Smart TV, claiming "Defendants' Smart TVs are also equipped with the ability to connect to the internet via wireless internet networking."  Plaintiff complains about "pre-installed tracking software" in paragraph 60.

The Court made clear in its August 21, 2019 and March 24, 2010 Orders, **[DE #104]** and **[DE #131]**, that the only remaining issue in the case is the Wiretap Act. This claim turns on issues of "design, authorship, programming, knowing and intentional installation, [or] activation,"  within the Sony Smart TV. SAC, para 167. This is a Dispute within the meaning of the EULA.

**3.      Arbitration Must Be Held On An Individual (Non-Class) Basis**

Agreement to arbitration, by definition and default, always means agreement to individual (non-class) arbitration, unless the contract expressly states otherwise. As the United States Supreme Court ruled in Lamps Plus, Inc. v. Varela, "Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis."  139 S. Ct. 1407, 1419 (2019).  Therefore, this action must proceed in individual (non-class) arbitration.

4.     **Sony Has Not Waived Its Right to Demand Arbitration**

To the extent Plaintiffs argues that Sony waited too long to seek to compel arbitration, any such argument is without merit.   "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred[.]" Painewebber Inc. v. Faragalli, 61 F.3d 1063 (3d Cir. 1995)(affirming trial court decision to compel arbitration).   And, as set forth below, moving to compel arbitration in 2018 would have been futile, due to confused Third Circuit case law that would have wrongfully imposed on Sony a risk of class arbitration.   Only after Sony moved to dismiss the SAC did the United States Supreme Court provide the needed guidance on class arbitration.   Accord, Chassen, v. Fid. Nat'l Fin., Inc., 836 F.3d 291 (3d Cir. 2016)(finding no waiver when arbitration demand came after pro-arbitration United States Supreme Court decision).

In Painewebber, the plaintiff filed a Writ of Summons in Pennsylvania state court and sent a draft complaint.   Id. at 1064-65.   Five years passed, and the state court automatically dismissed the writ for lack of activity.   Id.   The court granted plaintiff's motion to reinstate his case, and denied Painewebber's motion. Painewebber then brought a federal court action to compel arbitration, which plaintiff argued was waived.   The district court disagreed, and compelled arbitration. Id.   In affirming the district court's decision, the Third Circuit noted:

> waiver will normally be found only where the demand for arbitration
> came long after the suit commenced and when both parties had engaged

> in extensive discovery.  Prejudice is the touchstone for determining
> whether the right to arbitration has been waived.

Painewebber, 61 F.3d at 1068-69 (quotation marks and citations omitted).  Accord,

Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 233 (3d Cir. 1997)("a party waives

the right to compel arbitration only in the following circumstances: when the parties

have engaged in a lengthy course of litigation, when extensive discovery has

occurred, and when prejudice to the party resisting arbitration can be

shown")(emphasis added).

Further:

> To the extent that Faragalli relies on the five year interval between the
> filing of the Writ of Summons and the eventual litigation of the motion
> to compel arbitration in federal court, Faragalli must accept equal
> responsibility, as he took no action during those five years to prosecute
> his claims against PaineWebber and only engaged in the
> aforementioned settlement discussions.

Painewebber, supra, 61 F.3d at 1069.

As in Painewebber, no discovery has been had apart from Plaintiffs providing

the serial numbers of their devices, much less "extensive discovery."  Moreover,

Plaintiffs bear equal responsibility for any alleged delay in the demand for

arbitration.  Plaintiffs provided no make or model information in their Complaint or

their First Amended Complaint, and provided this information for the first time over

a year after the case had been filed and only after the Defendants had already moved

to dismiss.

11

The <u>Painewebber</u> case stands in stark contrast to an earlier Third Circuit decision which did find waiver, <u>Hoxworth v. Blinder, Robinson & Co.</u>, 980 F.2d 912 (3d Cir. 1992).  In <u>Hoxworth</u>, prior to moving to compel arbitration, the defendants initiated numerous pretrial proceedings.  These included not only a motion to dismiss but also a motion to disqualify counsel, deposition of named plaintiffs, responses to discovery demands, motions to compel, and opposition to class certification. <u>Id</u>. at 925-26.  The court found that defendants had availed themselves of the "litigation machinery," including by use of the federal forum to obtain discovery they would not have been able to obtain in arbitration.   <u>Id</u>. at 926.   The Hoxworth court considered several factors: (1) the timeliness or lack thereof of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; (4) the extent of its non-merits motion practice; (5) its assent to the court's pretrial orders; and (6) the extent to which both parties have engaged in discovery.  Under these circumstances, the court found that allowing arbitration would prejudice plaintiffs, and hence arbitration was waived.

The case before the Court is like <u>Painewebber</u>, not like <u>Hoxworth</u>.  Examining what some courts have called the <u>Hoxworth</u> factors:

The demand for arbitration is timely.  Plaintiff did not provide Sony with make and model information until after Sony moved to dismiss the Complaint and FAC. Sony therefore waived nothing by asserting its Motions to Dismiss the Complaint and then the FAC.  The FAC *was* wholly dismissed, leaving nothing to arbitrate.

On November 16, 2018, Plaintiff filed the SAC.  This is the first time that Sony faced an amended pleading with sufficient knowledge that the EULA, with its arbitration provision, might apply.  Sony did not rely on the EULA at this point for two reasons, neither of which prejudiced Plaintiff.  First, the SAC appeared to be substantively identical to the FAC.  As Sony would express several times, it appeared to Sony that Plaintiff had completely ignored the substantive rulings of the Court as to the FAC.  Sony's Motion to Dismiss the SAC therefore was mostly restating arguments already made to obtain the benefit of the prior decision.  While that Motion did not succeed as to the Wiretap Act, it did succeed as to every other cause of action on the same basis as previous challenges to the FAC.

