# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR. and PATRICIA CAULEY on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SONY ELECTRONICS INC.,<br><br><br><br>     Defendants. | Civil Action No. 17-1775 (MCA) (JAD)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Joseph A. Dickson, U.S.M.J.<br><br>**Return Date:  June 15, 2020**<br><br>Oral Argument Requested<br><br>*Document Electronically Filed* |

## DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STRIKE PLAINTIFFS' CLASS CLAIMS

GIBBONS PC
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500

*Attorneys Samsung
Electronics America, Inc.*

COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

*Attorneys for Samsung
Electronics America, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

I.    STATEMENT OF FACTS ............................................. 2

    A.    Plaintiffs' Agreement To Arbitrate Any Dispute Concerning Samsung's "SmartHub" Software And Not To Assert Any Class Claims ..................................................................... 3

    B.    Plaintiffs' Complaint Asserts Claims Concerning Samsung's SmartTV Software .............................................................. 6

II.    BECAUSE PLAINTIFFS ENTERED INTO VALID AGREEMENTS TO ARBITRATE THE SPECIFIC DISPUTE IN THIS ACTION, THIS MATTER MUST BE REFERRED TO BINDING ARBITRATION. ...................................................................... 10

    A.    Plaintiffs Expressly Consented To Arbitrate Disputes Concerning The Samsung SmartTV's SmartHub Software. ............. 12

    B.    The Arbitration Agreement Assigns Questions Of Scope To The Arbitrator And, In Any Event, The Agreement Here Covers Plaintiffs' Claim. ................................................................ 16

III.    PLAINTIFFS CANNOT ESTABLISH ANY DEFENSE TO ENFORCEMENT OF THE ARBITRATION AGREEMENT .................. 20

    A.    The Arbitration Agreement Is Not Unconscionable. ........................ 20

    B.    SEA Did Not Waive Its Arbitration Right. ....................................... 23

        1.    This Motion To Compel Arbitration Is Timely. ...................... 24

        2.    Contesting The Merits On A Motion To Dismiss Is Not A Waiver. .................................................................... 27

        3.    Samsung Promptly Notified Plaintiffs Of Its Intent To Seek Arbitration. ........................................................ 28

        4.    Non-Merits Motion Practice. .................................................. 29

5.      Samsung Acquiesced To Pretrial Orders Only
        Concerning Motions To Dismiss And Pleadings.....................29

6.      No Discovery Has Been Conducted. .......................................30

IV.   PLAINTIFFS' CLASS CLAIMS SHOULD BE STRICKEN FROM
      THE COMPLAINT. ...................................................................31

      CONCLUSION............................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*ADP, LLC v. Lynch*,
  No. 16-cv-01053, 2016 WL 3574328 (D.N.J. June 30, 2016) ..........................13

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)........................................................................................31

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)................................................................10, 19, 23, 31

*AT&T Techs., Inc. v. Comm'n Workers of Am.*,
  475 U.S. 643 (1986).........................................................................................18

*Bar-Ayal v. Time Warner Cable Inc.*,
  No. 03-cv-9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ........................22

*Beture v. Samsung Elecs. Am., Inc.*,
  No. 17-cv-5757, 2018 WL 4621586 (D.N.J. July 18, 2018)............10, 14, 16, 17

*Camilo v. Uber Techs., Inc.*,
  No. 17-cv-9508, 2018 WL 2464507 (S.D.N.Y. May 31, 2018)........................32

*Cavallo v. Uber Techs., Inc.*,
  No. 16-cv-4264, 2017 WL 2362851 (D.N.J. May 31, 2017) .....................11, 19

*Chassen v. Fid. Nat'l Fin., Inc.*,
  836 F.3d 291 (3d Cir. 2016) ....................................................................11, 17

*Corwin v. NYC Bike Share, LLC*,
  238 F. Supp. 3d 475, 489 (S.D.N.Y. 2017), *vacated in part on
  other grounds*, 2017 WL 4075213 (S.D.N.Y. Mar. 13, 2017) ....................21, 22

*Davis v. Dell*,
  No. 07-cv-630, 2007 WL 4623030 (D.N.J. Dec. 28, 2007) ..............................13

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..........................................................................................11

*DuPont E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber &*
    *Resin Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001) ................................................................16

*Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.*,
    367 F. Supp. 2d 711 (E.D. Pa. 2005).................................................27

*Falk v. Aetna Life Ins. Co.*,
    No. 19-cv-00434, 2019 WL 4143882 (D.N.J. Aug. 31, 2019)..............11, 13, 22

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)..................................................................12, 16

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...............................................15

*George S. Hofmeister Family Tr. v. FGH Indus., LLC*,
    No. 06-cv-13984, 2007 WL 2984188 (E.D. Mich. Oct. 12, 2007) ...................26

*Gillman v. Chase Manhattan Bank*,
    73 N.Y.2d 1 (1988) .........................................................................21

*Golden v. Mobil Oil Corp.*,
    882 F.2d 490 (11th Cir. 1989) ........................................................20

*Great W. Mortg. Corp. v. Peacock*,
    110 F.3d 222 (3d Cir. 1997) ......................................................24, 31

*High v. Balun*,
    943 F.2d 323 (3d Cir. 1991) ...........................................................12

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    980 F.2d 912 (3d Cir. 1992) ..................................................24, 29, 30

*James v. Glob. Tel*Link Corp.*,
    No. 13-cv-4989, 2016 WL 589676 (D.N.J. Feb. 11, 2016), *aff'd*,
    852 F.3d 262 (3d Cir. 2017) .....................................................25, 30

*Just B Method, LLC v. BSCPR, LP*,
    No. 14-cv-1516, 2014 WL 5285634 (E.D. Pa. Oct. 14, 2014)..........................27

*Khorchid v. 7-Eleven, Inc.*,
    No. 18-cv-8525, 2019 WL 3812472 (D.N.J. Aug. 14, 2019).............................27

iv

*Koons v. Jetsmarter, Inc.*,
  No. 18-cv-16723, 2019 WL 3082687 (D.N.J. July 15, 2019) ...........................14

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019).......................................................................................19

*Lloyd v. HOVENSA, LLC.*,
  369 F.3d 263 (3d Cir. 2004) ...............................................................................11

*Manopla v. Raymours Furniture Co.*,
  No. 17-cv-7649, 2018 WL 3201800 (D.N.J. June 29, 2018) ............................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*,
  822 F. Supp. 125 (S.D.N.Y. 1993) .....................................................................19

*Miracle-Pond v. Shutterfly, Inc.*,
  No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................15

*Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*,
  No. 03-cv-0772, 2004 WL 1950370 (D.N.J. Feb. 9, 2004)................................20

