# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS ROGER WHITE, JR., and PATRICIA CAULEY on behalf of themselves and all others similarly situated, | Civil Action No. 17-1775 (MCA) (JSA) |
| Plaintiffs, | Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Jessica S. Allen, U.S.M.J. |
| v. | *Document Electronically Filed* |
| SAMSUNG ELECTRONICS AMERICA, INC.<br>Defendants. |  |

---

**PLAINTIFFS THOMAS ROGER WHITE, JR. AND PATRICIA CAULEY'S BRIEF IN OPPOSITION TO DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STRIKE CLASS CLAIMS**

---

**THE MACK FIRM**
Mack Press
9 Pimlico Drive
Commack, NY 11725
Tel: (516) 330-7213

*Attorney for Plaintiffs*

## TABLE OF CONTENTS

I.     INTRODUCTION.....................................................................1

    A.    FACTUAL BACKGROUND...............................................1

        1.    Samsung Knew the Arbitration Provision Existed...........................1

        2.    Plaintiffs Did Not Thwart Discovery of the Arbitration Clause,
Just the Opposite..............................................................2

        3.    Samsung's One-Sided and Self-Serving "Agreement" Facially
Makes No Sense...............................................................6

    B.    PROCEDURAL HISTORY...............................................7

        1.    Initial Complaint:
March 16, 2017 to Dec. 21, 2017..........................................7

        2.    First Amended Complaint:
Dec. 21, 2017 to Sept. 26, 2018............................................9

        3.    Second Amended Complaint:
Sept. 26, 2018 to Aug. 21, 2019............................................14

        4.    Motion for Reconsideration or 28 U.S.C. §1292(b) Certification:
Sept. 4, 2019 to March 24, 2020............................................18

        5.    Motion to Compel Arbitration:
May 22, 2020 to the Present..................................................20

    C.    LEGAL STANDARD....................................................21

II.    ARGUMENT.......................................................................21

    A.    SAMSUNG WAIVED ARBITRATION UNDER THE HOXWORTH
FACTORS.................................................................22

        1.    Samsung's Motion is More Than Untimely..................................23

        2.    Samsung Has Repeatedly and Vigorously Contested the Merits
of this Case Before this Court................................................26

        3.    Samsung Did Not Inform Plaintiff of an Intent to Pursue Arbitration
Prior to Seeking to Enjoin These Proceedings...............................27

4.   Samsung Consistently Availed Itself to Non-Merits Motion Practice Before This Court……………………………………………………28

5.   Samsung Repeatedly Assented to This Court's Pretrial Procedures………..29

6.   The Parties' Discovery Efforts Before This Court………………………. 31

B.   TO COMPEL ARBITRATION AFTER YEARS OF ACTIVE LITIGATION BEFORE THIS COURT WOULD CAUSE PLAINTIFFS ADDITIONAL PREJUDICE……………………………………………………………… 32

1.   Burden…………………………………………………………… 33

2.   Cost……………………………………………………………… 33

C.   SAMSUNG'S WILLFULL AND CONTINUED LITIGATION BEFORE THIS COURT GIVES RISE TO EQUITABLE ESTOPPEL…………………………36

D.   SAMSUNG'S ARBITRATION PROVISION IS UNCONSCIONABLE………36

E.   THE CLASS ARBITRATION WAIVER IS PLAINLY UNENFORCEABLE……………………………………………………37

III.   CONCLUSION…………………………………………………………… 40

# TABLE OF AUTHORITIES

## CASES

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)..……………………………………..37

*American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) ……..……………37

*Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 938 F.2d 1574 (2d Cir. 1991)...……………....26

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007)...………………………21, 24, 32

*Gray Holdco, Inc. v. Cassady*, 654 F.3d 444 (3d Cir. 2011)………………...22, 25, 27, 30, 32, 33

*Gray Holdco, Inc. v. Cassady*, 2010 U.S. Dist. LEXIS 119344 (W.D. Pa., Nov. 10, 2010)…….24

*Hopkins v. NewDay Fin., LLC*, 2008 U.S. Dist. LEXIS 52009
(E.D. Pa. June 30, 2008)………………………………………………………………………36

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992)………..................*passim*

*In re Pharm. Ben. Managers Antitrust Litig.*, 700 F.3d 109 (3d Cir. 2012)...…………23, 24, 26, 33

*JP Morgan Chase Bank, N.A. v. Republic Mortgage Ins. Co.*, 2012 U.S. Dist. LEXIS
170327 (D.N.J. Nov. 30, 2012)……………………………………………………………..24

*Kausar v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 167166 (D.N.J. Sept. 27, 2018)……..24

*Meyer v Kalanick*, 200 F.Supp.3d 408 (S.D.N.Y. 2016), *vacated on other grounds*,
88 F.3d. 66 (2d Cir. 2017)………………………………………………………………..39

*Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191 (3d Cir. 2010)……………………………*passim*

*Noble v. Samsung Electronics Am., Inc.*, 682 Fed. Appx. (3d Cir. 2017)………………………37

*Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (Pa. 1983)…………………36

*PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995)…………………………………24

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004)……………………………21, 24

*Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269 (3d Cir. 2004)…………………………36

*Purshe Kaplan Sterling Invs., Inc. v. Neff*, 2020 U.S. Dist. LEXIS 164227
(E.D. Pa. Sept. 9, 2020)……………………………………………………………………...21, 31

*Robinson v. Va. Coll., LLC*, 788 Fed. Appx. 697 (11th Cir. 2019)……………………………...38

*S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507 (11th Cir. 1990)……………26

*Segal v. Strausser Enters.*, 486 Fed. Appx. 240 (3rd Cir. 2012)…………………………...……36

*SuperMedia v. Affordable Electric, Inc*., 565 Fed. Appx. 144 (3d Cir. 2014)…………...22, 23, 24

*Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. Ct. 2006)……………………………...36

*Vine v. PLS Fin. Servs.*, 807 Fed. Appx. 320 (5th Cir. 2020)……………………………………39

*Witmer v. Exxon Corp.*, 434 A.2d 1222 (Pa. 1981)……………………………………………...36

*Wood v. Prudential Ins. Co. of America*, 207 F.3d 674 (3d Cir. 2000)…………………………24

*Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224 (3d Cir. 2008)……………………………..21

## S<small>TATUTES</small>

Cable Privacy Act, 47 U.S.C. § 55………………………………………………………………8

Children's Online Privacy Protection Act of 1998, 15 U.S.C. §§ 6501–6505……………………8

Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ………………………..*passim*

Federal Trade Communication Act, 15 U.S.C. § 45(a)...…………………………………8, 10, 15

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201..………………15

New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq*………………………..8, 10, 15

Subscriber Privacy Provision in the Cable Communications Policy Act,
47 U.S. Code § 551……………………………………………………………………………8

Video Privacy Protection Act, 18 U.S.C. § 2710 …………………………………………8, 10, 15

## I.   <u>INTRODUCTION</u>

Samsung knew about its arbitration provision from day one yet deliberately said nothing, not even a hint, to Plaintiffs or the Court.  With the arbitration card up its sleeve, Samsung instead actively sought this Court's rulings through multiple merits-based motions to dismiss.  It repeatedly appeared at conferences on matters regarding the pleadings, pretrial scheduling issues, confidentiality orders, discovery motions, and freely participated in other matters attendant to three hard-fought years of litigation and said nothing about arbitration.  Not a hint.  Now, after failing to achieve a dismissal of the Wiretap Act claim on its third motion to dismiss, Samsung pulls the arbitration card from its sleeve and claims it should not have been before this Court from day one.  Rather than arbitrate, Samsung purposefully chose to litigate here, for years, seeking a dismissal with prejudice from this Court.  Samsung's "heads I win, tails you lose" strategy should not be rewarded.  Samsung waived any right to compel arbitration and enforce the class waiver imbedded therein.  Put simply, Samsung made its bed long ago.

### A.   FACTUAL BACKGROUND

#### 1.   Samsung Knew the Arbitration Provision Existed.

Samsung knew its SmartHub TV "Terms and Conditions" existed well before 2017.  *See* ECF No. 143-2, Declaration of Randy Chung ("Chung Decl.") at ¶5 ("A true and correct copy of the text of the Terms and Conditions that was shown to a user in 2016 and 2017 . . . is attached hereto as Exhibit 1.").  Samsung drafted the arbitration clause, intentionally imbedded it within pages of "Terms and Conditions" that appeared first during the Smart TV set up procedure, and Samsung is plainly the intended beneficiary of its one-sided arbitration clause that only Samsung may enforce, not Plaintiffs.  *See* ECF No. 143-3 ("Samsung Service: Terms and Conditions" at ¶14.8).  What is more, Samsung knew Plaintiffs had to agree to the terms and conditions because

1

Samsung purposefully rendered the SmartHub features—*i.e.*, the reason to buy the product—inoperable unless Plaintiffs accepted the "terms" that were imposed well after their SmartTV purchases (*i.e.*, not until time of set-up) and for which they received no additional consideration from that received at time of purchase.[1]

Unbeknownst to Plaintiffs, through features on the Smart TVs, Samsung monitored, recorded, and tracked their private communications and information.[2]  Undisputed is that agreeing to the terms and conditions served as a prerequisite for "SmartHub" to function, and insofar as Plaintiffs allegations are grounded in Samsung abusing the "Smart" features, the inescapable conclusion is Samsung knew from day one (or was extremely reckless not knowing), that Plaintiffs had consented to the arbitration provision, otherwise the SmartHub would not have functioned.  *See, e.g.,* ECF No. 143-2, Chung Decl. at ¶¶7, 9, 11 (requiring a user to agree to the Terms and Conditions as a precondition for the "SmartHub" to function).

---

[1] *See* ECF No. 143-2, Chung Decl. at ¶11 ("Activation of the SmartHub software on this Smart TV would have required the consent flow set out above."); ¶7 ("That is, unless and until a user consents to the Terms and Conditions, it is just a TV, with whatever cable programming inputs are available but no capacity to communicate over the internet with websites, services, or otherwise."; *see also* ¶9 ("... including the date when the user initially set up the SmartHub (*and necessarily agreed to* the Terms and Conditions)". Emphasis added.

[2] ECF No. 1 (Plaintiffs' Initial Complaint filed March 16, 2017 ) at ¶1 ("Defendants' "smart" generation of televisions ("Smart TV's"), through automatic tracking software ("ATS") that is installed and/or used by Defendants, collect personally identifying information about consumers…"); ¶4 ("Plaintiffs . . . did not know about and did not consent to Defendants' placement and/or use of automatic tracking software inside the Smart TVs they purchased, and/or Defendants' tracking of Plaintiffs …"); *see also* ECF No. 45 (First Amended Complaint, filed Jan. 17, 2018) at ¶42 ("Defendants' [Automatic Content Software] ACS enables Defendants to monitor and identify Plaintiffs' . . . video viewing habits and voices.  Defendants' then . . . secretly provide[d] this private, sensitive information and voices of consumers to third-party advertisers and content providers who, in turn, display targeted advertisements to consumers, based on this sensitive personal information and voice recordings."); ECF No. 88 (Second Amended Complaint, filed Nov. 16, 2018 at ¶41 ("Defendants' ACS enables Defendants to monitor and identify Plaintiffs' . . . video viewing habits, personal information, and voice content."); ¶45 ("Defendants' ACS software also periodically collects other information about the [Plaintiffs'] television, including IP address, wired and wireless MAC addresses, WiFi signal strength, nearby WiFi access points, and other items.").

