# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS ROGER WHITE, JR. and PATRICIA CAULEY on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SONY ELECTRONICS INC.,<br><br><br><br>　　　　　　　Defendants. | Civil Action No. 17-1775 (MCA) (JAD)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Joseph A. Dickson, U.S.M.J.<br><br>**Return Date:  TBD**<br><br>Oral Argument Requested |

---

## DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STRIKE PLAINTIFFS' CLASS CLAIMS

---

GIBBONS PC
One Gateway Center
Newark, NJ 07102
Tel: (973) 596-4500

*Attorneys Samsung
Electronics America, Inc.*

COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

*Attorneys for Samsung
Electronics America, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

I.    STATEMENT OF FACTS ................................................... 2

    A.    Plaintiffs' Agreement For Binding Arbitration and Class Action Waiver ...................................................................... 2

    B.    Procedural History Leading to Samsung's Motion to Compel Arbitration ............................................................ 6

II.    BECAUSE PLAINTIFFS ENTERED INTO VALID AGREEMENTS TO ARBITRATE THE SPECIFIC DISPUTE IN THIS ACTION, THIS MATTER MUST BE REFERRED TO BINDING ARBITRATION. ......................................................... 8

    A.    Plaintiffs Expressly Consented To Arbitrate Any Disputes Concerning The Samsung SmartTV's SmartHub Services. .............. 10

    B.    The Arbitration Agreement Clearly and Unmistakably Assigns Questions Of Scope To The Arbitrator. ............................................. 14

    C.    In Any Event, The Arbitration Agreement Here Covers Plaintiffs' Claim With Respect to Each SmartTV. ........................... 16

III.    PLAINTIFFS CANNOT ESTABLISH ANY DEFENSE TO ENFORCEMENT OF THE ARBITRATION AGREEMENT................... 18

    A.    The Arbitration Agreement Is Not Unconscionable. ......................... 19

    B.    SEA Did Not Waive Its Arbitration Right. ....................................... 22

        1.    No Discovery Has Been Conducted. ..................................... 23

        2.    This Motion To Compel Arbitration Is Timely. ...................... 24

        3.    Contesting The Merits On A Motion To Dismiss Is Not A Waiver. .................................................................... 26

        4.    Samsung Promptly Notified Plaintiffs Of Its Intent To Seek Arbitration. ...................................................... 28

      5.     Non-Merits Motion Practice. .................................................... 28

      6.     Samsung Acquiesced To Pretrial Orders Only
            Concerning Motions To Dismiss And Pleadings.................... 28

IV.    THE COURT SHOULD DISMISS OR STAY THIS ACTION.................. 29

V.     PLAINTIFFS' CLASS CLAIMS SHOULD BE STRICKEN. .................... 31

      CONCLUSION ............................................................................. 33

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*,
  No. 08-cv-4369, 2009 WL 10731035 (D.N.J. June 18, 2009) ...........................30

*ADP, LLC v. Lynch*,
  No. 16-cv-01053, 2016 WL 3574328 (D.N.J. June 30, 2016) ...........................11

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013).........................................................................................32

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................*passim*

*AT&T Techs., Inc. v. Comm'n Workers of Am.*,
  475 U.S. 643 (1986).........................................................................................16

*Bar-Ayal v. Time Warner Cable Inc.*,
  No. 03-cv-9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ........................21

*Battaglia v. McKendry*,
  233 F.3d 720 (3d Cir. 2000) ...........................................................................16

*Beture v. Samsung Elecs. Am., Inc.*,
  No. 17-cv-5757, 2018 WL 4621586 (D.N.J. July 18, 2018).............9, 12, 14, 15

*Camilo v. Uber Techs., Inc.*,
  No. 17-cv-9508, 2018 WL 2464507 (S.D.N.Y. May 31, 2018)........................32

*Cavallo v. Uber Techs., Inc.*,
  No. 16-cv-4264, 2017 WL 2362851 (D.N.J. May 31, 2017) .....................10, 29

*Chassen v. Fid. Nat'l Fin., Inc.*,
  836 F.3d 291 (3d Cir. 2016) ........................................................................9, 14

*Corwin v. NYC Bike Share, LLC*,
  238 F. Supp. 3d 475, 489 (S.D.N.Y. 2017) ....................................................20

*Crawford v. W. Jersey Health Sys. (Voorhees Div.)*,
  847 F. Supp. 1232 (D.N.J. 1994).....................................................................30

iii

*Davis v. Dell*,
   No. 07-cv-630, 2007 WL 4623030 (D.N.J. Dec. 28, 2007) ...............................12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).....................................................................................9

*Edmondson v. Lilliston Ford, Inc.*,
   593 F. App'x 108 (3d Cir. 2014) ......................................................................30

*Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.*,
   367 F. Supp. 2d 711 (E.D. Pa. 2005).................................................................26

*Falk v. Aetna Life Ins. Co.*,
   No. 19-cv-00434, 2019 WL 4143882 (D.N.J. Aug. 31, 2019)................9, 12, 20

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)...........................................................................10, 11, 14

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...............................................................13

*George S. Hofmeister Family Tr. v. FGH Indus., LLC*,
   No. 06-cv-13984, 2007 WL 2984188 (E.D. Mich. Oct. 12, 2007) ...................25

*Gillman v. Chase Manhattan Bank*,
   73 N.Y.2d 1 (1988) ........................................................................................20

*Golden v. Mobil Oil Corp.*,
   882 F.2d 490 (11th Cir. 1989) ........................................................................19

*Great W. Mortg. Corp. v. Peacock*,
   110 F.3d 222 (3d Cir. 1997) .....................................................................22, 29

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)....................................................................................15

*High v. Balun*,
   943 F.2d 323 (3d Cir. 1991) ...........................................................................10

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
   980 F.2d 912 (3d Cir. 1992) ....................................................................*passim*

*James v. Glob. Tel\*Link Corp.*,
   No. 13-cv-4989, 2016 WL 589676 (D.N.J. Feb. 11, 2016)..........................23, 24

*Just B Method, LLC v. BSCPR, LP*,
   No. 14-cv-1516, 2014 WL 5285634 (E.D. Pa. Oct. 14, 2014)..........................26

*Khorchid v. 7-Eleven, Inc.*,
   No. 18-cv-8525, 2019 WL 3812472 (D.N.J. Aug. 14, 2019)..........................26

*Koons v. Jetsmarter, Inc.*,
   No. 18-cv-16723, 2019 WL 3082687 (D.N.J. July 15, 2019)..........................12

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)........................................................................29

*Lloyd v. HOVENSA, LLC.*,
   369 F.3d 263 (3d Cir. 2004) ...............................................................10

