UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Chambers of<br>Madeline Cox Arleo<br>United States District Judge | Martin Luther King Courthouse<br>50 Walnut St. Room 4066<br>Newark, NJ 07101<br>973-297-4903 |

December 29, 2021

<u>VIA ECF</u>

<u>**LETTER ORDER**</u>

Re:   <u>Thomas Roger White, Jr., et al. v. Christopher Mills, et al.
        Civil Action No. 17-1775</u>

Dear Litigants:

Before the Court is Defendant Samsung Electronics America, Inc.'s ("Defendant" or "Samsung") Motion to Compel Individual Arbitration and Strike Plaintiffs' Class Claims. ECF No. 181. Plaintiffs Thomas Rodger White, Jr. ("White") and Patricia Cauley ("Cauley" and together with White, "Plaintiffs") oppose the Motion. ECF No. 182. For the reasons explained below, the Motion is **DENIED**.

I.   **Background**[1]

This putative class action claim arises from Plaintiffs' allegations that Defendant, as the manufacturers of Plaintiffs' Smart TVs, violated the federal Wiretap Act, 18 U.S.C. § 2510. <u>See generally</u> Second Amended Complaint ("SAC"), ECF No. 88.

Smart TVs are televisions that can connect to the internet to deliver content from online sources, including streaming providers. Id. ¶ 31. Cauley purchased a Samsung Smart TV Model No. UN55KS800FXZA ("KS800") in 2017. Id. ¶ 15. White purchased two Samsung Smart TVs, a Model No. UN55KU6300F ("KU6300") in 2016 and a Model No. UN32J5500AF ("J5500") in 2015. Id. ¶ 16. Plaintiffs allege that Defendants' Smart TVs surreptitiously collect data from them, including what programs they watch, when they watch them, and certain identifying information. Id. ¶¶ 40-43, 53. Defendants then allegedly sell that data to third parties, who use it to provide targeted advertisements to the same consumers. Id. ¶¶ 51-53.

According to Defendant, each of its Smart TVs are equipped with Samsung's "SmartHub" software, which, if enabled by the user, connects the television with its internet-based applications. See Declaration of Khaled Abuali ¶ 4, ECF No. 181.8 ("Abuali Decl."). When users set up their Smart TVs, they were presented with a screen entitled "Smart Hub Terms & Conditions, Privacy

---

[1] The Court discussed the background of this action in its August 21, 2019 letter order granting in part and denying in part Defendant's motion to dismiss. <u>See</u> ECF No. 104 (the "August 21 Order") at 1-2. This Order recites only those facts necessary to resolve the instant Motion.

Policy" (the "Terms and Conditions"), which notified users that their use of the Smart TV was governed by the Terms and Conditions. Id.  To enable the SmartHub software, users were required to "agree and acknowledge" the Terms and Conditions; otherwise, the device would not connect to the internet. Id. ¶ 5.  The Terms and Conditions provided to Cauley and White while setting up their KS8000 and KU6300 Smart TVs included the following arbitration provision (the "Arbitration Agreement"):

> By using the Services, the User unconditionally consents and agrees that: (a) any claim, dispute or controversy (whether in contract, tort, or otherwise) the User may have against any Samsung entity . . . arising out of, relating to, or connected in any way with the Services or the determination of the scope or applicability of this clause, will be resolved exclusively by final and binding arbitration . . . .

Id., Ex. 1, § 14.8.  Plaintiffs agreed to the Terms and Conditions for their Smart TVs. Id. ¶¶ 11-13.  However, the Terms and Conditions presented for White's J5500 did not include an arbitration provision. Id. ¶ 15.

On March 16, 2017, Plaintiffs filed their initial complaint against Defendants, which they later amended on November 16, 2018.  ECF Nos. 1, 88.  The SAC asserts six claims, and on August 21, 2019, the Court granted in part and denied in part Defendant's motion to dismiss the SAC, dismissing all but Plaintiffs' Wiretap Act claims.  SAC ¶¶ 114-206; August 21 Order at 2-8.  Defendant filed the present Motion to Compel Arbitration on May 4, 2021.  ECF No. 181.

## II.   LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision reflects "a strong federal policy in favor of resolving disputes through arbitration."  Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or any allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Although courts presumptively favor the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it typically answers the following two questions before compelling arbitration: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. Century Indem. Co., 584 F.3d at 523.

## III.   ANALYSIS

### A.   WAIVER OF RIGHT TO ARBITRATE

Plaintiffs assert that Defendant has waived its right to arbitrate under the Hoxworth factors, and that compelling arbitration after years of active litigation would cause Plaintiffs significant prejudice.  The Court agrees.

