

**THE MACK FIRM**

Mack Press
9 Pimlico Drive
Commack, NY 11725
Tel: 516-330-7213
Email: mack@mackpress.com

November 27, 2023

**VIA ECF**

Honorable Jessica S. Allen, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    Re:    ***White, et al. v. Samsung Electronics America, Inc., et al.***
                **Case No. 17-1775 (MCA)(JSA)**

Dear Magistrate Judge Allen:

      In accordance with Your Honor's orders of November 2, 2023, ECF No. 252, and November 21, 2023 (ECF 256), the parties respectfully submit this joint status letter.

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 2

*Plaintiffs' Introduction*: The parties have had three telephone/video conferences following Your Honor's November 2, 2023 Order, ECF No. 252. Some agreements have been made, as noted below, but if discovery continues at this pace, the parties will not meet the Court's deadline of March 31, 2024, for the close of fact discovery. Plaintiffs request that the Court impose deadlines for certain production, as detailed below, and set a hearing, or, in the alternative, a meet-and-confer session overseen by the Court, to enforce compliance with these deadlines. Since the parties last appearance, SEA has produced only 58 documents. One promised production, which Plaintiffs thought would be responsive to the Court's order to produce "data . . . collected in real time from the users' Smart TVs," consisted of one, one-page document containing four words and four numbers. ECF No. 241 at ¶3. This is obviously insufficient.

*SEA's Introduction*: SEA continues to move discovery forward. Since the October 13, 2023 joint status letter, SEA has met and conferred with Plaintiffs several times in an effort to resolve disputes without Court intervention, and has produced all remaining documents called for by the Court's September 15, 2023 Order that it has been able to locate, as well as additional relevant documents. While SEA remains committed to working cooperatively with Plaintiffs, SEA finds it unfortunate that Plaintiffs have continued to make new and overbroad requests and again seek to use this letter as a vehicle to raise discovery issues with the Court before adhering to their obligation to meet and confer with SEA in good faith in an attempt to resolve them. Moreover, Plaintiffs' complaints about SEA's productions are baseless. For example, Plaintiffs' suggestion that SEA's productions are somehow "insufficient" based merely on the number of documents produced or the length of documents is without support. As explained below, SEA has worked in good faith to produce documents responsive to Plaintiffs' discovery requests despite Plaintiffs' unfocused and unproductively combative approach to discovery.

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 3

I.      **Plaintiffs' Position**

1. **Data Flow.** In response to Plaintiffs' repeated efforts to obtain "data . . . collected in real-time through users' Smart TVs," as ordered by this Court on September 15, 2023 (ECF 241 at ¶3), Plaintiffs anticipated receiving a substantial production on Friday, November 17th reflecting data for the two named plaintiffs, who first purchased Samsung SmartTVs in 2015 and 2017. Instead, on November 17, 2023, SEA provided a single, one-page .pdf document containing four words in quotation marks and what appears to be four strings of numbers. *See* Ex. A (SEA-00045546). Plaintiffs are attaching that single document to this letter, so that the Court can see what Samsung has produced in response to Your Honor's order to produce "data and documents describing the categories of data collected in real-time through users' Smart TVs." ECF 241. Samsung has not identified any further production as responsive.

The parties have conferred regarding this production, and Plaintiffs have asked SEA to provide certain obviously required information to interpret this document and comply with the Court's order, such as: (1) documents sufficient to define the quoted terms in the document; (2) documents sufficient to show the code that uses these variables; and (3) documents sufficient to show the table or tables used to match the number string or strings depicted in this document with content-related data, presumably held by the server that is alleged to be "managed" by SEC. Counsel for SEA has taken the position that these requests are "new." They are not. Plaintiffs request that the Court order SEA to provide additional responsive information by December 8, 2023, and report on that date whether its production of "data . . . collected in real-time through users' SmartTVs" is substantially complete.

To the extent that SEA maintains that this information is held by SEC, Plaintiffs believe that SEC is subject to service of a subpoena in the United States through SEA as its agent, and are

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 4

prepared to serve SEC directly with a subpoena if this information cannot be obtained cooperatively through SEA. In an accommodation to SEA, Plaintiffs have committed to and will refrain from serving a subpoena while productive discussions continue regarding production from SEA. Plaintiffs request that the Court set a deadline for the last date that a subpoena may be served on SEC, consistent with the Court's current scheduling order, so that any disputes regarding the scope of the subpoena or the manner in which it is served, may be resolved in time for the parties to complete fact discovery by March 31, 2024.

