UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WHITE, et al., | . |
| | . |
| Plaintiff, | . |
| | . Case No. 17-cv-01775-MCA-JSA |
| vs. | . |
| | . Newark, New Jersey |
| SAMSUNG ELECTRONICS AMERICA, INC., | . |
| | . |
| | . |
| Defendant. | . |
| | . Friday, April 12, 2024 |

. . . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JESSICA S. ALLEN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (the parties appeared via teleconference):

For the Plaintiffs:

LESLEY E. WEAVER, ESQ.
Bleichmar Fonti & Auld LLP
1330 Broadway, Suite 630
Oakland, CA 94612
(415) 445-4004
Lweaver@bfalaw.com

JOSHUA SAMRA, ESQ.
Bleichmar Fonti & Auld LLP
1330 Broadway, Suite 630
Oakland, CA 94612
(415) 445-4017
Jsamra@bfalaw.com

(APPEARANCES CONTINUED)

Audio Operator:

Transcription Service:

KING TRANSCRIPTION SERVICES
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the Plaintiff:

GREGORY SONAM MULLENS, ESQ.
Calcagni & Kanefsky, LLP
1085 Raymond Boulevard, 14th Floor
Newark, NJ 07102
(862) 208-1888
gmullens@ck-litigation.com

For the Defendants:

JONATHAN M. SPERLING, ESQ.
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1153
jsperling@cov.com

EMILY JOHNSON HENN, ESQ.
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4715
Ehenn@cov.com

JORDAN S. JOACHIM, ESQ.
CELIN CARLO-GONZALEZ, ESQ.
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1086
jjoachim@cov.com

MICHAEL R. MCDONALD, ESQ.
Gibbons, PC
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
mmcdonald@gibbonslaw.com

INDEX


| PROCEEDING | PAGE |
|---|---|
| conference | 4 |

| BY THE COURT | PAGE |
|---|---|
| order for discovery | 25 |
| order for mediation | 45 |
| order staying proceeding | 46 |

(Proceedings commence)

THE COURT: -- here for a telephone status conference in the case of White, et al. v. Mills, et al. It's 17-1775. Can I please have appearances beginning with Plaintiffs' counsel.

MS. WEAVER: Good morning, Your Honor. Lesley Weaver of Bleichmar Fonti and Auld on behalf of the Plaintiff.

MR. SAMRA: Good morning, Your Honor. Josh Samra also of Bleichmar Fonti and Auld, also for Plaintiffs.

MR. MULLENS: Good morning, Your Honor. Greg Mullens from the Law Firm of Calcagni and Kanefsky also for Plaintiffs.

THE COURT: All right. Good morning. Anyone else for the Plaintiff?

MS. WEAVER: No, Your Honor.

THE COURT: All right. Thank you. Who do we have for the Defense?

MR. SPERLING: Good morning, Your Honor. Jonathan Sperling of Covington and Burling for Defendant.

MS. HENN: Good morning, Your Honor. Emily Henn of Covington and Burling on behalf of Defendants.

MR. JOACHIM: Good morning, Your Honor. Jordan Joachim, Covington and Burling on behalf of the Defendant.

MS. CARLO-GONZALEZ: Good morning, Your Honor.

Celin Carlo-Gonzalez from Covington and Burling on behalf of Defendant.

THE COURT: Anyone else for the Defense?

MS. WEAVER: I believe Mike McDonald from Gibbons is also on.

THE COURT: Mr. McDonald?

MR. MCDONALD: Yes, Your Honor. Sorry, I was on Mute. It's Michael McDonald from Gibbons, PC on behalf of Samsung Electronics America.

THE COURT: All right. Thank you. All right so as I mentioned I had issued -- I issued a text order on April 9th scheduling today's phone conference. As I indicated I wanted to address the -- the Plaintiff's March 22nd Letter, Defendants' response, and talk about any settlement discussions to date.

First I want to remind counsel that consistent with Paragraph three of my March 14th Order, which is docket entry number 287, the parties were to submit a joint status letter on or before March 22nd only -- only if they were unable to agree on Defendants' proposed 30(b)(6) designee. And instead what I got, which was not consistent with Paragraph three of my Order is a letter from Plaintiffs' counsel only, not a joint letter, wherein they raise disputes not about the Defendant designating -- this individual named -- Stuart Farr (phonetic) as a corporate designee for certain 30(b)(6)

topics, but instead raises three other discovery disputes. One, that Samsung allegedly refuses to search Farr's custodial file despite the fact that I don't have any recollection despite the many conferences we've had about the many disputes about the custodians that Mr. Farr was ever identified as a custodian. The second issue raised is that Samsung refuses to produce documents related to Mr. Farr's representative testimony, let alone in advance of the 30(b)(6) deposition. And three, that Samsung has allegedly refused to produce many documents in the two custodians that have been the subject of many court conferences in the parties' disputes, Mr. Abualli (phonetic) and Mr. -- Mr. Evans (phonetic) that the Samsung refuses to produce many documents in their custodial files. Apparently Samsung has raised privilege as a means -- as a reason to withhold some documents. But with the bulk they seem to be refusing to produce on relevancy grounds.

So, the first thing is I'm going to remind everyone to comply fully with all provisions of all orders that this Court enters, not to submit individual letters unless I direct the parties to do so. That's the first thing.

Now, in terms of the three disputes that were outlined in the Plaintiffs' March 22nd letter, I have -- I will ask this first of Plaintiffs' counsel and then Defense counsel. And it's a simple yes or no answer. Have they been

resolved?

MS. WEAVER: No.

THE COURT: Because it looks like -- what's the answer?

MS. WEAVER: No, Your Honor.

THE COURT: All right.

MS. WEAVER: The depositions did proceed. That's the good news.

THE COURT: So, the depositions of Abualli, and Evans, and Farr all went forward?

MS. WEAVER: 30(b)(6) and in their personal capacity, yes. We completed yesterday, Your Honor. We took three this week.

THE COURT: So, Farr was -- he was deposed in his individual capacity and as a 30(b)(6)?

MS. WEAVER: Yes. We noticed him in both capacities and asked for identification of documents he had reviewed to prepare for his corporate testimony ahead of the depositions. We did not receive them. We proceeded with the depositions because we thought that's what you would want us to do.

THE COURT: All right. Well, I'm -- I'm --

MS. WEAVER: So we did so -- yes, okay --

THE COURT: All right. I'm a little -- I want to be clear about something, because I'm -- I'm -- we're going

to talk about Mr. Farr. A party is under no obligation to produce ESI from an individual that an organization has identified as a 30(b)(6). As far as I can tell, and unless that's changed, Samsung has not identified Farr as an ESI custodian. That said, if Plaintiff's counsel separate and apart from serving the 30(b)(6) dep. notice, which we spent hours going over and the Court having to make rulings about what topics were going to be permitted and what topics were not, if the Plaintiff has since served a deposition notice on Mr. Farr as a fact witness, because according to Plaintiffs' counsel in the March 22nd letter, I don't know if that was produced in the case or through their own internal investigation, but apparently according to the Plaintiff they assert that there's information that reveals Farr has in fact -- does have personal information. He's responded to -- ACR related questions within the company. He's authored document related to the ACR technology which Samsung allegedly has not produced.

