**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS ROGER WHITE, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No. 17-01775 (MCA) (JSA)<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Jessica S. Allen, U.S.M.J.<br><br>*Document Electronically Filed* |

# DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR ISSUANCE OF A LETTER OF REQUEST FOR PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY

GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000

*Attorneys for Samsung Electronics America, Inc.*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antamex Int'l, Inc. v. Zurich Am. Ins. Co.*,
2022 WL 20679662 (D.N.J. Aug. 1, 2022) ....................14

*Cordeiro v. Alves*,
2017 WL 11644703 (S.D. Fla. Mar. 29, 2017) ....................3

*Cordeiro v. Alves*,
2017 WL 3099086 (S.D. Fla. Apr. 7, 2017) ....................3, 9, 10

*Cover v. Windsor Surry Co.*,
2016 WL 8231158 (N.D. Cal. Dec. 19, 2016) ....................3

*Dartell v. Tibet Pharms., Inc.*,
2017 WL 11476313 (D.N.J. Jan. 12, 2017) ....................18

*In re Mercedes-Benz Emissions Litig.*,
2020 WL 487288 (D.N.J. Jan. 30, 2020) ....................12, 15, 18

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
2013 WL 12203112 (D.N.J. June 7, 2013) ....................*passim*

*Progressive Mins., LLC v. Rashid*,
2009 WL 1789083 (N.D.W. Va. June 23, 2009) ....................3

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
246 F. Supp. 2d 285 (S.D.N.Y. 2003) ....................9

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ....................14

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
482 U.S. 544 (1987) ....................11, 12

**Statutes**

18 U.S.C. § 2510 ....................12

18 U.S.C. § 2511 .......... 15

**INTRODUCTION**

Plaintiff's renewed motion for a letter of request is untimely and prejudicial to defendant Samsung Electronics America, Inc. ("SEA"), and the discovery Plaintiff seeks is unnecessary given the evidence that already has been adduced.

To start, courts weighing a party's request for issuance of a letter of request under the Hague Convention (also referred to as a letter rogatory) "must consider the timeliness" of that request. *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, 2013 WL 12203112, at *4 (D.N.J. June 7, 2013). Here, Plaintiff plainly knew from the outset of this case that Samsung Electronics Co. Ltd. ("SEC"), the Korean manufacturer of his Samsung TVs, would have documents and other information about the ACR technology used on those TVs. Indeed, Plaintiff, who named SEC as a defendant in the original complaint, first raised in March 2018 his concern that the "foreign defendants" had control over his data, which he believed was "transferred. . . outside the United States," and that "[p]otential witnesses and documents may be located outside the United States." ECF No. 61 at 7, 10.

Despite these concerns, Plaintiff made the strategic choice to dismiss SEC from this case "without requiring any agreement to any preconditions." ECF No. 71 at 1. And Plaintiff took no steps at the commencement of discovery to issue letters of request to SEC, even while repeatedly expressing the view that he would

need to do exactly that in order to obtain documents concerning the ACR technology in his television. ECF No. 235 at 3; McDonald Decl., Ex. 1 at 39:4–6.

Ultimately, SEA obtained voluntary cooperation from SEC to produce various documents and information sought by Plaintiff. Although Plaintiff professed dissatisfaction last Fall with the quantity of data and documents provided and raised the possibility of serving a Hague Convention request, Plaintiff again declined to actually move for such discovery until March 15, 2024—seven years after filing a complaint where a modicum of due diligence should have alerted him to the distinctions between SEA and SEC, and six months after first raising the possibility of seeking documents from SEC through the Hague Convention.

Permitting the issuance of letters of request *now*, when fact discovery is scheduled to close the day after the filing of this brief, would substantially prejudice SEA by extending this seven-year-old case yet again—all for the purpose of taking discovery from an entity that Plaintiff chose years ago to drop as a party defendant.

Of equal importance, Plaintiff fails to demonstrate how any of this discovery is important to his case, given that the evidence now adduced conclusively shows that the way the ACR technology functions does not violate the law. Plaintiff's untimely, prejudicial, and unnecessary motion for further discovery from SEC therefore should be denied.