The second reason that Sony did not rely on the EULA when faced with the SAC was a lack of clarity under Third Circuit law, which has been resolved between then and now. While the EULA states that "[t]his EULA contains a binding individual arbitration clause and class action waiver," Exh. A-1, no such class action waiver is explicitly stated thereafter.  Third Circuit decisions still in effect at the time Plaintiff's SAC was filed imposed an unacceptable risk that the action could be

13

subject to binding class action arbitration despite Sony's stated intent to the contrary in the EULA.  See, e.g., Sutter v. Oxford Health Plans LLC, 675 F.3d 215 (3d Cir. 2012)(refusing to vacate class arbitration, despite no express mention of class arbitration in the agreement).  Hence, on December 17, 2018, **[DE #94]**, Sony moved to dismiss the SAC on essentially the same basis as the FAC.  It would not be until April 24, 2019 that the United States Supreme Court would decide the Lamps Plus case, supra, and remove the threat of class arbitration that had wrongly hung over the EULA.  By this point, Sony had already moved to dismiss the SAC.

It would be inequitable to find that Sony waived a right to compel arbitration by moving to dismiss in 2018 when only a 2019 change in the law (Lamps Plus) made it possible for Sony to obtain the non-class arbitration intended by the EULA. Accord, Chassen, supra.  In Chassen, the plaintiffs sued a bank in 2009.  The bank had an arbitration clause but banned class arbitration.  New Jersey law rendered such clauses unenforceable.  The parties litigated for two and a half years:

> In that time, both sides conducted broad discovery and contested several substantive motions on their merits. Plaintiffs have also extensively documented their efforts in this case and note that they served over 130 non-party subpoenas and spent over $50,000 on experts before Defendants sought bipolar arbitration.

Id. at 294.  Then, the United States Supreme Court ruled that the FAA preempted state law bans on class action waivers in arbitration.  AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).  The bank moved to compel arbitration.  The

14

plaintiffs argued waiver.  However, the District Court granted the motion to compel, and the Third Circuit affirmed.  While the bank could have moved earlier, it could not have obtained the relief it sought until the subsequent Supreme Court decision. "We therefore hold that futility can excuse the delayed invocation of the defense of arbitration." Id. at 297.

In this case, it would have been futile until April 29, 2019 for Sony to move for individual (non-class) arbitration on the basis of the EULA.  And by that date, Sony had already moved to dismiss the SAC.

Sony's merits practice was set in motion by Plaintiff's pleading practice. Sony has not filed an Answer and/or affirmative defenses.  Sony has not sought any discovery, noticed any depositions, issued any subpoenas, or asked for any injunctive or declaratory relief.  If the Complaint and FAC had identified the make and model of Sony Smart TV at issue, multiple rounds of Motion to Dismiss could have been avoided.  Sony was completely successful in dismissing the FAC, and filing a Motion to Dismiss does not waive arbitration rights.[4]  While the SAC included information on make and model, it was otherwise largely identical to the FAC.

---

[4] See, e.g., Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 680 (3d Cir. 2000) (no waiver when defendant had filed motion to dismiss and court ruled on it); Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co., 367 F. Supp. 2d 711, 722 (E.D. Pa. 2005) (no waiver when defendant filed two motions to dismiss, engaged in discovery, and filed two pretrial motions).

<u>Sony did inform Plaintiff's counsel of its intention to seek arbitration</u>.  Sony informed Plaintiff in writing prior to filing this Motion.  Exhibit B.

<u>Sony has not engaged in non-merits practice and pre-trial orders have been minimal</u>.  Other than decisions on the motion to dismiss, the Court has simply entered scheduling orders, *pro hac vice* decisions, and the like.

<u>The parties have not engaged in any discovery</u>. The Third Circuit's cases finding waiver "have uniformly featured significant discovery activity in the district court." <u>In re Pharmacy Ben. Managers Antitrust Litig</u>., 700 F.3d 109, 120 (3d Cir. 2012); <u>see</u>, <u>e.g.</u>, <u>Nino v. Jewelry Exch., Inc.</u>, 609 F.3d 191, 212 (3d Cir. 2010) (parties engaged in "significant discovery," including interrogatories, disclosures, requests for production and depositions of four witnesses, as well as "significant discovery related motion practice"); <u>Hoxworth</u>, <u>supra</u>, 980 F.2d at 925-26 (parties engaged in several depositions, answered several discovery requests, and litigated discovery disputes).   Neither side has ever served any discovery.  Neither side has produced any discovery.

This is still a dispute just between Mr. White and Sony.  No motion for class certification has been filed, and the Court has not been asked to make any rulings that would bind other potential members of any class that could either benefit or prejudice whatever claims that they might have against Sony.

On this record, there is no prejudice to Plaintiff in ordering this individual (non-class) arbitration.  Nor is any third-party, putative class member impacted by requiring that Mr. White and Sony abide by their prior agreement.

## IV.    CONCLUSION

For purposes of clarity, we respectfully request that the Court decide the Motion for Severance first.  Thereafter, we respectfully request that the Court dismiss the case for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) or retain the action solely for purposes of effectuating the terms of the EULA. .

Dated:  May 22, 2020

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *s/ Mark S. Melodia*_____
MARK S. MELODIA
mark.melodia@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212)-513-3200

PAUL J. BOND
paul.bond@hklaw.com
HOLLAND & KNIGHT LLP
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Tel: (212) 513-3200

*Attorneys for Defendant*
**SONY ELECTRONICS INC.**