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................11

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009) ................................................................21

*Nino v. Jewelry Exch., Inc.*,
  609 F.3d 191 (3d Cir. 2010) ...............................................................................30

*PaineWebber Inc. v. Faragalli*,
  61 F.3d 1063 (3d Cir. 1995) ..........................................................23, 24, 26, 31

*In re Pharmacy Ben. Managers Antitrust Litig.*,
  700 F.3d 109 (3d Cir. 2012) ...............................................................................30

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) .........................................................................20, 21

*Raynor v. Verizon Wireless (VAW), LLC*,
  No. 15-cv-5914, 2016 WL 1626020 (D.N.J. Apr. 25, 2016) ............................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................17, 20

*Sablosky v. Edward S. Gordon Co.*,
   73 N.Y.2d 133 (1989) ...............................................................................21

*Salco Distributors, LLC v. iCode, Inc.*,
   No. 05-cv-642, 2006 WL 449156 (M.D. Fla. Feb. 22. 2006) ...........................14

*Scaba v. Jetsmarter, Inc.*,
   No. 18-cv-17262, 2019 WL 3947510 (D.N.J. Aug. 21, 2019)..........................17

*Semenko v. Wendy's Int'l, Inc.*,
   No. 12-cv-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ........................32

*Serine v. Marshall, Dennehey, Warner, Coleman & Goggin*,
   No. 14-cv-4868, 2015 WL 4644129 (E.D. Pa. Aug. 5, 2015)...........................27

*Singh v. Uber Techs. Inc.*,
   235 F. Supp. 3d 656, 666 (D.N.J. 2017), *vacated on other grounds*,
   939 F.3d 210 (3d Cir. 2019) ......................................................................13, 14

*Starke v. Gilt Groupe, Inc.*,
   No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014).......................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 10-cv-5458, 2011 WL 5325589 (N.D. Cal. Sept. 19, 2011) .....................22

*Thomas v. A.R. Baron & Co.*,
   967 F. Supp. 785 (S.D.N.Y. 1997) ..................................................................26

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir. 2005) ....................................................................10, 16

*Whitt v. Prosper Funding LLC*,
   No. 15-cv-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ..........................14

*Wood v. Prudential Ins. Co. of Am.*,
   207 F.3d 674 (3d Cir. 2000) ...................................................................27, 28

*Zamber v. Am. Airlines, Inc.*,
   No. 16-cv-23901, 2020 WL 1445479 (S.D. Fla. Feb. 11, 2020).................15, 16

**Statutes**

9 U.S.C. § 2 ................................................................................................10, 20

18 U.S.C. § 2510 *et seq.*..................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................................32

Fed. R. Civ. P. 23 ...........................................................................................32

**INTRODUCTION**

Plaintiffs Patricia Cauley and Thomas R. White, Jr. seek to litigate a claim that they agreed to arbitrate.  They also seek to bring their claims on behalf of a class, even though they agreed not to do so.  When Plaintiffs first set up their Samsung SmartTVs, they agreed to Terms and Conditions clearly presented to them in an agreement just like those routinely enforced in this Circuit and elsewhere.  Those Terms and Conditions included an agreement to arbitrate "any claim, dispute or controversy … against any Samsung entity … arising out of, relating to, or connected in any way with" Samsung's software or services, and a class action waiver, precluding Plaintiffs from filing or participating "in a class action against Samsung."  Under well-settled law, Plaintiffs' consent to the Terms and Conditions is binding and requires them to submit their claim to individual arbitration.

Plaintiffs lack any basis for avoiding these contractual obligations.  There is no basis to argue that the arbitration agreement or class action waiver are unenforceable, particularly considering the strong pro-arbitration protections of the Federal Arbitration Act.  Any delay in enforcing their agreement to arbitrate was of Plaintiffs' own making.  Despite filing this action more than three years ago, Plaintiffs only disclosed *less than a month ago* information that allowed Samsung to determine they agreed to arbitration.  In any event, waiver would require a

finding of both prejudice to Plaintiffs and extensive discovery having been taken—neither of which is present here.

The Court should therefore enforce the parties' agreement by compelling arbitration and striking Plaintiffs' class claims.

## I.    STATEMENT OF FACTS

Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of Samsung Electronics Co., Ltd. responsible for marketing and selling Samsung SmartTVs and other products in the United States. *See* Second Amended Class Action Complaint, ECF No. 88 ("Compl." or "Complaint"), ¶ 21; First Amended Class Action Complaint, ECF No. 45, ¶ 23.

Plaintiffs are two individuals who claim to have purchased Samsung SmartTVs in the United States. Plaintiff Cauley alleges that she purchased a Samsung SmartTV Model No. UN55KS8000FXZA in New Jersey in January 2017. Compl. ¶ 15. Plaintiff White alleges that he purchased two Samsung SmartTVs, Model Nos. UN55KU6300F and UN32J5500AF, in Florida during the putative class period. *Id.* ¶ 16. Plaintiffs claim that SEA violated the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, by allegedly intercepting their electronic communications using "automated content software" ("ACS" or "ACR") on their SmartTVs. *See id.* ¶¶ 166-67.

### A.   Plaintiffs' Agreement To Arbitrate Any Dispute Concerning Samsung's "SmartHub" Software And Not To Assert Any Class Claims

Each of Plaintiffs' SmartTVs came equipped with Samsung's "SmartHub" software, which, if enabled by the user, allows the use of certain internet-based applications, such as Netflix, Hulu, and YouTube, and other "smart" features on the SmartTV.  *See* Declaration of Randy Chung ("Chung Decl."), ¶ 4.  When Plaintiffs first turned on their SmartTVs, they were required to complete an initial set-up process, which included instructions for setting up SmartHub if they wished. *Id.*  Specifically, Plaintiffs were presented with a screen titled "Smart Hub Terms & Conditions, Privacy Policy," as shown below:

*Id.*  The screen notified Plaintiffs that their "use of the SmartTV [was] governed by the Terms & Conditions and Privacy Policy" and that they would "need to agree and acknowledge [their] understanding to proceed with set-up" of SmartHub.  *Id.*

By clicking on the button labelled "View details" next to "Terms and Conditions," Plaintiffs could open the text of the Samsung Terms and Conditions in a new page on their SmartTV, and review them in full.  *Id.* ¶ 5.  At all times relevant to this action, the Terms and Conditions included a binding arbitration provision (the "Arbitration Agreement") stating that:

> By using the Services, the User unconditionally consents and agrees that: (a) ***any claim, dispute or controversy*** (whether in contract, tort, or otherwise) the User may have against any Samsung entity, the officers, directors, agents and employees of any Samsung entity (the "Samsung Entity(ies)") ***arising out of, relating to, or connected in any way with the Services or the determination of the scope or applicability of this clause, will be resolved exclusively by final and binding arbitration*** administered by the ICC and conducted before a sole arbitrator in accordance with the rules of the ICC; (b) this clause is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16; …

*Id.*, Ex. 1, § 14.8 (emphasis added).