In addition to Samsung being able to determine from the face of the pleadings that an arbitration clause was at issue, Plaintiffs served Samsung with Rule 26 Initial Disclosures on April 11, 2018, giving Samsung the paper trail.  *See* accompanying Declaration of Mack Press in Opposition to Samsung's Motion to Compel, dated March 30, 2021 ("Mack Decl."), Exhibit 1. Plaintiffs' disclosures clearly identify the make, model, and serial number for two Samsung televisions owned by Plaintiff Thomas Roger White Jr. ("White") and one owned by Plaintiff Christopher Mills ("Mills"), and all three Smart TVs being subject of the Initial Complaint (ECF No. 1) and the First Amended Complaint ("FAC").  ECF No. 45.  Specifically, on April 11, 2018, Plaintiffs disclosed, *inter alia*:

> **Thomas Roger White, Jr.: Samsung, Model No. UN55KU6300F, Serial No. 05HX3CAHB11790N**; LG, Model No. 42LE5400, Serial No. 004RMBWDM973; Sony, Model No. KDL-40W650D, Serial No. 5018352; Samsung, Model No. UN32J5500AF, Serial No. 03NL3CGG90593M.

> **Christopher Mills:  Samsung, Model LN40A550P3FXZA, Serial No. ALXR3CSQ911405X.**  (Emphasis added.)

That is all the information Samsung needed to uncover the arbitration clause at issue here.[3]  Following Samsung's practices, it should have made a similar arbitration determination with respect to the serial number provided for Mills' Samsung television.  *See* Chung Decl.  As the record shows, the significance of the serial number paper trail was not lost on Samsung.

---

[3] *See* Chung Decl. ¶¶10-11 ("I understand that Plaintiff White alleges he purchased a Samsung SmartTV **Model No. UN55KU6300F, with Serial No. 05HX3CAHB11790N**, in or around 2016.  Activation of the SmartHub software on this model SmartTV would have required the consent flow set out above. According to Samsung's records, Plaintiff White activated the SmartHub on his SmartTV on December 26, 2016, by completing the process described above and agreeing to the linked Terms and Conditions.") (emphasis added); *see also* Chung Decl. Exhibit 2 (evidencing how, through simple serial numbers, Samsung was easily able to determine in April 2018—well before the Court ruled on the Samsung's motion to dismiss the FAC and before Plaintiffs even filed the Second Amended Complaint—that White agreed to Samsung's terms and conditions and the arbitration clause deeply imbedded therein).

On March 28, 2018, during a status conference before Magistrate Judge Malachy E. Mannion, Samsung specifically asked Magistrate Judge Mannion to order Plaintiffs to produce in initial disclosures the make, model, and serial number for each television. *See* ECF No. 66 at ¶2 ("Fed. R. Civ. P. 26 initial disclosures from plaintiffs shall be exchanged on or before 4/11/2018, and also provide the make, model, and serial number for each television."); *see also* Docket Minute Entry, March 28, 2018.[4]  Notwithstanding the specific request, to order Plaintiffs to produce the identifying information, Samsung failed to inform the Court that the sought-after information would quickly reveal whether Plaintiffs agreed to an arbitration provision.  Samsung chose otherwise, instead standing pat on its then fully briefed, merits-based motion to dismiss, which it won (albeit temporarily).

### 2. Plaintiffs Did Not Thwart "Discovery" of the Arbitration Clause, Just the Opposite.

Despite requesting and receiving from Plaintiffs serial numbers early on, Samsung did not inform Plaintiffs that an arbitration clause existed, or that one may even possibly exist and should be investigated, until May 5, 2020, three years after the Parties had been involved in extensive and hard-fought litigation that required expending significant judicial resources.[5] Despite having the correct serial numbers for one of White's televisions and one of Mills' televisions, Samsung remarkably claims that:

---

[4] It was that important inflexion point in the case, well before the Court ruled on the then pending motion to dismiss the FAC, and long before Plaintiffs filed the SAC, that Samsung should have been candid with Plaintiffs and this tribunal as to the purpose of Samsung's serial number quest.

[5] *See* ECF No. 143-4, Declaration of Simon J. Frankel in Support of Samsung Electronics America, Inc's Motion to Compel Individual Arbitration and Strike Plaintiffs' Class Claims (Frankel Declaration) at ¶ 4 ("On May 5, 2020, I spoke to Plaintiffs' counsel by telephone.  On the call, I informed Plaintiffs' counsel that based on the serial and model numbers he provided, SEA determined that Plaintiffs had each agreed to arbitration, and that SEA intended to file a motion to compel arbitration.  (I noted to Plaintiffs' counsel that SEA did not have sufficient information about Plaintiff White's ***second TV*** to pinpoint the date when he consented to arbitration.))"  (Emphasis added).

> Any delay in enforcing their agreement to arbitrate was of Plaintiffs' own making.  Despite filing this action more than three years ago, Plaintiffs only disclosed *less than a month ago* information that allowed Samsung to determine they agreed to arbitration.

*See* ECF 143-1 at p.1 (emphasis in original).

Samsung's blame-shifting is pure fiction.  As set forth above, Plaintiffs provided correct model and serial numbers in their April 2018 Initial Disclosures which Samsung now admits was more than sufficient to identify the arbitration clause and imbedded class waiver.

Furthermore, the Initial Disclosures provided a serial number for a second television that White owned and inadvertently omitted a single digit.  *See* ECF 143-4 (Frankel Declaration) ("As I explained in my April 14[, 2020] email, the serial number Plaintiffs had provided in their April 11, 2018 initial disclosures for Plaintiff White's UN32J5500AF SmartTV was incomplete or erroneous.").  *See* ECF No. 143-5, Frankel Declaration, Exhibit 1.  Specifically, on April 14, 2020, Samsung's counsel wrote an email to Plaintiffs' counsel which read, in part:

> As you may recall, at our appearance with the Magistrate Judge ***early in the case***, he ordered Plaintiffs to disclose to Defendants the serial numbers for the television sets at issue.

> Our review of Plaintiffs [April 11, 2018] initial disclosures shows that, with respect to Plaintiff White, one of the serial numbers provided is incomplete or erroneous. Specifically, for White's second TV (model UN32J5500AF), Plaintiffs provided a 14-digit serial number, 03NL3CGG90593M. However, we understand that the serial number for that TV model would be 15 digits, so the number provided is missing a digit (which could be a letter or a number). Can you please immediately provide the correct, complete serial number for Plaintiff White's second TV?

*Id*.  (Emphasis added.).  Remarkably, even at this late April 2020 stage, and when specifically asking for a corrected serial number, Samsung still did not disclose to Plaintiffs or to the Court the purpose for wanting those numbers "early in the case" or Samsung's renewed interest in April 2020.  *See* Exhibit 1 to the Frankel Declaration (email to Plaintiffs' counsel requesting the

second serial numbers for White with no mention of an arbitration provision, notwithstanding

they filed the instant motion just one month later).   Furthermore, Samsung itself has shown

unequivocally that when it asked for serial numbers, Plaintiffs quickly responded within days.

Compare ECF No. 143-5, Frankel Declaration Exhibits 1-3 (email showing Plaintiffs' prompt

response when Samsung asked for serial numbers (and neglected to mention arbitration)).

Lastly, Samsung has never disputed the accuracy of information provided for Mills' SmartTV.

### 3. Samsung's One-Sided and Self-Serving "Agreement" Facially Makes No Sense

Samsung's "Terms and Conditions" attached as an exhibit to its motion to compel (*i.e.*,

the core agreement containing the arbitration clause at issue here), is disorganized and makes no

sense on its face.  *See* ECF No. 143-3, Chung Decl., Exhibit 1.[6]  To put it in colloquial terms, it

is a complete train wreck.  *Id.*[7]  Plaintiffs presume Chung Exhibit 1 to be accurate insofar as it is

**the central document** to Samsung's instant motion and Mr. Chung himself attested to its

accuracy.  ECF 143 ¶ 5 ("A true and correct copy of the text of the Terms and Conditions . . . is

attached hereto as Exhibit 1.")  Confidence in Plaintiffs' presumption is bolstered further by

Exhibit 1 being filed on Samsung's behalf by two large, prominent, national law firms, thereby

providing "two sets of eyes", and that someone went so far as to highlight paragraph 14.8 in

---

[6] When turning through paragraph numbers, Chung Exhibit 1 begins at paragraph 1 and runs to paragraph 6.2, then inexplicably returns to paragraph 2.1 (not paragraph 1); it then runs from paragraph 2.1 to paragraph 7.3 and inexplicably returns to paragraph 2.1; it then runs from paragraph 2.1 through paragraph 12.3 and, again, inexplicably, returns to paragraph 2.1. *Id.*  It then runs from paragraph 2.1 through paragraph 14.7, and, again, in dizzying repetition, returns to paragraph 2.1.  *Id.*  Only then, pages into Exhibit 1, do the so-called terms and conditions run from paragraph 2.1 (not paragraph 1) through paragraph 14.8 that contains the arbitration provision and class arbitration waiver before this Court.

[7] Nowhere in Chung Exhibit 1 were Plaintiffs able to find continuous "Terms and Conditions" beginning at Section 1 and running continuously through Section 14.8.  And because the accuracy and completeness of Chung Exhibit 1 has been thrown into question, Plaintiffs are not certain whether Chung Exhibit 1 ends at paragraph 14.8 or continues onward to include other paragraphs.

yellow, suggesting a thorough review.  In any event, whether Chung Exhibit 1 is a "true and correct" copy of what electronically appeared on Samsung's SmartTV or the product of plain error, Plaintiffs should not be held to something so confusing and ambiguous that Samsung and its counsel could not get straight, either appearing on the TVs or in support of the instant motion.

Defendants admit that Chung Exhibit 1 (the terms and conditions), in whatever form it may have been if not Exhibit 1, did not appear until after Plaintiffs had purchased their Smart TVs and that the "SmartHub" feature would not work until Plaintiffs agreed to the terms and conditions.  For example, Plaintiff Cauley purchased her Samsung SmartTV from BestBuy on January 29, 2017 and did not set it up until a day later.[8]  In addition, neither the BestBuy receipt nor the Samsung "spec sheet" presented to Plaintiff Cauley at the time of purchase, or any other information presented at the time of purchase, mentioned an arbitration clause or class arbitration waiver.  *See* ECF No. 88-4.  Nothing warned Ms. Cauley that other conditions applied before her SmartTV would function as promised on the box.