*Manopla v. Raymours Furniture Co.*,
   No. 17-cv-7649, 2018 WL 3201800 (D.N.J. June 29, 2018) ...........................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*,
   822 F. Supp. 125 (S.D.N.Y. 1993) .......................................................17

*Miracle-Pond v. Shutterfly, Inc.*,
   No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) .......................14

*Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*,
   No. 03-cv-0772, 2004 WL 1950370 (D.N.J. Feb. 9, 2004)..............................19

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...............................................................................9

*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) ...................................................20

*Neal v. Asta Funding, Inc.*,
   No. 13-cv-3438, 2014 WL 131770 (D.N.J. Jan. 6, 2014) ...............................30

*Nino v. Jewelry Exch., Inc.*,
   609 F.3d 191 (3d Cir. 2010) ................................................................23

*PaineWebber Inc. v. Faragalli,*
    61 F.3d 1063 (3d Cir. 1995) ...............................................................22, 25, 29

*In re Pharmacy Ben. Managers Antitrust Litig.,*
    700 F.3d 109 (3d Cir. 2012) ..............................................................23

*Ragone v. Atl. Video at Manhattan Ctr.,*
    595 F.3d 115 (2d Cir. 2010) ..............................................................19

*Raynor v. Verizon Wireless (VAW), LLC,*
    No. 15-cv-5914, 2016 WL 1626020 (D.N.J. Apr. 25, 2016) ............................17

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010).........................................................................15, 18

*Sablosky v. Edward S. Gordon Co.,*
    73 N.Y.2d 133 (1989) ......................................................................20

*Salco Distributors, LLC v. iCode, Inc.,*
    No. 05-cv-642, 2006 WL 449156 (M.D. Fla. Feb. 22. 2006) ............................12

*Scaba v. Jetsmarter, Inc.,*
    No. 18-cv-17262, 2019 WL 3947510 (D.N.J. Aug. 21, 2019)...........................15

*Semenko v. Wendy's Int'l, Inc.,*
    No. 12-cv-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ........................32

*Serine v. Marshall, Dennehey, Warner, Coleman & Goggin,*
    No. 14-cv-4868, 2015 WL 4644129 (E.D. Pa. Aug. 5, 2015)............................26

*Sho-oja v. Sprint Corp.,*
    No. 13-cv-8575, 2014 WL 12561584 (C.D. Cal. Jan. 16, 2014) ......................18

*Singh v. Uber Techs. Inc.,*
    235 F. Supp. 3d 656, 666 (D.N.J. 2017).......................................................12, 13

*Starke v. Gilt Groupe, Inc.,*
    No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)........................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    No. 10-cv-5458, 2011 WL 5325589 (N.D. Cal. Sept. 19, 2011) ......................21

*Thomas v. A.R. Baron & Co.*,
    967 F. Supp. 785 (S.D.N.Y. 1997) ...................................................................25

*Trippe Mfg. Co. v. Niles Audio Corp.*,
    401 F.3d 529 (3d Cir. 2005) .........................................................................9, 14

*Walzer v. Muriel Siebert & Co.*,
    No. 04-cv-5672, 2008 WL 11513209 (D.N.J. Dec. 31, 2008) ...........................30

*Whitt v. Prosper Funding LLC*,
    No. 15-cv-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ...........................12

*Wood v. Prudential Ins. Co. of Am.*,
    207 F.3d 674 (3d Cir. 2000) .......................................................................26, 27

*Zamber v. Am. Airlines, Inc.*,
    No. 16-cv-23901, 2020 WL 1445479 (S.D. Fla. Feb. 11, 2020)........................13

**Statutes**

9 U.S.C. § 2 ...........................................................................................................8, 18

9 U.S.C. § 3 ...............................................................................................................30

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................32

Fed. R. Civ. P. 12 .....................................................................................................32

## INTRODUCTION

Plaintiffs Cauley and White seek to litigate in this Court claims relating to their Samsung SmartTV services—claims that they agreed would be resolved exclusively by individual arbitration, not in court and not in a class action.  The agreed-upon Terms and Conditions for using the SmartTV services that are the subject of this action require that:

> **any claim, dispute or controversy** . . . the User may have against any Samsung entity . . . **arising out of, relating to, or connected in any way with the [SmartTV] Services or the determination of the scope or applicability of this clause**, **will be resolved exclusively by final and binding arbitration** . . .

Under well-settled law in this Circuit, Plaintiffs' consent to the Terms and Conditions for using their SmartTV services requires dismissal of this lawsuit and compelling Plaintiffs to arbitrate their claims, individually.

Plaintiffs' refusal to arbitrate is groundless.  Plaintiffs insist that Samsung "waived" its right to arbitrate by filing and initially prevailing in its motion to dismiss the entire lawsuit on legal grounds, with the Court later reinstating their Wiretap Act claims.  As a matter of law, the prerequisites for finding waiver in this Circuit—extensive discovery and prejudice—do not exist.  Furthermore, any claimed "delay" in compelling arbitration was of Plaintiffs' own making since the complaint's failure to allege specific facts about their purchase transactions made an immediate motion to compel arbitration impracticable.

## I.    STATEMENT OF FACTS

Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of Samsung Electronics Co., Ltd. responsible for marketing and selling Samsung SmartTVs and other products in the United States.  *See* Second Amended Class Action Complaint, ECF No. 88 ("Compl." or "Complaint"), ¶ 21. Plaintiff Cauley alleges that she purchased a Samsung SmartTV Model No. UN55KS8000FXZA ("KS8000") in New Jersey in January 2017.  Compl. ¶ 15. Plaintiff White, a Florida resident, alleges that he purchased a 2016 model year Samsung SmartTV, Model No. UN55KU6300F ("KU6300"), as well as a 2015 model year Samsung SmartTV, Model No. UN32J5500AF ("J5500").  *Id.* ¶ 16. Plaintiffs assert that the SmartTV services accompanying their Samsung Smart TVs unlawfully intercept users' electronic communications with "automated content software" ("ACS" or "ACR"), purportedly in violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.  See id.* ¶¶ 166-67.