2

"The contractual right to arbitrate, like any other right, can be waived." KPH Healthcare Servs. v. Janssen Biotech, Inc., No. 20-5901, 2021 WL 4739601, at *24 (D.N.J. Oct. 12, 2021). To determine whether the right to arbitrate has been waived, the Third Circuit put forward a nonexclusive list of factors, known as the Hoxworth factors, with an emphasis on considering whether a party has been prejudiced:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in the non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

In re Pharm. Benefit Managers Antitrust Litig., 700 F.3d 109, 117 (3d Cir. 2012) (quoting Grey Holdco, Inc. v. Cassady, 654 F.3d 444, 451 (3d Cir. 2011)). "[W]aiver under the FAA is not to be lightly inferred." Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 232 (3d Cir. 1997).

First, Defendant filed its motion to arbitrate on May 4, 2021, more than four years after Plaintiffs filed their initial complaint. ECF No. 181. Even assuming that Defendant was unaware of the arbitration issue until Plaintiffs provided the model numbers of their Smart TVs, that disclosure occurred with the Second Amended Complaint, filed thirty months before Defendant's instant motion on November 16, 2018, ECF No. 88. Such a delay is significantly longer than what other courts in this circuit have found to be unreasonable. See, e.g., In re Pharm. Benefit Managers Antitrust Litig., 700 F.3d at 118 (finding a ten-month delay to weigh in favor of finding waiver); Gray Holdco, 654 F.3d at 454 (same); Hoxworth v. Blinder, Robinson & Co., 980 F.3d 912, 925 (3d Cir. 1992) (eleven-month delay weighed in favor of waiver).

Looking at Defendant's "explanations for its delay," Gray Holdco, 654 F.3d at 455, the Court remains unpersuaded that the delay was the result of Plaintiffs' withholding of crucial information. Defendant contends that its delay was the result of Plaintiffs' failures to identify the model or serial numbers for the Smart TVs. Def. Mem. at 24. Even though Plaintiffs disclosed three serial numbers and additional identifying information about the televisions in their April 11, 2018 Initial Disclosures, Defendant asserts that because the serial number for White's J5500 was missing a digit, it was unable to confirm that the Plaintiffs had assented to an arbitration provision. But why couldn't Defendant confirm whether an arbitration provision existed for the two televisions for which Plaintiff provided complete serial and model numbers over three years earlier? And how was Defendant not on notice with the third television set, simply because Plaintiffs were one digit off? Defendant, a large and sophisticated corporate leader in electronics, is uniquely positioned to have access to this information, and had to know exactly which models had arbitration agreements for its products. This factor weighs heavily in favor of finding waiver.

Second, Defendant has filed three motions to dismiss, all of which contested the merits of Plaintiffs' claims. See ECF Nos. 24, 54, 88. Defendant also filed a motion for reconsideration,

3

asking the Court to again dismiss the Plaintiffs' Wiretap Act claim. ECF No. 105. Courts have found waiver where parties engaged in similar motion practice directed to the merits. See, e.g., Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3d Cir. 2007) (motion for summary judgement); Hoxworth, 980 F.2d at 925-26 (motion to dismiss for failure to state a claim, and opposition to motion for class certification); see also Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 210-11 (3d Cir. 2010) (finding waiver despite no motions on the merits). This factor weighs in favor of waiver.

Third, Defendant did not give Plaintiff or the Court notice of its intent to arbitrate. Although Defendant claims that it "promptly" notified Plaintiffs of its intent to seek arbitration just over a week after Plaintiffs provided complete serial number information for their Smart TVs (on May 5, 2020), this was nearly two years after Defendants obtained the relevant model numbers necessary to determine whether the possibility of arbitration existed. Defendant was contemplating arbitration when it requested that Plaintiffs provide the serial numbers in 2018, and yet did not give any notice of arbitration until three years later. The facts of this case are more compelling than other cases in which courts found waiver, see Nino, 609 F.3d at 211 (included mandatory arbitration as one of ten affirmative defenses in its answer); Ehleiter, 482 F.3d at 210-11 (no advanced notice); Gray Holdco, 654 F.3d at 457 (no advanced notice). Thus, this factor also weighs in favor of finding waiver.

Fourth, Defendant engaged in non-merits motion practice that was mostly administrative or unopposed. Specifically, Defendant requested extensions to respond to the initial complaint, ECF Nos. 6-7, 13, 15, asked the Court to compel Plaintiffs to produce the serial numbers, ECF No. 66, sought to stay discovery, ECF Nos. 67, 72, requested a discovery confidentiality order, ECF No. 65, and submitted unopposed pro hac vice applications, ECF Nos. 10, 22. Defendant additionally filed, with its motion for reconsideration, a motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). "[T]his factor weighs slightly in favor of waiver or is (at worst) neutral." In re Pharm. Benefits Managers Antitrust Litig., 700 F.3d at 119 (where the party seeking arbitration filed uncontested administrative and scheduling motions and a certification for an interlocutory appeal).