**SEA's Response**. SEA has worked in good faith to produce documents responsive to Plaintiffs' discovery requests despite Plaintiffs' inefficient and scattershot approach to discovery. On October 5, 2023, SEA produced a 55,000 line spreadsheet consisting of all collected ACR viewing history data—i.e., the collected ACR data after it is processed and analyzed—relating to Plaintiffs' Samsung Smart TVs that is within SEA's control. After explaining to Plaintiffs that SEA has no involvement in the collection of the unanalyzed ACR data sent from Smart TVs to the "matching server," that SEA thus does not have this data, and that SEA's understanding is that even SEC does not maintain this data, SEA agreed to request an exemplar of the unanalyzed data from SEC. SEA did so, and produced that exemplar to Plaintiffs on November 17, 2023.

Plaintiffs suggest that this good faith production of precisely what the parties discussed and agreed to is somehow insufficient merely because the ACR data exemplar takes up one page and consists of strings of numbers and words in quotation marks. But Plaintiffs' frustration with the fact that the exemplar shows that ACR does not capture any "contents" of any communications—and thus refutes Plaintiffs' Wiretap claim—fails to provide a basis to cast aspersions on SEA or to make serial, overbroad, and unreasonable discovery demands. And while Plaintiffs are free to ask

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 5

questions during depositions about how to interpret this document, SEA has no obligation to create documents that do not exist or to define terms in the documents it has produced to Plaintiffs.

Rather than point to any specific issue with SEA's production, Plaintiffs instead seek to use this letter as another opportunity to raise with the Court several informal discovery requests that are new and astoundingly overbroad. Despite Plaintiffs' conclusory suggestion that "They are not" new requests, Plaintiffs fail to point to any RFP that requested the categories of information they sought for the first time last week though the vehicle of this joint letter to the Court. *Compare* ECF No. 234-1 (Plaintiffs' RFPs). Having postponed the deadline for submitting this letter to the Monday after the Thanksgiving holiday, the parties have only just begun to meet and confer about Plaintiffs' new requests, which are markedly unfocused and outrageously overbroad, seeking the creation of documents that define terms in the data exemplar, unidentified "code" that "uses" those "variables," and unspecified "documents" to "show the table or tables" that match the ACR data to "content-related data." In addition to being procedurally improper, these new requests are vague, nonsensical, and substantially overbroad, if not completely irrelevant to the narrow Wiretap claim at issue. Importantly, Plaintiffs ignore that SEA has attempted to work collaboratively with Plaintiffs to request data within the custody of other entities despite Plaintiffs' unfocused and overbroad demands. In any event, Plaintiffs have not and cannot demonstrate that SEA has failed to comply with discovery requests or this Court's Order.

Nonetheless, SEA remains willing to meet and confer with Plaintiffs and to request and produce additional materials from SEC, pursuant to targeted requests. Plaintiffs nonsensically describe this commonsense approach to discovery as an "accommodation to SEA," ignoring that it was the Court's stated preference that the parties cooperate to avoid unnecessary time-consuming procedures and expense. Plaintiffs have appeared more intent on making outlandish and unfocused

demands for information and on raising unripe discovery issues with the Court than on seeking available information that could actually be relevant to their Wiretap Act claim. SEA objects to Plaintiffs' repeated attempts to raise unripe and unfocused demands with the Court. SEA also objects to Plaintiffs' facially baseless claim that SEA is SEC's agent for service of a subpoena. SEA has never indicated that it is SEC's agent, and indeed, has repeatedly emphasized to Plaintiffs the distinction between these separate entities. *See Reddy v. MedQuist, Inc.*, 2009 WL 2413673, at *7 (D.N.J. Aug. 4, 2009) ("In New Jersey, service of process on a domestic subsidiary of a foreign corporation does not satisfy service on the foreign corporation."); *Lasky v. Cont'l Prod. Corp.*, 97 F.R.D. 716, 716 (E.D. Pa. 1983) ( "wholly owned subsidiary [that] is a separate corporate entity which sets its own management policy and maintains separate books and records" is not an agent for service of process).

    **2. Intervention of Additional Named Plaintiffs.** The parties continue to have substantive disagreements regarding the propriety of bringing in additional class representatives. Plaintiffs made their motion for intervention in accordance with the Court's deadline of November 22, 2023. Plaintiffs have repeatedly sought discovery as to which terms (including terms that contain arbitration clauses) apply to which television models, including raising this issue in the parties' joint letter to the Court dated August 2, 2023. SEA did not provide this information prior to Plaintiffs' motion.

    ***SEA's Response***. SEA continues to oppose Plaintiffs' request to add several new proposed class representatives as improper, untimely, and prejudicial, and will file its opposition to Plaintiffs' motion for intervention in accordance with the deadline set by the Court. For the avoidance of doubt, SEA continues to reserve its right to move to compel arbitration with respect to the proposed class representatives if and when Plaintiffs' motion for intervention is granted, as

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 7

well as with respect to all other proposed class members at the appropriate time.