So, to be clear, just very briefly, Ms. Weaver, did you serve a deposition notice on Mr. Farr for -- as a fact witness or as a 30(b)(6) witness?

MS. WEAVER: Yes.

THE COURT: Both?

MS. WEAVER: Both --

THE COURT: All right.

MS. WEAVER: Exhibits 1 and 2 is the deposition of the transcript. We took that deposition on Monday.

THE COURT: So, let me hear from the Defense on that. What documents then are you withholding? And I don't know if there -- if Plaintiff served specific document requests for interrogatories were documents were also responsive about Mr. Farr and his knowledge, if at all, about ACR technology and documents that he may have authored. I don't know if he's been identified, quite frankly, or supplemented in Rule 26 disclosures and I don't know if he's been identified in discovery. But, what -- what -- let me hear from Defendants on this.

MR. SPERLING: Your Honor, Jonathan Sperling for Defendant. First of all, just as a threshold issue, Plaintiff did raise Mr. Farr at the March 12th conference that we had before Your Honor. Your Honor did not choose to order anything further with respect to that. And --

THE COURT: When -- when you say -- all right, look, I'm -- I'm not going to go back and rehash something that was a hearing that lasted about five hours. But --

MR. SPERLING: When you say it was raised, when he -- the issue was raised, I'm not talking about as a 30(b)(6). I want to know if it was raised with him being as a fact witness to be deposed and documents be produced as a fact witness.

MR. SPERLING: So, Your Honor, Ms. Weaver at the March 12th conference said -- and I'm reading from page seventy-five, line two of the transcript. Your Honor, Topic 9 grew out of a document they produced to us by somebody named Farr. The Court: Okay. Ms. Weaver: And we asked them to produce him. We've asked for him to be a custodian.

So, that was not limited to 30(b)(6). Your Honor also issued an Order on March 14th. Your Honor said, we're extending discovery only with respect to the issues identified here and not with respect to anything else. Your Honor did not order anything further to be done with Mr. Farr.

THE COURT: Well, look obviously I -- I didn't rule specifically about anything about Mr. Farr. I -- I ruled specifically in my March 14th Order about the Defendants designating certain individuals to testify about certain topics -- as a 30(b)(6). It sounds like the parties went ahead and agreed to have Farr deposed in his individual capacity; yes?

MR. SPERLING: Yes, Your Honor, he was deposed in his individual capacity, as well as his --

THE COURT: Okay.

MR. SPERLING: 30(b)(6) --

THE COURT: So, then --

MS. WEAVER: --

THE COURT: Let me go back to my question about what documents are you saying you asked for in discovery that the Defendants haven't produced vis-a-vis Mr. Farr?

MS. WEAVER: Thank you, Your Honor. We did proceed with the -- the depositions with the caveat that if additional documents were produced after the fact, we would seek to re-depose him or maybe get additional time, just that caveat. What documents don't we have? We have practically nothing, Your Honor.

THE COURT: No, no, no, no, no --

MS. WEAVER: Mr. Farr -- yeah --

THE COURT: I'm sorry --

MS. WEAVER: Okay.

THE COURT: I'm sorry to interrupt you. Not what I asked. What I asked was --

MS. WEAVER: Okay.

THE COURT: Were discovery requests made specifically that the information that you're saying Mr. Farr has personal knowledge about were responsive -- you asked for them in discovery requests and they were not provided. Where did you get this information about Mr. Farr, in your own investigation?

MS. WEAVER: Your Honor, we found a video online that they had not produced, and then they have subsequently produced it because we raised it in the last hearing. There

were -- there was one document that Mr. Evans testified he found called ACR FAQ, which had been authored by Mr. Farr. And, so based on those two things we asked for additional documents to be produced from Mr. Farr that -- at least that Samsung do a good faith search for reasonable documents. We had search terms already agreed to. We proposed that they use the search terms that we had agreed to for the other deponents, and Samsung declined.

THE COURT: So, wait a minute. You're saying during -- which -- Mr. Evans's deposition he referenced documents that were authored by Mr. Farr?

MS. WEAVER: He testified that he had found this document written by Mr. Farr, and they did produce that. I think --

THE COURT: Okay.

MS. WEAVER: You're asking how we learned about it. So, we have one document that is -- and maybe three versions of it from -- for the entire time period by -- by Mr. Farr. And then we have, you know, a smattering of other documents. But they did not do a custodial search of any kind for Mr. Farr. They refused to. And it's very clear that Mr. Farr is a person, who at least since he joined the company in October 2019 was training people at FEA (sic) about ACR.

THE COURT: So, let me ask this --

MS. WEAVER: Assumption --

THE COURT: Does -- does the Defense -- it sounds to me -- are you making any objection that he doesn't have any relevant information? I mean you produced him as 30(b)(6), and then you let him be -- let him be deposed in his individual capacity. So, you're not raising that he doesn't have relevant information; right?

MR. SPERLING: Your Honor, he does have certain relevant information. And there's I think maybe a misunderstanding potentially -- rising from the way that Plaintiff's counsel responded to the Court's question. So, the Court posed to Plaintiff the question what have you asked for and not received? I don't think that Plaintiffs' counsel answered that question.

In addition, the ACR FAQ that Plaintiffs' counsel described, Plaintiffs' counsel description made it sound as if somehow they learned about that at Mr. Evans's deposition, which took place on Wednesday of this week. The ACR FAQ was produced by Defendants in the ordinary course of discovery. That document was authored by Mr. Farr and we produced it. The document also identified certain videos, and those are the videos that Plaintiffs refer to. They're identified in the ACR FAQ.

At his deposition Mr. Farr described that the information he has regarding the operation of ACR is essentially learned orally, that it's compiled in the FAQ,

which was sort of a live document over time, it accumulated over time. He specifically testified that he is not aware of any document at Defendant -- in Defendant's possession, custody or control that provides more information about the ACR technology than is contained in the documents that he reviewed --

THE COURT: I need -- I need to --

MR. SPERLING: Prepare for deposition --

THE COURT: So, you're saying he testified -- I have to interrupt you.

MR. SPERLING: Yes.

THE COURT: You're saying he testified that he's not aware of any other documents, other than what he's already authored; is that what you're saying?

MR. SPERLING: Yeah, I didn't -- I didn't get to finish the sentence, Your Honor. So, he's not aware of any document that provides more information about the ACR technology than is in the documents that he reviewed to prepare for deposition. That's part one. And part two, all the documents that he reviewed to prepare for the deposition were produced to Plaintiff. So, yes he testified that he is not aware of anything that Plaintiffs don't have, right, that has more information on this subject.