## ARGUMENT

### I. Plaintiff's Motion Should Be Denied Because of Delay and Prejudice.

In determining whether to issue or deny an application to issue a letter of request, "the Court must consider the timeliness of the request for issuance." *Merck Sharp & Dohme Corp.*, 2013 WL 12203112, at *4. A party's "decision to wait until the eve of the discovery cut-off to request letters rogatory seeking discovery from an entity in [a foreign country] is inexcusable" and is "more than enough, standing alone, to warrant denying" the request. *Cordeiro v. Alves*, 2017 WL 11644703, at *2 (S.D. Fla. Mar. 29, 2017); *see also Cover v. Windsor Surry Co.*, 2016 WL 8231158 at *3 (N.D. Cal. Dec. 19, 2016) (denying request made "just days before the close of discovery" where the requesting party had "not offered an adequate explanation for its delay").

Even when an application is timely, moreover, "[g]ood reasons" to deny the application "include, among other things, where granting the motion would cause an inherent delay that would prejudice the opposing party." *Cordeiro v. Alves*, 2017 WL 3099086, at *1 (S.D. Fla. Apr. 7, 2017). As Courts in this district recognize, "the letters rogatory procedure can be complicated, dilatory and expensive, and such factors thereby counsel against issuance." *Merck Sharp & Dohme Corp.*, 2013 WL 12203112, at *4 (internal quotation marks and alteration omitted); *see also Progressive Mins., LLC v. Rashid*, 2009 WL 1789083, at *2

(N.D.W. Va. June 23, 2009) ("[D]elay attends the rogatory process and counsels against issuance."). As detailed below, Plaintiff's delay here far exceeds the delay that other courts have viewed as more than sufficient to warrant denial of a request. Because Plaintiff's inexcusable delay would prejudice SEA and substantially extend proceedings in this more than seven-year-old case, the motion should be denied.

### A. Plaintiff Unreasonably Delayed the Filing and Renewal of His Motion.

This case was filed more than seven years ago, on March 16, 2017. From the outset, Plaintiff recognized the likelihood that SEC possessed documents and information relevant to his claim. For example, Plaintiff's initial complaint and the first amended complaint repeatedly alleged that SEC (and the other named defendants) collected or intercepted user data through ACR or similar technologies. *See* ECF Nos. 1 ¶¶ 1, 33–34, 38; 45-1 ¶¶ 1, 6–8, 41, 48, 53–55. And in March 2018, Plaintiff informed the Court that his "main concern" with dismissing SEC as a defendant was that "Plaintiffs believe [that] their confidential information . . . was transmitted by Defendants [including SEC] outside the United States," which "directly affects discovery in this case." ECF No. 61 at 7. Plaintiff further acknowledged that "[p]otential witnesses and documents may be located outside the United States" — clearly referring to potential witnesses and documents at SEC and the other foreign defendants. *Id.* at 10.

Despite those concerns, in April 2018, Plaintiff voluntarily elected to dismiss SEC rather than serve it as a defendant, and executed a stipulation of dismissal "without requiring any agreement to any preconditions." ECF No. 71 at 1.

The parties thereafter litigated motions to dismiss and a motion to compel arbitration over the course of more than five years, while Plaintiff agreed to stay all discovery rather than pursue any application for foreign discovery from SEC. *See, e.g.*, ECF No. 72.

In May 2023, the Court entered a new discovery schedule setting a deadline of May 30, 2023 to serve requests for production of documents and a fact discovery deadline of March 31, 2024—a deadline that remained unchanged until the March 12, 2024 conference. ECF No. 223. While Plaintiff served requests for production on SEA before the May 30, 2023 deadline, he did not move to request documents from SEC.