The Terms and Conditions defined "User" as "a user of Samsung's Services," and defined "Services" broadly to include any "productions, application, software, information offering services, services, websites and other related services" provided by Samsung or any designated third party "on or through a Samsung SmartTV."  *See id.*, Ex. 1, § 1.1(b)-(c).

4

The Terms and Conditions also prohibit users from participating in a class action against Samsung, and specify that the agreement to arbitrate shall be strictly for deciding individual claims without consolidation or joinder of similar claims:

> [T]here shall be no authority for any claims to be arbitrated on a class or representative basis, arbitration can decide only the User's and/or the applicable Samsung Entity's individual claims; the arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated; and the User will not file or participate in a class action against Samsung.

*Id.*, Ex. 1, § 14.8(f).

In setting up their Samsung SmartTVs, Plaintiffs had three options with respect to these Terms and Conditions.  Plaintiffs could click the "Skip" button at the top of the "Smart Hub Terms & Conditions, Privacy Policy" page, thereby opting out of the Terms and Conditions.  *See id.* ¶ 7.  If Plaintiffs opted out of the Terms and Conditions, their SmartTV would still be operational, but SmartHub and all "smart" features—including all internet-based applications and interest-based advertisement services using ACR (if even available on the model)—would not be activated on the SmartTV.  *Id.*

Alternatively, Plaintiffs could "click the OK" (and the boxes for other available "additional services" they desired, if any), thereby agreeing to the Terms and Conditions and enabling SmartHub.  *Id.* ¶ 6.  They also had the option of clicking "I Agree to all" if they wanted to agree to the Terms and Conditions and all available "additional services."  *Id.*

5

Plaintiffs Cauley and White each affirmatively agreed to the Terms and Conditions, including the Arbitration Agreement. *Id.* ¶¶ 11, 13, 15. Samsung's records indicate that Plaintiff Cauley agreed to the Terms and Conditions on her SmartTV on January 30, 2017, and Plaintiff White agreed to the Terms and Conditions on his model UN55KU6300F SmartTV on December 26, 2016. *Id.* ¶ 11. Although Plaintiff White has not provided sufficient information yet for Samsung to determine when exactly he agreed to the Terms and Conditions on his model UN32J5500AF SmartTV, Plaintiff White's consent is admitted in Plaintiffs' own allegations. Specifically, the Complaint alleges that both Plaintiffs connected their SmartTVs "to the Internet via a Wi-Fi connection shortly after purchasing [them], and used 'apps' like the Netflix, Hulu, and YouTube on the television to stream video content." *Id.* ¶ 13; Compl. ¶¶ 15-16. As explained above, if Plaintiffs had not agreed to the Terms and Conditions, no internet-based applications on their SmartTVs would have been activated. *See* Chung Decl. ¶ 7.

**B.   Plaintiffs' Complaint Asserts Claims Concerning Samsung's SmartTV Software.**

The original complaint was filed on March 16, 2017—by Plaintiff White and two other now-dismissed Plaintiffs—against SEA, Sony Electronics Inc., LG Electronics USA, Inc., and their respective foreign parent companies, asserting eight separate claims for relief ranging from violations of the Video Privacy Protection Act to breach of warranty. *See* ECF No. 1. The complaint did not

6

identify the model numbers or serial numbers for Plaintiffs' SmartTVs—

information necessary for SEA to determine whether Plaintiffs had agreed to

arbitrate any claims. *See id.* Defendants moved to dismiss the complaint, but

Plaintiffs never responded to the motion, never served the complaint on Samsung's

parent company or the other foreign parent companies, and on September 26, 2017,

the case was administratively terminated at Plaintiffs' request. *See* ECF No. 38.

The case was restored to the active list approximately three months later, and

Plaintiff White and then-Plaintiff Mills filed the First Amended Complaint

("FAC"). *See* ECF Nos. 42, 45. The FAC still did not disclose the model or serial

numbers of Plaintiffs' SmartTVs. *See* ECF No. 45. Defendants filed a motion to

dismiss the FAC on February 23, 2018, ECF No. 54, and the motion was fully

briefed a month later, ECF No. 63.[1] After briefing was already completed, the

Court ordered Plaintiffs White and Mills to provide the model and serial numbers

of their SmartTVs in an initial disclosure. ECF No. 66.

On April 11, 2018, Plaintiff White finally purported to provide his SmartTV

model and serial numbers, but actually provided an incomplete serial number for

his model UN32J5500AF SmartTV. *See* Declaration of Simon J. Frankel

("Frankel Decl."), ¶ 2. However, with the motion to dismiss now fully briefed and

---

[1] Plaintiffs never pursued any of the foreign parent entities and they are not named
in the current pleading. LG Electronics, USA was dropped from the complaint in
May 2018. ECF No. 74.

submitted to the Court, and with Plaintiffs' model and serial number information still inaccurate and incomplete, no further action was taken until the Court ruled on the motion. On September 26, 2018, the Court granted Samsung and Sony's motion to dismiss in its entirety. *See* ECF No. 82. As a result of the dismissal of the FAC, there was no need to continue to expend time and resources tracking down Plaintiffs' serial number information.

Plaintiffs filed a Second Amended Complaint ("SAC") on November 16, 2018, dropping Plaintiff Mills and two claims for relief and adding Plaintiff Cauley, but otherwise asserting the same basic allegations as in the FAC. *See* ECF No. 88. Like the initial disclosures, the SAC provided an incomplete serial number for one of Plaintiff White's SmartTVs. *See* Compl. ¶ 16. And while the SAC included the alleged *model* number of Plaintiff Cauley's SmartTV, it failed to disclose the *serial* number necessary to identify her consent records, notwithstanding the Court's prior order. *See id.* ¶ 15; ECF No. 66.

Defendants moved to dismiss the SAC on December 17, 2018, based on essentially the same arguments Defendants had prevailed on as to the FAC. *See* ECF No. 94. On August 21, 2019, the Court granted in part Defendants' motion to dismiss, and dismissed all of Plaintiffs' claims except for their Wiretap Act claim. *See* ECF No. 104. The Court denied SEA's motion to reconsider that ruling on March 24, 2020. *See* ECF No. 131.