Finally, the so-called arbitration clause that appears at the end of the Exhibit 1 to the Chung Declaration (¶14.8 of the absurdly confusing and out of order terms and conditions), is plainly one-sided to the extent only the "User unconditionally consents and agrees" to the terms and not Samsung.  ECF No. 143-3 at ¶14.8.

## A.    PROCEDURAL HISTORY

### 1.   *Initial Complaint: March 16, 2017 to December 21, 2017*

On March 16, 2017, or ***three years and two months*** before Samsung notified Plaintiffs or this Court of an arbitration provision, Plaintiffs filed an initial complaint ("Initial Class") against

---

[8] *See* ECF No. 88-3 (receipt attached to SAC showing the purchase); *see also* ECF No. 88-4 (the "Spec Sheet" provided to Cauley in connection with the purchase). According to Samsung, Cauley did not activate the "SmartHub" until January 30, 3017.  *See* ECF No. 143-2, Chung Decl. at ¶ 15 ("Plaintiff Cauley consented to the Terms and Conditions ("tnc") on January 30, 2017.").

Samsung alleging nine causes of action.  ECF No. 1.  It was the first of three complaints.  *See*
ECF Nos. 1, 45, 88.[9]  Brought on behalf of Plaintiffs and styled as a class action on behalf of all
those similarly situated, the 44-page Initial Complaint sought injunctive relief and compensation
for harm Samsung caused Plaintiffs and class members.  On June 13, 2017, Plaintiffs filed with
the Court a Certificate of Service upon Samsung.  ECF No. 3.

Samsung filed a notice of appearance on June 23, 2017 (ECF No. 3) and immediately
requested from the Court an extension until July 17, 2017 to respond to the Initial Complaint
(ECF No. 4), which this Court granted.  *See* Clerk's Text Order, entered June 25, 2017.  On July
14, 2017, Samsung requested from this Court a second extension of time by which to respond to
the Initial Complaint (ECF No. 12), which the Court granted, extending the time for Samsung to
file a motion to dismiss until September 8, 2017.  *See* ECF No. 13.

On September 8, 2017, Samsung filed a 37-page brief asserting various points and
authorities in support of a Fed. R. Civ. P. 12(b)(6) merits-based motion to dismiss the Initial
Complaint.  ECF No. 24.  Contesting the merits of the Initial Complaint all-the-while raising no
jurisdictional challenges, Samsung turned to this Court and sought a dismissal of the federal,
state, and common law claims on several grounds, including, *inter alia*, that the allegations did
not plead fraud with the requisite particularity under Fed. R. Civ. P. 9.  As set forth above at
I.A.2, Samsung knew the Smart TV tracking system necessarily required Plaintiffs to have
accepted the "Terms and Conditions" before the SmartHub would function, as detailed above at
I.A.2), and that ". . . Defendants made disclosures about their data collection and use practices in

---

[9] The Initial Complaint included violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann.
§ 56:8-1 *et seq*.; the Video Privacy Protection Act, 18 U.S.C. § 2710; the Electronic Communications
Privacy Act, 18 U.S.C. § 2511; the Cable Privacy Act, 47 U.S.C. § 55; the Federal Trade Communication
Act, 15 U.S.C. § 45(a); the Subscriber Privacy Provision in the Cable Communications Policy Act, 47
U.S. Code § 551; and the Children's Online Privacy Protection Act of 1998, 15 U.S.C. §§ 6501–6505.

their privacy policies and elsewhere." *See* ECF No. 24-1 at p.4. Nevertheless, Samsung chose

not to move to dismiss based on the arbitration clause at issue here or on any other jurisdictional

grounds, nor did it inform Plaintiffs or the Court of the arbitration clause's existence until more

than two and a half years later. Rather, having months to research and respond to the Initial

Complaint, Samsung subjected itself to the jurisdiction of this Court and instead sought a merits-

based dismissal with prejudice.

On September 26, 2017, just days after Samsung filed its First Motion to Dismiss, the

Parties appeared before Magistrate Judge Steven C. Mannion for a status conference. *See*

Exhibit 1 to the Declaration of Mack Press dated March 30, 2021 ("Press Dec.") (transcript of

proceedings before Magistrate Judge Mannion on September 26, 2017). As explained to

Magistrate Judge Mannion, against the backdrop of having Samsung's First Motion to Dismiss,

the Parties had agreed to a 90-day stay for no "other purposes other than to turn off the case [for

90-days] pending the additional investigation by plaintiffs." Notably, at no time during this

status conference or thereafter did Samsung inform Magistrate Judge Mannion that an arbitration

clause existed. Subjecting Plaintiffs to extreme prejudice, Samsung instead sent them and this

Court on a frolic and detour for several more years, involving multiple amended complaints and

motions to dismiss, all-the-while silent on the issue of arbitration.

## 2. *First Amended Complaint: December 21, 2017 – September 26, 2018*

On December 21, 2017, Plaintiffs sought leave to reinstate the case and file an amended

complaint that included additional allegations from the further investigation and expenditure of

additional time and resources to address the points and authorities in Samsung's motion to

dismiss the Initial Complaint. ECF No. 40. On January 2, 2018, the Court reinstated this matter

and granted leave to file a proposed amended pleading. ECF No. 42.

On January 17, 2018, Plaintiffs filed the forty-three page, two-hundred and five paragraph First Amended Complaint ("FAC") alleging eight causes of action under federal, state, and common law.  *See* ECF No. 45.[10]  On January 19, 2018 (two-days after Plaintiffs filed the FAC), Magistrate Judge Mannion ordered a scheduling conference with the Parties for January 26, 2018.  *See* ECF No. 49.  Samsung participated in the scheduling conference and yet again failed to mention an arbitration clause to either Plaintiffs or the Court.  *See* Docket Minute Entry, January 26, 2018.  To the contrary, seeking from this Court a dismissal with prejudice, Samsung requested a scheduling order to launch a merits-based, Rule 12(b)(6) challenge upon the FAC.  *See* ECF No. 50 (setting forth the Rule 12(b)(6) briefing schedule).

On February 23, 2018, Samsung filed a 40-page brief (maximum length permitted under Local Rules), citing dozens of cases, statutes, and additional authorities in support of its motion to dismiss the FAC.   Affirmatively asking for the protection of this Court, Samsung moved to dismiss under Rule 12(b)(6), asserting similar merits-based arguments from its first motion to dismiss and debuting others.  Samsung, in detail, challenged Plaintiffs federal, state, and common law claims.  ECF No.  54-1.  Samsung moved to dismiss Plaintiffs' contract claims, among their many other challenges to the FAC, but did not move to dismiss based on the "contract" that it belatedly asks this Court to enforce (*i.e.*, the Terms and Conditions), nor did Samsung mention its existence to Plaintiffs or the Court in its motion to dismiss the FAC.  Notice of the arbitration clause did not occur until years later, only after Samsung repeatedly

---

[10] The eight counts in the FAC were: (1) unfair and deceptive tracking and transmission in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2; (2) deceptive omissions in violation of the NJCFA, N.J. Stat. Ann. § 56:8-2; (3) violations of the Video Privacy Act ("VPPA"), 18 U.S.C. § 2710; (4) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511; (5) common law fraud; (6) breach of express warranty; (7) breach of the duty of good faith and fair dealing; (8) unjust enrichment; and (9) breach of contract.  *Id.*  Plaintiffs subsequently agreed to voluntarily dismiss their fifth cause of action for common law fraud in its reply to Samsung's motion to dismiss the FAC.  *See* ECF No. 56 at p. 25 (Plaintiffs voluntarily withdrawing common law fraud claims).

turned to this Court seeking a dismissal with prejudice, and only after it failed to get one, as further detailed below.

On March 16, 2018, after expending extraordinary time and resources researching and responding to Samsung's arguments, Plaintiffs filed a comprehensive, twenty-nine-page memorandum in opposition to the Second Motion to Dismiss.  ECF No. 56.   On March 23, 2018, Samsung filed a fifteen-page brief in further support of its Second Motion to Dismiss. Nowhere therein did Samsung mention or reference arbitration, in any way, whatsoever.  ECF No. 63.

On March 20, 2018, pursuant to Local Civil Rule 26.1(b)(2) and Fed. R. Civ. P. 26(f)(3), and just three-days before filing its brief in further support of its Second Motion to Dismiss, Samsung filed a proposed discovery plan.  *See* ECF No. 60.   Local Civil Rule 26.1(b)(2)(j) requires a party to disclose "Whether the case is one which might be resolved in whole or in part by voluntary arbitration (pursuant to L. Civ. R. 201.1 *or otherwise*) …." (emphasis added). Paragraph 13 of the Court's model "Joint Proposed Discovery Plan" includes a similar requirement.  In response to Local Civil Rule 26.1(b)(2)(j), Samsung wrote:

> **This case is not appropriate for voluntary arbitration because the relief sought by Plaintiffs is not limited to only money damages as set forth in L. Civ. R. 201.1. It is too early to tell whether or when the case, if it survives the Joint Motion to Dismiss, might be suitable for mediation.**  *See* ECF No. 60. (Emphasis added.).

Despite responding to this question that is germane to arbitration, Samsung failed to mention the existence of the arbitration provision that it now seeks to enforce, albeit years later. (Notably, Plaintiffs, in their proposed Discovery Plan filed March 22, 2018, responded to Local Civil Rule 26.1(b)(2)(j) as follows: "Plaintiffs are not able to determine if this case is appropriate for arbitration until discovery is complete."  *See* ECF No. 61 at p.11.).  Furthermore, Question 5

11

of Samsung's Proposed Discovery Plan asked: "***Describe any Motions any party may seek to***
***make prior to the completion of discovery.  Include any jurisdictional Motions and Motions to***
***Amend***."  (Emphasis added.)  Samsung referenced standing on the fully briefed Second Motion
to Dismiss and remained completely silent on the arbitration provision at issue here and whether
it may lead to the instant motion to compel.

Further, on March 28, 2018 (just five-days after the Second Motion to Dismiss was fully
briefed), the Parties appeared for a scheduling conference before Magistrate Judge Mannion.  *See*
Minute Entry, March 28, 2018.  During this conference, Samsung asked Plaintiffs for the serial
numbers for White's and Mills' televisions.  *See* Defendants' brief at 7; *see also* ECF No. 66
(Pretrial Scheduling Order, dated March 28, 2018) at ¶2.  Samsung did not explain to the Court
or Plaintiffs that the serial number would answer directly whether Plaintiffs had agreed to an
arbitration provision.[11]  Samsung and Plaintiffs also negotiated a comprehensive discovery
confidentiality order that Magistrate Judge Mannion entered on March 28, 2018; nowhere during
that process did Samsung identify the lurking arbitration provision.  ECF No. 65.