### A.    Plaintiffs' Agreement For Binding Arbitration and Class Action Waiver

Each of Plaintiffs' SmartTVs came equipped with Samsung's "SmartHub" software, which, if enabled by the user, allows the use of certain SmartTV services and internet-based applications, such as Netflix, Hulu, and YouTube, as well as other "smart" features.  *See* Declaration of Khaled Abuali ("Abuali Decl."), ¶ 4. Plaintiffs allege that they set-up and used their SmartTVs.  Compl. ¶¶ 15-16, ECF

2

No. 88.  The initial set-up process for the SmartTVs included instructions for

setting up SmartHub, whereby a user would be presented with a screen titled

"Smart Hub Terms & Conditions, Privacy Policy," as shown below:



Abuali Decl. ¶ 4.  The SmartHub screen would notify users that their "use of the

SmartTV [was] governed by the Terms & Conditions and Privacy Policy" and they

must "agree and acknowledge [their] understanding to proceed with set-up" of

SmartHub.  *Id.*

By clicking on the button labelled "View details" next to "Terms and

Conditions," a user could open the text of the Samsung Terms and Conditions in a

new page on their SmartTV, and review them in full.  *Id.* ¶ 5.  There was no time

limit imposed for a user to review the Terms and Conditions.  *Id.*  The Terms and

Conditions, to which Plaintiffs Cauley and White agreed when setting up their

KS8000 and KU6300 SmartTVs, respectively, included a binding arbitration

provision (the "Arbitration Agreement") stating that:

> By using the Services, the User unconditionally consents and agrees
> that: (a) *any claim, dispute or controversy* (whether in contract, tort, or
> otherwise) the User may have against any Samsung entity, the officers,
> directors, agents and employees of any Samsung entity (the "Samsung
> Entity(ies)") *arising out of, relating to, or connected in any way with
> the Services or the determination of the scope or applicability of this
> clause, will be resolved exclusively by final and binding arbitration*
> administered by the ICC and conducted before a sole arbitrator in
> accordance with the rules of the ICC; (b) this clause is made pursuant
> to a transaction involving interstate commerce, and shall be governed
> by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16; …

*Id.*, Ex. 1, § 14.8 (emphasis added).[1]

The Terms and Conditions broadly define "Services" to include any

"productions, application, software, information offering services, services,

websites and other related services" provided by Samsung or any designated third

party "on or through the Samsung SmartTV," *see id.*, Ex. 1, § 1.1(b)-(c).  The

Terms and Conditions also specify that arbitration shall be strictly for individual

claims and prohibit the filing of any class action against Samsung:

> [T]here shall be no authority for any claims to be arbitrated on a class
> or representative basis, arbitration can decide only the User's and/or the
> applicable Samsung Entity's individual claims; the arbitrator may not
> consolidate or join the claims of other persons or parties who may be

---

[1] The Terms and Conditions presented when Plaintiff White set up his model J5500
did not include an arbitration provision.

4

similarly situated; and the User will not file or participate in a class action against Samsung.

*Id.*, Ex. 1, § 14.8(f).

In setting up their 2016 model year Samsung SmartTVs, Plaintiffs would have had three options with respect to these Terms and Conditions.  Plaintiffs could have clicked the "Skip" button at the top of the "Smart Hub Terms & Conditions, Privacy Policy" page, thereby opting-out of the Terms and Conditions. *See id.* ¶ 7.  If Plaintiffs had opted-out of the Terms and Conditions, their Samsung televisions would have been operational nonetheless, but the SmartHub software and all "smart" services and features—including all internet-based applications and interest-based services using ACR (if even available on the model)—would not have been activated on the SmartTV.  *Id.*

Alternatively, a user, like Plaintiffs here did, could "click the OK" (and the boxes for other available "additional services" they desired, if any), thereby agreeing to the Terms and Conditions and enabling SmartHub.  *Id.* ¶ 6.  Also, a user would have had the option of clicking "I Agree to all" in order to agree in one "click" to the Terms and Conditions and all available "additional services."  *Id.*

Plaintiffs Cauley and White each affirmatively agreed to the Terms and Conditions and Arbitration Agreement.  *Id.* ¶¶ 11-12, 19-20.  Plaintiff Cauley agreed on January 30, 2017, and Plaintiff White agreed on December 26, 2016.  *Id.* ¶¶ 11, 19.

5

**B.     Procedural History Leading to Samsung's Motion to Compel Arbitration**

The original complaint was filed on March 16, 2017—by Plaintiff White and two other now-dismissed Plaintiffs—against SEA, Sony Electronics Inc., LG Electronics USA, Inc., and their respective foreign parent companies, asserting eight separate claims for relief ranging from violations of the Video Privacy Protection Act to breach of warranty. *See* ECF No. 1. The complaint did not identify model numbers or serial numbers for Plaintiffs' SmartTVs—information necessary for SEA to establish Plaintiffs' consent to arbitrate. *See id.* In 2017, Defendants jointly moved to dismiss the complaint; Plaintiffs filed no opposition and on September 26, 2017, this Court administratively terminated the case at Plaintiffs' request. *See* ECF No. 38.

The case was restored to the docket three months later, and Plaintiff White and then-Plaintiff Mills filed the First Amended Complaint ("FAC"). *See* ECF Nos. 42, 45. The FAC still did not disclose the model or serial numbers of Plaintiffs' SmartTVs. *See* ECF No. 45. Defendants jointly filed another motion to dismiss on February 23, 2018. ECF No. 54, 63.[2]

After briefing on this second motion to dismiss was already completed, the Court ordered Plaintiffs to provide the model and serial numbers of their SmartTVs

---

[2] Plaintiffs never served any foreign entities and none are currently defendants. LG Electronics, USA was dropped from the complaint in May 2018. ECF No. 74.

6

in an initial disclosure. ECF No. 66.  On April 11, 2018, Plaintiff White provided an incomplete serial number for his 2015 model J5500 SmartTV.  *See* Declaration of Simon J. Frankel ("Frankel Decl."), ¶ 2.  On September 26, 2018, the Court granted Defendants' joint motion to dismiss, in its entirety.  *See* ECF No. 82.  As a result, there was no need to continue to expend time and resources tracking down Plaintiffs' serial number information.

Plaintiffs filed a Second Amended Complaint ("SAC") on November 16, 2018, dropping Mills and two claims and adding Plaintiff Cauley, but otherwise asserting the same basic allegations as in the FAC.  *See* ECF No. 88.  The SAC provided an incomplete serial number for one of Plaintiff White's SmartTVs.  *See* Compl. ¶ 16.  While the SAC included the alleged *model* number of Plaintiff Cauley's SmartTV, it failed to disclose the *serial* number necessary to identify her consent records, despite the Court's prior order.  *See id.* ¶ 15; ECF No. 66.

On December 17, 2018, Defendants jointly moved to dismiss the SAC on the strength of the Court's prior decision.  *See* ECF No. 94.  On August 21, 2019, the Court granted the motion in part but allowed Plaintiffs' Wiretap Act claims to proceed.  *See* ECF No. 104.  Reconsideration was denied on March 24, 2020.  *See* ECF No. 131.