Fifth, Defendant acquiesced to a number of the Court's pretrial orders. Defendant participated in an initial Rule 16 scheduling conference, presented the Court with a proposed discovery plan, and participated in twelve status conferences with the magistrate judges, all without objection. This is in line with other cases that have found acquiescence to pretrial orders supporting wavier. See In re Pharm. Benefits Managers Antitrust Litig., 700 F.3d at 119 (at the "low end of acquiescence" with the party seeking arbitration having attended and participated in hearings on two motions and submitting a discovery plan); Gray Holdco, 654 F.3d at 459-60 (attended three status conferences and a court-ordered mediation without objection, and filed a Rule 26(f) report); Nino, 609 F.3d at 212 (participated in ten pretrial conferences).

Sixth and finally, Plaintiffs concede that no meaningful discovery has taken place, having only produced the model and serial numbers of the relevant Smart TVs. Defendants ask the Court to consider this "most crucial factor" as weighing heavily against waiver. Def. Mem. at 24. The Court agrees and finds that this factor weighs against waiver.

While cases finding waiver generally feature significant discovery activity, "the Hoxworth factors are nonexclusive, and no one factor is determinative of the prejudice inquiry." In re Pharm. Benefit Managers Antitrust Litig., 700 F.3d at 120. Moreover, while there is little prejudice to Plaintiffs' legal position as a result of Defendant's delay in moving to compel arbitration, "the prejudice needed to show waiver . . . also extends to prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate." Id. at 121 (internal citation omitted). Thus, because five out of the six factors favor waiver, and Plaintiffs have lost the time, expenses, and legal fees invested to defend their claims against Defendant's multiple motions, the Court finds that Defendant has waived its right to arbitrate. Gray Holdco, 654 F.3d at 458-59 ("[W]e cannot ignore the legal expenses Cassady incurred while Gray sat on its arbitration rights.").[2]

### B. CLASS ACTION WAIVER

Defendant next argues the Court should strike Plaintiffs' class claims from the Complaint because Plaintiffs waived their right to bring a class action claim in the Terms and Conditions. The Court finds this argument unavailing.

The Arbitration Agreement contains the following provision:

> [T]here shall be no authority for any claims to be arbitrated on a class or representative basis, arbitration can decide only the User's and/or the applicable Samsung Entity's individual claims; the arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated; and the User will not file or participate in a class action against Samsung . . . .

Abuali Decl., Ex. 1, § 14.8 (f) (the "Waiver"). Reading the Waiver in its context, it is clear that the language of the class action waiver is inextricably tied to the arbitration provision itself, which the Court has already found to be waived. See Vine v PLS Fin. Servs., 807 F. App'x. 320, 328 (5th Cir. 2020) ("We agree . . . that the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated – not as an independently effective waiver.") (emphasis in original) (internal quotation omitted). The Waiver is the sixth subsection of the nine-part provision, and all of the other subsections set forth the fees and procedures that govern arbitration under the Terms and Conditions. Defendant's position that the Waiver is a standalone provision

---

[2] Defendant additionally argues that no waiver of its right to arbitrate occurred because Plaintiffs agreed in the Terms and Conditions that "if Samsung does not exercise or enforce any legal right or remedy" under the agreement, it "will not be construed as a waiver of Samsung's rights or remedies." Def. Mem. at 25-26 (quoting Abduali Decl. Ex. 1, § 14.3). However, courts in this circuit have held that the presence of such clauses does not impact the Hoxworth analysis. See Gray Holdco, 654 F.3d at 452 ("[W]e also agree with the holding in S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 86 (3d Cir. 1998), that the presence of a 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration." (internal quotation omitted)).

As the Court resolves this matter based on waiver, it does not reach Plaintiff's remaining arguments as to the enforceability of the Arbitration Agreement.

untethered to the Arbitration Agreement is unsupported by the structure of the Terms and Conditions. Further, even if the language of the Waiver was ambiguous, "where there is ambiguity, the words are construed against the drafter." In re Cmty. Med. Ctr., 623 F.2d 864, 866 (3d Cir. 1980). Therefore, Plaintiffs are not precluded from proceeding in this litigation as a class.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Individual Arbitration and Strike Plaintiffs' Class Claims, ECF No. 181, is **DENIED**.

SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**