SEA also objects to Plaintiffs' attempt to insert an unripe discovery request in this paragraph purportedly about intervention. In accordance with the Court's September 15, 2023 order, SEA has substantially completed production of the terms and policies presented to Samsung Smart TV users relating to the collection of their data. Plaintiffs did not raise any issue with that production until this letter. SEA is willing to meet and confer with Plaintiffs about their request, but objects once again to Plaintiffs' premature attempt to seek judicial intervention. Indeed, if Plaintiffs had bothered to meet and confer with SEA before raising this request, they would have learned that "discovery as to which terms … apply to which television models" is nonsensical because it incorrectly assumes that the particular terms that apply are dependent on the model at issue.

3. **Search terms.** On November 24, 2023, in a long-delayed follow-up to this Court's Order of September 15, 2023, and nearly two months after Plaintiffs provided their proposed search terms, SEA provided its first "hit" report, listing the number of documents in Mr. Abuali's custodial file responsive to the terms proposed by SEA and just a handful of terms from the 10 search strings requested by Plaintiffs. *See* Ex. B (showing the hit reports provided by SEA). SEA has indicated it will provide further hit reports showing the number documents in Mr. Abuali's custodial file responsive to two additional terms ("Matching Database" and SamsungACR) as well as the number of documents in Mr. Chung's files responsive to these same terms. SEA will not, however, provide hit reports for any of the additional terms proposed by Plaintiffs because according to SEA, they are overbroad or irrelevant. But the search strings proposed by Plaintiffs cover topics relating to consent, data flow, and damages. Plaintiffs remain willing to confer regarding narrowing certain search strings, but will need hit reports for these terms in order to meaningfully confer. *See Arconic Inc. v. Novelis Inc.*, No. CV 17-1434, 2018 WL 5660142, at *3

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 8

(W.D. Pa. Aug. 28, 2018) (ordering defendant to provide hit reports for the proposed custodians and the parties to "meet and confer" about the results). Further, there is" virtually no burden" to SEA to provide hit reports to Plaintiffs. *Castle Aero Fla. Int'l, Inc. v. Innovatis Asset Mgmt., S.A.*, No. CV 11-2672 (PAM/JJG), 2012 WL 12902786, at *2 (D. Minn. Oct. 10, 2012).

Plaintiffs have been unable to schedule the depositions of Messrs. Abuali and Chung due to the delay in searching their custodial files. Nor have Plaintiffs been able to identify and discuss additional custodians, as the Court anticipated at our last status conference. Plaintiffs request the Court order the following: (1) by no later than December 1, 2023, SEA should begin to produce the documents identified in the partial hit report provided on November 24, 2023, aside from those identified as producing 5,000 or more documents; (2) by no later than December 1, 2023, SEA should produce hit reports for the additional terms proposed by Plaintiffs for both Messrs. Abuali and Chung's custodial files, (3) by no later than December 8, 2023, the parties shall meet and confer regarding disputed search terms in an attempt to narrow any continuing disputes, and (4) by no later than December 16, 2023, the parties will provide a status update to the Court regarding this issue.

***SEA's Response***. The parties continue to meet and confer regarding search terms, but Plaintiffs once again attempt to cut that process short. On November 22, 2023, SEA provided Plaintiffs with a hit report for Mr. Abuali's files. SEA expects to provide a similar hit report for Mr. Chung by December 1, 2023. While SEA is moving forward with these searches as expeditiously as possible, the process of collecting and processing Messrs. Abuali and Chung's files has taken a substantial amount of time, due in part to the large volume of emails included in the 7+ year relevant time period.

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 9

Moreover, as the parties have discussed, Plaintiffs' proposed search terms include *over 700 individual strings*, the vast majority of which are extremely overbroad or wholly irrelevant. For example, Plaintiffs' terms include generic, non-targeted searches such as: (server* AND select*); (list* AND choice*); (support AND info); (supplement* AND customer*); and (earn* AND data). They include terms that are wholly irrelevant to the Wiretap claim at issue, including: "samsungelectronics"; (default* w/20 approv*); (draft* AND test); and (month* AND user*). They also include searches that are completely irrelevant to Messrs. Abuali and Chung's roles in evaluating television quality issues and providing technical support, such as: (USD AND information) and (annual* AND ads). To illustrate these concerns, SEA provided Plaintiffs with hit numbers from four examples of the overbroad searches Plaintiffs requested ((support AND individual*); (support AND information); (updat* AND customer*); and (notice* AND info)), each of which resulted in hits in excess of 5,000 documents *See* Ex. B. Thus, running the generic, non-targeted terms requested by Plaintiffs would result in a complete waste of time and resources.