THE COURT: So, he -- and he testified about that under oath?

MR. SPERLING: Correct, Your Honor.

THE COURT: So, then that's -- so, Ms. Weaver, is there some -- based on his deposition testimony -- I mean Mr. Sperling just said what he said, that the witness said under oath I don't have anything else. I'm not aware of anything else. That said, is there something based on his deposition testimony that you want to -- I will let you, if you haven't already, very, very limited post deposition document requests?

MS. WEAVER: Yes, Your Honor. We did previously raise this. I apologize if it seemed that -- that I was communicating we learned about it in the deposition. In the last hearing we -- when we found this video online, and not through Samsung, you can see in the video that he has a -- a bucket of documents called ACR 101. And we repeatedly asked Defendants to search for and produce that.

He also testified that he has a Samsung-issued phone on which he emails about these matters. We would like a reasonable search using the very narrow search terms that they agreed to applied to his email account about ACR to see what he has.

THE COURT: --

MS. WEAVER: And -- and the reason, Your Honor --

THE COURT: Wait, wait, wait --

MS. WEAVER: Okay.

THE COURT: What was the first thing you mentioned? He -- you said the video?

MS. WEAVER: Yes.

THE COURT: What --

MS. WEAVER: When you looked at this video -- we found the video online, Your Honor. And in the video there's -- we could even put it in -- in a letter if you wanted to see the screenshot --

THE COURT: No, no, no, no, no --

MS. WEAVER: Okay.

THE COURT: We're going to address this right now. Go ahead.

MS. WEAVER: Okay. In -- in the video there's a snapshot, which we have sent to opposing counsel. And it says ACR 101. You can see it -- it's showing his desktop. So, there's -- actually there's 20 19 4 2 ACR workshop. ACR 101 documents. There's -- there's a whole bucket of documents that in the course -- and we sent a letter saying please produce these documents to --

THE COURT: Okay. So, let's stop -- let's stop right there. Mr. -- so let me ask Defense counsel. What say you? Why are you not producing these documents?

MR. SPERLING: Your Honor, they could have asked Mr. Farr at his deposition about -- you know, what are those documents. We see these file names, what are they? And they

didn't. And had they done so --

THE COURT: But that's a different point. They -- they're saying they -- they -- they -- they -- they discovered -- because they said you wouldn't produce -- they discovered this link that references a number of documents related to the -- I guess the ACR FAQ. They requested those. Why weren't those produced?

MR. SPERLING: No, that -- so that's not what happened, Your Honor. First of all, they didn't find the video online. The link was contained in the ACR FAQs that we produced. When they say they found it online, they mean that they took the link that we provided them and they put it in a browser. Okay, they didn't find it online, we gave them the information.

THE COURT: Okay. So, then you gave them the link, and then what? There were additional -- once you click the link there were additional documents?

MR. SPERLING: No, no, no, Your Honor. So, the link is to a video and for about a split second at the beginning of the video Mr. Farr is sharing on the -- on the screen -- it's essentially a video capture of a -- of a Zoom presentation, Your Honor. And for a split second at the beginning of the Zoom he's sharing on his screen -- on the screen that everyone else sees what's on his computer screen. And, so for a split second you can see a file folder that's

on his screen. And in that file folder you can see the name of a few files. Okay. Plaintiffs asked us for all documents that were displayed during the presentation. And there are no documents that were displayed during the presentation. And then they came back later and they said, oh well we also want these things. -- they were displayed. The documents weren't displayed. You can see the names of the documents for a second, they're not displaying the documents. Your Honor, if you ordered me to display a document and I -- what I did is I put the name of the document on the document on the screen, you'd probably sanction me.

So, it's just a new belated request and they chose not to ask Mr. Farr, hey what are those documents? And Mr. Farr testified beyond the documents that have been produced, right, there's nothing that has any more information about the operation of ACR technology.

THE COURT: All right. Look, here's what I'm going to do. This -- the documents that were part of this -- I'm -- I'm using my word, the Court's word -- PowerPoint, it sounds like, presentation or something that was done by Mr. Farr. And he referenced or he pointed to or he opened up, I don't know, as part of file folder -- there are documents that were referenced in this file folder or at least were shown in this video?

MR. SPERLING: No, that's not what happened, Your

Honor --

THE COURT: --

MS. WEAVER: Your Honor, may I --

MR. SPERLING: -- want to be clear -- he -- he didn't --

THE COURT: Look, guys, you're all good lawyers but I'm starting to think games are being played here, all right. And I'm getting really frustrated really fast. If there are documents responsive to -- relevant to this -- this YouTube video where the ACR FAQ document was involved and there are -- Mr. Farr has a file folder that relates to this ACR FAQ document, is that what you're looking -- is that you asked for, Ms. Weaver?

MS. WEAVER: Your Honor, I think it's -- I think what's happening here is obviously we don't only want just this one presentation.

THE COURT: Okay. I want to know what was asked.

MS. WEAVER: We want --

THE COURT: I want -- I want to know what was --

MS. WEAVER: What was asked? Okay. It is a video. So, in the video, which is a presentation, he's both showing a PowerPoint and he is showing in the video that he possesses documents relating to ACR, to how it functions --

THE COURT: Ms. Weaver, what was the --

MS. WEAVER: That's it.

THE COURT: Please -- please, what was -- I don't want to know --

MS. WEAVER: That is the request.

THE COURT: No, what was the request? What did the request actually say? Because I don't have it in front of me. What was the request?

MS. WEAVER: Our -- our request said please produce the files that are shown in the video relating to ACR. I think it was a letter that we sent. And we sent a snapshot of the files. And I --

THE COURT: Okay.

MS. WEAVER: I'm looking at that letter.

THE COURT: All right.

MS. WEAVER: So, it says -- there's a photo of it. It says it's got -- file folders -- it says 2019 11 ACR, 2019 4Q ACR, ACR 101, there are two other files I can't read right now. And it says please produce these documents immediately.

THE COURT: Okay.

MS. WEAVER: And it's referring to that screenshot from the video.

THE COURT: So, Mr. Sperling, what is the basis to not produce those documents --

MR. SPERLING: Your Honor, the basis -- yeah.

THE COURT: Based on the request? Mmm hmm?

MR. SPERLING: Your Honor, it's -- it's an out-of-

time request, right. And I just want to clear something up. It -- he didn't display this as part of his presentation. It's -- as everyone is gathering for this Zoom before the presentation began. So, we've all the experience of getting on Zoom calls and waiting for everybody to show up, and then once everybody's there, then it begins. The recording begins before everyone has completed assembling and before the presentation begins. At the very beginning of the recording he is the host. For a split second it -- it happens to be sharing or mirroring his screen as he's looking for a file. So, it wasn't referenced in the presentation. It's not mentioned in the presentation. It's not shown in the presentation. It -- it's captured for a second in the video before the presentation begins.