In what should have been no surprise to Plaintiff, in July 2023, SEA confirmed to Plaintiff that SEA was not involved in the collection of ACR data at issue and that SEC was the entity responsible for ACR technology. ECF No. 234 at 6. In response, Plaintiff's counsel stated to the Court in *August 2023* that they would "seek third party discovery of SEC through the Hague Convention while seeking leave to amend to add SEC as a defendant." ECF No. 235 at 3. Plaintiff's

counsel repeated this position at the September 15, 2023 status conference, stating "the problem is that SEC is a foreign entity. And we will either have to go through the Hague or we have to seek leave to add them back into the case." McDonald Decl., Ex. 1 at 39:4–6.

Since that time, at the Court's suggestion, SEA has diligently worked to request that SEC voluntarily provide relevant documents to SEA to produce in this litigation, while simultaneously satisfying its own discovery obligations. Together, SEA has produced to Plaintiff, among other materials, consent records, documents related to the consent process that users navigate through on their TVs, exemplars of the digital "fingerprint" taken by ACR and documents explaining those exemplars, and documents relating to ACR functionality. Plaintiff's response has been to move the goalposts at every turn, demanding additional material each time a request has been satisfied. *See, e.g.*, ECF No. 258 at 4 ("Plaintiffs suggest that this good faith production of precisely what the parties discussed and agreed to is somehow insufficient"); ECF No. 275 at 3 ("with every question SEA answers and every production SEA makes, Plaintiff requests additional documents and interrogates defense counsel for facts, all the while refusing to proceed with depositions that will actually deliver the information they are requesting.").

Throughout this period, from July 2023 through February 2024—and despite Plaintiff's repeated statements that he would seek discovery of SEC through the

Hague Convention, Plaintiff never moved for a letter of request to obtain documents or testimony directly from SEC.

At the March 12, 2024 conference, the Court specifically identified the limited remaining discovery for SEA to provide or attempt to obtain from SEC prior to the new close of discovery at the end of May. Two weeks later, Plaintiff's counsel finally decided to move the Court to allow them to request additional documents from SEC through the Hague Convention. This was *over six months* after Plaintiff first raising the prospect of doing so, eight months into discovery, and *six years* after first advising the Court of the issue.[1]

Even then, Plaintiff did not request any deposition testimony from SEC, instead limiting his motion to document requests. Over the succeeding month, SEA produced four 30(b)(6) witnesses to testify on the topics that Plaintiff propounded. These witnesses prepared for their designated topics by, among other things, reviewing the SEC documents produced to Plaintiff, and speaking to SEC engineers in Korea. *See* McDonald Decl., Ex. 2 at 148:3–149:22, 150:1–24; 257:4–258:9; *id.*, Ex. 3 at 108:19–25.

---

[1] While the Court's orders prevented the parties from making motions without prior Court permission, *see* ECF No. 233, Plaintiff never requested leave to move under the Hague Convention until his March 1 letter. ECF No. 283.

At the April 16, 2024 conference, a month after Plaintiff filed his original motion, Plaintiff requested permission to amend his motion, which was then fully briefed, to add a request for deposition testimony from SEC. The Court denied that request, but granted Plaintiff permission to withdraw the motion and re-file it. McDonald Decl., Ex. 4 at 131:18–19, 133:15–19. Plaintiff thereafter waited an additional two weeks before filing the instant motion on April 30, 2024. ECF No. 314.

There is no reason why Plaintiff could not have asked for deposition testimony from SEC in his original motion, if not earlier. Plaintiff now contends that the need for deposition testimony became apparent only because SEA's 30(b)(6) purported witnesses were unable to provide testimony on noticed topics, ECF No. 314-1 at 3-4. But Plaintiff's assertion is simply erroneous; each of the witnesses provided ample testimony on the topics for which they were noticed.[2]