On April 14, 2020, SEA requested the serial number for Plaintiff Cauley's SmartTV and the complete serial number for Plaintiff White's model UN32J5500AF Smart TV.  On April 27, 2020, Plaintiffs provided, for the first time, complete serial number information for all of Plaintiffs' SmartTVs.  This information enabled Samsung to determine specifically, based on its records, when both Plaintiffs Cauley and White had activated their SmartTVs and agreed to Samsung's Terms and Conditions, including the Arbitration Agreement.[2]  *See* Chung Decl. ¶¶ 11, 13.

Promptly after determining that Plaintiffs had consented to the Terms and Conditions, including the Arbitration Agreement, on each of their SmartTVs, SEA's counsel informed Plaintiffs' counsel of SEA's intent to seek to compel arbitration and emailed a letter formally demanding arbitration a few days later. *See* Frankel Decl. ¶¶ 4-5 & Ex. 4.  Plaintiffs did not respond to this demand.  *Id.* ¶ 7.

As of the date of this motion, there has been no discovery in this action (save for the court-ordered but incomplete initial disclosures by Plaintiff White in April

---

[2] Samsung determined that in order to confirm the precise consent history of Plaintiff White's UN32J5500AF SmartTV, it also needed a "Unique Device ID" (UDID), which is found through a quick search using the TV's interface.  Chung Decl. ¶ 13.  On May 11, 2020, Samsung requested that Plaintiffs provide this UDID, and included step-by-step instructions for identifying the UDID using the SmartTV.  Frankel Decl. ¶ 6 & Ex. 5.  Plaintiff White has not responded to this request.  *Id.* ¶ 7.

2018).  Discovery has been stayed since April 2018 by stipulated orders entered by the Court, *see* ECF Nos. 72, 128, and the parties have not served any discovery requests, produced any documents, or taken any depositions, Frankel Decl. ¶ 8.

## II.   BECAUSE PLAINTIFFS ENTERED INTO VALID AGREEMENTS TO ARBITRATE THE SPECIFIC DISPUTE IN THIS ACTION, THIS MATTER MUST BE REFERRED TO BINDING ARBITRATION.

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy favoring arbitration," and courts must "enforce [arbitration agreements] according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted).

To compel arbitration, the Court must determine that (1) "a valid agreement to arbitrate exists," and (2) "the particular dispute falls within the scope of that agreement."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  But "[i]f the parties have contractually agreed to submit to the arbitrator the issue of whether a dispute falls within the scope of the Agreement," then the Court should stop at the first step, and compel arbitration in order for the arbitrator to determine the scope of the arbitration agreement.  *Beture v. Samsung Elecs. Am., Inc.*, No. 17-cv-5757, 2018 WL 4621586, at *3 (D.N.J. July 18, 2018) (delegating question of arbitrability to arbitrator based on Samsung arbitration agreement); *see*

10

*Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 304 n.17 (3d Cir. 2016) ("The scope of an arbitration clause is decided by the court absent clear and unmistakable evidence that the parties agreed to submit this issue to the arbitrator.").

When these two questions are decided in favor of arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985). Once the Court directs the parties to proceed to arbitration, it must either dismiss the action or grant a stay pending arbitration. *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004); *Cavallo v. Uber Techs., Inc.*, No. 16-cv-4264, 2017 WL 2362851, at *10 (D.N.J. May 31, 2017). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see Falk v. Aetna Life Ins. Co.*, No. 19-cv-00434, 2019 WL 4143882, at *2 (D.N.J. Aug. 31, 2019) (recognizing the "emphatic federal policy in favor of arbitral dispute resolution" and compelling arbitration based on electronic agreement).

A. **Plaintiffs Expressly Consented To Arbitrate Disputes Concerning The Samsung SmartTV's SmartHub Software.**

The question of whether Plaintiffs agreed to arbitrate is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, a conflict-of-law analysis might consider the laws of three states: New Jersey (the location of Defendant SEA, Plaintiff Cauley, and this action), Florida (the location of Plaintiff White), and New York (the law selected in the choice-of-law provision in the Terms and Conditions, *see* Chung Decl., Ex. 1, § 14.8).

However, a choice-of-law analysis is unnecessary because, as shown below, there is no conflict among the applicable states' laws strongly favoring enforcement of "clickwrap" agreements like the one at issue here. *See, e.g.*, *High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991) ("Where the application of either state's law would yield the same result, no conflict exists to be resolved." (citation omitted)). Thus, under "ordinary state-law principles that govern the formation of contracts," *First Options*, 514 U.S. at 944, a valid agreement to arbitrate exists, and Plaintiffs are bound by the Arbitration Agreement.

Plaintiffs affirmatively agreed to the Arbitration Agreement and this Court should enforce it. Specifically, during the set-up of their Samsung SmartTVs, Plaintiffs expressly acknowledged that they understood and agreed to the "Terms & Conditions" for use of Samsung's SmartHub software and services. Chung

12

Decl. ¶¶ 6, 11, 13, 15.  The Terms and Conditions clearly specified that "[b]y using our Services, you are agreeing to the terms of this Agreement" and "unconditionally consent[ing] and agree[ing]" to "final and binding arbitration" of any claim or dispute concerning use of the software.  *Id.*, Ex. 1, § 14.8.

The Terms and Conditions here, including the Arbitration Agreement, are a classic example of an enforceable "clickwrap" agreement.  A "clickwrap" agreement "requires a [] user to affirmatively manifest their asset to the terms of the contract," usually by clicking a box or toggling a button.  *Manopla v. Raymours Furniture Co.*, No. 17-cv-7649, 2018 WL 3201800, at *4 (D.N.J. June 29, 2018).  "Numerous courts, including courts in the Third Circuit, have enforced clickwrap agreements."  *ADP, LLC v. Lynch*, No. 16-cv-01053, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016).

For example, courts have recognized for more than a decade that "[u]nder [] New Jersey … law, when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement."  *Davis v. Dell*, No. 07-cv-630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007).[3]  Clickwrap agreements also are enforced under New York and Florida law.  *See, e.g., Beture*, 2018 WL

---

[3] *See also, e.g., Falk*, 2019 WL 4143882, at *4 (enforcing clickwrap arbitration agreement under New Jersey law); *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 666 (D.N.J. 2017), *vacated on other grounds*, 939 F.3d 210 (3d Cir. 2019) (same).