On April 6, 2018, while Samsung's motion to dismiss the First Amended Complaint was
*sub judice*, and just days after asking the Court to order Plaintiffs to produce serial numbers that,
unbeknownst to Plaintiffs or the Court, would readily reveal the existence of the arbitration
provision, Samsung moved this Court for a discovery stay to thwart revealing the arbitration
clause to Plaintiffs.  *See* ECF No. 67.  Unaware Samsung had an arbitration clause in its back
pocket and recognizing a discovery stay would remain only until the Court ruled on Samsung's
then fully briefed motion to dismiss the FAC, Plaintiffs did not oppose Samsung's motion, which

---

[11] *See* Chung Declaration at ¶11 ("According to Samsung's records, the "DUID" number in Exhibit 2
identifies the SmartTV associated with the model and serial number claimed by Plaintiff White."); ¶15
("According to Samsung's records, the "DUID" number in Exhibit 3 identifies the SmartTV associated
with the model and serial number claimed by Plaintiff Cauley.").

the Court entered on April 30, 2018.  *See* ECF No. 72.  Had Plaintiffs known of the arbitration

provision that Samsung then knew existed, or that over two years later Samsung would move to

compel arbitration, Plaintiffs would have vigorously opposed Samsung's discovery stay motion

(and would likely have won on that ground, had the Court known of the provision).

On April 11, 2018, Plaintiffs served upon Samsung Rule 26 Initial Disclosures that

correctly identified the make, model, and serial number for Samsung Smart TVs that White and

Mills had purchased, as more fully detailed above in Section I.A.2.  *See also* Press Decl., Exhibit

1.  According to Samsung, this information was all it needed to uncover the arbitration clause at

issue (notwithstanding that Samsung knew from day one that the SmartHub features which form

the gravamen of Plaintiffs' allegations could not have been activated unless Plaintiffs agreed to

the arbitration clause).[12]

On July 16, 2018, Plaintiffs requested the Court take judicial notice of additional

authority in opposition to Samsung's pending motion to dismiss the First Amended Complaint.

ECF No. 76.  On July 25, 2018, Samsung responded to Plaintiffs' request for judicial notice.

ECF No. 78.  Samsung had over three months to investigate the information that White and Mills

provided that would have revealed the arbitration clause to Samsung, yet Samsung remained

silent on the existence of the arbitration provision in its July 25, 2018 submission to the Court.

*Id*.  Moreover, on August 14, 2018, Magistrate Judge Mannion held a status conference with the

Parties.  *See* Docket Minute Entry, August 14, 2018.  Samsung never uttered a single word about

---

[12] *See* Chung Decl. ¶¶10-11 ("I understand that Plaintiff White alleges he purchased a Samsung SmartTV Model No. UN55KU6300F, with Serial No. 05HX3CAHB11790N, in or around 2016.   Activation of the SmartHub software on this model SmartTV would have required the consent flow set out above. According to Samsung's records, Plaintiff White activated the SmartHub on his SmartTV on December 26, 2016, by completing the process described above and agreeing to the linked Terms and Conditions."); *see also* Chung Decl. Exhibit 2 (evidencing how Samsung was easily able to determine that White had agreed to Samsung's terms and conditions and the arbitration clause imbedded therein).

arbitration during the August 14, 2018 Court conference, nor did it indicate a strategy to unveil the arbitration provision years later and only after the Court denied a Rule 12(b)(6) motion to dismiss for failure to state a claim, a motion for reconsideration of the denial, and a motion for interlocutory appeal of the denial, as more fully described below.

On September 26, 2018, the Court granted Samsung's motion to dismiss the FAC.  ECF No. 82.  In a seven-page, single-spaced Letter Order, the Court analyzed Plaintiffs' two fraud-based claims ("unfair and deceptive tracking" and "deceptive omissions" under the NJCFA), violations of two federal statutes (the Video Privacy Protection Act and the Electronic Communications Privacy Act commonly known as the Wiretap Act), and four contract-based claims (breach of contract, breach of the duty of good faith and fair dealing, breach of express warranty, and unjust enrichment).  As a result of its rigorous analysis, the Court determined that the FAC had failed to state a cause of action, and it dismissed each of the eight federal, state, and common law claims.

### 3.  Second Amended Complaint: September 26, 2018 – August 21, 2019

On October 4, 2018, Magistrate Judge Mannion held a telephonic conference with the Parties.  *See* ECF Nos. 80, 83-84.  Samsung's counsel sent a letter to the Court proposing an agenda for the call.  ECF No. 83.  The purpose of the call with Magistrate Judge Mannion was to schedule the time for Plaintiffs to file a Second Amended Complaint ("SAC") and for Samsung to file a motion to dismiss the SAC.  Even though Plaintiffs' Initial Disclosures served in April 2018 had provided Samsung with serial numbers sufficient for Samsung to have identified the arbitration clause at issue here, Samsung never mentioned the arbitration clause during the October 4, 2018 conference with the Court.  Instead, Magistrate Judge Mannion ordered that the

parties meet and confer regarding a proposed amended pleading.[13]  On November 14, 2018, the

Parties filed a two-page stipulation and proposed order regarding a briefing schedule for the

SAC.  ECF No. 86.  At no time leading up to this submission (or within the submission itself)

did Samsung indicate to Plaintiffs the existence of an arbitration clause as possible grounds to

seek dismissal.  On November 15, 2018, Magistrate Judge granted the stipulation.  ECF No. 87.

   On November 16, 2018, Plaintiffs White, a resident of Florida, and Cauley, a resident of

New Jersey, filed the SAC.  ECF No. 88.  Mills, a resident of New York and party to the Initial

Complaint and FAC, was not a named plaintiff in the SAC.   Plaintiffs' SAC, spanning 42-pages

and comprising 206 paragraphs, alleged five causes of action: (1) that tracking and transmission

of consumers' data violates the NJCFA, N.J.S.A. § 56:8-2; (2) that Defendants failed to disclose

their data collection in violation of the NJFCA; (3) violations of the VPPA, 18 U.S.C. § 2710;

(4) violations of the Wiretap Act, 18 U.S.C. § 2510; (5) violations of Florida's Deceptive and

Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201; and (6) common law negligent

misrepresentation.  Plaintiffs' SAC was the product of exhaustive work during the intervening

period from when the court dismissed the FAC in August 2018.

   On November 28, 2018, with the SAC in hand and an arbitration clause up their sleeve,

Samsung participated in a status conference before Magistrate Judge Mannion.  *See* Nov. 28,

2018 Docket Minute Entry.  As before, Samsung's counsel joined a letter to the Court proposing

an agenda for the conference.  ECF No. 91.  And as before, at no time before or during the

conference did Samsung inform the Court or Plaintiffs as to the arbitration clause or the serial

number paper trail leading to its existence.  Instead, they kept silent.

---

[13] ECF No. 84 ("Counsel shall meet and confer re: a proposed amended pleading as discussed today.").

On December 17, 2018, Samsung moved to dismiss the SAC on several grounds while keeping its arbitration card in reserve.  ECF No. 94.  In a 31-page brief citing dozens of cases, statutes and other authorities, Samsung claimed the SAC contained no new allegations to correct deficiencies this Court identified in the FAC with respect to the NJCFA claims (Counts I and II); VPPA claim (Count III), and Wiretap Act claim (Count IV).  Similarly, Samsung claimed Plaintiffs had failed to plead factual allegations to support the claims brought under the FDUTPA (Count V), and for negligent misrepresentation under New Jersey common law (Count VI).  *Id.*

On January 28, 2019, Plaintiffs filed a 30-page brief in opposition to Samsung's motion to dismiss the SAC.  ECF No. 97.   Plaintiffs' opposition brief was the culmination of extensive additional legal research and analysis defending the NJCFA, VPPA, and Wiretap Act claims, and claims under the FDUTPA and negligent misrepresentation under New Jersey common law. Plaintiffs' counsel worked tirelessly throughout the intervening holidays and the month of January 2019 preparing its opposition.

On February 19, 2019, Samsung filed a 15-page brief (maximum page length allowed under Local Rules) in further support of its Rule 12(b)(6) motion to dismiss.  ECF No. 98. Remarkably, Samsung asserted: "After two years and three manifestly deficient pleadings, this lawsuit must be dismissed ***with prejudice*** to avoid any further pointless and wasteful drain on this Court's and Defendants' resources."  *Id*. at p.2.  Samsung continued to rail against the SAC, asserting Plaintiffs "utterly failed to comply with the Court's directives".  *Id*.  Notably, Samsung failed to reveal to the Court (or Plaintiffs) that throughout the two years that Samsung claims was a wasteful drain on judicial resources, Samsung sat on an arbitration provision that it would seek to invoke only if failed to achieve the sought-after dismissal with prejudice from this Court.

On February 27, 2019, and again on June 28, 2019, Magistrate Judge Mannion held telephonic status conferences with the Parties. *See* Docket Minute Entries on Feb. 27, 2019 and June 28, 2019. Samsung provided the Court with proposed agendas in advance of both conferences. ECF Nos. 99, 101. As before, Samsung failed to address or even identify to the Court or Plaintiffs the existence of an arbitration clause in either the pre-conference letters or during the two status conferences. Instead, it rested on its fully briefed, merit-based 12(b)(6) motion to dismiss the SAC, keeping the arbitration card up its sleeve for one more year.

On August 21, 2019, the Court issued an order granting, in part, and denying, in part, Samsung's motion to dismiss the SAC. ECF No. 104. In a single spaced, eight-page opinion, the Court analyzed the claims Plaintiffs alleged and myriad defenses Samsung asserted. After scrutinizing Plaintiffs' consumer fraud and applying many legal decisions interpreting the NJCFA and FDUTPA, the Court dismissed those claims without prejudice after finding that Plaintiffs failed to adequately allege damages. *Id*. at 2-4. In dismissing Plaintiffs' VPPA claims, the Court considered various authority and found that Plaintiffs had not sufficiently alleged the type of information taken had included personally identifiable information. *Id*. at 5-6. After considering Plaintiffs' negligent misrepresentation claims under New Jersey and Florida law, the Court dismissed those claims upon finding that Plaintiffs had not pleaded that any special relationship existed between them and Samsung. *Id*. at 8.

Nonetheless, the Court denied Samsung's motion to dismiss with respect to the Wiretap Act claim. *Id*. at 6-7. The Court disagreed with Samsung's argument that it was a party to the communications and therefore an "exception" to the Wiretap Act applied, instead noting that Plaintiffs had alleged that part of the data collection included Samsung tracking Plaintiffs' communications with other streaming services, cable providers, or other content providers to

their television, communications to which Samsung was not a party.  *Id*.  Samsung's argument

that Plaintiffs did not allege that the contents of the communications were intercepted was

equally unavailing, as the Court concluded that Plaintiffs had adequately alleged at this stage of

the litigation that their "content" was intercepted, as that term is used in the Wiretap Act.  *Id*.