On April 27, 2020, Plaintiffs provided, for the first time, complete serial number information for all of Plaintiffs' SmartTVs.  *See* Frankel Decl. ¶ 3.  This

7

information enabled Samsung to identify its records showing the Plaintiffs'

activation of SmartHub software and consent to Samsung's Terms and Conditions,

including the Arbitration Agreement.  *See* Abuali Decl. ¶¶ 11, 19.  Thereafter,

SEA's counsel informed Plaintiffs' counsel of SEA's intent to seek to compel

arbitration and emailed a letter formally demanding arbitration.  *See* Frankel Decl.

¶¶ 4-5 & Ex. 4.  Plaintiffs did not respond.  *Id.* ¶ 7.  No discovery has been

undertaken here except Plaintiff White's court-ordered initial disclosures in April

2018.  In fact, discovery had been stayed since April 2018 by stipulated orders, *see*

ECF Nos. 72, 128, Frankel Decl. ¶ 8.[3]

## II.    BECAUSE PLAINTIFFS ENTERED INTO VALID AGREEMENTS TO ARBITRATE THE SPECIFIC DISPUTE IN THIS ACTION, THIS MATTER MUST BE REFERRED TO BINDING ARBITRATION.

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a

"liberal federal policy favoring arbitration," and courts must "enforce [arbitration

agreements] according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 339 (2011) (citation and internal quotation marks omitted).

---

[3] To date, pursuant to Court direction, the only discovery taken has been (i) the exchange of initial disclosures, and (ii) a single interrogatory served by Plaintiffs related to this motion.  *See* ECF No. 152; ECF No. 157.

To compel arbitration, the Court must determine that (1) "a valid agreement to arbitrate exists," and (2) "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). But "[i]f the parties have contractually agreed to submit to the arbitrator the issue of whether a dispute falls within the scope of the Agreement," then the Court should stop at the first step, and compel arbitration in order for the arbitrator to determine the scope of the arbitration agreement. *Beture v. Samsung Elecs. Am., Inc.*, No. 17-cv-5757, 2018 WL 4621586, at *3 (D.N.J. July 18, 2018) (delegating question of arbitrability to arbitrator based on Samsung arbitration agreement); *see Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 304 n.17 (3d Cir. 2016) ("The scope of an arbitration clause is decided by the court absent clear and unmistakable evidence that the parties agreed to submit this issue to the arbitrator.").

When these two questions are decided in favor of arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see Falk v.*

9

*Aetna Life Ins. Co.*, No. 19-cv-00434, 2019 WL 4143882, at *2 (D.N.J. Aug. 31, 2019) (recognizing the "emphatic federal policy in favor of arbitral dispute resolution" and compelling arbitration based on electronic agreement).  Once the Court directs the parties to proceed to arbitration, it must either dismiss the action or grant a stay pending arbitration.  *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004); *Cavallo v. Uber Techs., Inc.*, No. 16-cv-4264, 2017 WL 2362851, at *10 (D.N.J. May 31, 2017).

### A. Plaintiffs Expressly Consented To Arbitrate Any Disputes Concerning The Samsung SmartTV's SmartHub Services.

The question of whether Plaintiffs agreed to arbitrate is governed by "ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here, a conflict-of-law analysis might consider the laws of three states: New Jersey (the location of Defendant SEA, Plaintiff Cauley, and this action), Florida (the location of Plaintiff White), and New York (the law selected in the choice-of-law provision in the Terms and Conditions, *see* Abuali Decl., Ex. 1, § 14.8).

However, a choice-of-law analysis is unnecessary because, as shown below, there is no conflict among the applicable states' laws strongly favoring enforcement of "clickwrap" agreements like the one at issue here.  *See, e.g.*, *High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991) ("Where the application of either state's

10

law would yield the same result, no conflict exists to be resolved." (citation omitted)).

Under "ordinary state-law principles that govern the formation of contracts," *First Options*, 514 U.S. at 944, Plaintiffs affirmatively agreed to the Arbitration Agreement. Specifically, during the set-up of their KS8000 and KU6300 SmartTVs, Plaintiffs expressly acknowledged that they understood and agreed to the "Terms & Conditions" for use of Samsung's SmartHub software and services. Abuali Decl. ¶¶ 6, 11, 19. These Terms and Conditions specified that "[b]y using our Services, you are agreeing to the terms of this Agreement" and "unconditionally consent[ing] and agree[ing]" to "final and binding arbitration" of any claim or dispute concerning use of the software. *Id.*, Ex. 1, § 14.8.

The Terms and Conditions are a classic example of an enforceable "clickwrap" agreement, which "requires a [] user to affirmatively manifest their asset to the terms of the contract," usually by clicking a box or toggling a button. *Manopla v. Raymours Furniture Co.*, No. 17-cv-7649, 2018 WL 3201800, at *4 (D.N.J. June 29, 2018). "Numerous courts, including courts in the Third Circuit, have enforced clickwrap agreements." *ADP, LLC v. Lynch*, No. 16-cv-01053, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016).

For example, courts have recognized for more than a decade that "[u]nder [] New Jersey … law, when a party uses his computer to click on a button signifying

11

his acceptance of terms and conditions in connection with an online transaction, he

thereby manifests his assent to an electronic agreement." *Davis v. Dell*, No. 07-cv-

630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007).[4]  Clickwrap agreements also

are enforced under New York and Florida law.  *See, e.g.*, *Beture*, 2018 WL

4621586, at *6 (finding Samsung clickwrap agreement enforceable under New

York law where Samsung provided "reasonable notice of the terms … by

displaying the [Agreement] during initialization of the [phone] and restricting

activation of the phone until the Agreement was affirmatively assented to"); *Whitt*

*v. Prosper Funding LLC,* No. 15-cv-136, 2015 WL 4254062, at *4 (S.D.N.Y. July

14, 2015) (noting that "[i]n New York, clickwrap agreements are valid and

enforceable contracts" and compelling arbitration where user accepted arbitration

agreement by clicking a box next to hyperlinked agreement (citation and internal

quotation marks omitted)); *Koons v. Jetsmarter, Inc.*, No. 18-cv-16723, 2019 WL

3082687, at *4 (D.N.J. July 15, 2019) (noting that "Florida routinely enforces click

wrap agreements" and enforcing clickwrap agreement); *Salco Distributors, LLC v.*

*iCode, Inc.*, No. 05-cv-642, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22. 2006)

(noting that "[i]n Florida and the federal circuits ... clickwrap agreements are valid

---

[4] *See also, e.g.*, *Falk*, 2019 WL 4143882, at *4 (enforcing clickwrap arbitration
agreement under New Jersey law); *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656,
666 (D.N.J. 2017) (same), *vacated on other grounds*, 939 F.3d 210 (3d Cir. 2019).

and enforceable contracts" and enforcing agreement that user accepted by clicking

a box marked "I accept").