SEA is willing to meet and confer with Plaintiffs about providing hits for additional search terms, but those search terms should be reasonably targeted to the issues in the case and the custodians' roles. SEA is also willing to meet and confer with Plaintiffs about their request—made for the first time in this letter and before the parties have had an opportunity to meet and confer—that it initiate a review of certain of the documents identified in its hit report, after SEA has had an opportunity to review a sampling of those hits to determine whether the searches are sufficiently targeted to yield relevant documents.

4. **Samsung's 30(b)(6) designations and dates.** On October 31, 2023, SEA served amended responses to Plaintiffs' 30(b)(6) deposition notice of Samsung. During the parties' meet and confer discussions, counsel for SEA committed to provide designations of witnesses and dates, preferably

in December 2023, for the depositions of the designated witness or witnesses. Plaintiffs had anticipated receiving at least the designations by Friday, November 17, and then subsequently by November 24, 2023. Unfortunately, as of November 27, 2023, Plaintiffs have received a designation only for Topics 4 and 5 from Plaintiffs' deposition notice, and no dates. Plaintiffs request the Court order SEA to identify the designees for the remaining topics from Plaintiffs' 30(b)(6) notice and provide proposed dates for each designee's depositions, by no later than December 1, 2023.

*SEA's Response*. In an effort to compromise with Plaintiffs and minimize disputes, on October 31, 2023, SEA provided amended responses to Plaintiffs' 30(b)(6) deposition notice identifying the topics as to which it has agreed to designate a witness. Due to the breadth of Plaintiffs' topics and the fact that SEA has limited knowledge about the ACR technology at issue in this action, SEA has required time in order to identify an appropriate corporate representative who can testify based on the information reasonably available to SEA. SEA identified a corporate representative for certain of the topics on November 22, and expects to identify a designee or designees for the remaining topics by December 1, 2023.

II.  **Issues Raised by Defendant**

1. **Inspection of televisions.** Plaintiffs have agreed only to permit an inspection of Mr. White's Smart TVs located in Miami. The parties will meet and confer about the scheduling of that inspection. SEA maintains that inspections of all of Plaintiffs' Samsung Smart TVs are warranted, including Mr. White's Smart TV located in Kentucky and Ms. Cauley's Smart TVs in New Jersey. Plaintiffs incorrectly assert, without any support, that "Samsung can access all relevant information about the televisions remotely." Moreover, Mr. White's Kentucky Smart TV has been the subject of Plaintiffs' lawsuit from the outset, and the assertion that Ms. Cauley "may"

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 11

withdraw from the litigation does not render her Samsung Smart TVs protected from a Rule 34 inspection. The parties will continue to meet and confer about the need for inspections of Mr. White's Smart TV located in Kentucky and of Ms. Cauley's Smart TVs.

**Plaintiffs' Position:** Plaintiffs continue to believe that physical inspections will be costly and unnecessary, especially given that Samsung can access all relevant information about the televisions remotely, through its servers, and has declined to provide any ACR data sent from Smart TVs other than four lines. Nevertheless, in an effort to compromise with the Defendant on this issue and minimize disputes this Court will need to resolve, Plaintiffs have agreed to the inspection of the two televisions in Mr. White's home in Miami, Florida, subject to supervision and oversight by experts. As Plaintiffs have advised counsel for SEA, Ms. Cauley may withdraw as a class representative if additional members are permitted to intervene. In addition, Plaintiffs have confirmed through sworn interrogatories that the one television owned by Mr. White located in Kentucky has not been connected to the internet to Plaintiff's knowledge, with the lone exception of connecting the TV in September 2023 to try to determine the DUID and PSID for the TV for purposes of responding to SEA's interrogatories. Accordingly, Plaintiffs are only agreeing to schedule the inspection of Mr. White's televisions in Miami at this time. Counsel for SEA has agreed to provide a few dates that SEA will be available for the inspections, and Plaintiffs' counsel will determine which of those dates will work for all necessary parties on Plaintiffs' side, or if a discussion of additional dates is necessary.

Honorable Jessica S. Allen, U.S.M.J.
November 27, 2023
Page 12

                                Respectfully submitted,

                                s/ *Michael R. McDonald*
                                Michael R. McDonald
                                Attorneys for Defendant Samsung Electronics America, Inc.

                                s/ *Mack Press*
                                Mack Press
                                Attorney for Plaintiffs

Enclosures

cc:     All Counsel of Record (via ECF)