With respect to their request, they keep making new requests. They keep making out-of-time requests. Your Honor was quite clear that discovery is extended until May 31st solely for the limited purposes that are identified in the March 14th Order. And, so we said we're not producing anymore. Right, we did make sure to elicit testimony from Mr. Farr regarding whether beyond what's produced he has anything that describes ACR in any greater detail. You know, and again Plaintiffs are basically trying to sort of you know -- leverage somehow their own failure to inquire about this at the deposition. They had the man in the witness chair for

seven hours under oath on Monday of this week, and they didn't ask him a single question about it.

THE COURT: All right. So, the request --

MS. WEAVER: I -- I --

THE COURT: No, no, no, no, hold on. Hold on. When was the -- you -- Ms. Weaver, the request for the video was made before the March 12th hearing I had; is that correct?

MS. WEAVER: Yes, Your Honor.

THE COURT: And you raised that in the letter with the Court?

MS. WEAVER: Yes, we did, Your Honor.

THE COURT: Which -- do you know which letter you raised it in?

MS. WEAVER: I believe it was the March 22nd letter.

THE COURT: No, no, it can't be that because I had the hearing March 12th.

MS. WEAVER: Oh, I'm sorry. Yes, let me -- let me look, Your Honor. I'm looking right now. I'll need a moment, Your Honor. I apologize.

(BRIEF PAUSE)

MS. WEAVER: We issued the RFP, it's request number 40 and it is in the March 1st letter, Your Honor.

THE COURT: March 1st, all right. Bear with me.

MS. WEAVER: And in the hearing --

THE COURT: Let me -- let me look at the letter, please, first.

MS. WEAVER: Yes. And when you're ready, Your Honor, I can read request number 40 to you, which we went over in the hearing.

THE COURT: Let me see something here. Well, it's number 40? Because I have --

MS. WEAVER: Yes.

THE COURT: In my -- in my -- in my Order of March 14th. Paragraph seven, the Court grants Plaintiff leave to serve requests for -- for productions number thirty-six and forty. So, what am I missing here?

MS. WEAVER: I don't think you're missing anything, Your Honor. We've asked for these. These weren't produced before the deposition.

THE COURT: Where's -- where's request --

MR. SPERLING: Your Honor, they served request number forty -- I apologize.

THE COURT: Where's request number forty? Is it attached to any --

MS. WEAVER: I can read it --

THE COURT: No, let me --

MS. WEAVER: Yes, Your Honor.

THE COURT: Yeah, where is it attached?

MS. WEAVER: ECF 283.

THE COURT: 283 -- number -- dash 1?

MS. WEAVER: Yeah, and it's Exhibit -- give me a second.

UNIDENTIFIED MALE: Your Honor, this was the separate entry that we filed under seal at ECF 284. So, it's Exhibit C to the March 1st letter.

THE COURT: Why was this file -- why was thing filed under seal? It's -- discovery request. That's a whole separate issue, guys.

MR. SPERLING: --

THE COURT: I don't know why -- I don't know why it's being filed under seal. But anyway, we'll have to deal with that another time. Let me look at number forty.

A complete copy of the -- document request number forty, a complete copy of the audio and video recording of the presentation title -- entitled quote AP ACR ACR February 12, February 2022 referenced in Bates number SEA00046935 and available on YouTube at -- I'm not going to read the whole link -- including the audio of all requests -- excuse me -- including all the audio of all questions asked during the presentation and a copy of any documents referenced or displayed during the presentation.

So, I -- look, it seems to me that this was a request that was served on the Defendants. I already ordered

for -- I already granted Plaintiffs' request to serve it. I think that the -- the narrow interpretation that the Defense is giving to this request, to say well they weren't really referenced or displayed, it was a screenshot of a few seconds -- the fact that he displayed the file folder, the fact that there are documents apparently in the file folder -- and unless you're raising a privilege argument assertion, then under the broad scope of discover and consistent with my prior ruling where I already as memorialized in my March 14th letter, granted Plaintiff leave to serve the request. So, it is not an untimely request. I'm going to direct the Defendant to produce those documents in Mr. Farr's file folder. And I want them produced in a week. So, unless you tell me they're privileged, then I'm going to order you to produce them in a week. Are they privileged?

MR. SPERLING: Not to my knowledge, Your Honor.

THE COURT: All right. Then I'm going to direct you please to produce those within a week from today. What I'm not going to allow is -- Plaintiff to direct the Defendants to produce the Defendants' work phone, which quite frankly I think is intrusive. The mere fact that the company may have issued a work phone and the mere fact that he may have used it for work-related duties, I don't see how that in any way is encompassed in request number forty, and I'm going to deny that request.

So, that takes care of -- should take care of the parties' dispute as it relates to the information that Mr. Farr has -- and documents that he has, both consistent with -- relevant information that no party disputes he has relevant information pertaining to the claims in the case, and consistent with my ruling in connection with Plaintiffs' request number forty that I just read into the record. So, that -- that cares of that.

Now, does that -- Samsung refuses to produce documents related to its representative's testimony, let alone -- to the 30(b)(6). I'm not sure what you mean by that. Is that separate and apart from this issue related to rule 40? Because, again, he's a 30(b)(6) witness. So, in his capacity as a 30(b)(6) witness he doesn't have to produce -- he doesn't have to produce any documents, the organization has to produce documents responsive to the topics that he's going to testify about. So --

MS. WEAVER: Under -- understood, Your Honor.

THE COURT: All right.

MR. WEAVER: So, that -- I understand your -- go ahead.

THE COURT: I was going to say, do you want to be heard on that? Otherwise, I'm -- I don't see that there's anything else that he should have to produce -- first of all, he should only, as I said, have to produce stuff I already

just directed them to produce related to the file folder. And I'm not going to direct him to produce anything -- really -- the way you have this dispute teed up in your March 22nd letter, it really goes to him being as -- testifying in his capacity as a fact witness. And I've already now ordered him to produce other documents. To the -- to the extent you want to direct -- you want the Court to direct the Defendants to produce documents relating to, as you call it his quote representative testimony, I'm not sure you -- what you mean by that. Again, as I --

MS. WEAVER: Sure.

THE COURT: I've made it very clear what a 30(b)(6) obligation -- deponent's obligations are. They are to familiarize themselves and prepare themselves to be able to talk about the topics that the parties -- that the Plaintiff has asked for and that this Court allowed to go forward.

MS. WEAVER: I understand, Your Honor --

THE COURT: -- he's already testified -- he's already testified --

MS. WEAVER: With regard to the 30(b)(6) --

THE COURT: And he's already testified. So, yeah. Go ahead, Ms. Weaver.

THE COURT: Right, he has -- he has testified. I think the concern that we have is that he plainly should be a custodian in this case. He should have been identified. He

-- within FDA and we never got custodial files from him. We didn't get emails. We got -- the only reason we knew he existed is because Mr. Evans had a document created by him. And, so in his personal capacity we have received almost nothing, which is why we should have received, you know, the file folders that you just ordered them to produce, Your Honor.