[2] Stewart Farr, for example, testified extensively about how ACR operates to collect data from Samsung Smart TVs, *see, e.g.,* McDonald Decl., Ex. 2 at 21:16–22:3, 249:22–250:22, 251:11–254:1, 259:3–261:12 and the software and hardware involved in the operation of ACR technology on Samsung Smart TVs, *see id.* 71:9-73:7, 83:7-84:2, 204:16-206:16. Khaled Abuali, meanwhile, was not designated to testify on "the creation and testing of, and changes to, the process by which terms and policies are presented to users on their Samsung Smart TVs," nor the specific "terms and disclosures presented to users of Samsung SmartTVs." *See* ECF No. 314-1 at 3–4; McDonald Decl., Ex. 5 at 56:23–58:7. He was designated to testify on Topic 5—"The general process by which Samsung presented terms and conditions, privacy policies, notices, or supplements . . . to Samsung Smart TV users during the Smart TV setup process." *Id.* at 11:17–12:6. Mr. Abuali testified about this topic—the only one on which he was designated—in great detail. *See, e.g.*, *id.* 47:2–53:10, 56:13–21, 63:24–65:6, 74:3–85:9. Plaintiff faults Mr. Abuali for being unable to testify regarding the "database maintaining records" of user consents, ECF No. 314-1 at 3–4, but this was not a 30(b)(6) topic at all, much less one on which Mr. Abuali was designated. *See*

### B. Plaintiff's Delay and the Resulting Prejudice to SEA Require That the Motion Be Denied.

Plaintiff's delay plainly prejudices SEA and is sufficient grounds on its own for denial of the motion.

Courts have found that requests filed "with less than two months left before the close of [fact] discovery," *see Merck Sharp & Dohme Corp.*, 2013 WL 12203112, at *4, or "well over two months after being placed on notice" of the existence of the relevant documents at the foreign corporation, merit denial of that request. *Cordeiro*, 2017 WL 3099086, at *1. Further, where it is "virtually certain" that the requesting party will not receive the relevant discovery from the foreign entity "in advance of the discovery cut-off . . . [or] far enough in advance of the discovery cut-off to permit the parties to take further discovery concerning any documents that might be produced," the court is justified in denying the request. *Id.*; *see Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 246 F. Supp. 2d 285, 289 (S.D.N.Y. 2003) (denying request for letters rogatory where it would "unduly delay this proceeding").

Here, as of the March 12, 2024 discovery conference, when just three weeks remained before the close of fact discovery, Plaintiff had still not filed his motion

---

McDonald Decl., Ex. 6. As Plaintiff admits, to ensure that they were able to provide full and accurate testimony on these topics, SEA's witnesses spoke with SEC engineers in preparation for their depositions. *See* McDonald Decl., Ex. 2 at 148:3–149:22, 150:1–24; 257:4–258:9; *id.*, Ex. 3 at 108:19–25.

for a letter of request. Plaintiff filed his renewed motion on April 30, one month before the revised May 31 fact discovery deadline—and if the motion is granted, the process of issuing the requests will not even begin until after the current fact-discovery close. Under the above case law, Plaintiff's request is clearly untimely.

The prejudice to SEA, moreover, is substantial. Granting Plaintiff's application will entail extending discovery again—likely for many months—prolonging this seven-year-old case and the associated costs. Moreover, if the application is granted, it seems obvious that the current requests will not mark the end of discovery. As discussed below, some of Plaintiff's requests—such as the request to identify "key employees"—serve no purpose except as a prelude to seeking yet further discovery related to those employees once they are identified. The Court should not prejudice SEA "to accommodate [Plaintiff's] failure to diligently . . . seek discovery in this case." *Cordeiro*, 2017 WL 3099086, at *1.

## II. Plaintiff's Motion Should Also Be Denied as Unnecessary.

The delay and prejudice to SEA are particularly unwarranted because the discovery that Plaintiff seeks through his proposed letter of request is unnecessary in light of the discovery produced by SEA thus far—discovery that has already revealed how the relevant Smart TV technology works and includes substantial documents and information from SEC.

"[T]he party seeking application of the Hague Convention bears the burden of persuading the trial court of its necessity." *Merck Sharp & Dohme Corp.*, 2013 WL 12203112, at *2. "[T]he Supreme Court has cautioned that in deciding whether to permit discovery requests under the Hague Convention, a court must 'exercise special vigilance' and protect foreign litigants from unnecessary or unduly burdensome discovery." *Id.* at *3 (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa* ("*Aérospatiale*"), 482 U.S. 544, 546 (1987)).