4621586, at *6 (finding Samsung clickwrap agreement enforceable under New

York law where Samsung provided "reasonable notice of the terms … by

displaying the EULA during initialization of the [phone] and restricting activation

of the phone until the Agreement was affirmatively assented to"); *Whitt v. Prosper*

*Funding LLC,* No. 15-cv-136, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015)

(noting that "[i]n New York, clickwrap agreements are valid and enforceable

contracts" and compelling arbitration where user accepted arbitration agreement by

clicking a box next to hyperlinked agreement (citation and internal quotation marks

omitted)); *Koons v. Jetsmarter, Inc.*, No. 18-cv-16723, 2019 WL 3082687, at *4

(D.N.J. July 15, 2019) (noting that "Florida routinely enforces click wrap

agreements" and enforcing clickwrap agreement); *Salco Distributors, LLC v.*

*iCode, Inc.*, No. 05-cv-642, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22. 2006)

(noting that "[i]n Florida and the federal circuits ... clickwrap agreements are valid

and enforceable contracts" and enforcing agreement that user accepted by clicking

a box marked "I accept").

Moreover, the terms and conditions of such agreements may be incorporated

through a hyperlink.  *See, e.g.*, *Singh*, 235 F. Supp. 3d at 665 (applying New Jersey

law) ("In the internet era, when agreements are often maintained, delivered and

signed in electronic form, a separate document may be incorporated through a

hyperlink[.]" (internal quotations and citation omitted)); *Starke v. Gilt Groupe,*

14

*Inc.*, No. 13-cv-5497, 2014 WL 1652225, at *2-4 (S.D.N.Y. Apr. 24, 2014)

(applying New York law and enforcing clickwrap agreement where arbitration

provision was available through a hyperlink); *Zamber v. Am. Airlines, Inc.*, No. 16-

cv-23901, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) ("Federal courts have

consistently enforced clauses contained in clickwrap agreements like the one at

issue here, where the agreement is presented via a hyperlink to a page separate

from the one containing the box or button manifesting assent." (citation and

internal quotation marks omitted)).  Where a user accepts the terms and conditions

with an opportunity to review them, whether she actually read the terms and

conditions is immaterial.  "Failure to read a contract before agreeing to its terms

does not relieve a party of its obligations under the contract." *Fteja v. Facebook,*

*Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (citation and internal quotation

marks omitted).

    Indeed, as recently as last week, a federal court enforced an arbitration

provision involving a consent flow almost identical to the one at issue here.  In

*Miracle-Pond v. Shutterfly, Inc.*, the district court found that a user agreed to an

arbitration provision by clicking an "Accept" button on a page that linked to

Shutterfly's Terms of Use, which included the arbitration provision.  No. 19-cv-

04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020).  Similarly here, Samsung

provided "a clear and conspicuous statement that … a user agreed to the Terms

15

[and Conditions] and Privacy Policy by clicking a link or pressing a button." *Id.* at

*4.  Plaintiffs clicked the button, demonstrating their assent to the Arbitration

Agreement.  Thus, a valid agreement to arbitrate exists under "ordinary state-law

principles" governing the formation of contracts—whether under New Jersey, New

York, or Florida law.  *See First Options*, 514 U.S. at 944.[4]

> **B.      The Arbitration Agreement Assigns Questions Of Scope To The
> Arbitrator And, In Any Event, The Agreement Here Covers
> Plaintiffs' Claim.**

After the Court determines the existence of an arbitration agreement, the

next step is to decide whether "the particular dispute falls within the scope of that

agreement," *Trippe Mfg. Co.*, 401 F.3d at 532, unless the agreement itself

"clear[ly] and unmistakabl[y]" assigns the question of arbitrability to the arbitrator,

*Chassen*, 836 F.3d at 304 n.17.  When the contract assigns that question to the

arbitrator, it is presumed the dispute falls within the scope of the arbitration

agreement.  *See Beture*, 2018 WL 4621586, at *3 ("If the parties have

---

[4] In consenting to the Terms and Conditions, Plaintiffs explicitly agreed that SEA would be entitled to enforce the Arbitration Agreement against them as a third-party beneficiary.  Specifically, Plaintiffs "acknowledge[d] and agree[d] that each Samsung Affiliate shall be a third party beneficiary to this Agreement and shall be entitled to directly enforce, and rely upon, any provision of this Agreement which confers a benefit on (or rights in favor of) them."  Chung Decl. Ex. 1, § 14.5.  SEA is a wholly owned subsidiary of Samsung, *see* ECF No. 45, ¶ 23, and therefore is a Samsung Affiliate under the Agreement, *see* Chung Decl. Ex. 1, § 14.5 (defining "Affiliate of Samsung" to include "any company … controlled by Samsung").  *See DuPont E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) ("In a series of cases, courts have allowed non-signatory third party beneficiaries to compel arbitration against signatories of arbitration agreements.").

contractually agreed to submit to the arbitrator the issue of whether a dispute falls within the scope of the Agreement, then this Court will compel arbitration in order for the arbitrator to make such a determination.").

The Arbitration Agreement here does exactly that, stating that "the determination of the *scope or applicability* of this clause, will be resolved exclusively by final and binding arbitration ...." Chung Decl. Ex. 1, § 14.8(a) (emphasis added).  Indeed, courts in this district have found an intent to delegate based on less.  *See, e.g.*, *Beture*, 2018 WL 4621586, at *10 (finding that "the parties clearly and unmistakably delegated arbitrability to the arbitrator" by incorporating American Arbitration Act rules); *Scaba v. Jetsmarter, Inc.*, No. 18-cv-17262, 2019 WL 3947510, at *6 (D.N.J. Aug. 21, 2019) (reserving the question of arbitrability to arbitrator where parties delegated "[a]ny claim or dispute … whether related to this Agreement, any of the Terms and Conditions or the relationships or rights or obligations contemplated herein, including the validity of this clause").  The "gateway" question of arbitrability is therefore within the purview of the arbitrator.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).

In any event, this dispute falls squarely within the scope of the Arbitration Agreement.  The Arbitration Agreement applies to "***any*** claim, dispute or controversy … against ***any*** Samsung entity … arising out of, relating to, or

17

connected in any way with the Services."  Chung Decl. Ex. 1, § 14.8(a) (emphasis added).  "Services," in turn, are defined broadly as "Samsung's productions, application, software, information offering services, services, websites and other related services provided by us or any third party designated by us on or through the Samsung Smart TV, excluding any services provided under a separate written agreement."  *Id.* § 1.1(b).