### 4.  *Motion for Reconsideration or Certification Under 28 U.S.C. § 1292 September 4, 2019 – March 24, 2020*

On September 4, 2019—almost a year and a half after being provided serial numbers for

Samsung to determine the existence of an arbitration clause with 15-keystrokes (literally the

serial number)—Samsung moved this Court to reconsider its August 21, 2019 Order denying

Samsung's motion to dismiss the Wiretap Act claims or, in the alternative, for an Order

certifying the Court's August 21, 2019 Order (as to Plaintiffs' Wiretap Act claim) as final for

purposes of immediate appeal in accordance with 28 U.S.C. § 1292(b).  ECF 105.  In a 13-page

supporting brief, Samsung contended that this Court, which Samsung turned toward to obtain a

merits-based dismissal, overlooked facts on whether Samsung was a party to the intercepted

communications.  ECF 105-1 at p.3-8.  In the alternative, Samsung asked the Court to certify for

interlocutory appeal the question of whether Samsung is a party to the communications within

the meaning of the Wiretap Act.

On October 16, 2019, Plaintiffs filed a 15-page brief, supported by extensive authority, in

opposition to Samsung's reconsideration motion.  ECF No. 113.  Plaintiffs were called-upon to

devote enormous time and resources to research and counter Samsung's reconsideration and

appellate arguments, many involving new authorities and procedural issues that Samsung had put

forth for the first time.  On November 4, 2019, owing to Local Civil Rule Civil Rule 7.1(d)(3)

that does not permit a reply brief in support of a motion for reconsideration, Samsung sought

leave to file a reply brief in further support of its reconsideration motion.  ECF No. 116.  Still,

Samsung did not reference an arbitration provision, even though Plaintiffs provided the Initial

Disclosures over a year and a half earlier.  On November 6, 2019, Plaintiffs promptly opposed

Samsung's request to file a reply brief in further support of reconsideration under or 28 U.S.C. §

1292(b) certification. ECF No. 118.  On November 12, 2019, the Court granted Samsung's

request to file the reply brief, which Samsung then filed, again not referencing the arbitration

provision.  *See* ECF Nos. 199-20.

On March 24, 2020, in a five-page Order, this Court denied Samsung's motion for

reconsideration or, in the alternative, 28 U.S.C. § 1292(b) certification for interlocutory appeal.

After readdressing the Wiretap Act allegations and how pleading differences between the FAC

and the SAC "more clearly indicates that there are two relevant communications at issue here"

and the "factual and legal context of the claims had been sufficiently altered" between the FAC

and SAC such that "accepting the SAC's allegations as true, the Court is satisfied Plaintiffs have

adequately stated a Wiretap Act claim because, accepting the allegations as true, the SAC alleges

that Defendants are not a party to the first communication, so the party exception cannot

apply…"  ECF No. 131 at p.3.

On May 11, 2020, more than three years after the litigation had been commenced and two

years since Samsung had been provided serial numbers to identify the arbitration clause at issue

here, and after the expenditure of enormous judicial resources, and now that it lost its attempt to

obtain a merits-based dismissal on a Rule 12(b)(6a) motion (and motion for reconsideration or

interlocutory appeal), Samsung, informed the Court <u>for the first time</u> it intended to file a motion

to compel arbitration.  ECF No. 124 (letter from Michael McDonald to Magistrate Judge Joseph

A. Dickson).   Just six days earlier, on May 5, 2020, Samsung sprung on Plaintiffs for the first

time that there was an arbitration clause at issue and explained the reason Samsung had asked

Magistrate Judge Mannion to order Plaintiffs to identify serial numbers in its Initial Disclosures that Plaintiffs served on Samsung on April 11, 2018.[14]

Notably, Mr. Frankel's Declaration completely ignores that on April 11, 2018, Plaintiffs provided correct serial numbers for one of White's Samsung Smart TVs and a correct serial number for Mill's Samsung Smart TV, information more than sufficient to identify the arbitration provision.  Mr. Frankel's declaration also sheds no light on why Samsung waited over two years, from April 11, 2018 to April 14, 2020, to inform Plaintiffs that among the three serial numbers provided for three Smart TVs, one number was off by a single digit.[15]

### 5.   *Samsung's Motion to Compel Arbitration: May 22, 2020 to the Present*

On May 22, 2020, after having chosen to actively litigate before this Court for over three years, and now having finally lost its motion to dismiss the SAC and opportunity for 28 U.S.C. § 1292(b) certification, Samsung finally pulled from its sleeve the arbitration clause that it knew existed all along and now seeks to put to waste the substantial judicial resources that Samsung has caused this Court and Plaintiffs to expend to date.  ECF No. 138.   Further, a cursory review of the docket in this matter shows significant litigation activity over the past year addressing Samsung's last-minute surprise, including, *inter alia*, additional discovery burdens related to the arbitration clause.  *See* ECF No. 157 (conference with Magistrate Judge Dickson on arbitration discovery issues and related Order).

---

[14] *See* ECF No. 143-4 (Frankel Decl. at ¶ 4 ("On May 5, 2020, I spoke to Plaintiffs' counsel by telephone. On the call, I informed Plaintiffs' counsel that based on the serial and model numbers he provided, SEA determined that Plaintiffs had each agreed to arbitration, and that SEA intended to file a motion to compel arbitration.  (I noted to Plaintiffs' counsel that SEA did not have sufficient information about Plaintiff White's second TV to pinpoint the date when he consented to arbitration.)"

[15] *See id*. at ¶ 2 ("As I explained *in my April 14 [2020] email*, the serial number Plaintiffs had provided *in their April 11, 2018 initial disclosures* for Plaintiff White's UN32J5500AF SmartTV was incomplete or erroneous.").  Emphasis added.

On October 29, 2020, during a telephonic status conference before Magistrate Judge

Dickson, undersigned counsel informed the Magistrate Judge of a physical condition that was

aggravated by Samsung's strategy of having Plaintiffs' counsel (a solo practitioner) litigate in

this Court for three years, expending enormous time and resources to achieve a significant

victory, only to have Samsung claim that it was in the wrong forum.  *See* Docket Minute Entry,

October 29, 2020; *see also* ECF No. 170 (letter from Plaintiffs' counsel to Magistrate Judge

Dickson regarding the October 29, 2020 status conference and seeking an extension to respond

to the motion to compel because of Plaintiff counsel's compromised physical condition).  Indeed,

Plaintiffs' counsel was required to seek several extensions, during which time Plaintiff counsel's

physical condition has significantly improved.

### C.   LEGAL STANDARD

Whether Samsung waived the right to arbitrate this matter is for this Court to decide.

*Ehleiter v. Grapetree Shores, Inc*., 482 F.3d 207, 221 (3d Cir. 2007) ("We now make explicit

that which is implicit in our decision in *Palcko*; we hold that waiver of the right to arbitrate based

on litigation conduct remains presumptively an issue for the court to decide…."); citing *Palcko v.

Airborne Express, Inc*., 372 F.3d 588, 596-98 (3d Cir. 2004); *see also Zimmer v. CooperNeff

Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008).   There appears to be no dispute that this Court

is the forum to decide if Samsung has waived arbitration, if the provisions are unconscionable,

and whether the "class arbitration waiver" is enforceable under the circumstances presented here.

## II.   ARGUMENT

Samsung participated actively and consistently in this litigation for over three years, it

unleashed a litigation machinery of prominent national law firms that engaged in exhaustive

dispositive motion practice before this Court seeking to debunk Plaintiffs' claims on the merits,

and then sought to turn to the Third Circuit when things did not go its way.  From day one—if

not April 11, 2018 when Plaintiffs served Initial Disclosures giving all the information Samsung needed to identify the arbitration provision—Samsung knew the arbitration provision existed, and in a distorted reality argues that Plaintiffs are to blame for Samsung having sat silent. Samsung should not litigate in this Court for years, only to pull out an arbitration card after decisions no longer go its way.  No authority supports Samsung using this Court for its "heads I win, tails you lose" or "free bite at the apple" litigation strategy.

### A.    SAMSUNG WAIVED ARBITRATION UNDER THE HOXWORTH FACTORS

Courts routinely decline to enforce arbitration clauses where the requesting party has acted in contradiction with any right to arbitrate.  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 208, (3d Cir. 2010); *Purshe Kaplan Sterling Invs., Inc. v. Neff*, 2020 U.S. Dist. LEXIS 164227 (E.D. Pa. Sept. 9, 2020).  There are myriad reasons why a party should not be permitted to litigate actively and consistently in a federal court for years, seeking to obtain a dismissal with prejudice, and then only after losing a merits-based Rule 12(b)(6) motion, pull an arbitration provision and seek to move the dispute to a potentially more favorable forum.  *See*, *e.g.*, *SuperMedia v. Affordable Electric, Inc.*, 565 Fed. Appx. 144, 146 (3d Cir. 2014); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 447-51 (3d Cir. 2011); *Nino*, 609 F.3d at 196-99; *Hoxworth*, 980 F.2d at 914-17.  No party should be permitted to require parties on the other side of the caption, and the Court, to expend enormous resources to address multiple dismissal motions and a reconsideration motion, only to toss those resources to the side when Court decisions no longer go their way.  Indeed, a central principle of waiver is that "a party may not use arbitration to manipulate the legal process and in that process waste scarce judicial resources."  *Gray Holdco*, 654 F.3d at 454.

22

*Hoxworth* factors apply to prevent a party from abandoning its merits litigation already in progress and turn to invoke arbitration whenever they desire and particularly when rulings no longer go their way. *Hoxworth*, 980 F.2d at 912; *see also Supermedia*, 565 Fed. Appx. at 146; *Gray Holdco*, 654 F.3d at 447-51; *Nino*, 609 F.3d at 196-99. In *Hoxworth*, the Third Circuit delineated six non-exclusive factors that weigh heavily against granting Samsung's request: (1) timeliness of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to it seeking to enjoin the court proceedings; (4) the amount of the party's non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and, (6) the extent to which the parties have engaged in discovery. *Id*. at 926-27. Furthermore, the party opposing arbitration need not satisfy all six Hoxworth factors as courts routinely refuse to compel arbitration when only a few of the factors are satisfied.[16]

### 1. Samsung's Motion is More Than Untimely.

To contend that Samsung's long-overdue motion to compel arbitration is "untimely" puts it charitably. More accurately, Samsung's motion is egregiously late. Putting Samsung's delay into context, there is a two-year statute of limitations on a claim for civil damages under the Wiretap Act. 18 U.S.C. § 2520(f) ("A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to

---

[16] These factors are "nonexclusive", and the Third Circuit has further held that "not all factors need to be present to justify a finding of waiver." *In re Pharm. Ben. Managers Antitrust Litig.*, 700 F.3d 109, 118 (3d Cir. 2012) (citing *Nino*, 609 F.3d at 209). Instead, waiver is determined "based on the circumstances and context of the particular case." *Id*. Ultimately, "prejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth*, 980 F.2d at 925 (holding that defendants waived their right to arbitration by litigating the case for almost a year before filing a motion to compel arbitration).

discover the violation.").  Samsung's delay far exceeds what courts have found unreasonable in

other cases.  For example, in *Supermedia*, 565 Fed. Appx. at 146, the court found that the party

seeking to invoke arbitration had waived the provision because it had waited more than 11

months from the complaint's filing to say anything about arbitration and noted that the 11-month

delay was "around the same amount of time as the period at issue in *Hoxworth*, in which we

found waiver to apply."  *See also*, *Gray Holdco, Inc. v. Cassady*, 2010 U.S. Dist. LEXIS 119344,

at *6-8 (W.D. Pa., Nov. 10, 2010) (complaint filed on November 13, 2009 and demand for

arbitration field on September 17, 2010, "This ten-month passage of time falls somewhere in the

middle of cases which have discussed timeliness of the demand for arbitration."); *Nino*, 609 F.3d

at 210 (15-month delay weighs in favor of waiver); *Ehleiter*, 482 F.3d at 223 (four-year delay

characterized as egregious where parties had partaken in motion practice); *In re Pharm. Ben.*

*Managers Antitrust Litig*., 700 F.3d at 118 (3d Cir. 2012) (Defendant waived its right to arbitrate

by actively and aggressively litigating an antitrust case in federal court for more than 10 months

prior to demanding arbitration); *JPMorgan Chase Bank, N.A. v. Republic Mortgage Ins. Co*., No.