     Moreover, the terms and conditions of such agreements may be incorporated

through a hyperlink. *See, e.g.*, *Singh*, 235 F. Supp. 3d at 665 (applying New Jersey

law) ("In the internet era, when agreements are often maintained, delivered and

signed in electronic form, a separate document may be incorporated through a

hyperlink[.]" (internal quotations and citation omitted)); *Starke v. Gilt Groupe,*

*Inc.*, No. 13-cv-5497, 2014 WL 1652225, at *2-4 (S.D.N.Y. Apr. 24, 2014)

(applying New York law and enforcing clickwrap agreement where arbitration

provision was available through a hyperlink); *Zamber v. Am. Airlines, Inc.*, No. 16-

cv-23901, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) ("Federal courts have

consistently enforced clauses contained in clickwrap agreements like the one at

issue here, where the agreement is presented via a hyperlink to a page separate

from the one containing the box or button manifesting assent." (citation and

internal quotation marks omitted)).  Where a user accepts the terms and conditions

with an opportunity to review them, whether she actually read the terms and

conditions is immaterial.  "Failure to read a contract before agreeing to its terms

does not relieve a party of its obligations under the contract."  *Fteja v. Facebook,*

*Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (citation and internal quotation

marks omitted).

As recently as May 2020, a federal court enforced an arbitration provision involving a consent flow almost identical to the one at issue here.  In *Miracle-Pond v. Shutterfly, Inc.*, the district court found that a user agreed to an arbitration provision by clicking an "Accept" button on a page that linked to Shutterfly's Terms of Use, which included the arbitration provision.  No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020).  Like in *Shutterfly*, Samsung provided "a clear and conspicuous statement that … a user agreed to the Terms [and Conditions] and Privacy Policy by clicking a link or pressing a button."  *Id.* at *4.  Plaintiffs clicked the button, demonstrating their assent to the Arbitration Agreement.  Thus, a valid agreement to arbitrate exists under "ordinary state-law principles" governing the formation of contracts—whether under New Jersey, New York, or Florida law.  *See First Options*, 514 U.S. at 944.

### B.   The Arbitration Agreement Clearly and Unmistakably Assigns Questions Of Scope To The Arbitrator.

After the Court determines the existence of an arbitration agreement, the next step is to decide whether "the particular dispute falls within the scope of that agreement," *Trippe Mfg. Co.*, 401 F.3d at 532, unless the agreement itself "clear[ly] and unmistakabl[y]" assigns the question of arbitrability to the arbitrator, *Chassen*, 836 F.3d at 304 n.17.  When the contract assigns that question to the arbitrator, it is presumed the dispute falls within the scope of the arbitration agreement.  *See Beture*, 2018 WL 4621586, at *3 ("If the parties have

14

contractually agreed to submit to the arbitrator the issue of whether a dispute falls

within the scope of the Agreement, then this Court will compel arbitration in order

for the arbitrator to make such a determination.").

The Arbitration Agreement here does exactly that, stating that "the

determination of the *scope or applicability* of this clause, will be resolved

exclusively by final and binding arbitration ...."  Abuali Decl. Ex. 1, § 14.8(a)

(emphasis added).  Indeed, courts in this district have found an intent to delegate

based on less.  *See, e.g.*, *Beture*, 2018 WL 4621586, at *10 (finding "the parties

clearly and unmistakably delegated arbitrability to the arbitrator" by incorporating

AAA rules); *Scaba v. Jetsmarter, Inc.*, No. 18-cv-17262, 2019 WL 3947510, at *6

(D.N.J. Aug. 21, 2019) (unmistakable delegation where parties delegated "[a]ny

claim or dispute … whether related to this Agreement, any of the Terms and

Conditions or the relationships or rights or obligations contemplated herein,

including the validity of this clause").  Thus, because "the parties' contract clearly

and unmistakably delegated the arbitrability question to an arbitrator, the courts

must respect the parties' decision as embodied in the contract" without further

inquiry into the scope of the Arbitration Agreement.  *Henry Schein, Inc. v. Archer

& White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).  The "gateway" question of

arbitrability is therefore within the purview of the arbitrator.  *Rent-A-Ctr., W., Inc.

v. Jackson*, 561 U.S. 63, 68-70 (2010).

15

**C.    In Any Event, The Arbitration Agreement Here Covers Plaintiffs' Claim With Respect to Each SmartTV.**

Although the Court need not and should not reach issues of scope, this dispute falls squarely within the Arbitration Agreement, which applies to "***any*** claim, dispute or controversy … against any Samsung entity … arising out of, relating to, or connected in any way with the Services." Abuali Decl. Ex. 1, § 14.8(a) (emphasis added). "Services" are broadly defined to include all SmartTV services, such as the technology that is the subject matter of this lawsuit. *See Id.* § 1.1(b) (defining "Services" as "Samsung's productions, application, ***software***, information offering services, services, websites and other related services provided by us or any third party designated by us on or through the Samsung Smart TV" (emphasis added)); Compl. ¶¶ 166-67 (alleging Wiretap Act violations based the SmartTVs ACR software).

In assessing the scope of an agreement to arbitrate, courts apply a "presumption of arbitrability," meaning the court must order arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted); *see, e.g.*, *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) (applying the presumption of arbitrability and adopting "broad construction" of arbitration provision). Only "the most forceful evidence of a purpose to exclude the claim from arbitration can

16

prevail." *AT&T*, 475 US. at 650 (internal quotation marks omitted).  Here,

Plaintiffs' claim that Samsung's software allegedly intercepted Plaintiffs'

communications on their SmartTVs, *see* Compl. ¶¶ 166-167, plainly "arise[s] out

of, relat[es] to, or [is] connected in any way with" Samsung's software or services.

Abuali Decl., Ex. 1, § 14.8(a).  It therefore falls directly within the scope of the

Arbitration Agreement.  *See, e.g.*, *Raynor v. Verizon Wireless (VAW), LLC*, No.

15-cv-5914, 2016 WL 1626020, at *5 (D.N.J. Apr. 25, 2016) ("[C]ourts have

generally read the terms 'arising out of' or 'relating to' a contract … as indicative

of an 'extremely broad' agreement to arbitrate any dispute relating in *any* way to

the contract."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F.

Supp. 125, 132 (S.D.N.Y. 1993) ("[W]here the agreement contains a 'broad'

arbitration clause, such as the one at issue here, purporting to submit to arbitration

'any controversy between us arising out of your business or this agreement,' the

strong presumption in favor of arbitrability has been held to apply with even

greater force.").