But, also that been an -- an -- you know, an underlying concern in this case is that -- is that -- you know, two witnesses were identified early on to you as the only people at SEA who had information about ACR. That was -- you know, Counsel said that to you in a hearing. And it's not true. It's not true with regard to Mr. Farr. And we've taken additional documents. And the reason is not that we want a fishing expedition, it's that for example -- and Your -- Your Honor's Order noted this. We are being denied discovery of the data flow prior to certain time periods that SEA is arbitrarily picking. And it's a little complicated, but either prior to Mr. Farr's employment at the company in October 2019, they are saying they don't have fingerprint data prior to May 2018, et cetera.

THE COURT: I -- I --

MS. WEAVER: And it's -- yeah --

THE COURT: -- to right now. So -- so -- so, look --

MS. WEAVER: Okay.

THE COURT: In terms -- in terms of Mr. Farr, I've just -- I've just directed them to produce additional documents. I appreciate what you're saying that they said there's two custodians, now it sounds like there's someone else that may have relevant information separate and apart from being a 30(b)(6) corporate designee.

All I can Defense counsel is, you know, if there are any -- you're -- you're going to be a -- to your representations. So, now we have a third person who has information. If there's nobody else, then there's nobody else. If there is, that's going to be an issue because the Plaintiff has clearly asked for individuals with relevant information. You identified Mr. Evans. You've identified Mr. Abualli. And now we have Mr. Farr who appears to have some -- at least at minimum limited relevant information.

And -- and -- and Ms. Weaver, I've now directed them to produce additional information. You've taken his deposition. So, I think that should take care of what your concerns are. I understand what your concerns were and I've now ordered them to produce other documents. All right.

So -- again, to the extent you're asking for documents in his representative capacity -- he's already been deposed, but to the extent you're just asking anyway for him to produce documents in his -- his capacity as a 30(b)(6)

witness, that I'm going to deny.

So, let's move on to the third issue. Samsung has allegedly refused to produce many documents in Abualli and Evans's custodial files. Some based on privilege, it looks like the bulk on relevancy grounds. I want to know how many documents are we talking about that you're objecting on the basis of relevancy?

MR. SPERLING: Your Honor, I'll have to pull that up. I know I can pull it up from somewhere because we specifically discussed this at the March 12th hearing. Plaintiffs raised this in their March 1st letter. This was not a fleeting discussion. And at the hearing, Your Honor, I actually ran through with you some examples of -- you know, we have a hundred and fifty non-responsive documents of this type that -- two hundred of that type. And I went through several categories with Your Honor -- a few hundred each. Like we -- I know it was long hearing, Your Honor, and I certainly am not faulting the Court for not remember all the ins and outs, but this was raised. This was specifically addressed, and you didn't order anything further to be done. And they're just coming at you again to see if -- if they can get you to do something different this time than you declined to do the last time.

THE COURT: -- clear, my -- my Order from March 14th says as to the -- Paragraph two, as to the custodial

production issue identified in Plaintiffs' March 1st submission and the Court's January 12, 2024 Order, ECF number 266 at Paragraph 4, Defendant shall complete the production of documents for Defendants' custodians Mr. Abualli and Chung -- oh, and Evans by March 15th, 2024.

So, has the production been completed, yes or no?

MR. SPERLING: Oh, yes, Your Honor.

THE COURT: I mean --

MR. SPERLING: I'm sorry I misunderstood the question. Your Honor, I misunderstood the question. Absolutely the production has been completed.

THE COURT: But -- but you're -- you're withholding documents based on relevancy; right? So, how many? That's the follow-up question --

MR. SPERLING: No. Your Honor, we're not -- we're not withholding anything, right. We have searched from hits that were not responsive. So, let me run through some examples.

THE COURT: Did you say, I'm sorry, a hundred and fifteen? Did you say a hundred and fifteen you -- you were withholding?

MR. SPERLING: No -- I'll run through a few categories with you, Your Honor. We have over fifteen hundred documents --

THE COURT: -- I'm sorry -- I'm sorry -- I'm sorry

to interrupt you. Again, I can't even keep track of how many disputes this Court attempts to resolve, and it's Groundhog's Day. It's a boomerang thing that just keeps happening. So, please answer my question.

MR. SPERLING: Yes, Your Honor.

THE COURT: Are you with -- I directed you to complete the production. You're telling -- saying to the Court you have completed the production. And by that you mean you have completed the production by -- by producing relevant, non-privileged documents. And you're withholding them -- some other based on privilege and a lack of relevancy. Is that true or no?

MR. SPERLING: No, Your Honor.

THE COURT: So, what are you withholding? Only documents based on privilege? You've produced everything --

MR. SPERLING: We're only withhold --

THE COURT: Mmm hmm.

MR. SPERLING: Your Honor, we've produced all responsive, non-privileged documents. We only withheld responsive documents on privilege grounds. There are documents that were search term hits. In the ordinary process you run the search terms to narrow the universe in which you'll perform a responsiveness review, and then we perform a responsiveness review. The search term hits noted many false positives. We completed that review and we

produced all non-privilege responsive documents. We're not withholding anything other than on the basis of privilege.

THE COURT: Right, so you're saying these false positives were for hits on documents that you're saying were not responsive, they weren't relevant to the -- to the request?

MR. SPERLING: That's -- that's correct, Your -- that's correct, Your Honor.

THE COURT: So, Ms. Weaver, what's your response to that?

MS. WEAVER: My response is that ordinarily when the parties negotiation search terms, if there is a way in which non-responsive documents are coming up, parties have a transparent conversation about any other additional reasons that documents are being deemed non-responsive. -- for example, hi Lesley. We looked at these documents. It's pulling up a bunch of bubble gum ads. And we say, okay, you don't have to include those.

What's happening here is that we have no information about why these very narrow search terms would be pulling anything that is not responsive. And as you can see, the Defendants have a very different view of how narrowly to parse their discovery responsibilities in this case. And because of that we have asked them to tell us what -- what do you think is not responsive about these docs? They will not

do that.

THE COURT: All right. Let me -- Mr. -- Mr. Sperling, how many documents yielded this positive hits as -- false positive hits, I guess?

MR. SPERLING: I -- I think it's about two thousand -- in the two thousands for each of Mr. Evans and I think Mr. Abualli and Mr. Chung combined.

THE COURT: And have you --

MR. SPERLING: -- and example --

THE COURT: Have you --

MR. SPERLING: Your Honor -- yes?

THE COURT: Have you identified them based on categories?

MR. SPERLING: We did at the hearing, Your Honor. So, for example, there are over fifteen hundred documents that relate to customer complaints that have nothing to do with the issues in this case. They -- they include lines like customer is complaining about lines appearing on the user's tv that cause video content to disappear. So video content comes up as a search term hit, but these are customers complaining about a hardware problem in terms of the inability to see things on their screen.