In deciding whether to issue a letter of request, courts consider the comity factors of *Aérospatiale*. 482 U.S. at 544 n.28. These factors include "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States," or "would undermine important interests of the state where the information is located." *Id.*

Under these factors, the Court should decline to issue Plaintiff's proposed letter of request, the document and deposition requests in which are irrelevant, vague, cumulative, and intended to lay the groundwork for yet further discovery requests.

### A. Plaintiff Cannot Demonstrate That the Information Sought is Important to the Litigation.

In evaluating the importance to the litigation of the information requested, courts should "look[] to whether the information sought [is] directly relevant and necessary to the parties' claims and defenses." *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6 (D.N.J. Jan. 30, 2020). "[W]here the relevancy or materiality of the [discovery] sought is doubtful, the court should not grant the application for letters rogatory." *Merck Sharp & Dohme Corp.*, 2013 WL 12203112, at *3. Many of the categories of documents and testimony that Plaintiff seeks are irrelevant to any claim or defense and thus cannot be considered "importan[t] to the . . . litigation." *Aérospatiale*, 482 U.S. at 544 n.28.

Plaintiff's sole remaining claim is that Samsung's ACR technology functions in a way that violates the Wiretap Act by "intercepting" the "contents" of "communications" as defined by 18 U.S.C. § 2510. This Court held that according to the Second Amended Complaint ("SAC"), "there are two relevant communications at issue . . . first a communication between a consumer and a content provider who transmits content to the consumer's Smart TV (manufactured by Defendants), and second that there is a communication between the Smart TV and the Defendants' servers, conveying what content the consumer has viewed." ECF No. 131 at 3. Though Samsung was clearly a party to the second communication (meaning there could be no statutory violation), the Court found

that the SAC alleged a potential violation with respect to the first communication. *Id.* at 5.

Plaintiff's motion makes zero effort to explain how the documents and data sought are relevant to the narrow issue of whether Samsung intercepts such a communication. And the evidence already produced conclusively shows that no Wiretap Act violation occurs—such that the discovery Plaintiff seeks is not necessary—for at least two reasons.

*First*, the testimony and documents provided by SEA establish that ACR technology is engaged on Samsung Smart TVs only after a content provider has transmitted content to the user's Smart TV. *See* McDonald Decl., Ex. 2 at 155:15–156:20, 157:19–22. Specifically, it generates numerical values by assessing pixels on the TV's screen, *after* the communication to the TV is received, processed by the television digital signal processor, and displayed on the screen. *Id.*; *see* ECF No. 322-3. Those documents and testimony also establish that ACR does *not* capture any image displayed on the screen; instead, it generates a short numerical "hash," also referred to as a "fingerprint," by applying an algorithm that compares the numerical value of the brightness of certain pixels to the brightness of surrounding pixels at a given moment. McDonald Decl., Ex. 2 at 72:4–73:19. These fingerprints are not images, nor can an image be reverse-engineered from them. *Id.* at 86:14–16, 87:9–10, 175:18–22, 254:23–255:1. It is this fingerprint—

and not any contents of a communication or any image—that is sent to a matching database controlled by SEC, where it is compared to a library of reference fingerprints in an effort to determine with a reasonable degree of confidence what programming (*e.g.*, a specific television episode or movie) may have been on the screen at the time the ACR data was generated. *See id.* at 72:2–8; McDonald Decl., Ex. 7 at 7.

In short, ACR does not "intercept" anything—it analyzes pixels appearing on the TV screen—nor does it capture any "contents," such as a screen shot or recording of the screen. The documents and testimony that Plaintiff now seeks therefore are necessarily not "important to the litigation," because the relevant question in this case—how ACR works—has already been answered. The additional evidence that Plaintiff seeks would not alter that conclusion, and at most, would be cumulative of evidence already provided to Plaintiff. *See, e.g.*, *Antamex Int'l, Inc. v. Zurich Am. Ins. Co.*, 2022 WL 20679662, at *6 (D.N.J. Aug. 1, 2022), *reconsideration denied*, 2022 WL 20679664 (D.N.J. Nov. 9, 2022) (denying application where Plaintiffs had not made a "predicate showing" that the requested foreign deposition would yield "any evidence, let alone important evidence, concerning the issues in this case" that was not available from alternate sources); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (noting that courts have "generally been unwilling" to find the requested

foreign discovery important "[w]here the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence" (internal quotation marks omitted)); *see also* Part II.B *infra*.