In assessing the scope of an agreement to arbitrate, courts apply a "presumption of arbitrability," meaning the court must order arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted).  Only "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (internal quotation marks omitted).  Here, there is no evidence, let alone forceful evidence, that the parties intended to exclude Plaintiffs' claim from arbitration.  To the contrary, Plaintiffs' claim that Samsung's software allegedly intercepted Plaintiffs' communications on their SmartTVs, *see* Compl. ¶¶ 166-167, plainly "arise[s] out of, relat[es] to, or [is] connected in any way with" Samsung's software or services.  Chung Decl., Ex. 1, § 14.8(a).  It therefore falls directly within the scope of the Arbitration Agreement.  *See, e.g.*, *Raynor v. Verizon Wireless (VAW), LLC*, No. 15-cv-5914, 2016 WL 1626020, at *5 (D.N.J. Apr. 25,

2016) ("[C]ourts have generally read the terms 'arising out of' or 'relating to' a contract … as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in *any* way to the contract."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 132 (S.D.N.Y. 1993) ("[W]here the agreement contains a 'broad' arbitration clause, such as the one at issue here, purporting to submit to arbitration 'any controversy between us arising out of your business or this agreement,' the strong presumption in favor of arbitrability has been held to apply with even greater force.").

Accordingly, this Court should compel arbitration of Plaintiffs' claim, and dismiss this action. *See Cavallo*, 2017 WL 2362851, at *10. Further, the Court should "enforce [the Arbitration Agreement] according to [its] terms," *Concepcion*, 563 U.S. at 339, and refer this matter to *individual* arbitration, as the parties agreed. *See* Chung Decl., Ex. 1, § 14.8(f). The Supreme Court has repeatedly held that because of the "crucial differences" between individual and class arbitration, courts may not infer consent to participate in class arbitration absent an affirmative "contractual basis for concluding that the party agreed to do so." *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1416 (2019) (citations omitted). Here, of course, the agreement *explicitly prohibits* class arbitration. *See* Chung Decl., Ex. 1, § 14.8(f).

19

## III.   PLAINTIFFS CANNOT ESTABLISH ANY DEFENSE TO ENFORCEMENT OF THE ARBITRATION AGREEMENT.

Under the FAA, arbitration agreements are valid and enforceable except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  A plaintiff may therefore seek to invalidate an arbitration agreement only by invoking "generally applicable contract defenses."  *Rent-A-Ctr., W.*, 561 U.S. at 68.  No such defense applies to the Arbitration Agreement.

### A.   The Arbitration Agreement Is Not Unconscionable.

A contract is unconscionable *only* when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation and alteration omitted) (applying New York law); *see also Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (unconscionability exists under Florida law only when "no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice"); *Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*, No. 03-cv-0772, 2004 WL 1950370, at *7 (D.N.J. Feb. 9, 2004) (under New Jersey law, "[u]nconscionability hinges on a finding of an imbalance of power and unreasonable contractual terms").  To establish unconscionability, a party must generally show the provision is both procedurally and substantively unconscionable.  *Ragone*, 595 F.3d at 121.  "The procedural element … concerns

20

the contract formation process and the alleged lack of meaningful choice; the

substantive element looks to the content of the contract ….”  *Id.* at 121-22.  The

Arbitration Agreement here is not unconscionable under either standard.

Procedurally, the Arbitration Agreement is not unconscionable because it

does not bear the hallmarks of a contract of adhesion.  “The procedural element of

unconscionability requires an examination of the contract formation process and

the alleged lack of meaningful choice,” *Gillman v. Chase Manhattan Bank*, 73

N.Y.2d 1, 10-11 (1988), and typically requires the use of “high pressure tactics or

deceptive language in the contract” *and* “inequality of bargaining power between

the parties,” *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139 (1989).

Here there is no evidence of high pressure sales tactics or deceptive

language—a fact sufficient on its own to reject a finding of procedural

unconscionability.  *See Nayal v. HIP Network Servs. IPA, Inc*., 620 F. Supp. 2d

566, 572 (S.D.N.Y. 2009) (enforcing arbitration agreement because plaintiff did

not allege high pressure sales tactics or coercion and class action waivers are not

unconscionable).  Moreover, it well-established that clickwrap agreements like the

one here are “presumptively enforceable” and not procedurally unconscionable

because they “permit courts to infer that the user was at least on inquiry notice of

the terms of the agreement, and has outwardly manifested consent by clicking a

box.”  *Corwin v. NYC Bike Share, LLC*, 238 F. Supp. 3d 475, 489 (S.D.N.Y.

2017), *vacated in part on other grounds*, 2017 WL 4075213 (S.D.N.Y. Mar. 13, 2017) (holding that clickwrap agreement was not unconscionable); *see also Falk*, 2019 WL 4143882, at *5-7 (holding that clickwrap agreement was not unconscionable because plaintiff had adequate opportunity to decline arbitration).

Further, Plaintiffs *did* have a meaningful choice—they could just as easily have rejected the Terms and Conditions and continued to use their SmartTVs. Doing so would disable certain SmartTVs features (ironically, the same features Plaintiffs agreed to but now allege violate the law), but Plaintiffs could have replicated many or all of these features by simply buying a different brand of SmartTV or connecting a computer or other internet-connected device to their Samsung SmartTV.  *See, e.g.*, *Bar-Ayal v. Time Warner Cable Inc.*, No. 03-cv-9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (arbitration provision was not unconscionable because plaintiff "has not provided any evidence that he could not obtain high-speed Internet service from another provider").

Substantively, the Arbitration Agreement is not unconscionable because its terms are fair, reasonable, and even consumer-friendly.  For example, the Arbitration Agreement provides for arbitration using ICC rules, *see* Chung Decl., Ex. 1, § 14.8(a), which courts accept as reasonable and not unconscionable, *see, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-cv-5458, 2011 WL 5325589, at *7 (N.D. Cal. Sept. 19, 2011) ("Numerous courts have found

22

arbitration to be appropriate under the ICC rules.  The Court rejects [plaintiff's] assertion that those rules are unconscionable as a matter of law." (citations omitted)).  Samsung even agreed to pay the fees and deposits of the arbitration for Plaintiffs to the extent they can show an inability to pay more than $125 or demonstrate that the fees and deposits would be prohibitive compared to litigation. *See* Chung Decl., Ex. 1, § 14.8(h).  And under binding Supreme Court precedent, there is no basis for finding the Agreement unconscionable because of the class action waiver.  *See Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

Because Plaintiffs cannot establish that the Arbitration Agreement is either procedurally or substantively unconscionable, it must be enforced according to its terms.

## B.     SEA Did Not Waive Its Arbitration Right.

Any argument that SEA waived its right to demand arbitration by not filing this motion sooner is without merit.  Consistent with the strong preference in favor of arbitration, waiver "is not to be lightly inferred," *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995), and "a party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, *and* when

23

prejudice to the party resisting arbitration can be shown." *Great W. Mortg. Corp.*

*v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) (emphasis added). Notably, waiver

"will normally be found only where the demand for arbitration came long after the

suit commenced *and* when both parties had engaged in extensive discovery."