10-CV-6141, 2012 U.S. Dist. LEXIS 170327 (D.N.J. Nov. 30, 2012); *Kausar v. GC Servs. Ltd.*

*P'ship*, 2018 U.S. Dist. LEXIS 167166, at *5 (D.N.J. Sept. 27, 2018) ("twenty-four-month delay

is even longer than the delays in cases where the Third Circuit found waiver").  Samsung's delay

far exceeds the delays in cases where the Third Circuit found no waiver.  *See*, *e.g*., *Palcko*, 372

F.3d at 598 (thirty-eight-day delay); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 680

(3d Cir. 2000) (one-and-a-half-month delay); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063,

1068-69 (3d Cir. 1995) (two-month delay).

Furthermore, the ***three-year delay*** during which Samsung invoked this Court's resources

rather than the arbitration clause at its fingertips, was of Samsung's own making.  That Plaintiffs

stood in the way, as Samsung claims, is pure fiction.  As explained above, and upon Court order, Plaintiffs provided Samsung with three serial numbers, and additional identifying information, in Plaintiffs April 11, 2018 Initial Disclosures.[17]   Through the information provided, Samsung was able to determine White had agreed to the Terms and Conditions, as Mr. Chung makes that clear in his declaration.  *See* Chung Declaration at ¶¶ 10-11 (how the information provided in the Initial Disclosures allowed him to identify the arbitration provision).  The Third Circuit has stated that "the length of the time between when a party initiates or first participates in litigation and when it seeks to enforce an arbitration clause is not dispositive in a waiver inquiry." *Gray Holdco*, 654 F.3d at 455.  Instead, the Third Circuit has asked courts to look to the party's "explanations for its delay." *Id*.  Here, Samsung has offered no good explanation for waiting more than three years to seek arbitration and, not surprisingly, only after having lost its most recent motion to dismiss, motion for reconsideration, and motion for certification for interlocutory appeal.  Samsung either ran the serial numbers Plaintiffs provided in April 2018 with respect to two of the three Smart TVs at issue in the Initial Complaint and FAC (and the SAC with respect to White) or was grossly reckless not running the numbers when they were provided.  Chung and Frankel Declarations evidence this point, as detailed above.

Finally, with respect to the one (of three) serial number that was off by just one digit, it is evident from the Frankel Declaration and email attached thereto that Samsung waited ***two years*** (and only after multiple motions to dismiss and having lost the last of them) to inform Plaintiff of the missing digit.  *See* Frankel Declaration Exhibits.  Notably, Plaintiffs provided the missing digit just days after Samsung brought it to their attention.  *See id*.  Further, leaving aside that two

---

[17] Samsung also knew from day one that Plaintiffs' allegations centered on Samsung's SmartHub features, thus Plaintiffs "necessarily" had to have agreed to the arbitration provision during the set-up procedure, as explained in the Chung Declaration and its accompanying exhibits.

serial numbers were correct, had Samsung run the incorrect serial number in April 2018, Samsung would have known of the infirmity then.  Nonetheless, Samsung provides no clarity or an explanation as to why it either waited years to run the number that was patently incorrect on its face, or it ran the number but failed to raise the infirmity.[18]  In either event, any delay was of Samsung's own making.

### 2. Samsung Has Repeatedly and Vigorously Contested the Merits of this Case Before this Court.

The second *Hoxworth* factor asks whether the moving party contested the merits of the plaintiff's claims.  980 F.2d at 926-27.  As the Third Circuit has recognized "'where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing . . . arbitration may more easily show that its position has been compromised, *i.e*., prejudiced.'" *Id*. at 926; *In re Pharm. Benefit Managers Antitrust Litig*., 700 F.3d at 118 (contested the merits of what was, in essence, two motions to dismiss); *see also Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 938 F.2d 1574, 1576-78 (2d Cir. 1991) (waiver where defendant filed dispositive motions over course of eighteen months); *S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (waiver where defendant delayed eight months, engaging in merits and non-merits motion practice).

---

[18] Notably, Samsung knew (plaintiffs did not) that the model Samsung Smart TV had a 15-digit serial number, such that the 14-digit number provided should have been a glaring red flag, like someone providing an eight-digit social security number.  ECF No. 143-5 Frankel Decl. Exhibit 5 ("Plaintiffs provided a 14-digit serial number [on April 11, 2018], 03NL3CGG90593M. However, we understand that the serial number for that TV model would be 15 digits, so the number provided is missing a digit (which could be a letter or a number).").   Why Samsung waited two-years to follow-up may be explained by the fact that they already had two correct serial numbers (one for White and one for Mills), and if not enough already, implicitly knew the arbitration clause was at issue based on the face of the pleadings.  In other words, they did not need Plaintiffs to correct the number that was a digit off.  Samsung already had what it was looking for.

Analysis of this *Hoxworth* factor necessarily considers the extent to which the person seeking to invoke arbitration has participated in the substantive legal proceedings and challenged the legal positions and arguments advanced by the other party. *Gray Holdco*, 654 F.3d at 454; *see also* Hoxworth, 980 F.2d at 926 (courts should look to "the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims."). Here, Samsung has repeatedly tested the merits of Plaintiffs' three complaints (Initial Complaint, FAC and SAC) by having filed merits-based motions to dismiss, two of which were vigorously contested before this Court. *See* ECF Nos. 24, 54, 94. Then, when things did not go its way, Samsung sought reconsideration of this Court's denial of the motion to dismiss the SAC, and alternatively sought certification to have the Third Circuit review the Wiretap Act claim. To say Samsung vigorously contested the merits of this litigation is an understatement, and Courts have not hesitated to find waiver under much less egregious circumstances.

### 3. Samsung Did Not Inform Plaintiff of an Intent to Pursue Arbitration Prior to Seeking to Enjoin These Proceedings.

The third *Hoxworth* factor asks whether the moving party "has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings." 980 F.2d at 926-27. Here, Samsung's "notice" to Plaintiffs equates to no notice at all. Such notice came just days before Samsung filed the instant motion to compel arbitration. *See* Frankel Declaration Exhibit ¶ 4 (Samsung did not reveal the arbitration provision to Plaintiffs until May 5, 2020); *see also* ECF No. 134 and 136 (Samsung did not reveal the arbitration provision to the Court until May 11, 2020). Samsung's notice to Plaintiffs before seeking to enjoin these activities amounts to no notice at all, six days is plainly inadequate under this *Hoxworth* factor.

Even more egregious is that Samsung knew from the start that an arbitration provision existed in its Smart TVs and users had to agree for the SmartHub to function, yet it gave no notice to Plaintiffs.  When it sought Magistrate Judge Mannion's assistance to obtain serial numbers to verify explicitly what it already knew implicitly, Samsung failed to inform the Court that an arbitration clause existed on its Smart TVs and that the serial numbers they sought answered a critical question.  When seeking serial numbers from Plaintiffs in 2018—and when following up over two-years later—Samsung never said why it wanted those numbers.  It never gave any notice that an arbitration provision was on their radar.  In hindsight, it is striking that as late as April 14, 2020, just weeks before Samsung filed the instant motion, its counsel emailed Plaintiffs' counsel regarding these serial numbers, yet gave no notice as to why.  *See* ECF No. 143-5.  Against this backdrop, Samsung has failed to satisfy the *Hoxworth* notice factor.

### 4.  Samsung Consistently Availed Itself to Non-Merits Motion Practice Before This Court.

The fourth *Hoxworth* factor considers the extent to which the moving party engaged in non-merits motion practice.  980 F.2d at 926-27.  The shear length of the docket shows extensive "non-merits" litigation activity on Samsung's part, including extensions to respond to the Initial Complaint, which the Court granted.  *See* ECF Nos. 6, 7, 13, 15.  Samsung also turned to this Court in what amounted to a motion to compel Plaintiffs to produce the serial numbers (leading to the arbitration clause).  Specifically, in a March 28, 2018 status conference before Magistrate Judge Mannion, Samsung moved this Court to compel Plaintiffs to produce serial numbers in Plaintiffs' forthcoming initial disclosures, which Plaintiffs did just days later.[19]  *See* ECF No. 66

---

[19] As set forth above, this timing demonstrates that Samsung was aware of the arbitration clause five months before the Court ruled on Samsung's motion to dismiss the FAC and sixteen months before the Court ruled on its motion to dismiss the SAC.  ECF Nos. 82, 104.

at ¶2 (requiring plaintiffs to "provide the make, model, and serial number for each television."); *see also* ECF Docket Minute Entry, March 28, 2018; ECF No. 143-5 Frankel Decl. Exhibit 1 ("As you may recall, at our appearance with the Magistrate Judge early in the case, he ordered Plaintiffs to disclose to Defendants the serial numbers for the television sets at issue.").

Notably, just days after availing itself to non-merits motion practice to compel Plaintiffs to produce serial numbers, Samsung turned back to this Court on April 6, 2018 when it sought to stay Plaintiffs' discovery against Samsung, which this Court entered on April 30, 2018.  *See* ECF Nos. 67, 72 (staying discovery after Samsung received the April 11, 2018 Initial Disclosures with serial numbers).  Ironically, Samsung had then obtained serial numbers to confirm what it knew—that Plaintiffs had agreed to an arbitration provision when installing their Smart TVs for the SmartHub to function—while moving to prevent Plaintiffs from learning the very same thing.  Respectfully, Samsung used this Court to carry out its ball-hiding strategy.[20]

### 5. Samsung Repeatedly Assented to This Court's Pretrial Procedures.

The fifth Hoxworth factor considers the moving party's assent to the Court's pretrial orders.  980 F.2d at 926-27.  Here, even a cursory review of the lengthy docket in this matter reveals Samsung's repeated assents to this Court's pretrial procedures.  This includes, *inter alia*, having participated in an initial Rule 16 scheduling conference before Magistrate Judge Mannion on March 28, 2019 (ECF Nos. 51, *see also* docket Minute Entry March 28, 2018).  Samsung even presented this Court with its version of a Proposed Discovery Plan.  Notably, Samsung's proposed plan included the following question and answer when addressing whether this case is appropriate for voluntary arbitration pursuant to L. Civ. R. 201.1 ***or otherwise***.  Specifically:

**Question No. 9**

---

[20] Arguably, Samsung's 28 U.S.C. §1292 certification motion is also "non-merits" based, and likewise the request that this Court enter the Discovery Confidentiality Order.  ECF No. 65 (submitted on consent).