That Plaintiff White also purchased an earlier model J5500 Samsung

SmartTV with accompanying Terms and Conditions silent as to arbitration, does

not alter this analysis.  Plaintiff White's consent to the Terms and Conditions and

arbitration provision of his newer model KU6300 SmartTV mandates arbitration of

***any*** claims arising out of, related to, or connected with the "Services"—i.e., the

*SmartTV services* that are the subject matter of Plaintiffs' Wiretap Act claim. *See* Abuali Decl. Ex. 1, at § 1.1(b)-(c). The "Services" at issue are the SmartTV services, not the hardware constituting a particular television set. *See Sho-oja v. Sprint Corp.*, No. 13-cv-8575, 2014 WL 12561584, at *4 (C.D. Cal. Jan. 16, 2014) (holding that arbitration agreements applicable to a defendant's "services" "are interpreted broadly to encompass all manner of disputes between the parties," and requiring mobile telephone customer to arbitrate claims that defendant violated privacy laws). Plaintiff White's claim therefore falls directly within the reach of the Arbitration Agreement because his claim, as it relates to both his SmartTVs, arises out of or is connected in some way with the "Services"—specifically, the ACS or ACR software allegedly provided through his SmartTVs. *See, e.g.*, Compl. ¶ 4.

## III.   PLAINTIFFS CANNOT ESTABLISH ANY DEFENSE TO ENFORCEMENT OF THE ARBITRATION AGREEMENT.

Under the FAA, arbitration agreements are valid and enforceable except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A plaintiff may therefore seek to invalidate an arbitration agreement only by invoking "generally applicable contract defenses." *Rent-A-Ctr.*, 561 U.S. at 68. No such defense applies to the Arbitration Agreement.

### A.    The Arbitration Agreement Is Not Unconscionable.

A contract is unconscionable *only* when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation and alteration omitted) (applying New York law); *see also Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (unconscionability exists under Florida law only when "no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice"); *Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*, No. 03-cv-0772, 2004 WL 1950370, at *7 (D.N.J. Feb. 9, 2004) (under New Jersey law, "[u]nconscionability hinges on a finding of an imbalance of power and unreasonable contractual terms"). To establish unconscionability, a party must generally show the provision is both procedurally and substantively unconscionable. *Ragone*, 595 F.3d at 121. "The procedural element … concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract …." *Id.* at 121-22. The Arbitration Agreement here is not unconscionable under either standard.

Procedurally, the Arbitration Agreement is not unconscionable because it does not bear the hallmarks of a contract of adhesion. "The procedural element of unconscionability requires an examination of the contract formation process and

the alleged lack of meaningful choice," *Gillman v. Chase Manhattan Bank*, 73

N.Y.2d 1, 10-11 (1988), and typically requires the use of "high pressure tactics or

deceptive language in the contract" *and* "inequality of bargaining power between

the parties," *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139 (1989).  Here

there is no high pressure sales tactics or deceptive language—a fact sufficient on

its own to reject a finding of procedural unconscionability.  *See Nayal v. HIP*

*Network Servs. IPA, Inc*., 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009) (enforcing

arbitration agreement because plaintiff did not allege high pressure sales tactics or

coercion and because provision's class action waiver was not unconscionable).

     Moreover, it well-established that clickwrap agreements are "presumptively

enforceable" and not procedurally unconscionable because they "permit courts to

infer that the user was at least on inquiry notice of the terms of the agreement, and

has outwardly manifested consent by clicking a box."  *Corwin v. NYC Bike Share,*

*LLC*, 238 F. Supp. 3d 475, 489 (S.D.N.Y. 2017), *vacated in part on other grounds*,

2017 WL 4075213 (S.D.N.Y. Mar. 13, 2017) (holding that clickwrap agreement

was not unconscionable); *see also Falk*, 2019 WL 4143882, at *5-7 (holding that

clickwrap agreement was not unconscionable because plaintiff had adequate

opportunity to decline arbitration).  Further, Plaintiffs *did* have a meaningful

choice—they could have rejected the Terms and Conditions and continued to use

their SmartTVs.  Doing so would disable certain SmartTVs features (ironically, the

same features Plaintiffs agreed to but now allege violate the law), but Plaintiffs could have replicated many or all of these features by simply buying a different brand of SmartTV or connecting a computer or other internet-connected device to their Samsung SmartTV. *See, e.g.*, *Bar-Ayal v. Time Warner Cable Inc.*, No. 03-cv-9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (arbitration provision was not unconscionable because plaintiff "has not provided any evidence that he could not obtain high-speed Internet service from another provider").

Substantively, the Arbitration Agreement is not unconscionable because its terms are fair, reasonable, and even consumer-friendly. For example, the Arbitration Agreement provides for arbitration using ICC rules, *see* Abuali Decl., Ex. 1, § 14.8(a), which courts accept as reasonable and not unconscionable, *see, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-cv-5458, 2011 WL 5325589, at *7 (N.D. Cal. Sept. 19, 2011) ("Numerous courts have found arbitration to be appropriate under the ICC rules. The Court rejects [plaintiff's] assertion that those rules are unconscionable as a matter of law." (citations omitted)). Samsung even agreed to pay the fees and deposits of the arbitration for Plaintiffs to the extent they can show an inability to pay more than $125 or demonstrate that the fees and deposits would be prohibitive compared to litigation. *See* Abuali Decl., Ex. 1, § 14.8(h). And under binding Supreme Court precedent, there is no basis for finding the Agreement unconscionable because of the class

21

action waiver.  *See Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").  Thus, the Arbitration Agreement is enforceable.

## B.     SEA Did Not Waive Its Arbitration Right.

Any argument that SEA waived its right to demand arbitration by not filing this motion sooner is also without merit.  Consistent with the strong preference in favor of arbitration, waiver "is not to be lightly inferred," *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995), and "a party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, *and* when prejudice to the party resisting arbitration can be shown."  *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) (emphasis added).  Notably, waiver "will normally be found only where the demand for arbitration came long after the suit commenced *and* when both parties had engaged in extensive discovery."  *PaineWebber*, 61 F.3d at 1068-69 (emphasis added).

Courts in this Circuit consider six nonexclusive factors in determining waiver:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking

22

to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992).

"[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived." *Id.* at 925.  Here, the prerequisites of waiver—extensive discovery and prejudice—are lacking, and the *Hoxworth* factors do not support a finding of waiver.