THE COURT: All right. So, let's --

MR. SPERLING: -- over three hundred documents that were search terms hits that are -- that are --

THE COURT: Woah, woah, woah --

MR. SPERLING: Power related issues on their on their televisions.

THE COURT: Wait, wait, wait. Mr. Sperling, I want to do one category at a time.

MR. SPERLING: You got it.

THE COURT: So, Ms. Weaver, he just made a representation that there's a category of documents that were hit on, but they don't have anything to do with the allegations in this complaint or in response to discovery requests. They have to deal with customer complaints unrelated.

MS. WEAVER: Yeah, if -- if that's true, if they were unrelated we could accept that. I mean --

THE COURT: He just represented that --

MS. WEAVER: Other -- yes, I understand --

THE COURT: --

MS. WEAVER: -- put the other endpoint on. They produced eleven documents for Mr. Evans and five for Mr. Chung --

THE COURT: Okay. Okay.

MS. WEAVER: In a case --

THE COURT: I understand that.

MS. WEAVER: So, we're very --

THE COURT: But you know what?

MS. WEAVER: Okay.

THE COURT: I understand that. Some -- some cases have thousands and thousands of relevant documents. Some have ten. I'm not going to sit here and make any kind of advisory opinions as to where this case falls. I don't know. But I have a representation now from him saying that those -- and I -- I don't know if you've had a meet-and-confer on this, which is a separate issue. But I want to cut through this. So, he has made a representation that as to one category of documents that hit on, they're not relevant.

How many documents approximately, Mr. Sperling, are we talking about for that one category of -- of unrelated customer complaints?

MR. SPERLING: Customer complaints related to video content not appearing on the screen, fifteen hundred plus.

THE COURT: Okay. And what about the -- you said there's approximately how many, twenty-five hundred was it for the hits total?

MR. SPERLING: Umm --

THE COURT: Two thousand?

MR. SPERLING: No -- so for Mr. Abualli and Mr. Chung it's about twenty-five hundred. So, if fifteen hundred plus fall into just that category. There's another three hundred that relate to power related problems on users' televisions. There is another two --

THE COURT: Power -- okay. You mean they're unable to power up the tv?

MR. SPERLING: Things like that, Your Honor. I don't if they -- they can't power it up or the power goes off intermittedly whilst the television's already on. Those kinds of problems.

THE COURT: All right. So, that doesn't sound relevant to me. Ms. Weaver?

MS. WEAVER: Yeah, I mean what -- I don't -- you're right, when he describes it this way I don't know if they're relevant. The question is whether any of these problems relate to the functioning of ACR. That's how I would put it.

THE COURT: Okay. All right. So, Mr. -- Mr. Sperling, she -- she makes a good point. Anything dealing with the functionality of -- of ACR?

MR. SPERLING: No, Your Honor. If they dealt with the functionality of ACR they would have been produced.

THE COURT: All right. So, Ms. Weaver, I -- I agree with you that that would be something to be produced. But he's representing that those hits of the two thousand plus documents that they did not produce because they said were not responsive but not privileged, they don't have to deal with the -- the functionality of the ACR. And, so that's your answer. Okay.

MS. WEAVER: All right.

THE COURT: So with that said, I will -- I appreciate both sides clearing that up for me. And I will -- I will -- I'm not going to direct Samsung to produce any other documents in Abualli's -- evidence custodial files. It seems to be complete based on the representations that Counsel made today in terms of what is or isn't responsive to those -- to those requests. All right. So, that takes care -- takes care of the disputes in the March 22nd Order. I will certainly issue an Order with respect to that.

Now, in terms of -- you've taken now Mr. Farr's deposition; right? You've mentioned that. You've also taken the three custodians' depositions, too; is that correct?

MS. WEAVER: Your Honor, we have taken three of the four. We took Mr. Farr Monday, we took Mr. Evans Tuesday, and yesterday we deposed Mr. Abualli.

THE COURT: Okay. --

MS. WEAVER: We do not have a deposition date for Mr. Chung. We've asked for it and we still don't have it.

THE COURT: Mr. Sperling?

MR. SPERLING: Your Honor, we'll provide that very soon. Obviously he's going to be deposed and he's going to be deposed very quickly. I don't think I can provide a date today. But I know we're working on providing one and it's going to happen very soon.

THE COURT: Do you think he'll be able to be

deposed before the end of April?

MR. SPERLING: Yes, Your Honor, I do.

THE COURT: All right, great. So, please by -- make sure he's deposed please by May 1st. I know there's some holidays in there, so I don't want to interfere with that if anybody observes the Jewish holiday of Passover. So, May 1st, please, if you can get him deposed.

All right. Now, I know that there's a number of outstanding discovery disputes as detailed in the parties' April 8th letter to the Court, which was a joint letter consistent with the -- with the Court's Order. And that letter is docket entry number 295. Now, some of which I already ruled on during the March 12th hearing and have memorialized in my March 14th Order. For example, there's the dispute again about the Defendants' production that the Plaintiff has characterized it as exemplars of the fingerprint data that was part of my ruling in Paragraph 4 of the March 14th Order and is detailed in -- as Plaintiffs describe it in the April 8th letter.

My question is in the April 8th letter how many disputes are there? I -- I identified four. Are there more than that?

MS. WEAVER: In reviewing, Your Honor, I think -- I think there are at least four, Your Honor. And there are -- there's new information based on the depositions that we took

that bear on some of these issues. And it might be --

THE COURT: Well, I -- I want --

MS. WEAVER: Helpful if I reported that. Yes.

THE COURT: I want to identify how many -- how many disputes there are. So, let's talk about -- let's identify what they are. I just want to not -- just how we describe --

MS. WEAVER: Okay. First --

THE COURT: What's the first issue?

MS. WEAVER: Yes, I understand. Profits.

THE COURT: About profits, okay.

MS. WEAVER: Damages, yeah.

THE COURT: What's the second dispute?

MS. WEAVER: The matching database productions?

THE COURT: Mapping database productions --

MS. WEAVER: Sorry, matching -- yeah --

THE COURT: Oh, match -- right.

MS. WEAVER: No problem.

THE COURT: Okay.

MS. WEAVER: Yeah.

THE COURT: What's the third?

MS. WEAVER: -- the fingerprint data.

THE COURT: Okay. What's the fourth?

MS. WEAVER: It looks like this is -- 38, so it's profit again. Content ID and associated titles.

THE COURT: So, the fourth one is content ID and

associated titles?

MS. WEAVER: Yes, the programming titles.

THE COURT: Okay. And that's -- is that it?

MS. WEAVER: That -- that's what's in the letter, Your Honor?

THE COURT: All right. Does the defense have a different view about how many there are or the difference in these? I mean -- I don't mean like you may call them something a little bit different, but that these are the four disputes still at issue.