*Second*, the uncontroverted evidence shows that in order for ACR to be enabled, users must first affirmatively consent to a privacy policy and specific notice authorizing the collection of data through ACR. McDonald Decl., Ex. 5 at 48:6–50:18; *id.*, Ex. 2 at 239:10–241:17. Indeed, even Plaintiff himself testified that the consents at issue here—and to which there are records indicating he agreed—are "explicit" and "clear" and do not "leave much doubt or room for error." McDonald Decl., Ex. 10 at 156:5–10; *see also* McDonald Decl., Ex. 8; McDonald Decl., Ex. 9; McDonald Decl., Ex. 5 at 48:6–49:1. There is no dispute that consent is an absolute bar to a Wiretap Act claim.[3]

In the face of this evidence, Plaintiff fails to satisfy his burden of demonstrating why the evidence he now seeks from SEC is "directly relevant [or] necessary." *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6. For example, proposed Document Request No. 2[4] pertains to the functions of the TV

---

[3] 18 U.S.C. § 2511(2)(a)(iii) ("It shall not be unlawful . . . where one of the parties to the communication has given prior consent to such interception . . . .").

[4] "Documents and data showing, for the Relevant Time Period, how Samsung Smart TVs operate to play media, including but not limited to audio and video, such as through apps, cable box, or gaming console."

*before* ACR even begins to operate. Similarly, Plaintiff provides no explanation as to the relevance, let alone importance, of proposed Document Request No. 8, which seeks documents about "how and why Samsung developed ACR and related technologies, such as SyncPlus, which collect data from Samsung Smart TVs for marketing purposes." The same is true of proposed Document Request No. 10 and Deposition Topic No. 7, which seek documents and testimony regarding "partnerships or agreements Samsung entered into with non-Samsung entities relating to the operation of ACR technology." ECF No. 314-2 at 13–14, 17. None of this information bears on how ACR functions. And all of it is far afield from the "brief discovery" that this Court contemplated would be necessary to answer the question that now has been answered—how Samsung's ACR technology works.

Equally irrelevant and unnecessary are Plaintiff's Document Request No. 11 and Deposition Topic 8, which seek documents and testimony regarding the "profits [SEC] earned" from the use of ACR technology. Even if Plaintiff could show a Wiretap Act violation here, SEC is not a defendant, and *its* profits are therefore irrelevant.

### B. Much of the Information Plaintiff Seeks is Duplicative of Discovery Already Provided.

Courts "must also consider whether the discovery sought under the Hague Convention is duplicative, burdensome or available by another means." *Merck*

*Sharp & Dohme Corp*., 2013 WL 12203112, at *4. Plaintiff argues that he has "no alternative but to seek production of documents and deposition testimony from SEC under the Hague Evidence Convention," ECF No. 314-1 at 9, but fails to acknowledge that much of the information he seeks is *already in the record*. Rather than explain why such duplicative requests are necessary, Plaintiff instead argues, without a single citation, that SEA has been delinquent in its discovery obligations. The truth is that SEA has fully complied with all of the Court's orders, and—as detailed above—the documents, interrogatory responses, and testimony from multiple witnesses that SEA has provided establish that ACR does not violate the Wiretap Act.[5] *See* Part II.A, *supra.*

Plaintiff's brief simply pretends that this evidence has not been adduced in full by SEA. But it has, and obtaining additional redundant documents and deposition testimony from SEC—whom Plaintiff voluntarily dismissed from this case six years ago—will not change the reality of what that evidence shows.