*PaineWebber*, 61 F.3d at 1068-69 (emphasis added).

Courts in this Circuit consider six nonexclusive factors in determining

waiver:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to
> which the party seeking arbitration has contested the merits of the
> opposing party's claims; (3) whether the party seeking arbitration
> informed its adversary of its intent to pursue arbitration prior to seeking
> to enjoin the court proceedings; (4) the extent to which a party seeking
> arbitration engaged in non-merits motion practice; (5) the party's
> acquiescence to the court's pretrial orders; and (6) the extent to which
> the parties have engaged in discovery.

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992).

"[P]rejudice is the touchstone for determining whether the right to arbitrate has

been waived." *Id.* at 925. Here, the prerequisites of waiver—extensive discovery

and prejudice—are lacking, and the *Hoxworth* factors do not support a finding of

waiver.

### 1.     This Motion To Compel Arbitration Is Timely.

The first *Hoxworth* factor looks to the length of time between the initiation

of the action and the filing of the motion to compel arbitration. Though Plaintiff

White first initiated this action in March 2017,[5] the "length of the time between when a party initiates or first participates in litigation and when it seeks to enforce an arbitration clause is not dispositive in a waiver inquiry," and the Court must examine the party's "explanation for its delay." *James v. Glob. Tel*Link Corp.*, No. 13-cv-4989, 2016 WL 589676, at *9 (D.N.J. Feb. 11, 2016), *aff'd*, 852 F.3d 262 (3d Cir. 2017) (citation and internal quotation marks omitted).

Here, any "delay" in moving to compel arbitration was the result of Plaintiffs' pleading deficiencies in failing to identify the model or serial number for the Samsung SmartTVs that were claimed to be the subject of this action— deficiencies the Court noted in September 2018 when dismissing the First Amended Complaint in its entirety and ordered Plaintiffs' counsel to correct. *See* ECF Nos. 66, 82, at 2 n.1. With the Plaintiffs' FAC entirely dismissed on Defendants' Rule 12 motion, and without accurate model and serial number information necessary for SEA to investigate individual consent issues, there was no reason for SEA to further investigate the issue or file a motion to compel arbitration. And despite the Order of the Magistrate Judge in March 2018 requiring Plaintiffs to disclose complete model and serial number information for their SmartTVs, *see* ECF No. 66, at 1, Plaintiffs did not disclose this information

---

[5] Ms. Cauley was added as a Plaintiff more than a year-and-a-half later, on November 16, 2018.

25

completely until April 27, 2020, after which SEA promptly notified Plaintiffs of its intent to seek arbitration and filed this motion.[6]

Because Plaintiffs' pleading deficiencies and inexcusable delay prevented Samsung from confirming they had agreed to mandatory individual arbitration, this factor militates against a finding of waiver. *See, e.g.*, *PaineWebber*, 61 F.3d at 1069 (no waiver where defendant waited five and a half years from notice of action to seek to compel arbitration because plaintiff was equally responsible for delay); *George S. Hofmeister Family Tr. v. FGH Indus., LLC*, No. 06-cv-13984, 2007 WL 2984188, at *7 (E.D. Mich. Oct. 12, 2007) (no waiver where plaintiffs were responsible for at least "an equal part of the delay and expense"); *Thomas v. A.R. Baron & Co.*, 967 F. Supp. 785, 789 (S.D.N.Y. 1997) (no waiver where "any delay in litigating the case is the responsibility of both parties"). And in fact, Plaintiffs agreed in the Terms and Conditions here that "if Samsung does not exercise or enforce any legal right or remedy" under the agreement, it "will not be construed as a waiver of Samsung's rights or remedies."  Chung Decl. Ex. 1, § 14.3.  So this motion is timely under the parties' agreement.

---

[6] As noted above, Plaintiffs still have not provided the UDID for Plaintiff White's UN32J5500AF SmartTV to enable Samsung to locate his specific consent record for that model.  *See* note 2, *supra*.

### 2.     Contesting The Merits On A Motion To Dismiss Is Not A Waiver.

The second *Hoxworth* factor examines the extent to which SEA has

contested Plaintiffs' claims on the merits.  Courts in this Circuit routinely reject

waiver arguments on motions to compel arbitration filed after a motion to

dismiss—even multiple motions to dismiss.[7]  Moreover, Defendants' first motion

to dismiss was never opposed by Plaintiffs, and both the first and second were filed

before SEA had received *any* model or serial number information for Plaintiffs'

SmartTVs.  SEA received incomplete model and serial numbers for Plaintiff

White's (and none for Plaintiff Cauley's) SmartTVs in April 2018, but by that

point SEA's second motion to dismiss had been fully briefed, and a few months

later, the Court granted the motion in full.

Plaintiffs amended again to file a third complaint, but did not substantially

alter their allegations, and failed to provide a complete serial number for Plaintiff

White or disclose the newly-added Plaintiff Cauley's serial number at all.  So,

---

[7] *See, e.g.*, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (no waiver when defendant had filed motion to dismiss and court ruled on it); *Khorchid v. 7-Eleven, Inc.*, No. 18-cv-8525, 2019 WL 3812472, at *9 (D.N.J. Aug. 14, 2019) (same); *Serine v. Marshall, Dennehey, Warner, Coleman & Goggin*, No. 14-cv-4868, 2015 WL 4644129, at *5 (E.D. Pa. Aug. 5, 2015) (same); *Just B Method, LLC v. BSCPR, LP*, No. 14-cv-1516, 2014 WL 5285634, at *10 (E.D. Pa. Oct. 14, 2014) (no waiver when defendant filed two motions to dismiss, which the court decided, and answered complaint); *Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.*, 367 F. Supp. 2d 711, 722 (E.D. Pa. 2005) (no waiver when defendant filed two motions to dismiss, engaged in discovery, and filed two pretrial motions).

27

having successfully dismissed the case in full based on largely the same allegations and still lacking the serial number information necessary to confirm a right to arbitrate, it was reasonable for SEA to renew its motion to dismiss.

More fundamentally, SEA's motions to dismiss and for reconsideration did not prejudice Plaintiffs. The Court ultimately granted SEA's request to dismiss all but one of Plaintiffs' six claims. As a result, arbitration would not provide SEA with a "second bite at the apple"—nearly all of Plaintiffs claims have already been dismissed. Nor has SEA forced Plaintiffs to invest wasteful time and expense in responding to its motions to dismiss—the motion practice has significantly narrowed the issues in dispute for arbitration. *See Wood*, 207 F.3d at 680 ("[W]e do not understand how [plaintiff] could be prejudiced by the Court's having decided [defendant's motion to dismiss]. For this decision to be prejudicial, we would have to presume that an arbitrator would have decided the merits of the claim differently—a presumption we cannot make."). This factor also does not support any finding of waiver.