> ***State whether this case is appropriate for voluntary arbitration (pursuant to L. Civ. R. 201.1 or otherwise) .... If not, explain why and state whether any such procedure may be appropriate at a later time*** (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition of dispositive motions, etc.).

**Samsung's Response**

> ***This case is not appropriate for voluntary arbitration*** because the relief sought by Plaintiffs is not limited to only money damages as set forth in L. Civ. R. 201.1. It is too early to tell whether or when the case, if it survives the Joint Motion to Dismiss, might be suitable for mediation.

ECF No. 60 (Samsung's Proposed Discovery Plan) at p.6 (emphasis added). Nowhere does Samsung reference the arbitration clause, and its swift rejection of the arbitrability of this case rings hollow.[21] Further, Samsung has adhered to all pretrial procedures, including submission of the Discovery Confidentiality Order (ECF No. 65), participation in no less than 12 status conferences before Magistrate Judge Mannion or Magistrate Judge Dickson,[22] prepared or assisted in preparing agendas for those status conferences and, from inception and throughout this case, has eschewed to this Court's extensive pretrial activities. Plaintiffs cannot imagine that Samsung would argue otherwise, and far less pretrial events have solidly favored waiver in other cases. *See*, *e.g*., Gray Holdco, 654 f.3d 444 (only three pretrial conferences). Remarkably, throughout these extensive pretrial procedures, Samsung remained silent on the existence of the arbitration clause that it brings before the Court only after it failed to obtain a full merits dismissal on the pleadings.

---

[21] Plaintiffs responded to Question No. 9 as follows: "Plaintiffs' are not able to determine if this case is appropriate for arbitration until discovery is complete." ECF No. 61. Just days later, armed with the knowledge that it held an arbitration clause up its sleeve that had not been pulled as a defense to the fully briefed motion to dismiss the FAC (nor would it be asserted as a defense to the SAC filed much later), Samsung moved to stay discovery. ECF No. 67.

[22] These Court conferences occurred on 9/26/17, 1/26/18, 3/28/18, 8/14/18, 10/4/18, 11/28/18, 2/27/19, 6/28/19, 9/19/19, 5/12/20, 8/12/20, and 10/29/20, as identified on the docket. Samsung knew about the arbitration provision and said nothing during the first nine conferences.

### 6.  The Parties' Discovery Efforts Before This Court.

The sixth *Hoxworth* factor considers the extent to which both parties have engaged in discovery. 980 F.2d at 926-27.   While Samsung has not meaningfully produced discovery and instead sought to avoid doing so through a discovery stay that it sought only after Plaintiffs produced serial numbers, Plaintiffs have produced discovery and Samsung has undertaken active efforts to shape the contours of discovery in this case.  Specifically, in response to Samsung's request to Magistrate Judge Mannion during the March 28, 2018 status conference, the Court required Plaintiffs to collect and produce within 30-days the make, model, and serial number for each television, and identify when, where, and how each television was acquired, along with copies of all documents relevant to their claims in this action.  ECF No. 66.  Plaintiffs promptly provided this information in its April 11, 2018 Initial Disclosures (*see* Press Decl. Exhibit 1), in the SAC (at ¶¶15-16), and two years later when Samsung followed-up.  ECF No. Frankel Decl. Exhibits 1-3 (demonstrating Plaintiff's prompt effort to respond to Samsung's two-year delay).

In addition to (1) Samsung's motion to compel production of virtually all the information in Plaintiffs' possession, and (2) to stay Plaintiffs discovery from Samsung, other discovery efforts include, *inter alia*, (3) a negotiated comprehensive Confidentiality Order (ECF No. 65); (4) competing proposed Joint Discovery Plans (ECF Nos. 60, 61); and (5) multiple status conferences with the Court regarding Samsung's effort to either obtain discovery from Plaintiffs or prevent Plaintiffs from obtaining discovery from Samsung.  Discovery in this case, over three years, is substantially more than sufficient to satisfy this Hoxworth factor, as other courts have found arbitration clauses waived with significantly less activity.[23]

---

[23] *See Purshe Kaplan Sterling Invs., Inc.*, 2020 U.S. Dist. LEXIS 164227, at *13 (finding waiver even though no discovery took place).

In sum, under the Hoxworth factors, Samsung has plainly waived any right to arbitrate this case before a different tribunal. Samsung chose a different tact long ago, and on this ground alone, Samsung's motion to compel arbitration and strike the class allegations should be denied in its entirety. Other independent grounds to deny Samsung's motion are set forth below.

### B.  TO COMPEL ARBITRATION AFTER YEARS OF LITIGATION BEFORE THIS COURT WOULD CAUSE PLAINTIFFS ADDITIONAL PREJUDICE

When a party demands arbitration long after litigation is commenced, "prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *Nino*, 609 F.3d 210; *Ehleiter*, 482 at 223 (the right to arbitrate can be waived "where there is a sufficient showing of prejudice . . . by the party seeking to avoid arbitration."). As Hoxworth factors make clear, prejudice includes not only "substantive prejudice to the legal position of the party claiming waiver," but also extends to "prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate." *Id*. at 224; *see also Gray Holdco*, 654 F.3d at 458-59 ("[W]e cannot ignore the legal expenses Cassady incurred while Gray sat on its arbitration rights"). In other words, "the investment of considerable time and money litigating a case may amount to sufficient prejudice to bar a later-asserted right to arbitrate." *Nino*, 609 F.3d at 209. Arbitration is to streamline proceedings, reduce costs, and conserve resources, purposes not served "when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place." *Id*.

Had Samsung moved to compel arbitration in response to the Initial Complaint, or just informed Plaintiffs that an arbitration clause was at issue, Plaintiffs may have saved all the time and expense of litigating before this Court for the next three years. Further, this Court may have been spared the resources expended addressing Samsung's multiple merits-based motions to

dismiss three complaints.  *In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d at 121 ("We cannot ignore the time, expense, and legal fees Plaintiffs invested in defending their claims against these multiple attacks."); *Gray Holdco*, 654 F.3d at 458-59.  No party should invoke the resources of the federal judicial process to have a free bite at the apple and then pivot to arbitration, without consequence, when rulings no longer go their way.  Unfortunately, Samsung deployed this litigation strategy, knowing of the arbitration provision all along while remaining mum, which has come at great burden and cost to Plaintiffs.

    1. **Burden.**  Samsung, an international conglomerate represented by two leading national law firms (Gibbons PC, later joined by Covington & Burling LLP), has all but "thrown the kitchen sink" at defending against Plaintiffs' complaints and grappling to prevent Plaintiffs from obtaining discovery and procedurally advance the case to trial.  Samsung's hard-fought efforts to litigate this case on the pleadings, as detailed above, has placed a taxing burden on Plaintiffs' counsel, who has been called upon to devote thousands of hours (all contingency based) and an increasing portion of the law practice's resources prosecuting the action.

    2. **Cost.**  Plaintiffs invested thousands of hours of attorney time and incurred costs prosecuting this case in this Court.  Should the Court grant Samsung's long-overdue motion, all that time, effort and expense goes out the window.  As Samsung and this Court may be aware, the undersigned is a solo practitioner.  Throwing to the side three years of billable time and tossing to the curb the Court's favorable ruling on the SAC, all so Samsung gets a "do over" in another more favorable forum, would come at a heavy cost to Plaintiffs.

    First, there is no assurance Plaintiffs will themselves want to adjudicate their claims in arbitration.  Samsung only recently made Plaintiffs aware that an arbitration provision existed, and as self-evident through this opposition, Plaintiffs' preferred forum is this Court.  Further, as

Samsung and this Court is aware, client expectations and interests change over time, and after dismissal of the FAC, Mills elected to not join the SAC.  Now, jettisoning three years' worth of work and starting over in another less favorable forum for Plaintiffs, after substantial litigation in this Court, would test the patience and legal understanding of any private litigant.

Second, even if Plaintiffs White and Cauley pursued claims in arbitration, something they vigorously oppose through this brief, they may be hard pressed to find an economic rationale to do so.  Samsung will certainly argue to the arbitrator that this Court found the arbitration was not waived, and, thus, according to Samsung, it would necessarily follow that the "class arbitration waiver" is enforceable.  In other words, claims against Samsung would be limited to individual claims, not class, and any recovery limited to just Plaintiffs' harm.  With thousands of attorney hours invested to date, having to start from scratch and being hamstrung to just two individual claims would invoke the law of diminishing returns.

Third, thousands of hours of billable time spent on this matter litigating before this Court are at risk of complete loss should this Court grant Samsung's long-belated arbitration request. Such risk is heightened to the extend the undersigned is a solo practitioner.  Candidly, it came as a complete shock that Samsung knowingly kept an arbitration clause under the table for years, pulling it out only after Plaintiffs survived dismissal of the SAC and overcame Samsung's motion for reconsideration and effort to obtain certification to for interlocutory appeal on the Wiretap claim.  It was a particular gut punch that it came after Plaintiffs achieved such a monumental victory, akin to being mugged in the ally while on the way home from a celebration.[24]  Unlike Samsung, we did not know that all the work over the past three years was

_____

[24] Samsung's delay far exceeds the two-year statute of limitations on a claim for civil damages under the Wiretap Act.  18 U.S.C. § 2520(f).

so Samsung could get a free bite to obtain dismissal with prejudice if it could, and then to trot off to arbitration without consequence, years later, if it could not. As Samsung's counsel and this Court is aware, soon after Samsung pulled out the arbitration card, the undersigned sought and received several extensions to respond to the arbitration motion because Samsung's bait and switch tactic caused such undue duress, it aggravated a pre-existing medical condition.[25]

Fourth, should this Court dismiss the action, the case does not start over from scratch. This Court has inalterably shaped the contours of the litigation through prior its rulings and legal opinions. Put differently, after years of testing legal theories and factual support before this Court, Samsung has a much better roadmap by which to defend itself. As an out of the box defense, Samsung may assert that the statute of limitations expired in early 2019, arguing that Plaintiffs waited more than two-years to assert the Wiretap Act claim *in arbitration*. This would almost certainly be a hotly contested issue before the arbitrator. Samsung is certainly in the catbird seat with respect to claims in the SAC this Court dismissed and would certainly get another bite at challenging the Wiretap Act claim on the face of any arbitration claim. In effect, they will try to retain the ground they gained before this Court while seeking a "do over" on any legal and factual ground they lost. They would get their reconsideration, after all.