### 1.    No Discovery Has Been Conducted.

Starting first with the last but critical factor, no discovery had been conducted in this case apart from Plaintiff White's disclosure, at the Magistrate Judge's directive, of information that was necessary, but incomplete and insufficient, to help SEA determine whether he consented to the Arbitration Agreement.  *See James v. Glob. Tel*Link Corp.*, No. 13-cv-4989, 2016 WL 589676, at *10 (D.N.J. Feb. 11, 2016), *aff'd*, 852 F.3d 262 (3d Cir. 2017) (factor weighed against waiver where only discovery was related to the issue of arbitration).  The Third Circuit's cases finding waiver "have uniformly featured significant discovery activity in the district court."  *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 120 (3d Cir. 2012); *see, e.g.*, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 213 (3d Cir. 2010) (parties engaged in "significant discovery," including interrogatories, disclosures, requests for production and depositions of

23

four witnesses, as well as "significant discovery related motion practice");

*Hoxworth*, 980 F.2d at 925-26 (parties engaged in several depositions, answered

several discovery requests, and litigated discovery disputes). Accordingly, this

most crucial factor weighs heavily against waiver.

### 2. This Motion To Compel Arbitration Is Timely.

This *Hoxworth* factor looks to the length of time between the initiation of the

action and the filing of the motion to compel arbitration. Though Plaintiff White

first initiated this action in March 2017,[5] the "length of the time between when a

party initiates or first participates in litigation and when it seeks to enforce an

arbitration clause is not dispositive in a waiver inquiry," and the Court must

examine the party's "explanation for its delay." *James*, 2016 WL 589676, at *9

(citation and internal quotation marks omitted).

Here, any "delay" in moving to compel arbitration was the result of

Plaintiffs' pleading deficiencies in failing to identify the model or serial number

for the Samsung SmartTVs that were claimed to be the subject of this action—

deficiencies the Court noted in September 2018 when dismissing the First

Amended Complaint and ordering Plaintiffs' counsel to correct it. *See* ECF Nos.

66, 82, at 2 n.1. With the Plaintiffs' FAC entirely dismissed on Defendants' Rule

---

[5] Ms. Cauley was added as a Plaintiff more than a year-and-a-half later, on
November 16, 2018.

12 motion, and without accurate model and serial number information necessary for SEA to investigate individual consent issues, there was no reason for SEA to further investigate the issue or file a motion to compel arbitration.  And despite the Magistrate Judge's March 2018 Order requiring Plaintiffs to disclose complete model and serial number information for their SmartTVs, *see* ECF No. 66, at 1, Plaintiffs did not disclose this information completely until April 27, 2020, after which SEA promptly notified Plaintiffs of its intent to seek arbitration and filed to compel arbitration.

Because Plaintiffs' pleading deficiencies and inexcusable delay prevented Samsung from confirming they had agreed to mandatory individual arbitration, this factor militates against a finding of waiver.  *See, e.g.*, *PaineWebber*, 61 F.3d at 1069 (no waiver where defendant waited five and a half years from notice of action to seek to compel arbitration because plaintiff was equally responsible for delay); *George S. Hofmeister Family Tr. v. FGH Indus., LLC*, No. 06-cv-13984, 2007 WL 2984188, at *7 (E.D. Mich. Oct. 12, 2007) (no waiver where plaintiffs were responsible for at least "an equal part of the delay and expense"); *Thomas v. A.R. Baron & Co.*, 967 F. Supp. 785, 789 (S.D.N.Y. 1997) (no waiver where "any delay in litigating the case is the responsibility of both parties"). And in fact, Plaintiffs agreed in the Terms and Conditions here that "if Samsung does not exercise or enforce any legal right or remedy" under the agreement, it "will not be construed

as a waiver of Samsung's rights or remedies." Abuali Decl. Ex. 1, § 14.3.  So this motion is also timely under the parties' agreement.

### 3. Contesting The Merits On A Motion To Dismiss Is Not A Waiver.

This *Hoxworth* factor examines the extent to which SEA has contested Plaintiffs' claims on the merits.  Courts in this Circuit routinely reject waiver arguments on motions to compel arbitration filed after a motion to dismiss—even multiple motions to dismiss.[6]  Moreover, Defendants' first motion to dismiss was never opposed by Plaintiffs, and both the first and second were filed before SEA had received ***any*** model or serial number information for Plaintiffs' SmartTVs. SEA received incomplete model and serial numbers for Plaintiff White's (and none for Plaintiff Cauley's) SmartTVs in April 2018, but by that point SEA's second motion to dismiss had been fully briefed, and a few months later, the Court granted the motion in full.

---

[6] *See, e.g.*, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (no waiver when defendant had filed motion to dismiss and court ruled on it); *Khorchid v. 7-Eleven, Inc.*, No. 18-cv-8525, 2019 WL 3812472, at *9 (D.N.J. Aug. 14, 2019) (same); *Serine v. Marshall, Dennehey, Warner, Coleman & Goggin*, No. 14-cv-4868, 2015 WL 4644129, at *5 (E.D. Pa. Aug. 5, 2015) (same); *Just B Method, LLC v. BSCPR, LP*, No. 14-cv-1516, 2014 WL 5285634, at *10 (E.D. Pa. Oct. 14, 2014) (no waiver when defendant filed two motions to dismiss, which the court decided, and answered complaint); *Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.*, 367 F. Supp. 2d 711, 722 (E.D. Pa. 2005) (no waiver when defendant filed two motions to dismiss, engaged in discovery, and filed two pretrial motions).

Plaintiffs amended again to file a third complaint, but did not substantially alter their allegations, and failed to provide a complete serial number for Plaintiff White or disclose the newly-added Plaintiff Cauley's serial number at all. So, having successfully dismissed the case in full based on largely the same allegations and still lacking the serial number information necessary to confirm a right to arbitrate, it was reasonable for SEA to renew its motion to dismiss.

More fundamentally, SEA's motions to dismiss and for reconsideration did not prejudice Plaintiffs. The Court ultimately granted SEA's request to dismiss all but one of Plaintiffs' six claims. As a result, arbitration would not provide SEA with a "second bite at the apple"—nearly all of Plaintiffs claims have already been dismissed. Nor has SEA forced Plaintiffs to invest wasteful time and expense in responding to its motions to dismiss—the motion practice has significantly narrowed the issues in dispute for arbitration. *See Wood*, 207 F.3d at 680 ("[W]e do not understand how [plaintiff] could be prejudiced by the Court's having decided [defendant's motion to dismiss]. For this decision to be prejudicial, we would have to presume that an arbitrator would have decided the merits of the claim differently—a presumption we cannot make."). This factor also does not support any finding of waiver.