MR. SPERLING: Your Honor, Plaintiffs' counsel seems to be now turning one into two. Plaintiffs' counsel reciting profits, matching database, fingerprints, and content IDS. When I look at their letter I see the first heading, RFP 38 -- profits. The second one, RFP 41 relates to content IDS. That's the fourth issue that they identified. Then they have matching database production. I don't see anything here about fingerprints. The fourth one that they identify in their letter is call logs, which is something that the parties have been working on and I -- I don't think is the subject of dispute.

THE COURT: Well, look, it's a little confusing. I -- I agree to the extent that looking at the letter for example on page four of six it has a bullet point matching data that you talk about, right. And you say they

mischaracterize it. And you said they've already produced exemplars of fingerprint data from smart tv transmitted to the matching database. So, if -- I don't know if you think they're related topics, the matching database and the fingerprint data, whereas Plaintiffs' counsel sees them as two separate issues. Is that fair to say? There's a dispute about --

MS. WEAVER: Yes, Your Honor.

THE COURT: There's a dispute about even how to characterize these disputes.

MS. WEAVER: Yes.

THE COURT: Okay. So, we have -- all right. So -- so it may be that Plaintiff says those are the four. And I guess the difference for the Defense is -- category two and three are related. So -- all right. And what about the call logs, is that -- is that a dispute too? Or is that related to --

MS. WEAVER: I think -- Plaintiff have conceded to the way that -- that the Defendants wanted to produce this. So, we took that off the table --

MR. SAMRA: Well -- sorry, just to clarify that. I think the --

THE COURT: --

MR. SAMRA: This is Josh Samra for the Plaintiffs. I would say we -- we are negotiating the protections related

to the customer service logs. We -- we have sent a proposal -- counter proposal and are waiting to hear back from Samsung regarding the latest proposal --

THE COURT: So, you're in the process of resolving --

MR. SAMRA: Exactly, Your Honor.

MS. WEAVER: That's our hope, Your Honor.

MR. SAMRA: Yes.

THE COURT: Okay.

MR. SPERLING: Ours as well, Your Honor. I -- I think that one's going to be resolved. I've learned quickly in my short time in this case never to be too optimistic. But -- but I don't think that this one is likely to require the Court's further attention.

THE COURT: All right. So -- all right. So, with the exception then of the -- of the call log -- here's what we're going to. Because some of these I have already addressed. I know I've already addressed them, because I recognized some of these disputes. If you -- and I -- I guess you submitted to me -- which as I mentioned I wanted a status letter by April 8th. And -- which was supposed to be four pages, which I got. But then I also go as an exhibit -- again under seal -- 296, which I guess -- I think describes the parties' attempts to meet and confer, which is another seven page single-spaced letter. Which is fine, because

that's between the two of you. But then once you start giving it to the Court, now we're beyond the four pages that I've directed.

So, if you guys can't work out these issues, all counsel are going to be required to appear again in my courtroom on April 16th to meet and confer beginning at 9:30 to address the first -- I'll say two issues, but there may be three. I can't tell whether the matching database production issue is or isn't related to the finger database. So, if you can't resolve the profit/damages issue which is related to RFP 38, and you can't resolve this matching database production/fingerprint data dispute, then you guys can come into the courtroom on April 16th. And you guys will have another meet-and-confer. And then if I have time, I will discuss those issues.

As to the fourth dispute about the content ID and the associated titles, if you can't resolve that issue on your own, then you will come in again the following week on April 25th and you'll talk about that issue. And if you can't resolve and if time permits after 4:00 or 4:30 or whenever my last conference is, then I will address that with the parties.

Now, that's how we're going to handle that. In terms of settlement, I had the opportunity to speak with the private mediator that the parties had previously retained.

And I know that you participated, as you had told that you participated in in-person mediation with the mediator in September of 2023. And I understand in speaking with the mediator and the parties that the mediation, despite best efforts, was not successful.

That said, I believe that this complex case which has already consumed a significant amount of resources not only for the -- the court, but for the litigants themselves, based on the large volume of recurring and new discovery disputes for more than eight months, and the number of pending motions -- there's motion the motion to intervene, which is docket entry 257. There is the motion for the issuance for the Letters Rogatory which is docket entry number 288, and the recently transferred back motion to compel and enforce the subpoena.

It's not only appropriate, but it would conserve the resources of the court and the parties, and I think it would be in the best interest thereof and that a mediation with a fresh pair of eyes, a new mediator, could only be a benefit. And, so I'm referring this case to mediation pursuant to Local Civil Rule 301.1d. I'm going to refer the case to mediation before former Magistrate Judge Mark Falk, who is with the Walsh Pizzi firm, subject to a conflicts check. His contact information can be found on the Court's website and the links for the certified mediator list. The

mediation pursuant to the -- the court mediation program is $300.00 an hour split evenly between the parties. And with the exception of the limited additional discovery that I have directed Defendants to produce today, as well as the parties to meet and confer on the call logs, as well as the parties' attempts to continue to resolve these other discovery disputes, that if you can't you'll come into my courtroom in the next couple of weeks, I am going to issue an -- and also the deposition of Mr. Chung, which will happen as I understand it by May 1st. And is the Plaintiff's deposition scheduled for April 18 -- 19th; was it? Is that still happening?

MS. WEAVER: Your Honor, it's scheduled for this Monday, which conveniently is the 15th before the day you've ordered us to meet and confer.

THE COURT: Okay, great. So that -- so other than that limited discovery, I'm going to issue an Order staying all the proceedings in this action, including motion practice and the balance of discovery. Depending on when -- assuming Judge Falk doesn't have any conflicts and obviously to give the parties an opportunity to conduct this additional discovery and resolve these outstanding disputes, as well as to find a mutual convenient date and time for the mediation with Judge Falk. I'm not going to issue the Order referring the case to mediation yet. I'm going to decide whether --

how long I actually stay the case. I can stay it for up to ninety days pursuant to Local Civil Rule 301.1(e)(6). And, so the pending motions are going to be administratively terminated without prejudice pending the outcome of the mediation. And obviously if the action does not resolve through this mediation, then the Court will reinstate the motions.

And the parties are directed to contact Judge Falk and then submit a joint letter to the Court. I'd ask you to do that, please, on or before May 2nd confirming the date of the mediation. And if you cannot resolve, like I said, these outstanding discovery issues, then I want a letter by Monday telling me whether it's resolve -- resolved or not so I know whether to expect you on Tuesday the 16th. And then similarly the same thing, if you can't resolve the last dispute, send me a letter please by April 24th so I know whether or not you're coming on April 25th.

MR. SPERLING: Your Honor --

THE COURT: I will not require the parties to at this point have the May 8th phone conference, which I know I had directed in my March 14th Order at Paragraph 16 in light of the Court referring the case to mediation.

I'll hear from you very briefly. Someone was going to say something. Otherwise we're going to be adjourned in a minute.