---

[5] To the extent Plaintiff contends that SEA's 30(b)(6) designee, Mr. Farr, lacked knowledge regarding the operation of ACR prior to October 2019, that assertion is incorrect and fails to demonstrate that Plaintiff's letter of request to SEC is necessary. As Mr. Farr testified, his preparation to testify as SEA's 30(b)(6) designee was not limited to post-2019 facts. McDonald Decl., Ex. 2 at 286:11–287:16. Moreover, prior to May 2018, Samsung Smart TVs used the proprietary ACR technology of a third-party vendor, Gracenote (formerly known as Enswers), and thus SEC already has represented that it lacks information regarding how that technology operated. *See id.* at 256:5–257:3; McDonald Decl., Ex. 4 at 127:1-11. Indeed, recognizing as much, in the middle of this month Plaintiff served subpoenas for such information on Gracenote and Roku (which Plaintiff contends later acquired Gracenote's ACR technology), in violation of the Court's explicit order that "I don't want any more requests sent out on either side." *Id.* at 152:4–25; *see* McDonald Decl., Exs. 11–14.

**C. Plaintiff's Requests are Burdensome and Lack Specificity.**

Finally, the documents and information sought in a letter of request must be "narrowly tailored" to adduce relevant and specific evidence. *Dartell v. Tibet Pharms., Inc.*, 2017 WL 11476313, at *1 (D.N.J. Jan. 12, 2017). When analyzing the specificity of the discovery requests, "the Court examines the extent to which the discovery requests will burden the party from whom production is sought, as generalized searches for information, disclosure of which is prohibited under foreign law, are discouraged." *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *7 (internal quotation marks and alteration omitted).

Here, Plaintiff requests categories of information and documents that are so vague as to likely be indecipherable. For example, Document Request No. 4 seeks "[d]ocuments evidencing Class Members' choices and selections made with respect to the terms and policies." ECF No. 314-2 at 13. Plaintiff gives no explanation as to what he means by "choices and selections."

Document Request No. 6, meanwhile, seeks documents describing "how Samsung Smart TVs were able to operate in the ordinary course of business if ACR technology was disabled, or never installed or activated on the Smart TV." *Id*. There is already ample deposition testimony establishing that Samsung Smart TVs function with ACR disabled. *See, e.g.* McDonald Decl., Ex. 2 at 239:25–

240:21. Plaintiff's request for documents regarding *how* the TV is able to do what televisions always did before the advent of ACR is vague and unclear.

Likewise, Document Request No. 9 seeks "[d]ocuments identifying key employees who worked on the development and implementation of ACR and related technologies on Samsung Smart TVs." ECF No. 314-2 at 14. Again, Plaintiff gives no guidance for how one should determine which employees are "key"; that sort of vague, subjective descriptor is not a proper substitute for a narrowly-tailored request of objective scope. Even more critically, Plaintiff provides no explanation for why this request is specifically tailored, or even relevant, except as a basis to pursue yet more discovery requests regarding these individuals once they are identified.

* * *

In short, Plaintiff chose to drop SEC as a defendant many years ago. Its request now—many years later, with fact discovery otherwise at a close—to commence discovery of SEC via the Hague Convention is ridiculously untimely. The delay that it would impose is unfairly prejudicial to SEA. And the information sought, via a series of poorly-drafted requests, is plainly unimportant in light of the evidence establishing how ACR operates—and that ACR entails no violation of the Wiretap Act.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion and decline to issue a letter of request.[6]

Dated: May 30, 2024
Newark, New Jersey

By: *s/ Michael R. McDonald*
Michael R. McDonald, Esq.
mmcdonald@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500

Emily Johnson Henn (*pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700

Jonathan M. Sperling (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018

[6] Plaintiff's proposed letter of request contains a number of prejudicial mischaracterizations and inaccuracies. For example, it incorrectly states that SEC has "consumer data intercepted or collected through Samsung's ACR technology embedded on Samsung Smart TVs" and that "SEA manufactures and develops for sale" Samsung Smart TVs. ECF No. 314-2, at 7–8. In the unlikely event that the Court grants the motion, SEA requests the opportunity to propose revisions to the letter.

Telephone: (212) 841-1000

*Attorneys for Defendant*
*Samsung Electronics America, Inc.*