### 3.   Samsung Promptly Notified Plaintiffs Of Its Intent To Seek Arbitration.

This factor asks whether SEA "informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings." *Hoxworth*, 980 F.2d at 926-27. SEA informed Plaintiffs of its intent to seek arbitration on May 5, 2020, just over a week after Plaintiffs provided

complete serial number information for their SmartTVs.  *See* Frankel Decl. ¶¶ 3-4.

This factor thus weighs heavily against a finding of waiver.

### 4.   Non-Merits Motion Practice.

The next *Hoxworth* factor looks at the extent of non-merits motion practice

before arbitration is sought.  Here, except for unopposed *pro hac vice* applications

and unopposed applications concerning briefing and a stay (ECF No. 67), there

were no non-merits motions filed in this matter. Plaintiffs could not have suffered

any prejudice.  This factor also weighs strongly against waiver.

### 5.   Samsung Acquiesced To Pretrial Orders Only Concerning Motions To Dismiss And Pleadings.

This factor examines the extent to which the movant acquiesced in the

Court's pretrial orders.  SEA has consented only to pretrial orders relating to its

motions to dismiss and the pleadings, *see, e.g.*, ECF No. 6, 87, and orders to stay

the action and discovery (*see* ECF Nos. 38, 72, 107).  SEA has consistently

opposed commencing discovery in this action and joined in a motion to stay

discovery after the Court set a case management plan that SEA had not acquiesced

to.  *See* ECF Nos. 66, 67.  If anything, SEA's acquiescence to pretrial orders has

narrowed the scope of these proceedings by, for example, staying discovery and

thereby avoiding any prejudice to Plaintiffs.  This factor also weights against a

finding of waiver.

### 6.   No Discovery Has Been Conducted.

The final factor examines the extent to which discovery was conducted prior

to the motion to compel.  No discovery has been conducted in this case apart from

Plaintiff White's disclosure, at the Magistrate Judge's directive, of information that

was necessary, but incomplete and insufficient, to help SEA determine whether he

consented to the Arbitration Agreement.  *See James*, 2016 WL 589676, at *10

(factor weighed against waiver where only discovery was related to the issue of

arbitration).  The Third Circuit's cases finding waiver "have uniformly featured

significant discovery activity in the district court."  *In re Pharmacy Ben. Managers*

*Antitrust Litig.*, 700 F.3d 109, 120 (3d Cir. 2012); *see, e.g.*, *Nino v. Jewelry Exch.,*

*Inc.*, 609 F.3d 191, 213 (3d Cir. 2010) (parties engaged in "significant discovery,"

including interrogatories, disclosures, requests for production and depositions of

four witnesses, as well as "significant discovery related motion practice");

*Hoxworth*, 980 F.2d at 925-26 (parties engaged in several depositions, answered

several discovery requests, and litigated discovery disputes).  Accordingly, this

factor weighs heavily against waiver.

Taking into account the particular circumstances of this case, none of the

*Hoxworth* factors supports a finding of waiver.  Plaintiffs also have not suffered

any prejudice as a result of the timing of Defendants' motion and the parties have

not engaged in any meaningful discovery—both of which are necessary to find

30

waiver. *See Great W. Mortg. Corp.*, 110 F.3d at 233; *PaineWebber*, 61 F.3d at 1068. Any assertion of waiver by Plaintiffs should be rejected.

## IV. PLAINTIFFS' CLASS CLAIMS SHOULD BE STRICKEN FROM THE COMPLAINT.

Whether or not the Court compels arbitration, it should strike Plaintiffs' class claims from the Complaint and dismiss them because Plaintiffs explicitly waived their right to proceed on a classwide basis in the Terms and Conditions. Plaintiffs agreed that they "will not file or participate in a class action against Samsung," and that each Samsung Affiliate, including SEA, is a third-party beneficiary with the right to directly enforce and rely on the Terms and Conditions. Chung Decl., Ex. 1, §§ 14.5, 14.8(f). They further agreed that "arbitration can decide only the User's and/or the applicable Samsung Entity's individual claims; the arbitrator …. may not consolidate or join the claims of other persons or parties who may be similarly situated." *Id.* It well-established that class action waivers are valid and should be enforced. *See Concepcion*, 563 U.S. at 352 (upholding class action waiver notwithstanding state law rule that such waivers are unconscionable); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 n.5 (2013) (FAA "favor[s] the absence of litigation when that is the consequence of a class-action waiver" (internal citations omitted)).

Under Federal Rule of Civil Procedure 23(d)(1)(D), the Court may "require that the pleadings be amended to eliminate allegations about representation of

31

absent persons and that the action proceed accordingly."  *See also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter.").  While courts in this Circuit typically do not grant motions to strike under Rule 23(d)(1)(D) prior to class discovery, courts make an exception when "no amount of discovery will demonstrate that the class can be maintained."  *Semenko v. Wendy's Int'l, Inc.*, No. 12-cv-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).  That is the case here, because no amount of additional discovery will alter the fact that Plaintiffs agreed to waive any right to proceed as a class.  *See Camilo v. Uber Techs., Inc.*, No. 17-cv-9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (granting motion to strike class claims based on class action waiver).

## CONCLUSION

For all these reasons, the Court should order Plaintiffs to submit their individual claims to arbitration and dismiss this action.  The Court also should strike Plaintiffs' class claims from the Complaint.

Dated:  May 22, 2020                    Respectfully submitted,


                                        By: s/ Michael R. McDonald
                                        MICHAEL R. MCDONALD
                                        mmcdonald@gibbonslaw.com
                                        KATE ELIZABETH JANUKOWICZ
                                        kjanucowicz@gibbonslaw.com
                                        GIBBONS P.C.
                                        One Gateway Center
                                        Newark, NJ 07102
                                        Telephone: (973) 596-4500

                                        ERIC C. BOSSET (*pro hac vice*)
                                        ebosset@cov.com
                                        COVINGTON & BURLING LLP
                                        One City Center
                                        850 Tenth Street, NW
                                        Washington, D.C. 20001
                                        Telephone: (202) 662-6000

                                        SIMON J. FRANKEL (*pro hac vice*)
                                        sfrankel@cov.com
                                        COVINGTON & BURLING LLP
                                        One Front Street, 35th Floor
                                        San Francisco, CA 94102
                                        Telephone: (415) 591-6000

                                        ***Attorneys for Defendant***
                                        **SAMSUNG ELECTRONICS**
                                        **AMERICA, INC.**

33