Fifth, Plaintiffs have already lost Mills, a resident of New York, who joined the Initial Complaint and FAC, and chose to not join the SAC after his claims in the FAC were dismissed. That loss of representation has come at a cost. Likewise, there is no assurance White or Cauley will want to take a run at arbitrating claims against Samsung after having worked so hard over the past three years for what may amount to an entire waste of time and resources.

---

[25] *See* July 10, 2020 and Dec. 18, 2020 letters from Plaintiffs' counsel to Magistrate Judge Dickson regarding aggravated medical condition. ECF Nos. 150, 170.

### C.   SAMSUNG'S WILLFUL AND CONTINUED LITIGATION BEFORE THIS COURT GIVES RISE TO EQUITABLE ESTOPPEL

The FAA was enacted to ensure that arbitration agreements were "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 USC § 2.  Here, equity favors a finding that Samsung is estopped from enforcing a provision that it waived for all the reasons set forth above.[26]

### D.   SAMSUNG'S ARBITRATION PROVISION IS UNCONSCIONABLE

Procedural unconscionability is the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981).  It is generally found in contracts of adhesion.  *Alexander v. Anthony Intern*, 341 F.3d 256, 265 (3d Cir. 2003).  A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis.  *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004).[27] Here, the arbitration provision is buried in "electronic pages" of terms and conditions that do not appear until well-after the SmartTV purchase, are entirely one-sided, and the purpose of the television purchase (*i.e.*, the SmartHub) was rendered inoperable unless Plaintiffs agreed to Samsung's one-sided terms.[28]

---

[26] *See, e.g., Segal v. Strausser Enters.*, 486 Fed. Appx. 240, 243 (3rd Cir. 2012) ("As the District Court correctly explained, equitably estopping a litigant from taking a self-contradictory position is proper if: (1) the parties (or parties in privity with them) were adverse in a prior proceeding; (2) the party seeking estoppel detrimentally relied on its opponent's prior position; and (3) the party seeking estoppel would be prejudiced if its opponent were allowed to assume a new position."); *see also Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503 (Pa. 1983) ("[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.").

[27] The touchstone is whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 886 (Pa. Super. Ct. 2006); *see also Hopkins v. NewDay Fin., LLC*, 2008 U.S. Dist. LEXIS 52009, at *6 (E.D. Pa. June 30, 2008).

[28] The arbitration waiver is substantively unconscionable insofar as Privacy is a fundamental right, essential to who we are as human beings and the protection of human autonomy and dignity, serving as the foundation upon which many other human rights are built. Unlike other personal rights, privacy can

### E.     THE CLASS ARBITRATION WAIVER IS PLAINLY UNENFORCEABLE

Propped-up by just one page in its brief and resting on only two cases that are entirely distinguishable from the facts presented here, Samsung asks this Court to strike all class claims before Plaintiffs even have an opportunity to move for certification under Fed. R. Civ. P. 23.[29] Samsung's class challenge is far too premature and there are myriad other reasons why the Court should deny Samsung's requested relief.

First, the class arbitration waiver Samsung hid for years is neither clear nor conspicuous, and hardly distinct or set apart from other provisions, as Samsung's brief portrays.  *See* Samsung Brief at 5.  Rather, it is inextricably tied to ***within the arbitration provision itself***, tucked away in confusing layers that require a decoding ring to understand; specifically, the non-negotiable clause is buried within subparagraph ¶14.8(f) of subparagraph ¶14.8, neither of which have a discernable heading, interred within paragraph ¶14 under the non-descript heading "General."  *See* Chung Decl., Exhibit 1 at ¶14.[30]  It is a challenging exercise just to locate ¶14.8(f) within

---

be compromised without the person being aware, which makes it particularly egregious when an individual's private, personal information is infringed upon without their permission, as in this case.

[29] *Concepcion* considered whether the FAA preempts California's rule prohibiting class waivers ***in arbitration agreements*** as being unconscionable in certain circumstances.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Unlike here, defendants had not waived arbitration by sitting on their rights, for years.  Importantly, the Court's analysis was limited to ***class arbitration***, and the analysis and facts are inapposite to what is presented here.  *Concepcion*, 563 U.S. 348-50.  In *dicta*, the Court noted "Arbitration is poorly suited to the higher stakes of class litigation." *Id*. at. 350.  Similarly, *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) simply rejects certain possible grounds for holding that the FAA's mandate did not require the relevant class action waiver to be enforced.  *See Italian Colors*, 133 S. Ct. at 2309 (noting that courts must enforce arbitration agreements according to their terms, even in the face of claims that "allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.").  *Italian Colors* did not consider whether a party may enforce an ambiguous class waiver after the party seeking to enforce the provision waived the arbitration provision in which it was the class waiver was embodied and directed.

[30] *See Noble v. Samsung Electronics Am., Inc.*, 682 Fed Appx. 113 (3d Cir. 2017) (finding no "meeting of the minds" because Samsung failed to provide "reasonable notice" to the consumer that the guide included bilateral contractual terms at all or contained an arbitration clause and class action waiver).

Chung Exhibit 1.  Further aggravating clarity, littered throughout the 29-pages of Terms and Conditions is a dizzying use of capital letters to emphasize terms of supposed importance.  *See id*.  Notably, such emphasis is entirely absent from both the so-called class action waiver and the arbitration provision itself in which the waiver is deeply submerged.  *Id*.  Leaving aside that Samsung plainly waived the arbitration provision, the class waiver buried therein is hardly clear and conspicuous and in no way demonstrates that Plaintiffs objectively agreed to the terms.

Second, as set forth above, the "Terms and Conditions" that Samsung and two prominent law firms attached to the instant motion is little more than nonsense. *Id*.  It is comprised of repeating, partial paragraphs, numerically out of order, such that nowhere could Plaintiffs locate a continuous agreement that begins at paragraph 1 and runs through paragraph 14.8 (assuming paragraph 14.8 is even the last paragraph of the Terms and Conditions).  *See infra*, I.A.3.  Just a cursory review of the paragraph numbers on Chung Exhibit 1 reveals that it is a confusing mess.

Third, the so-called class waiver Samsung has belatedly pulled from its sleeve is inextricably intertwined with the arbitration provision in which it is pigeonholed.[31]  It is not a stand-alone provision as Samsung's brief would portray.  Rather, it is a subparagraph of the arbitration provision that Samsung waived by litigating before this Court for years in quest of a merits-based dismissal with prejudice, filing the instant motion only after it could not get one.  Samsung gave up any right to arbitrate and therefore the class arbitration bar is superfluous.  Plaintiffs are not seeking arbitration.  Put differently, it would be illogical to bar class arbitration on one hand when Samsung plainly waived any right to arbitration on the other.  Indeed, along

---

[31] *See, e.g., Robinson v. Va. Coll., LLC*, 788 Fed. Appx. 697, 699-702 (11th Cir. 2019) (affirming the denial of a motion to compel arbitration and to strike class claims finding "Because [plaintiff's] complaint is not subject to arbitration under the agreement, its class action waiver does not govern this dispute.").

with being contained within the arbitration provision itself, the class waiver sub-subparagraph is steeped in language waiving claims to be *arbitrated on a class wide basis*.  Specifically,

> "there shall be no authority for any claims *to be arbitrated*
> on a class or representative basis"

> "*arbitration* can decide only the User's and/or the
> applicable Samsung Entity's individual claims"

> "the *arbitrator* may not consolidate or join the claims of
> other persons or parties who may be similarly situated".

*See* Chung Decl., Exhibit 1 at ¶14.8(f).  Not until the very end of the subparagraph ¶14.8(f), and after referring repeatedly to "*arbitration on a class wide basis*", appears an obscure addon line that a user will not "file or participate in a class action against Samsung."  In this respect, this case is like *Vine v. PLS Fin. Servs.*, 807 Fed. App'x. 320 (5th Cir. 2020), in which the Fifth Circuit found "We agree with the district court that the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated— not as an independently effective waiver of the right to pursue a class action outside the arbitration context."  *Vine*, 807 Fed. App'x at 328.  *Internal quotation omitted*.  "The Borrowers gave up their right to participate in a class action by virtue of their agreement to resolve disputes exclusively through individual arbitration. But once PLS waived the arbitration provision, the Borrowers were free to select another form of dispute resolution, including a class action."  *Id*.  Notably, if anything, the class waiver in *Vine* was much more explicit in its language, appeared in all capital letters, and was in a written agreement, not electronically flashing on a television after the point of purchase.  *Id*.  Although later vacated by the Second Circuit on other grounds, Judge Rakoff's decision in *Meyer v Kalanick*, 200 F.Supp.3d 408, 453-55 (S.D.N.Y. 2016), *vacated on other grounds*, 88 F.3d. 66 (2d Cir. 2017) provides another useful example of a class action waiver being invalidated in this

context, as well as a cogent summary of the relevant legal landscape.[32]  It would strain credulity for Samsung to argue that a scant few words, without a heading or any emphasis, deeply buried *in an arbitration provision* that Samsung has plainly waived, one may say concealed, should be extracted, resurrected, and enforced, while each of the hundreds of other words that comprise the arbitration clause in ¶14.8 should be disregarded.  It is part and parcel on an arbitration provision that Samsung waived.

Finally, in explicit recognition that recovery for individual claims may be so limited that bringing an individual action rather than class action would be cost prohibitive, Samsung attempts to obviate such concern in ¶14.8(g).  Specifically, Samsung offers:

> if the User is able to demonstrate that the costs of arbitration will be prohibitive as compared to the costs of litigation, Samsung will pay as much of the User's filing and hearing fees in connection with the arbitration as the arbitrator deems necessary to prevent the arbitration from being cost prohibitive….

After litigating in this Court for more than three-years, Samsung's cost avoidance promises rings hollow.  Samsung knew its Terms and Conditions contained an arbitration provision and class arbitration waiver, along with terms supposedly making arbitration less cost prohibitive for Plaintiffs.  Instead, Samsung silently forced Plaintiffs to spend years litigating before ever once raising the arbitration provision or class waiver.  Samsung made its bed and must lie in it.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Samsung's motion to compel arbitration and strike Plaintiffs class claims should be denied.

---

[32] As Judge Rakoff found, "Given this context, the bolded sentence is most plausibly read as an explanation of the rights that the parties are giving up in agreeing to arbitrate disputes, and not as an independently effective waiver of the right to pursue a class action outside the arbitration context.  Since no motion to compel arbitration has been made (and, as noted, appears to have been effectively relinquished), plaintiff Meyer has not, by agreeing to the Dispute Resolution paragraph, waived any right to proceed via a class action lawsuit outside the arbitration context.  *Id*. at 453-54.

Dated: March 30, 2021                    Respectfully submitted,


                                         **THE MACK FIRM**

                                         _____/s/_____
                                              MACK PRESS

                                         Mack Press
                                         9 Pimlico Drive
                                         Commack, NY 11725

                                         *Attorney for Plaintiffs*