27

### 4.    Samsung Promptly Notified Plaintiffs Of Its Intent To Seek Arbitration.

This factor asks whether SEA "informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings." *Hoxworth*, 980 F.2d at 926-27.  SEA informed Plaintiffs of its intent to seek arbitration on May 5, 2020, just over a week after Plaintiffs provided complete serial number information for their SmartTVs.  *See* Frankel Decl. ¶¶ 3-4. This factor thus weighs heavily against a finding of waiver.

### 5.    Non-Merits Motion Practice.

The next *Hoxworth* factor looks at the extent of non-merits motion practice before arbitration is sought.  Here, except for unopposed *pro hac vice* applications and unopposed applications concerning briefing schedules and a stay (ECF No. 67), there were no non-merits motions filed in this matter. Plaintiffs could not have suffered any prejudice.  This factor also weighs strongly against waiver.

### 6.    Samsung Acquiesced To Pretrial Orders Only Concerning Motions To Dismiss And Pleadings.

When it moved for arbitration, SEA had consented only to pretrial orders relating to its motions to dismiss and the pleadings, *see, e.g.*, ECF No. 6, 87, and orders to stay the action and discovery (*see* ECF Nos. 38, 72, 107).  SEA consistently opposed commencing discovery in this action and joined in a motion to stay discovery after the Court set a case management plan to which SEA had not

28

acquiesced.  *See* ECF Nos. 66, 67.  If anything, SEA's acquiescence to pretrial orders has narrowed the scope of these proceedings by, for example, staying discovery and thereby avoiding any prejudice to Plaintiffs.  This factor also weights against a finding of waiver.

None of the *Hoxworth* factors supports a finding of waiver.  *See Great W. Mortg. Corp.*, 110 F.3d at 233; *PaineWebber*, 61 F.3d at 1068.  Any assertion of waiver by Plaintiffs should be rejected.

## IV.    THE COURT SHOULD DISMISS OR STAY THIS ACTION.

For the reasons explained above, this Court should compel arbitration of Plaintiffs' claim, and dismiss this action.  *See Cavallo*, 2017 WL 2362851, at *10. Further, the Court should "enforce [the Arbitration Agreement] according to [its] terms," *Concepcion*, 563 U.S. at 339, and refer this matter to *individual* arbitration, as the parties agreed.  *See* Abuali Decl., Ex. 1, § 14.8(f).  The Supreme Court has repeatedly held that because of the "crucial differences" between individual and class arbitration, courts may not infer consent to participate in class arbitration absent an affirmative "contractual basis for concluding that the party agreed to do so." *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1416 (2019) (citations omitted). Here, of course, the agreement *explicitly prohibits* class arbitration.  *See* Abuali Decl., Ex. 1, § 14.8(f).

In the alternative, the Court should stay any remaining portion of this action pending arbitration. *See* 9 U.S.C. § 3; *Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 111 (3d Cir. 2014) ("[A] motion to stay under § 3 may not be denied if any issue is arbitrable under a valid, enforceable arbitration agreement.").

A stay is appropriate even if the Court determines (contrary to the analysis set out above) that a portion of this action (such as White's claim arising from his J5500 SmartTV) is not arbitrable. Under the FAA, courts are authorized to stay litigation of non-arbitrable claims pending arbitration of the arbitrable claims. *See, e.g., Neal v. Asta Funding, Inc.*, No. 13-cv-3438, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014). The power to stay in this context "should be exercised when it appears that the arbitrable claims overwhelm the non-arbitrable claims, or when the arbitrable claims will have some [e]ffect on the non-arbitrable claims." *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, No. 08-cv-4369, 2009 WL 10731035, at *1 (D.N.J. June 18, 2009) (citation omitted). For example, courts will stay the non-arbitrable claims when "many of the central issues in the litigation will be resolved or advanced by the arbitration" or when "plaintiff's arbitrable and non-arbitrable claims are intertwined." *Walzer v. Muriel Siebert & Co.*, No. 04-cv-5672, 2008 WL 11513209, at *1 (D.N.J. Dec. 31, 2008); *see Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) ("Where

significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration.").

Here, there is substantial overlap between Plaintiff White's KU6300 claim and J5500 claim—they involve the same parties, same causes of action, and essentially the same factual and legal issues. As a result, the claims are intertwined, and ruling on one claim will necessarily have an effect on the other. Therefore, to the extent the Court finds any non-arbitrable claims remain, a stay is appropriate as to any remaining claim pending the outcome of arbitration.

## V.    PLAINTIFFS' CLASS CLAIMS SHOULD BE STRICKEN.

Whether or not the Court compels arbitration, it should strike Plaintiffs' class claims from the Complaint and dismiss them because Plaintiffs explicitly waived their right to proceed on a classwide basis in the Terms and Conditions. Plaintiffs agreed that they "will not file or participate in a class action against Samsung," and that each Samsung Affiliate, including SEA, is a third-party beneficiary with the right to directly enforce and rely on the Terms and Conditions. Abuali Decl., Ex. 1, §§ 14.5, 14.8(f). They further agreed that "arbitration can decide only the User's and/or the applicable Samsung Entity's individual claims; the arbitrator …. may not consolidate or join the claims of other persons or parties who may be similarly situated." *Id.*

31

It well-established that class action waivers are valid and should be enforced.  *See Concepcion*, 563 U.S. at 352 (upholding class action waiver notwithstanding state law rule that such waivers are unconscionable); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 n.5 (2013) (FAA "favor[s] the absence of litigation when that is the consequence of a class-action waiver" (internal citations omitted)).  Under Federal Rule of Civil Procedure 23(d)(1)(D), the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  *See also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter.").

Motions to strike under Rule 23(d)(1)(D) must be granted when "no amount of discovery will demonstrate that the class can be maintained."  *Semenko v. Wendy's Int'l, Inc.*, No. 12-cv-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).  That is the case here, because no amount of additional discovery will alter the fact that Plaintiffs agreed to waive any right to proceed as a class.  *See Camilo v. Uber Techs., Inc.*, No. 17-cv-9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (granting motion to strike class claims based on class action waiver).

# CONCLUSION

For all these reasons, the Court should order Plaintiffs to submit their individual claims to arbitration and dismiss this action.  The Court also should strike Plaintiffs' class claims from the Complaint.

Dated:  October 2, 2020                                  Respectfully submitted,

By: s/ Michael R. McDonald
MICHAEL R. MCDONALD
mmcdonald@gibbonslaw.com
KATE ELIZABETH JANUKOWICZ
kjanucowicz@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500

ERIC C. BOSSET (*pro hac vice*)
ebosset@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000

SIMON J. FRANKEL (*pro hac vice*)
sfrankel@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: (415) 591-6000

***Attorneys for Defendant***
**SAMSUNG ELECTRONICS
AMERICA, INC.**

33