MR. SPERLING: Yeah, Your Honor, it's Mr. Sperling for Defendants. I -- I wish this weren't the case. I understand that the Walsh Pizzi firm represents -- Electronics Corporation in connection with the motion to compel that was transferred from the Southern District of Florida back to the District of New Jersey.

THE COURT: All right. Then the Court will review the mediation list and -- and perhaps -- let me ask you this. Would the parties be open to private mediation with Judge Snyder, who is a terrific former Magistrate Judge as well, but I don't believe he's on the court certified list. So, obviously I cannot and I would not refer you to him, because that's -- that's a -- a different rate -- that's a much different rate. I know the parties had engaged in private mediation before, but I certainly am not going to compel -- I'm not going to, nor could I, as I said, compel you to participate in private mediation. Is that someone you're open to? Otherwise the Court will find someone else on the court mediation list.

MS. WEAVER: Your Honor, could we have a -- just an opportunity to consult with our -- our local counsel before we commit? I don't -- I don't -- just this is -- this is a surprise a little bit, and we just need a moment to consult with each other.

THE COURT: Yeah, you can get back to me by next

Friday at the latest. Okay. Tell me if you --

MS. WEAVER: Okay. No problem, Your Honor.

THE COURT: If there's somebody that you agree to on the list, I'll certainly take that under consideration. Obviously, if you don't agree I'm going to assign -- I'm going to appoint somebody. But otherwise Judge Snyder -- Joel Snyder, he's a former Magistrate Judge who sat in the Camden Vicinage. He's very good. And there's certainly others, but I think the case could probably benefit from a retired judge, not to say there aren't very good lawyers who are on the court mediation list and who are private mediators. There are a number of good private mediators, Judge Faith Hochberg, but she's a private mediator as well. She's a former District Judge from this District. She's someone else the parties may consider as well. But, again, it's private mediation and I'm not going to order the parties obviously to engage in private mediation. That would be not appropriate, only court mediation program which is $300.00 an hour.

So, if you guys can -- yeah, just -- let the Court know by next Friday. There's Judge Dickson as well, he's a former Magistrate Judge on the court mediation list. You can find it on our internet -- on the court's --

MS. WEAVER: Thank you, Your Honor. We will -- we'll do that. And we'll get back to you -- I apologize.

THE COURT: All right. Yes --

MS. WEAVER: If we can back to you sooner than Friday, we -- we will. I -- there are a couple of housecleaning matters. We had a stipulation and order so that we can propound an interrogatory pending in front of you pursuant to the last -- Josh, what ECF number is that?

THE COURT: Yeah, I didn't really understand it. So -- I saw that --

MR. SAMRA: That is ECF 293.

THE COURT: This is in lieu of serving -- I had ordered you to serve -- I gave you -- I'm sorry -- leave to serve the request for productions thirty-six and forty, and directed the Defendants to respond by April 1st. We just addressed number forty. So, you're saying now in lieu of serving request number thirty-six the parties are agreeing instead to an interrogatory?

UNIDENTIFIED MALE: Yes, Your Honor.

MR. SPERLING: Your Honor, we're -- we're going to provide -- yeah, we're going to provide our response in the form -- interrogatory response. It's a -- it's a better way to provide the information. The parties are agreed on that.

THE COURT: That's fine as long as it's not going to come back as a dispute to me again about what the rog says and what it means. Because I've already made a ruling with respect to -- request for production number thirty-six. If

the parties are in agreement and have stipulated to having instead this interrogatory in lieu of request for production thirty-six being served, then I will sign off on the stipulation.

Anything else?

MR. SPERLING: Thank you.

MS. WEAVER: Thank you, Your Honor.

THE COURT: Thank you.

MS. WEAVER: Yes, Your Honor -- ECF 233 is the case schedule, which has dates for expert disclosures and initial reports due on April 29th. We raised this with the Defendants last month. We sent them a proposed schedule on April 3rd. We had agreed in principle to extend those deadlines by two months. I understand your motion -- the motion to stay may preclude this, but if you could vacate the discovery disclosure reports we would breath a lot easier here, Your Honor.

THE COURT: I'm not -- I appreciate that. Procedurally what I'm going to do is I'm not going to -- I'm not going to vacate anything. When I -- when I -- when I -- issue an order referring the case to mediation, it's going to stay the proceedings. So it stays discovery --

MS. WEAVER: Okay.

THE COURT: Whether it's fact or expert, and it's going to stay all the motions and terminate the motions

without prejudice. So, that will take care of it. All right.

MS. WEAVER: Okay. Then my related question was -- sorry -- I'm sorry, Your Honor.

THE COURT: Go ahead.

MS. WEAVER: A related question that we, as you know, had moved to intervene and I hear what you are saying. I did want to advise the Court that we have now learned through discovery what we'd been asking for a while, which is that from 2015 prior Samsung agreements had no arbitration clause. And at least two of the proposed interveners purchased televisions with no arbitration clause. So, granting a motion to intervene will not -- should not trigger any arbitration dispute, because they're not subject to the clause. Just to --

THE COURT: --

MS. WEAVER: So -- go ahead, Your Honor.

THE COURT: Okay. That's -- that goes to the merits of the motion. I'm not addressing that at this time, but I thank you for bringing that up.

MS. WEAVER: Okay.

THE COURT: All right.

MS. WEAVER: But I guess what we would say is we would amend the motion. If you were anticipating ruling on it, we could amend the motion to focus only on those two

interveners or interveners with no arbitration clause. It --

MR. SPERLING: Your Honor, I'm not aware of what counsel is referring to that -- that -- you know -- if there's going to be an application to amend the pending motion, it seems to me that ought to be on the papers and not brought up as a surprise issue.

THE COURT: Okay. Here -- the -- here's what it is. The request to amend is denied without prejudice. I am going to stay all the discovery I mentioned. I'm staying all discovery with the exception of what I already ruled to day is going -- I'm going to allow to proceed. And I'm going to administratively terminate all the pending motions. So, to the extent this case does not settle at mediation and the motions have to be decided, that would be the time to talk about whether or not you are going to withdraw your motion to intervene and need to file a new one.

MS. WEAVER: Mmm hmm.

THE COURT: So, we're not going to address that at this time. Okay.

MS. WEAVER: Okay.

THE COURT: Thank -- thank you, everyone.

MS. WEAVER: Understood, Your Honor.

THE COURT: -- an Order. We're adjourned. Take care. Bye bye.

MS. WEAVER: Thank you, Your Honor.

MR. SPERLING: Thank you, Your Honor.

MR. MCDONALD: Thank you, Your Honor.

(PROCEEDING CONCLUDED)

* * * * *

CERTIFICATION

I, ANDREA SEMANOVICH, Transcriptionist, do hereby certify that the 54 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

Transcriptionist: Andrea Semanovich

/s/ Andrea Semanovich April 23, 2024

Andrea Semanovich, AD/T 704
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080